Peter C. Catalanotti (SBN 230743)
peter.catalanotti@wilsonelser.com
Audrey Tam (SBN 305437)
audrey.tam@wilsonelser.com
Stephanie Yee (SBN: 320861)
stephanie.yee@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA  94111
Telephone:     (415) 433-0990
Facsimile:     (415) 434-1370

Attorneys for Defendants
HANSEN LAW FIRM, P.C.; STEPHEN HOLMES; and CRAIG HANSEN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABRAHAM ABITTAN, RACHEL ABITTAN, BRIAN ABITTAN, JACOB ABITTAN, ALYSSA PORTAL, ELIANA ABITTAN, ROY GRABER, and TOVA GRABER, | Case No.:  5:25-cv-5427SVK |
| Plaintiffs, | **DEFENDANTS HANSEN LAW FIRM, P.C.; STEPHEN HOLMES; AND CRAIG HANSEN'S** <u>**REQUEST FOR JUDICIAL NOTICE**</u> **IN SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) AND CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16** |
| v. | |
| HANSEN LAW FIRM, P.C., CRAIG HANSEN, STEPHEN HOLMES, SAC ATTORNEYS LLP, JAMES CAI, BRIAN BARNHORST, PATRICK O'SHAUGNESSY, YE & ASSOCIATES, PLLC, JINGJING YE, and DOES 1-20, inclusive, | Date: December 2, 2025 Time: 10:00 a.m. Courtroom: 6 Magistrate Judge Susan Van Keulen |
| Defendants. | |

Defendants Hansen Law Firm, P.C., Stephen Holmes, and Craig Hansen's (collectively, "Hansen") hereby request that, pursuant to FRCP 201, the Court take judicial notice of the following Exhibits that are referenced in their Special Motion to Strike Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and California Code of Civil Procedure Section 425.16.  For the Court's convenience, true and correct copies of the aforementioned exhibits are attached to this Request for Judicial Notice.

///

1

DEFENDANTS HANSEN LAW FIRM, P.C., STEPHEN HOLMES, AND CRAIG HANSEN'S RFJN IN
SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFFS' COMPLAINT

322463705v.1

The documents requested for judicial notice below are appropriate for judicial notice because courts may take judicial notice of other court filings and matters of public record. (*Reyn's Pasta Bella, LLC v. Visa USA, Inc*. (9th Cir. 2006) 442 F.3d 741, 746 n.6 (citing *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank* (9th Cir. 1998) 136 F.3d 1360, 1364).)

1.      The Complaint in *Chen v. Abittan, et al*., Case No. 4:21-cv-09393 (N.D. Cal.) (the "Underlying Action"), ECF No. 1, attached hereto as **Exhibit 1**.

2.      Joint Stipulation re Service and CMC, ECF No. 25, in the Underlying Action, attached hereto as **Exhibit 2**.

3.      Declarations by Plaintiffs filed in the Underlying Action attached to their amended answer as exhibits B through I, ECF No. 37-2 through 37-9, attached hereto **Exhibit 3**.

4.      Motion to strike answer to complaint, ECF No. 40, in the Underlying Action, attached hereto as **Exhibit 4**.

5.      Order denying motion to strike answer to complaint, entered as a text-only docket entry, ECF No. 51, in the Underlying Action, attached hereto as **Exhibit 5**.

6.      Notice of substitution of counsel, ECF No. 60, in the Underlying Action, attached hereto as **Exhibit 6**.

7.      Order setting hearing on notice of withdrawal of counsel Hansen Law Firm, ECF No. 61, in the Underlying Action, attached hereto as **Exhibit 7**.

8.      Notice of appearance by Brian A. Barnhorst OF SAC Attorneys LLP on behalf of Plaintiff Yuting Chen, ECF No. 62, in the Underlying Action, attached hereto as **Exhibit 8**.

9.      Order vacating hearing on notice of withdrawal of counsel Hansen Law Firm; approving change in counsel, ECF No. 63, in the Underlying Action, attached hereto as **Exhibit 9**.

10.     Motion for judgment on the pleadings, ECF No. 75, in the Underlying Action, attached hereto as **Exhibit 10**.

11.     Motion for judgment on the pleadings, ECF No. 83, in the Underlying Action,

2

1  attached hereto as **Exhibit 11**.

2      12.    Order dismissing case with conditions, <u>ECF No. 92</u>, in the Underlying Action,

3  attached hereto as **Exhibit 12**.

4      13.    Motion for sanctions, fees, and costs, <u>ECF No. 101</u>, in the Underlying Action,

5  attached hereto as **Exhibit 13**.

6      14.    Minute entry for proceedings held before Magistrate Judge Nathanael M. Cousins,

7  entered as a text-only docket entry, <u>ECF No. 113</u>, in the Underlying Action, attached hereto as

8  **Exhibit 14**.

9      15.    Declaration of Yuting Chen, <u>ECF No. 107-1</u>, in the Underlying Action, attached

10  hereto as **Exhibit 15**.

11      16.    Judgment, <u>ECF No. 114</u>, in the Underlying Action, attached hereto as **Exhibit 16**.

12      17.    The Docket in the Underlying Action, attached hereto as **Exhibit 17**.

13  Dated: October 17, 2025                WILSON, ELSER, MOSKOWITZ,
                                           EDELMAN & DICKER LLP
14

15                                         By: */s/ Peter Catalanotti*
                                               Peter C. Catalanotti
16                                             Audrey Tam
                                               Stephanie Yee
17                                             Attorneys for Defendants
                                               HANSEN LAW FIRM, P.C.; STEPHEN
18                                             HOLMES; and CRAIG HANSEN

19

20

21

22

23

24

25

26

27

28

DEFENDANTS HANSEN LAW FIRM, P.C., STEPHEN HOLMES, AND CRAIG HANSEN'S RFJN IN
SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFFS' COMPLAINT
322463705v.1

# EXHIBIT 1

The Complaint in *Chen v. Abittan, et al*., Case No. 4:21-cv-09393 (N.D. Cal.) (the "Underlying Action")

Craig A. Hansen (SBN 209622)
  Email: craig@hansenlawfirm.net
Stephen C. Holmes (SBN 200727)
  Email: steve@hansenlawfirm.net
Sarah Wager (SBN 209277)
  Email: sarah@hansenlawfirm.net
HANSEN LAW FIRM, P.C.
75 E. Santa Clara Street, Suite 1250
San Jose, CA 95113-1837
Telephone: (408) 715 7980
Facsimile: (408) 715 7001

Attorneys for Plaintiff
Yuting Chen

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| YUTING CHEN,<br><br>       Plaintiff,<br><br>      v.<br><br>ARIEL ABITTAN, ABRAHAM ABITTAN, RACHEL ABITTAN, BRIAN ABITTAN, JACOB ABITTAN,  ALYSSA ABITTAN, ELIANA ABITTAN, ROY GRABER, TOVA GRABER, REALTIME NY LLC, a New York Limited Liability Company, and DOES 1-20, inclusive.<br><br>       Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1.  **BREACH OF CONTRACT**<br>2.  **BREACH OF CONTRACT**<br>3.  **BREACH OF FIDUCIARY DUTY**<br>4.  **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**<br>5.  **FRAUD**<br>6.  **CONVERSION**<br>7.  **UNJUST ENRICHMENT**<br>8.  **IMPOSITION OF CONSTRUCTIVE TRUST**<br>9.  **DECLARATORY RELIEF**<br>10. **ACCOUNTING**<br>11. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>12. **CIVIL CONSPIRACY**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Yuting Chen ("Chen" or "Plaintiff") hereby alleges for her Complaint against defendants Ariel Abittan, Abraham Abittan, Rachel Abittan, Brian Abittan, Jacob Abittan, Alyssa Abittan, Eliana Abittan, Roy Graber, Tova Graber, RealTime NY LLC, a New York limited liability company, and Does 1 through 20, as follows, upon information and belief:

## NATURE OF THE CASE

1. Plaintiff Yuting Chen is a wealthy Chinese immigrant with a limited command of the English language and of American culture.

2. All named defendants, which include Ariel Abittan and his family, learned of Chen's financial status and lack of business sophistication and dubbed her as a prime target for a calculated scheme to defraud Chen, and later her friends, for millions of dollars.

3. With defendant Ariel Abittan as the front man, the defendants concocted countless fabricated stories in order to gain and maintain Chen's confidence in his family's wealth and their exclusive connections in the form of celebrities, politicians and the business elite.  The sole purpose of their web of lies was to entice Chen into conducting business with Ariel Abittan so that defendants could infiltrate her life and rip her off. That's exactly what happened.

4. Defendants lured Chen into business dealings with Ariel Abittan that were financially disastrous for Chen and specifically designed to cheat her. When Chen figured out that Ariel Abittan was a con artist she cut ties with him, so defendants tried to extort her.  The defendants demanded that Chen immediately pay $4.5 million, threatening that failure to comply would result in grave harm to Chen and her family, as well as a lawsuit against Chen personally. Chen refused and Ariel Abittan sued her the next day, wrongfully and maliciously slinging her name through the mud. Chen also has constant fear for the safety of her and her family given her refusal to pay the extortion demand.

5. Chen seeks recovery in this action for her tremendous financial losses resulting from her business relationship with Ariel Abittan, induced and maintained with the assistance of the remining co-conspirator defendants who are believed to have financially benefitted from the business transactions, and mental/emotional anguish resulting from their deceitful and malicious conduct.

**THE PARTIES**

6.      Plaintiff Yuting Chen is and all times herein was an individual residing in Atherton, California.

7.      Defendant Ariel Abittan is an individual residing in Lawrence, New York.

8.      Defendant Abraham Abittan is an individual residing in Lawrence, New York.

9.      Defendant Rachel Abittan is an individual residing in Lawrence, New York.

10.     Defendant Brian Abittan is an individual residing in Lawrence, New York.

11.     Defendant Jacob Abittan is an individual residing in Lawrence, New York.

12.     Defendant Alyssa Abittan is an individual residing in Lawrence, New York.

13.     Defendant Eliana Abittan is an individual residing in Lawrence, New York.

14.     Defendant Roy Graber is an individual residing in Memphis, Tennessee.

15.     Defendant Tova Graber is an individual residing in Memphis, Tennessee.

16.     Defendant RealTime NY LLC is a New York limited liability company with its principal place of business in Lawrence, New York. RealTime NY is owned by defendant Ariel Abittan.

17.     Chen presently does not know the true names and capacities of the Defendants sued herein as DOES 1-20, inclusive, and therefore sues those defendants by such fictitious names.  Chen will amend this complaint to allege such defendants' true names and capacities when they are ascertained.  Chen is informed and believes, and based thereon alleges, that each of the fictitiously designated defendants was acting as the agent, partner or joint venturer of all other defendants and is joint and severally responsible for the acts and omissions alleged herein.

18.     Chen is informed and believes, and thereon alleges, that the defendants, and each of them, were the agents, servants, employees, and co-conspirators of their co-defendants and each of them, and in doing the things alleged herein were acting within the course and scope of their authority as such agents, servants, employees, and co-conspirators and with the permission and consent of their co-defendants, and each of them (collectively referred to herein as "Defendants").

/ / /

**JURISDICTION AND VENUE**

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is compete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

20.     Personal jurisdiction is proper as to each Defendant because: (1) each Defendant purposefully availed themselves of the benefits of the State of California; (2) the controversy is related to and arises out of their contacts with the State of California; and (3) the assertion of personal jurisdiction comports with fair play and substantial justice.

21.     A substantial part of the events giving rise to the claims alleged in this Complaint occurred in or were directed to the County of San Mateo. Venue therefore lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)(2).

**DIVISIONAL ASSIGNMENT**

22.     A substantial part of the events giving rise to the claims alleged in this Complaint occurred in or were directed to the County of San Mateo. For the purposes of intra-district assignment under Civil Local Rules 3-2(c) and 3-5(b), this Action should be assigned to the San Francisco or Oakland Divisions.

**FACTUAL ALLEGATIONS**

23.     Chen is an immigrant. About a decade ago, she emigrated to the U.S. and settled in California. As a new immigrant, the cultural, language and other social barriers for Chen have remained challenging for years. Nevertheless, blessed with supportive family and friends, she has been thriving in the U.S.

24.     In or around 2015, Chen developed an interest in luxury watches and discovered that they had a good resale value in secondary markets. Initially as a hobby, Chen started trading extremely high-end, exclusive and highly sought-after luxury watches. Among the luxury brands that she had handled, Chen was mostly interested in Patek Phillippe watches. Chen was from a well-to-do family and has solid personal wealth to support her interest in those watches.

25.     Gradually, the casual trade became more frequent. As the volume increased, her hobby morphed into a side business. Chen used a simple business model - she would purchase the

luxury watches from retailers that she believed to be good investments, then resell them in the secondary market. She found interested buyers through personal connections and online platforms.

26. The purchase price for the watches Chen invested in typically ranged from thirty thousand dollars to one hundred thousand dollars. Sometimes the price was substantially higher. Despite the fact that she was not a trained businessperson and the high retail price tags, Chen's financial ability to accumulate and maintain a sizeable inventory of a few million dollars, combined with the very hot luxury watch resale market, made her business lucrative and successful.

27. From time to time, Chen's family and friends who had similar interests helped her with various aspects of the watch business, such as recommending good investments, tracking inventories, sorting records, and the like. Chen did not need and was not looking to build a consistent business relationship with someone outside of her circle of family and friends.

28. However, through deception and lies, Ariel Abittan conned his way into forming and maintaining a regular business relationship with Chen in connection with her watch business. Through this business relationship, defendants perpetrated fraud to gain Chen's trust and infiltrated her life, taking advantage of her lifestyle, tricking her into bad business deals, and cheating her out of millions. Ariel Abittan also used Chen to get to her friends for the sole purpose of defrauding them too.

29. In 2016, Ariel Abittan responded to one of Chen's online listings for a particular high-end watch. Ariel Abittan first conversed with Chen's friend about the listing and made an impression on her friend, who then involved Chen. The conversation went well and the discussions went off-line.

30. When Chen and Ariel Abittan first interacted, he was a financial advisor. He was trained and well-versed in financial issues and had held Series 7 and Series 66 licenses, which allow selling securities and acting as wealth managers for his clients.

31. Around the time Ariel Abittan met Chen or soon after, Ariel Abittan had started to accumulate a substantial amount of credit card debt, both in his own name and in the name of

businesses he controls. In that regard, he did not have the financial resources requiring a substantial amount of liquid asset to follow Chen's business model for her watch business, which involved not only paying up front for inventory, but also uncertainty about when each particular watch would sell.

32. During their initial discussions, Ariel Abittan quickly found out that Chen was wealthy. Moreover, it was evident that Chen had limited command in English, was an immigrant and lacked social experiences and contacts outside of her circle of family and friends in California. Realizing that Chen was a vulnerable target, Ariel Abittan and his co-defendant family members formulated a detailed plan to defraud Chen in connection with her watch business and later in other areas.

33. In connection with the initial watch business and their continuous fraud on Chen over several years, the defendants weaved extensive lies designed to lure her into a business relationship with Ariel Abittan and keep her there.

34. During the initial discussions over the watch business and continuously thereafter, the individual defendants marketed Ariel Abittan to Chen as the scion of a wealthy family and well-connected to other families of similar socioeconomic status around the U.S. Ariel Abittan told Chen that he had access to exclusive clientele in the form of celebrities, politicians, and the business elite, and that because of his intimate connections with these individuals, Ariel Abittan would be an invaluable business partner.

35. In one instance, Ariel Abittan told Chen that he could get Chen invited to the White House and other lavish political and celebrity events to gain access to the rich and famous. Ariel Abittan also told Chen that Ariel Abittan's father, Abraham Abittan, was a famous plastic surgeon in New York City with a barrage of celebrity clients and other powerful connections, perfect for purchasing luxury watches. To further lure her, Ariel Abittan stated that Chen and her friends could have free plastic surgeries, touting it as a huge favor since Dr. Abittan was so acclaimed.

36. To support the Abittan family's story of running with the rich and famous and other lies, defendants are believed to have doctored photographs, forged records such as text

messages and financial documents, all to con Chen into forming and maintaining a business relationship with Ariel Abittan. The doctored photos include, but are not limited to former President Donald Trump, Trump's son-in-law Jared Kushner, and the leaders of multi-billion-dollar companies.  Ariel Abittan particularly told Chen that he personally knew Jared Kushner and he would recruit Kushner in the watch business.

37.     Ultimately, none of Ariel Abittan's representations regarding his lavish lifestyle and the luxuries Chen would experience if she had a business arrangement with him ever came to fruition. Chen was never invited to attend and did not attend a single event, exclusive or otherwise, at Abittan's behest.

38.     Chen never met or interacted with any of Ariel Abittan or his family's supposed affluent, powerful or famous friends even though Chen and Ariel Abittan did business together for years.  Chen also later came to learn that defendant Abraham Abittan is not a plastic surgeon, let alone a famous one with a New York City-based practice. He is a dermatologist.

39.     Later on, when Ariel Abittan traveled to California to visit Chen, he and the co-defendant family members would stage elaborate scenes designed to deceive and impress Chen and reenforce the fraudulent representations regarding Ariel Abittan and his family. For instance, during a "family" conversation with Ariel Abittan when Chen and her friends present in or around 2018, Rachel Abittan, mother of Ariel Abittan, would team up with Abraham Abittan stating that they were developing some miracle high-end cosmetics for skincare to be marketed at high-end department stores and that they planned to open spas in such department stores.

40.     Ariel Abittan's wife Elaina Abittan together with her parents, Roy and Tova Graber, represented to Chen and her friends that they owned big real-estate development businesses and had developed properties over billions of dollars. They represented to Chen and her friends that they owned numerous premier properties and the famed department store Saks Fifth Avenue was their tenant. Ariel Abittan's brothers, Brian and Jacob Abittan, also represented to Chen and her friends that they were famous and well-connected lawyers, whereas Ariel Abittan's sister, Alyssa Abittan, represented to Chen and her friends that her husband was a wealthy businessman.

41.     None of the representations were actually true and were, instead, part of the Abittan family's (including his in-laws, the Graber family's) broader scheme to convince Chen that doing business with Ariel Abittan would bring access to some of the most elite business people in the county in terms of his family members directly, and their personal multi-millionaire connections.

42.     In addition to the co-defendant family members helping Ariel Abittan defraud Chen, they also defrauded Chen's friends directly.  For instance, when Chen and her friends were visiting New York, Abraham Abittan lured Chen's friend into a supposedly "free" facial treatment, but actually charged Chen's friend over $10,000 for a facial that lasted for 2 hours.

43.     While Chen and her friends were visiting New York, the co-defendants family members also asked Chen and her friends to meet people within the defendants' Jewish community to make them believe that Chen and her friends were very wealthy foreign investors, willing to invest in the defendants' businesses. Chen and her friends declined their invitation.

44.     Back in 2016, after being bombarded by Ariel Abittan and other individual defendants' extensive and continuous lies, Chen was induced into believing Ariel Abittan would be valuable in her watch business and maintained business relationship with him. Chen welcomed Ariel Abittan into her inner circle with trust, confidence and generosity.

45.     Chen started Ariel Abittan with a 20% commission based on each watch he sold, the percentage of which increased over time.  Pursuant to their business relationship, Chen would procure the watches and Ariel Abittan was primarily responsible for locating buyers. Even though Chen had no difficulty selling the watches on her own given their exclusivity and highly-sought after nature, Ariel Abittan and his co-defendant family's representations about their elite societal connections made the most sense for their respective roles.

46.     Through their business relationship Chen and Ariel Abittan became what she thought were personal friends and a great deal of their business was conducted in person. Ariel Abittan would regularly fly to California and meet Chen in her residential city of Atherton. Believing that he was a trustworthy person at that point, Chen unsuspectingly introduced Ariel Abittan to her friends and they began to engage in business dealings unrelated to watches.

47.     Ariel Abittan convinced Chen that, in order for him to sell the watches, Chen needed to give the watches to him to show to potential buyers.  Throughout the relationship of the watch business, Ariel Abittan took a large collection of highly valuable and sought-after watches from Chen, many of them are Patek Phillipe rare watches. The watches were either mailed to Ariel Abittan or picked up by him in person without complete payment or sometimes without any payment.

48.     The watches taken by Ariel Abittan include the coveted Patek 5711/1A, Patek 5712/1A, Patek 5711/1R, Patek 5726/1A, Patek 5980/1R, Patek 5230G New Yor Skyline Special Edition, Patek 5131/1P World time Enamel Dial (Application Piece), just to name a few. Especially, Ariel Abittan managed to take from Chen the extremely rare Patek Tiffany Stamped 5712/1A and 5980R, which are near impossible to get anywhere now.  Ariel Abittan also lied to Chen that he had to sell the watches at under the MSRP because the market was not good at that time, which was far from true.

49.     In connection with the watch business and subsequent business events, Ariel Abittan had used Realtime NY LLC, believed to be an entity he created and controls, in transactions, sending and receiving funds using via bank account in its name to defraud Chen.

50.     The watches bought and sold in connection with the business are worth millions of dollars and are highly sought after by investors and collectors. To hide his fraudulent acts while still keeping their business relations ongoing, Ariel Abittan did not steal Chen's watches or their sales proceeds outright. Instead, taking advantage of her trust, he made serial and gradual lies to her.

51.     Initially, to substantiate the lies on having an elite clientele base, Ariel Abittan claimed that he had sold the watches with great margins. He would wire some portions of some sale proceeds back to her, but not in full. Many times he only paid two thirds of the acquisition cost by Chen.  When Chen demanded complete payment and an accurate accounting of the profits, he would come up with some excuses as to why he could not pay the total amount back to Chen. For example, Ariel Abittan told Chen that some customers required financing, hence he could only send her partial payments. But Ariel Abittan did not follow up with any arrears from

the people who supposedly financed or documentation on the investment he did for Chen.  At other times, Ariel Abittan told Chen that he had held onto and invested the money for her in other ventures based on his financial background and she would get it back plus additional investment income. Chen, however,  never received a dime from Ariel Abittan for any such purported investment.  Further, there are 12 watches Ariel Abittan took from Chen for which Chen has received zero payment and no confirmation as to the status of the watches – whether they remain in Ariel Abittan's possession or have been sold.

52.     In sum, through various lies, Ariel Abittan underpaid Chen not only for the profit that she deserved, but even the out-of-pocket acquisition costs she paid. Taking advantage of her inexperience in business finance, he steadily bled her business and embezzled the proceeds.

53.     In or around 2018, seeing a very hot luxury watch resale market Ariel Abittan was no longer satisfied with being essentially a sales agent for Chen's watch business. He proposed to revamp their business relationship that would give him more financial interest in Chen's watch business. To convince Chen to accept the proposed business structure, he stated he would pay some of the acquisition costs. Ariel Abittan's proposal regarding the proposed partnership changed from conversation to conversation. At one time he proposed he would pay 50% of the acquisition cost, at other times 90%.  He repeatedly changed his words, walking back and forth on what he offered and what he could contribute. Nevertheless, none of the terms materialized or were put into writing although the basic structure of their agreement remained unchanged – Ariel Abittan was to sell the watches, accurately account to Chen for the sales proceeds, and pay Chen her share of the proceeds.

54.     At times, when Chen followed up on the proposals, asking if Arial Abittan would pay some of the acquisition costs he promised, he would use the funds that he had acquired from a prior watch sale that he had underreported to Chen and misrepresent the source of the funds in order to deceive her. Later on, he would use delay tactics, stating he had no money at the particular time.

55.     The defendants' fraud on Chen did not stop at the watch business. Prior to the fallout of their business relationship and friendship, Ariel Abittan became accustomed to the

lavish Atherton lifestyle where Chen resides and conned Chen into purchasing luxury items that Abittan would not otherwise be able to pay for himself.

56.     For example, in 2018 while visiting California, Ariel Abittan told Chen that he wanted a Ferrari for use while he was in town but he had no cash. Ariel Abittan presented Chen with what is now believed to be a forged document showing that Abittan had over $10 million tied up in a business investment, for which he soon expected some return.  Abittan told Chen that, because he did not have enough credit and his money was tied up in investments, he needed a signatory for the car.  He asked Chen the tremendous favor of being that person and swore that he would pay her back. Believing him to be a good friend and trusted business associate at that point, Chen entered into a loan agreement for a Ferrari 488, which was approximately $400,000.

57.     Ariel Abittan took possession of the car while in California but never paid Chen back for the down payment or for the remainder of the loan. Using what Chen later determined to be Ariel Abittan's typical delay tactics he made the excuse that his money did not come through so he could not pay for the car after all.  Chen therefore got stuck with a loan for a car she did not need or want and had to pay it off.

58.     Defendants also defrauded Chen in relation to the payment of credit card debt. In or around 2018 Ariel Abittan told Chen that he had a credit card with around $50,000 credit line. He stated that he wanted to have a higher credit line on the credit cards and asked Chen and her friends to use those cards on his behalf. He stated that those cards came with premium points and he could give some of the points to Chen and her friends to use.

59.     Believing his words, Chen and her friends started using and repaying his credit card. As expected, the credit line for the cards quickly increased to $300,000. However, after a few billing cycles, Chen and her friends started to find that they might not be the only persons using the card. From month to month, they would be paying more to the credit cards than they would be able to use. For over a year, Chen paid back on Ariel Abittan's credit cards for over a million dollars. However, she was not able to use all the credit that she paid off. Essentially, Chen unwittingly paid off Ariel Abittan's credit card debt. The overall discrepancy between the amount Chen used on the card and the amount she paid out was over $400,000.

COMPLAINT AND DEMAND FOR JURY TRIAL

10

CASE NO.

60.     In or around late 2019, defendant Abraham and Rachel Abittan flew to California in an attempt to further their fraudulent scheme on Chen and her friends. They asked Chen and her friends to continue to pay for Ariel Abittan's credit card debt and said that they would repay her.  They did not.

61.     After her financial losses accumulated to a greater degree, in and around late 2019 and early 2020, Chen started to suspect that Ariel Abittan was actually a fraud and been defrauding her and her friends all along. When she asked Ariel Abittan to pay her back the extra amount that she paid to the credit cards, Ariel Abittan threatened to report her to authorities for unauthorized use of the credit cards. Similarly, when Chen asked Ariel Abittan to account for the sales proceeds for the watches and return the watches that he hadn't sold, he threatened to report Chen's resale watch business to Patek Phillipe, which although was legal, would cause Patek Phillipe to no longer sell their rare watches to her as a VIP.

62.     No longer being able to justify Ariel Abittan's dubious behavior in her mind, Chen cut business and personal ties with him in early 2020.

63.     Realizing that Chen could no longer be a victim to defendants' fraudulent scheme in the form of a direct relationship, defendants went to even greater lengths to target Chen by attempting to extort her, threatening the safety and well-being of Chen and her family.

64.     Specifically, on December 23, 2020 Chen received a threatening phone call from an anonymous number. The unidentified caller made it abundantly clear that he was associated with the Abittan family.  The caller instructed Chen to pay $4.5 million within a few hours or suffer grave consequences. The caller told Chen that failure to pay would result in her suffering great damages, including being personally named in a lawsuit, not being able to return to her home country, and the ruining of her and her family's reputation.  The most horrific of the caller's threats involved the security of her children's futures.

65.     Chen did not pay the ransom and immediately called the Atherton police.

66.     Not coincidentally, Chen was personally named and misidentified in a lawsuit filed by Ariel Abittan the next day.  In the lawsuit Abittan fraudulently identifies Chen as Lily Chao, knowing that in fact, they are not the same person since they have done in-person business

together for years and frequently met with Ariel Abittan together.

67.     Because of Defendants threats and unsuccessful extortion, Chen has suffered immense damages, including constant fear for the safety of her family and the tarnishing of her family's good name.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Breach of Contract- Watch Business

### (Against Ariel Abittan)

68.     Plaintiff incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

69.     In 2016 Plaintiff and Ariel Abittan entered into a business agreement in connection with Chen's luxury watch business. The details of the business agreement morphed between 2016 and 2019 but the basic terms were the same: Chen provided Ariel Abittan with luxury watches to sell, Ariel Abittan was required to account to Chen for the sales profits and Ariel Abittan was to receive and agreed-upon percentage of the sales proceeds. All unsold watches were exclusively owned by Chen regardless of whether they were in Chen's or Ariel Abittan's possession.

70.     Ariel Abittan breached the business agreement with Chen by failing and refusing to pay Chen her fair share of the sales proceeds, claiming instead that Abittan invested it on her behalf even though he did not have permission to do so; lying to Chen about the sales margins in order to take a greater percentage of the profit for himself; paying acquisitions costs with money that was unaccounted for to Chen and belonged to her; and taking personal possession of watches without accounting for their sales and/or misappropriating and converting them to his personal property without Chen's permission and without compensating her.

71.     Plaintiff performed or substantially performed all of her obligations under the agreement except those which were excused by Ariel Abittan's breaches.

72.     As a direct and proximate result of Ariel Abittan's breaches of the agreement Plaintiff has suffered damages in an amount to be proven at trial.

/ / /

## SECOND CAUSE OF ACTION

### Breach of Contract – Payment of Credit Card Debt

#### (Against Ariel Abittan)

73.     Plaintiff incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

74.     Beginning in 2018 Plaintiff and Ariel Abittan entered into a business arrangement wherein Chen agreed to pay off Abittan's credit card debt, in exchange for Ariel Abittan's promise that Chen could recoup her entire loan amount by making purchases on the card after the balance had been paid off and that she could personally use the credit card points earned through the transactions.

75.     Pursuant to the terms of their agreement Chen continually paid down the entire credit card debt on full.

76.     Ariel Abittan breached the parties' agreement by giving multiple people use of the same card such that Chen was unable to use it when she tried and therefore unable to recoup her costs or receive the bargained for benefit of the credit card points.

77.     Plaintiff performed or substantially performed all of her obligations under the agreement except those which were excused by Ariel Abittan's breaches.

78.     As a direct and proximate result of Ariel Abittan's breaches of the parties' agreement in relation to the payment of credit card debt Plaintiff has suffered damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### Breach of Fiduciary Duty

#### (Against Ariel Abittan)

79.     Plaintiff incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

80.     Based on their business arrangement Ariel Abittan owed Chen a fiduciary duty to act with the utmost good faith, loyalty and in the best interests of Chen.

81.     Abittan breached his fiduciary duties to Chen by failing and refusing to pay Chen

1   her fair share of the sales proceeds, claiming instead that Abittan invested it on her behalf even

2   though he did not have permission to do so; lying to Chen about the sales margins in order to take

3   a greater percentage of the profit for himself; paying acquisitions costs with money that was

4   unaccounted for to Chen and belonged to her; and taking personal possession of watches without

5   accounting for their sales and/or misappropriating and converting them to his personal property

6   without Chen's permission and without compensating her.

7       82.     Ariel Abittan's breaches of his fiduciary duties caused Chen to suffer tremendous

8   financial losses in an amount to be proven at trial.

9       83.     Because Ariel Abittan's breaches of his fiduciary duties to Chen were committed

10  through fraud and with oppression and malice, Chen is entitled to punitive damages in an amount

11  to be proven at trial.

12                          **FOURTH CAUSE OF ACTION**

13                  **Aiding and Abetting Breach of Fiduciary Duty**

14                  **(Against the Co-Defendant Family Members)**

15      84.     Plaintiff incorporates by reference the allegations in the preceding paragraphs of

16  this Complaint as if fully set forth herein.

17      85.     As set forth above Ariel Abittan owed Chen fiduciary duties stemming from their

18  business relationship.  As also set forth above Ariel Abittan breached those duties.

19      86.     The co-defendant family members knew that Ariel Abittan owed Chen fiduciary

20  duties. As Ariel Abittan's family members, they were aware of Ariel Abittan and Chen's

21  arrangements relating to the watch business, and took affirmative steps to help secure and

22  maintain that business relationship.

23      87.     The co-defendant family members aided and abetted Ariel Abittan's breaches of

24  his fiduciary duties by concocting and participating in lies designed to defraud Chen in her watch

25  business, stemming from Ariel Abittan's breaches.

26      88.     The co-defendant family members' conduct in connection with aiding and abetting

27  Ariel Abittan's breaches of fiduciary duties was a substantial factor in causing Chen's harm. Chen

28  relied on the defendants' representations in deciding to do and continuing to do business with

1    Ariel Abittan.

2        89.    Because the co-defendant family members' aiding and abetting Ariel Abittan's

3    breaches of his fiduciary duties to Chen were committed through fraud and with oppression and

4    malice, Chen is entitled to punitive damages in an amount to be proven at trial.

5    **FIFTH CAUSE OF ACTION**

6    **Fraud**

7    **(Against All Defendants)**

8        90.    Plaintiff incorporates by reference the allegations in the preceding paragraphs of

9    this Complaint as if fully set forth herein.

10       91.    As detailed herein Ariel Abittan has made repeated false and fraudulent

11   misrepresentations and omissions to Plaintiff regarding his financial status and abilities, personal

12   connections, family connections, his family's businesses, the amount of money he sold each

13   watch for, the source of his funds for his watch contributions, what he did with the watch sales

14   proceeds, the location of the watches and his need to take personal possession of them in order to

15   sell them, his credit card debt and Chen's ability to recoup her payments of his credit card debt

16   and the incentives she would receive for doing so.

17       92.    As detailed herein, the co-defendant family members made representations to

18   Chen in order to induce and maintain Chen's business relationship with Ariel Abittan. These

19   representations concerned Ariel Abittan's socio-economic status and personal connections as well

20   as their own wealth, businesses and personal connections.

21       93.    These representations were false when made.

22       94.    When defendants made these representations and omissions, they knew that they

23   were false.

24       95.    These representations and omissions were made with the intent to defraud and

25   deceive Chen into initially doing and continuing to do business with Ariel Abittan and bailing

26   him out of his purported credit card debt.

27       96.    Plaintiff relied on defendants' misrepresentations to her detriment by entering into

28   and maintaining a business relationship with Ariel Abittan, entrusting him with her property and

---

COMPLAINT AND DEMAND FOR JURY TRIAL       15       CASE NO.

1  helping him financially.

2      97.  Plaintiff's reliance on defendants' misrepresentations and omissions was

3  reasonable given the great lengths that the defendants collectively went through to defraud her

4  though various in person and telephonic/video "family" meetings. The family collectively was so

5  nice, welcoming and convincing, Chen believed their stories, which turned out to be flat out lies.

6      98.  As a result of the defendants' fraudulent misrepresentations and omissions,

7  Plaintiff has been damaged in an amount to be proven at trial.

8      99.  In doing the acts alleged herein, defendants acted with oppression, fraud, and

9  malice, and Plaintiff is entitled to punitive damages.

10                        **SIXTH CAUSE OF ACTION**

11                               **Conversion**

12                      **(Against Ariel Abittan)**

13      100.  Plaintiff incorporates by reference the allegations in the preceding paragraphs of

14  this Complaint as if fully set forth herein.

15      101.  Chen had a right to possess the luxury watches belonging to her and her share of

16  income generated from the watches that have been sold, plus the amount paid to acquire each

17  watch. She also has a right to possess the money she used to pay off Ariel Abittan's credit card

18  debt that was supposed to be able to recoup and did not.

19      102.  Ariel Abittan intentionally and substantially interfered with Chen's property

20  interest by refusing their return.

21      103.  As a direct and proximate result of Ariel Abittan's conversion of Chen's assets and

22  interests, Chen has incurred damages in an amount to be proven at trial.

23      104.  Ariel Abittan's actions as alleged herein were oppressive, fraudulent, and

24  malicious.  As a result, Plaintiff is entitled to an award of punitive damages in an amount to be

25  proven at trial.

26      / / /

27      / / /

28      / / /

COMPLAINT AND DEMAND FOR JURY TRIAL         16        CASE NO.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment

### (Against All Defendants)

105.    Plaintiff incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

106.    Defendant Ariel Abittan received a benefit from his business dealings with Chen in the form of luxury watches, sales income from the luxury watches and money in the form of paid down credit card debt.

107.    Despite Chen's demands that Ariel Abittan return the unsold watches, pay her share of income from the sales of the watches that have been sold and reimburse her for paying off Abittan's credit card debt, Abittan has refused, causing him to become unjustly enriched.

108.    The remaining defendants received a benefit from Ariel Abittan's unjust enrichment by receiving funds and/or property from Ariel Abittan, resulting in the remaining defendants also becoming unjustly enriched.

109.    As a result of the defendants' conduct, Chen is entitled to receive an award in the amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### Imposition of Constructive Trust

### (Against All Defendants)

110.    Plaintiff incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

111.    Ariel Abittan, his business and his co-defendant family members are in in possession of watches and money that belong to Chen.

112.    As the owner of the property, Chen has a right to possess it.

113.    Chen has asked Ariel Abittan to return her property that is in his or his family members possession and he has refused.

114.    As a result, Chen's property should be placed in constructive trust until such a time that it can be safely returned to her.

COMPLAINT AND DEMAND FOR JURY TRIAL

17

CASE NO.

## NINTH CAUSE OF ACTION

### Declaratory Relief

### (Against Ariel Abittan)

115.    Plaintiff incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

116.    A real and existing controversy exists as to ownership of any remaining watches from Chen's luxury watch business and related sales proceeds, in that Ariel Abittan claims he owns them, even though they belong to Chen.

117.    As such, Chen requests a Court declaration that the watches and related sales income belongs exclusively to her.

## TENTH CAUSE OF ACTION

### Accounting

### (Against Ariel Abittan)

118.    Plaintiff incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

119.    Chen and Ariel Abittan had a business arrangement in connection with Chen's luxury watch business wherein Ariel Abittan took physical possession of several luxury watches that he either sold or still has. Ariel Abittan has not reported or accurately accounted to Chen for these watches, whether in his custody or sold, and has not accurately accounted to Chen for other watch sales.

120.    Because the specific inventory and sales-related information is exclusively within Ariel Abittan's possession, Chen cannot determine the true amounts due and owing to her without an accounting.

## ELEVENTH  CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against All Defendants)

121.    Plaintiff incorporates by reference the allegations in the preceding paragraphs of

this Complaint as if fully set forth herein.

122.    On December 23, 2020 defendants brazenly attempted to extort $4.5 million from Chen through a terrifying phone call. The phone call itself and threats made during the call constituted extreme and outrageous conduct on the part of defendants.

123.    Because the caller threatened Chen and her family's safety, security and reputation, defendants intended to cause, or had reckless disregard of the possibility of causing emotional distress.

124.    As an actual and proximate cause of the horrifying phone call and attempted extortion Chen has suffered extreme and severe emotional distress, constantly fearing for her and her family's safety and security, and worrying about the of tarnishing her family's good name. She has also suffered monetary damages in the form of purchasing security equipment and paying for security guards, which continue to this day.

125.    As an actual and proximate cause of her not complying with defendants' heinous and criminal extortion demand Chen has also suffered extreme and severe emotional distress by her name being smeared in Ariel Abittan's lawsuit misidentifying her as Lily Chao, when Ariel Abittan knows for a fact that Plaintiff is not Lily Chao.

126.    Based on defendants' outrageous extortionist conduct Chen is entitled to compensatory damages in amount to be proven at trial.

127.    Because defendants' conduct was oppressive and malicious Chen is also entitled to punitive damages in an amount to be proven at trial.

## TWELVTH  CAUSE OF ACTION

### Civil Conspiracy

### (Against All Defendants)

128.    Plaintiff incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

129.    Through the above-described actions, defendants, acting in concert through knowing and mutual agreement, formed a conspiracy and conspired.

130.    The purpose of the conspiracy was, in sum, to defraud Chen financially.

131. Defendants' operation of the conspiracy, through acts such as: the making of repeated false and fraudulent misrepresentations and omissions to Plaintiff regarding their financial status and abilities, personal connections, family connections and businesses, have damaged and continue to damage Chen.

132. As such, each defendant is liable to Chen on the basis of civil conspiracy, as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not they were a direct actor and regardless of the degree of their activities.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in her favor against Defendants as follows:

1. For declaratory relief, stating and confirming that all unsold luxury watches and income from watch sales belong exclusively to Chen.

2. For preliminary and permanent injunctive relief, restraining Ariel Abittan from selling, gifting or otherwise disposing of the luxury watches that came to him through his business dealings with Chen.

3. For an accounting.

4. For imposition of a constructive trust over all Chen's watches and money currently in the possession of any defendant.

5. For compensatory, special, incidental and consequential damages according to proof.

6. For exemplary and punitive damages to the extent permitted by law.

7. For recovery of the unjust enrichment obtained by Defendants as a result of their wrongful conduct.

8. For an award of prejudgment interest, cost of suit, and reasonable attorneys' fees to the extent permitted by contract or by operation of law.

9. For such other and further relief as the Court may deem just and proper.

DATED:  December 3, 2021

HANSEN LAW FIRM, P.C.

By: _____/s/ Craig A. Hansen_____
                    Craig A. Hansen

Attorneys for Plaintiff
Yuting Chen

1    **<u>DEMAND FOR JURY TRIAL</u>**

2    Plaintiff demands a trial by jury on all jury triable claims and issues in this action.

3

4

5    DATED:  December 3, 2021                    HANSEN LAW FIRM, P.C.

6

7

8                                              By: _____/s/ Craig A. Hansen_____
                                                        Craig A. Hansen
9
                                               Attorneys for Plaintiff
10                                             Yuting Chen

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2

Joint Stipulation re Service and CMC, ECF No. 25, in the Underlying Action

Craig A. Hansen (SBN 209622)
 Email: craig@hansenlawfirm.net
Stephen C. Holmes (SBN 200727)
 Email: steve@hansenlawfirm.net
Sarah Wager (SBN 209277)
 Email: sarah@hansenlawfirm.net
Philip E. Yeager (SBN 265939)
 Email: phil@hansenlawfirm.net
Collin D. Greene (SBN 326548)
 Email: collin@hansenlawfirm.net
HANSEN LAW FIRM, P.C.
75 E. Santa Clara Street, Suite 1250
San Jose, CA 95113-1837
Telephone: (408) 715 7980
Facsimile: (408) 715 7001

Attorneys for Plaintiff
Yuting Chen

Katherine Eskovitz (CA Bar No. 255105)
Brianna Pierce (CA Bar No. 336906)
ROCHE FREEDMAN LLP
1158 26th Street, Suite 175
Santa Monica, CA 90403
Email: keskovitz@rochefreedman.com
bpierce@rochefreedman.com

Constantine P. Economides (pro hac vice)
(Florida Bar No. 118177)
ROCHE FREEDMAN LLP
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Tel: (305) 971-5943
Email: ceconomides@rochefreedman.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| YUTING CHEN,<br><br>                    Plaintiff,<br><br>      v.<br><br>ARIEL ABITTAN, ABRAHAM ABITTAN,<br>RACHEL ABITTAN, BRIAN ABITTAN,<br>JACOB ABITTAN,  ALYSSA ABITTAN,<br>ELIANA ABITTAN, ROY GRABER, TOVA<br>GRABER, REALTIME NY LLC, a New York<br>Limited Liability Company, and DOES 1-20,<br>inclusive.<br><br>                    Defendants. | Case No.:  21-cv-09393-YGR<br><br>**STIPULATION RE SERVICE AND JOINT<br>REQUEST TO CONTINUE CASE<br>MANAGEMENT CONFERENCE AND<br>RELATED DEADLINES;<br>[PROPOSED] ORDER**<br><br>Judge:     Hon. Yvonne Gonzalez Rogers |

Pursuant to Fed. R. Civ. P. 16 & 26(f) and Civil Local Rules 6-1, 6-2, 16-2, 16-9 and 16-10, Plaintiff Yuting Chen ("Plaintiff") and Defendants Ariel Abittan, Abraham Abittan, Rachel Abittan, Brian Abittan, Jacob Abittan, Alyssa Abittan, Eliana Abittan, Roy Graber, Tova Graber, and Realtime NY LLC (collectively, "Defendants") by and through their respective counsel, stipulate and request as follows:

## **RECITALS**

Plaintiff commenced this action on December 3, 2021.

On December 7, 2021 the Court issued an Order Setting Initial Case Management Conference and ADR Deadlines [Dkt. 6].

On January 4, 2022, Plaintiff filed a Declination to Magistrate Judge Jurisdiction [Dkt. 8].

On January 10, 2022, the Court issued an Order Reassigning Case [Dkt. 10].

On January 11, 2022, the Court issued Clerk's Notice Setting Case Management Conference [Dkt. 11] setting a Case Management Conference for March 14, 2022 at 2:00 p.m., and ordering that that a joint case management conference statement be filed by March 7, 2022.

Plaintiff asserts that Defendants Abraham Abittan, Rachel Abittan, Brian Abittan, Jacob Abittan, Alyssa Abittan, Eliana Abittan, Roy Graber, and Tova Graber have all been served with the summons and complaint. Plaintiff has yet to serve Defendants Ariel Abittan, Eliana Abittan, and Realtime NY LLC.

On February 22, 2022, Constantine P. Economides, an attorney at the law firm Roche Freedman LLP ("Roche Freedman"), informed counsel for Plaintiff, Hansen Law Firm, P.C. ("HLF") that Roche Freedman is representing all presently named Defendants in this action. Hansen Decl. ¶ 3.

Plaintiff and Defendants (collectively, "the Parties"), through their counsel, subsequently agreed that Roche Freedman would accept service of the Summons and Complaint on behalf of all the unserved Defendants and, in exchange, all Defendants would have a uniform response deadline of April 25, 2022. Hansen Decl. ¶ 4.

The agreed-upon uniform response deadline of April 25, 2022 for all the Defendants is after the date scheduled for the Case Management Conference. The Parties therefore agreed (1) to

continue the Case Management Conference from March 14, 2022 at 2:00 pm to May 23, 2022 at 2:00 p.m., and (2) that the joint case management conference statement would be due by May 16, 2022. Hansen Decl. ¶ 5.

Due to the current case status, the Parties have not yet met and conferred regarding initial disclosures, early settlement, ADR process selection, or a discovery plan. Therefore, the Parties further agreed to a May 2, 2022 deadline to hold the Rule 26(f) conference and to meet and confer regarding initial disclosures, early settlement, ADR process selection, and a discovery plan. Hansen Decl. ¶ 6.

The Parties request that the Court enter an order confirming the terms of the stipulation between the Parties. The Parties assert that the instant request is made in accordance with Civil L.R. 6-1(b), 6-2(a)(1), 16-2(d) and 7-12. Counsel for the Parties believe that a uniform response deadline of April 25, 2022 for all the Defendants, a continuance of the Initial Case Management Conference, and a continuance of the other deadlines addressed above is an efficient use of judicial and party resources. Hansen Decl. ¶ 7.

Pursuant to Civil L.R. 6-2(a)(2), there have been no previous time modifications in the case (except as described herein).

Further, pursuant to Civil L.R. 6-2(a)(3), Plaintiff and Defendants do not believe the requested time modification would have a prejudicial effect on the schedule for the case. Trial has not been set in the case, and no discovery has been served in this action. There has not yet been a Case Management Conference. Hansen Decl. ¶ 8.

## STIPULATION

The Parties therefore stipulate as follows:

1. Roche Freedman shall accept service of the Summons and Complaint on behalf of all the unserved Defendants. Service upon those Defendants shall be deemed complete upon the filing of this Stipulation (provided that the requested order is entered by the Court). Other than arguments and defenses as to the sufficiency of service, Defendants preserve all, and do not waive any, arguments and/or defenses.

2.    The deadline for all presently named Defendants to respond to the Complaint shall be April 25, 2022.

3.    The March 14, 2022 Case Management Conference shall be continued to May 23, 2022 at 2:00 p.m.; the joint case management conference statement shall be due by May 16, 2022.

4.    The Parties shall hold the Rule 26(f) conference and meet and confer regarding initial disclosures, early settlement, ADR process selection, and discovery plan by May 2, 2022.


DATED:  February 28, 2022        HANSEN LAW FIRM, P.C.


                                    By:     /s/ Craig A. Hansen
                                        Craig A. Hansen

DATED:  February 28, 2022        ROCHE FREEDMAN PLLC


                                      By:     /s/ Constantine P. Economides
                                        Constantine P. Economides


I hereby attest that I obtained consent in the filing of this document from each of the other signatories on this e-filed document.


DATED:  February 28, 2022        HANSEN LAW FIRM, P.C.


                                    By:     /s/ Craig A. Hansen
                                      Craig A. Hansen

## **[PROPOSED] ORDER**

Pursuant to the above stipulation, and good cause appearing, IT IS SO ORDERED.


DATED: _____      _____
                                        Hon. Yvonne Gonzalez Rogers
                                        United States District Judge

# EXHIBIT 3

Declarations by Plaintiffs filed in the Underlying Action attached to their amended answer as exhibits B through I, ECF No. 37-2 through 37-9

# Exhibit B

Constantine P. Economides (*pro hac vice forthcoming*)
(Florida Bar No. 118177)
Brianna K. Pierce (CA Bar No. 336906)
ROCHE FREEDMAN LLP
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Tel: (305) 851-5997
Email:  ceconomides@rochefreedman.com
          bpierce@rochefreedman.com

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| YUTING CHEN, | Case No. 21-cv-09393-YGR |
| PLAINTIFF, | |
| v. | |
| ARIEL ABITTAN, ABRAHAM ABITTAN, RACHEL ABITTAN, BRIAN ABITTAN, JACOB ABITTAN, ALYSSA ABITTAN, ELIANA ABITTAN, ROY GRABER, TOVA GRABER, REALTIME NY LLC, a New York Limited Liability Company, and DOES 1-20, inclusive | |
| DEFENDANTS. | |

**DECLARATION OF ABRAHAM ABITTAN**

I, Abraham Abittan, declare as follows:

1.      I am a resident of Lawrence, New York.

2.      I am Ariel Abittan's father.

3.      I am a dermatologist licensed to practice medicine in the state of New York. I own a practice located in Woodmere, New York. I do not conduct any business or own any assets in California.

4.      I have never interacted with a woman who introduced herself to me as Yuting Chen. I did, however, meet a woman who was engaged in a watch business with my son, Ariel Abittan ("Ariel"). This woman introduced herself to me as Tiffany Chen ("Tiffany"). I eventually learned that Tiffany used the name Lily Chao, but I always referred to her as Tiffany.

5.      I first met Tiffany on December 10, 2017, at my son, Jacob Abittan's ("Jacob") wedding in Rye, New York. Tiffany's husband, who introduced himself to me as Damien, was the only person who accompanied Tiffany to the wedding.

6.      While at the wedding, Tiffany, Damien, and I spoke for a brief period. We introduced ourselves. Tiffany and Damien congratulated me on Jacob's wedding and spoke highly of Ariel. We did not engage in a substantive conversation about Ariel, Tiffany, and Damien's business relationship. Nor did we discuss Tiffany's or Damien's finances or family backgrounds.

7.      I met Tiffany on at least two other occasions in New York. Neither of those meetings were related to the watch business.

8.      I saw Tiffany in March of 2019 when Tiffany flew to New York for a meeting with Ariel and investors in a cryptocurrency business, known at the time as Eian Labs Inc. ("Eian"). My wife and I also attended the meeting because the investors were family friends. At the meeting, Tiffany persuaded the investors to forego their rights to demand the return of their investments in Eian by presenting paperwork showing a huge incoming investment and a high valuation of Eian. At no point during the meeting did we discuss the watch business or luxury watches.

9.      On or about May 13, 2019 and June 27, 2019, I flew to California to meet with Tiffany and Damien. At both meetings, we discussed the return of funds to investors in a

- 2 -

1  cryptocurrency business, known at the time as Eian Labs Inc. We also discussed a huge debt

2  incurred by Tiffany, Damien, and their agents on Ariel's company, RealTime NY, LLC's credit

3  card. Tiffany promised to pay off her debt, which she incurred on items such as a piano, school

4  tuition, and lavish family vacations. I never offered to reimburse her for satisfying her own debt.

5  Nor would there have been anything to reimburse, given that Tiffany never paid off the credit card.

6       10.    Aside from these two meetings, which lasted a total of about two hours, I have had

7  no other contact with Tiffany within the state of California. It is my understanding that Ariel and

8  Tiffany did not purchase any watches together after our meeting.

9       11.    I did not influence Tiffany's decision to conduct business with Ariel. Indeed, Tiffany

10  had been engaged in a watch business with Ariel for more than a year before we were introduced

11  at Jacob's wedding. And, by the time I met Tiffany in California, the business relationship between

12  Ariel and Tiffany had already begun to deteriorate.

13       12.    Other than being Ariel's father, I have no relationship to any luxury watch business,

14  including the one related to Ariel, Tiffany, and Damien. I have never sold a luxury watch. I have

15  never purchased a luxury watch. I have never received a luxury watch as a gift. I have never shared

16  in the proceeds of a luxury watch sale or benefited from the sale of a luxury watch in any way.

17       13.    I did not make an anonymous call to Tiffany (or anyone else) on December 23, 2020.

18  I have never threatened Tiffany, her family, or her children. I did not (anonymously or otherwise)

19  instruct Tiffany to "pay $4.5 million [to Ariel] within a few hours or suffer grave consequences."

20  Compl. ¶64. To the contrary, it is my understanding that Tiffany, through counsel, **offered** to pay

21  Ariel $4.5 million to settle their dispute related to the luxury watch and cryptocurrency businesses.

22       I declare under penalty of perjury that the foregoing is true and correct.

23  Dated: May 16, 2022

24  Abraham Abittan

25

26

27

28

Exhibit C

Constantine P. Economides (*pro hac vice forthcoming*)
(Florida Bar No. 118177)
Brianna K. Pierce (CA Bar No. 336906)
ROCHE FREEDMAN LLP
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Tel: (305) 851-5997
Email:  ceconomides@rochefreedman.com
        bpierce@rochefreedman.com

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

YUTING CHEN,

PLAINTIFF,

v.

ARIEL ABITTAN, ABRAHAM ABITTAN,
RACHEL ABITTAN, BRIAN ABITTAN,
JACOB ABITTAN, ALYSSA ABITTAN,
ELIANA ABITTAN, ROY GRABER, TOVA
GRABER, REALTIME NY LLC, a New York
Limited Liability Company, and DOES 1-20,
inclusive

DEFENDANTS.

Case No. 21-cv-09393-YGR

DECLARATION OF RACHEL ABITTAN                                 CASE NO. 21-cv-09393-YGR

**DECLARATION OF RACHEL ABITTAN**

I, Rachel Abittan, declare as follows:

1. I am a resident of Lawrence, New York.

2. I am Ariel Abittan's mother.

3. I am an office manager in a dermatologist's office. I do not conduct any business or own any assets in California.

4. I have never interacted with a woman who introduced herself to me as Yuting Chen. I did, however, meet a woman who was engaged in a watch business with my son, Ariel Abittan ("Ariel"). This woman introduced herself to me as Tiffany Chen ("Tiffany"). I eventually learned that Tiffany used the name Lily Chao, but I always referred to her as Tiffany.

5. I first met Tiffany on December 10, 2017, at my son, Jacob Abittan's ("Jacob") wedding in Rye, New York. Tiffany's husband, who introduced himself to me as Damien, was the only person who accompanied Tiffany to the wedding.

6. While at the wedding, Tiffany, Damien, and I spoke for a brief period. We introduced ourselves. Tiffany and Damien congratulated me on Jacob's wedding and spoke highly of Ariel. We did not engage in a substantive conversation about Ariel's business relationship with Tiffany and Damien. Nor did we discuss Tiffany's or Damien's finances or family backgrounds.

7. After the wedding, Tiffany and I exchanged pleasantries via text message on rare occasions. For example, we would wish each other a happy birthday or say thank you for a gift.

8. The second time I met Tiffany was in March of 2019 when Tiffany flew to New York for a meeting with Ariel and investors in a cryptocurrency business, known at the time as Eian Labs Inc. ("Eian"). My husband and I attended the meeting because the investors are family friends. At the meeting, Tiffany persuaded the investors to forego their rights to demand the return of their investments in Eian by presenting paperwork showing a huge incoming investment and a high valuation of Eian. At no point during the meeting did we discuss the watch business or luxury watches.

9. The third and final time that I met Tiffany was on or about June 27, 2019, when I flew to California with my husband. At this meeting, we continued to discuss the return of Eian's

investors' funds. We also discussed a huge debt incurred by Tiffany, Damien, and their agents on Ariel's company, RealTime NY, LLC's credit card. My husband and I asked Tiffany to pay off her debt, which she incurred on items such as a piano, school tuition, and lavish family vacations. I did not promise to reimburse her for satisfying her own debt. Nor would there have been anything to reimburse, given that Tiffany never paid off the credit card debt. Aside from this meeting, which lasted approximately two hours, I have had no other contact with Tiffany within the state of California. It is my understanding that Ariel and Tiffany did not purchase any watches together after our meeting.

10.     I have never staged an elaborate scheme to deceive or impress Tiffany (or anyone else) into conducting business with Ariel. Indeed, Tiffany had been engaged in a business relationship with Ariel for over a year before we met at Jacob's wedding. And, by the time I met Tiffany in California, the business relationship between Ariel and Tiffany had already begun to deteriorate.

11.     Other than being Ariel's mother, I have no relationship to any luxury watch business, including the one related to Ariel, Tiffany, and Damien. I have never sold a luxury watch. I have never purchased a luxury watch. I have never received a luxury watch as a gift. I have never shared in the proceeds of a luxury watch sale or benefited from the sale of a luxury watch in any way.

12.     I did not make an anonymous call to Tiffany (or anyone else) on December 23, 2020. I have never threatened Tiffany, her family, or her children. I did not (anonymously or otherwise) instruct Tiffany to "pay $4.5 million [to Ariel] within a few hours or suffer grave consequences." Compl. ¶64. To the contrary, it is my understanding that Tiffany, through counsel, **offered** to pay Ariel $4.5 million to settle their dispute related to the luxury watch and cryptocurrency businesses.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 16, 2022

Rachel Abittan
Rachel Abittan

Exhibit D

1  Constantine P. Economides (*pro hac vice forthcoming*)
   (Florida Bar No. 118177)
2  Brianna K. Pierce (CA Bar No. 336906)
   ROCHE FREEDMAN LLP
3  1 SE 3rd Avenue, Suite 1240
   Miami, FL 33131
4  Tel: (305) 851-5997
   Email:  ceconomides@rochefreedman.com
5          bpierce@rochefreedman.com

6  *Counsel for Defendants*

7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10             **SAN FRANCISCO DIVISION**

11

12  YUTING CHEN,                          | Case No. 21-cv-09393-YGR

13              PLAINTIFF,

14       v.

15

16  ARIEL ABITTAN, ABRAHAM ABITTAN,
    RACHEL ABITTAN, BRIAN ABITTAN,
17  JACOB ABITTAN, ALYSSA ABITTAN,
    ELIANA ABITTAN, ROY GRABER, TOVA
18  GRABER, REALTIME NY LLC, a New York
    Limited Liability Company, and DOES 1-20,
19  inclusive

20              DEFENDANTS.

21

22

23

24

25

26

27

28

DECLARATION OF BRIAN ABITTAN                    CASE NO. 21-CV-09393-YGR

# DECLARATION OF BRIAN ABITTAN

I, Brian Abittan, declare as follows:

1. I am a resident of Lawrence, New York.

2. I am Ariel Abittan's brother.

3. I am a board-certified dermatologist licensed to practice in the state of New York. I do not conduct any business or own any assets in California.

4. I have only traveled to California twice in my life. In 2006 and 2008, I traveled to California for vacation. I have not been to California since 2008.

5. I have never interacted with a person known to me as Yuting Chen. I did, however, meet a woman who was engaged in a watch business with my brother, Ariel Abittan ("Ariel"). This woman introduced herself to me as Tiffany Chen ("Tiffany").

6. I met Tiffany on December 10, 2017 at my brother, Jacob Abittan's ("Jacob") wedding in New York. Tiffany's husband, who introduced himself to me as Damien, was the only person who accompanied Tiffany to the wedding. Jacob's wedding is the only time I ever met, spoke, saw, or interacted with Tiffany or Damien in any way.

7. While at the wedding, in New York, Tiffany, Damien, and I spoke for approximately five (5) minutes. I told Tiffany and Damien that I had recently graduated medical school and was entering my residency program. I never told Tiffany or Damien (or anyone else) that I was a famous, well-connected lawyer.

8. I have not spoken with Tiffany or Damien since Jacob's wedding. I have never called, emailed, or texted Tiffany or Damien. I have never traveled to California to meet with Tiffany or Damien. I have never spoken with Tiffany or Damien about their business with Ariel.

9. I do not own any luxury watches. I have never purchased, received, or sold a luxury watch. I have never shared in the proceeds of a luxury watch sale or benefited from the sale of a luxury watch in any way. Other than being Ariel's brother, I have no relationship to any luxury watch business.

10. I did not make an anonymous call to Tiffany (or anyone else) on December 23, 2020. I have never threatened Tiffany, her family, or her children. I did not (anonymously or otherwise)

- 2 -

DECLARATION OF BRIAN ABITTAN                                      CASE NO. 21-CV-09393-YGR

1     instruct Tiffany to "pay \$4.5 million [to Ariel] within a few hours or suffer grave consequences."

2     Compl. ¶64. To the contrary, it is my understanding that Tiffany, through counsel, **offered** to pay

3     Ariel \$4.5 million to settle their dispute related to the luxury watch and cryptocurrency businesses.

4         I declare under penalty of perjury that the foregoing is true and correct.

5     Dated: May 16, 2022

6                                          Brian Abittan

- 3 -

DECLARATION OF BRIAN ABITTAN                              CASE NO. 21-cv-09393-YGR

# Exhibit E

1    Constantine P. Economides (*pro hac vice forthcoming*)
    (Florida Bar No. 118177)
2    Brianna K. Pierce (CA Bar No. 336906)
    ROCHE FREEDMAN LLP
3    1 SE 3rd Avenue, Suite 1240
    Miami, FL 33131
4    Tel: (305) 851-5997
    Email: ceconomides@rochefreedman.com
5          bpierce@rochefreedman.com

6    *Counsel for Defendants*

7

8            **UNITED STATES DISTRICT COURT**

9           **NORTHERN DISTRICT OF CALIFORNIA**

10             **SAN FRANCISCO DIVISION**

11

12    YUTING CHEN,                  Case No. 21-cv-09393-YGR

13            PLAINTIFF,

14        v.

15

16    ARIEL ABITTAN, ABRAHAM ABITTAN,
    RACHEL ABITTAN, BRIAN ABITTAN,
17    JACOB ABITTAN, ALYSSA ABITTAN,
    ELIANA ABITTAN, ROY GRABER, TOVA
18    GRABER, REALTIME NY LLC, a New York
    Limited Liability Company, and DOES 1-20,
19    inclusive

20           DEFENDANTS.

21

22

23

24

25

26

27

28

---

**DECLARATION OF JACOB ABITTAN**            CASE NO. 21-CV-09393-YGR

1                       **DECLARATION OF JACOB ABITTAN**

2   I, Jacob Abittan, declare as follows:

3       1.     I am a resident of Lawrence, New York.

4       2.     I am Ariel Abittan's brother.

5       3.     I am a third-year law student at Cardozo School of Law in New York, New York. I

6 do not conduct any business or own any assets in California.

7       4.     About fifteen (15) years ago, I traveled to California for a family vacation. It was

8 the first and only time I have ever been to California.

9       5.     I have never interacted with a person known to me as Yuting Chen. I did, however,

10 meet a woman who was engaged in a watch business with my brother, Ariel Abittan ("Ariel"). This

11 woman introduced herself to me as Tiffany Chen ("Tiffany").

12       6.     I met Tiffany on December 10, 2017 at my wedding in Rye, New York. Tiffany's

13 husband, who introduced himself to me as Damien, was the only person who accompanied Tiffany

14 to the wedding. My wedding is the only time I ever met, spoke, saw, or interacted with Tiffany or

15 Damien in any way.

16       7.     While at my wedding, in New York, Tiffany, Damien, and I spoke for approximately

17 one (1) minute. Tiffany and Damien introduced themselves to me and offered their congratulations

18 for my nuptials. We quickly parted ways so that I could speak with the other approximately 500

19 guests attending my wedding.

20       8.     I never told Tiffany or Damien (or anyone else) that I was a famous, well-connected

21 lawyer. Indeed, I was 22 years old when I met Tiffany and Damien and had not even applied to law

22 school at the time.

23       9.     I have never spoken with Tiffany or Damien about their business with Ariel, their

24 finances, or their families. I have not spoken with Tiffany or Damien since my wedding. I have

25 never called, emailed, or texted Tiffany or Damien. I have never traveled to California to meet with

26 Tiffany or Damien.

27       10.     Other than being Ariel's brother, I have no relationship to any luxury watch business,

28 including the one related to Ariel, Tiffany, and Damien. I have never sold a luxury watch. I have

- 2 -

never purchased a luxury watch for the purpose of reselling it. I have never received a luxury watch as a gift. I have never shared in the proceeds of a luxury watch sale or benefited from the sale of a luxury watch in any way.

11. I did not make an anonymous call to Tiffany (or anyone else) on December 23, 2020. I have never threatened Tiffany, her family, or her children. I did not (anonymously or otherwise) instruct Tiffany to "pay $4.5 million [to Ariel] within a few hours or suffer grave consequences." Compl. ¶64. To the contrary, it is my understanding that Tiffany, through counsel, **offered** to pay Ariel $4.5 million to settle their dispute related to the luxury watch and cryptocurrency businesses.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 16, 2022

Jacob Abittan

- 3 -

DECLARATION OF JACOB ABITTAN                    CASE NO. 21-CV-09393-YGR

# Exhibit F

Constantine P. Economides (*pro hac vice forthcoming*)
(Florida Bar No. 118177)
Brianna K. Pierce (CA Bar No. 336906)
ROCHE FREEDMAN LLP
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Tel: (305) 851-5997
Email:  ceconomides@rochefreedman.com
        bpierce@rochefreedman.com

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

YUTING CHEN,

PLAINTIFF,

v.

ARIEL ABITTAN, ABRAHAM ABITTAN,
RACHEL ABITTAN, BRIAN ABITTAN,
JACOB ABITTAN, ALYSSA ABITTAN,
ELIANA ABITTAN, ROY GRABER, TOVA
GRABER, REALTIME NY LLC, a New York
Limited Liability Company, and DOES 1-20,
inclusive

DEFENDANTS.

Case No. 21-cv-09393-YGR

**DECLARATION OF ALYSSA PORTAL**

I, Alyssa Portal (née Abittan), declare as follows:

1.  I am a resident of Lawrence, New York.

2.  I am Ariel Abittan's sister.

3.  I am a registered nurse licensed to practice in the state of New York. I do not conduct any business or own any assets in California.

4.  About fifteen (15) years ago, I traveled to California for a family vacation. It was the first and only time I have ever been to California.

5.  I have never interacted with a person known to me as Yuting Chen. I did, however, meet a woman who was engaged in a watch business with my brother, Ariel Abittan ("Ariel"). This woman introduced herself to me as Tiffany Chen ("Tiffany").

6.  I met Tiffany on December 10, 2017 at my brother, Jacob Abittan's ("Jacob") wedding in Rye, New York. Tiffany's husband, who introduced himself to me as Damien, was the only person who accompanied Tiffany to the wedding. Jacob's wedding is the only time I ever met, spoke, saw, or interacted with Tiffany or Damien in any way.

7.  While at the wedding, in New York, Tiffany, Damien, and I spoke for approximately one (1) minute. We introduced ourselves, then parted ways. We did not have a substantive conversation.

8.  I never told Tiffany or Damien (or anyone else) that my husband was a "wealthy businessman." My husband is an anesthesiologist.

9.  I have never spoken with Tiffany or Damien about their business with Ariel, their finances, or their families.

10.  I have not spoken with Tiffany or Damien since Jacob's wedding. I have never called, emailed, or texted Tiffany or Damien. I have never traveled to California to meet with Tiffany or Damien.

11.  Other than being Ariel's sister, I have no relationship to any luxury watch business, including the one related to Ariel, Tiffany, and Damien. I have never sold a luxury watch. I have

- 2 -

1   never purchased a luxury watch. I have never received a luxury watch as a gift. I have never shared

2   in the proceeds of a luxury watch sale or benefited from the sale of a luxury watch in any way.

3          12.     I did not make an anonymous call to Tiffany (or anyone else) on December 23, 2020.

4   I have never threatened Tiffany, her family, or her children. I did not (anonymously or otherwise)

5   instruct Tiffany to "pay $4.5 million [to Ariel] within a few hours or suffer grave consequences."

6   Compl. ¶64. To the contrary, it is my understanding that Tiffany, through counsel, **offered** to pay

7   Ariel $4.5 million to settle their dispute related to the luxury watch and cryptocurrency businesses.

8          I declare under penalty of perjury that the foregoing is true and correct.

9   Dated: May 16, 2022

10                                                  Alyssa Portal

# Exhibit G

1   Constantine P. Economides (*pro hac vice forthcoming*)
    (Florida Bar No. 118177)
2   Brianna K. Pierce (CA Bar No. 336906)
    ROCHE FREEDMAN LLP
3   1 SE 3rd Avenue, Suite 1240
    Miami, FL 33131
4   Tel: (305) 851-5997
    Email:  ceconomides@rochefreedman.com
5            bpierce@rochefreedman.com

6   *Counsel for Defendants*

7

8                 **UNITED STATES DISTRICT COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10                  **SAN FRANCISCO DIVISION**

11

12  YUTING CHEN,                              Case No. 21-cv-09393-YGR

13                 PLAINTIFF,

14        v.

15

16  ARIEL ABITTAN, ABRAHAM ABITTAN,
    RACHEL ABITTAN, BRIAN ABITTAN,
17  JACOB ABITTAN, ALYSSA ABITTAN,
    ELIANA ABITTAN, ROY GRABER, TOVA
18  GRABER, REALTIME NY LLC, a New York
    Limited Liability Company, and DOES 1-20,
19  inclusive

20                 DEFENDANTS.

21

22

23

24

25

26

27

28

DECLARATION OF ELIANA ABITTAN                    CASE NO. 21-cv-09393-YGR

# DECLARATION OF ELIANA ABITTAN

I, Eliana Abittan, declare as follows:

1. I am a resident of Lawrence, New York.

2. I am married to Ariel Abittan.

3. I am an office assistant. I do not conduct any business or own any assets in California.

4. I have never interacted with a woman who introduced herself to me as Yuting Chen.

5. On December 10, 2017, I attended my brother-in-law, Jacob Abittan's ("Jacob") wedding in Rye, New York. I did, however, meet a woman who was engaged in a watch business with my husband, Ariel Abittan ("Ariel"). This woman introduced herself to me as Tiffany Chen ("Tiffany"). Tiffany attended Jacob's wedding with her husband, Damien. Later on, Tiffany started using the name Lily Chao.

6. In April of 2018, my children and I stayed at Tiffany Chen's house in California. I did not conduct any business while staying at Tiffany's house. It is my understanding that Ariel and Tiffany purchased only one watch together after my visit.

7. In July of 2018, I began helping Ariel, Tiffany, and Damien with payroll for their cryptocurrency business. My role did not have any relationship to the watch business.

8. I never told Tiffany or Damien (or anyone else) that I owned a big real-estate development business or that I had developed properties over billions of dollars. I never told Tiffany or Damien (or anyone else) that I owned numerous premier properties or that Saks Fifth Avenue was my tenant.

9. Other than being married to Ariel, I have no relationship to any luxury watch business, including the one related to Ariel, Tiffany, and Damien. I have never sold a luxury watch. I have never purchased a luxury watch. I have never received a luxury watch as a gift. I have never shared in the proceeds of a luxury watch sale or directly benefited from the sale of a luxury watch.

10. I did not make an anonymous call to Tiffany (or anyone else) on December 23, 2020. I have never threatened Tiffany, her family, or her children. I did not (anonymously or otherwise) instruct Tiffany to "pay $4.5 million [to Ariel] within a few hours or suffer grave consequences."

1    Compl. ¶64. To the contrary, it is my understanding that Tiffany, through counsel, **offered** to pay

2    Ariel $4.5 million to settle their dispute related to the luxury watch and cryptocurrency businesses.

3         I declare under penalty of perjury that the foregoing is true and correct.

4    Dated: May 16, 2022

                                          Eliana Abittan

# Exhibit H

1   Constantine P. Economides (*pro hac vice forthcoming*)
    (Florida Bar No. 118177)
2   Brianna K. Pierce (CA Bar No. 336906)
    ROCHE FREEDMAN LLP
3   1 SE 3rd Avenue, Suite 1240
    Miami, FL 33131
4   Tel: (305) 851-5997
    Email:  ceconomides@rochefreedman.com
5            bpierce@rochefreedman.com

6   *Counsel for Defendants*

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12   YUTING CHEN,                          Case No. 21-cv-09393-YGR

13                    PLAINTIFF,

14        v.

15

16   ARIEL ABITTAN, ABRAHAM ABITTAN,
     RACHEL ABITTAN, BRIAN ABITTAN,
17   JACOB ABITTAN, ALYSSA ABITTAN,
     ELIANA ABITTAN, ROY GRABER, TOVA
18   GRABER, REALTIME NY LLC, a New York
     Limited Liability Company, and DOES 1-20,
19   inclusive

20                    DEFENDANTS.

21

22

23

24

25

26

27

28

DECLARATION OF ROY GRABER                          CASE NO. 21-CV-09393-YGR

# DECLARATION OF ROY GRABER

I, Roy Graber, declare as follows:

     1.     I am a resident of Memphis, Tennessee.

     2.     Ariel Abittan is married to my daughter, Eliana Abittan.

     3.     I am the owner of GTS Technologies LLC, a computer support company formed under the laws of Tennessee with its principal place of business located in Memphis, Tennessee. I do not conduct any business or own any assets in California.

     4.     About twenty (20) years ago, I traveled to California for a family vacation. It was the first and only time I have ever been to California.

     5.     I have never interacted with a woman who introduced herself to me as Yuting Chen.

     6.     I have never interacted with a person (by any name or gender) engaged in a watch business with my son-in-law, Ariel Abittan ("Ariel").

     7.     I have never told anyone that I owned a big real-estate development business or that I had developed properties over billions of dollars. I have never told anyone that I owned numerous premier properties or that Saks Fifth Avenue was my tenant.

     8.     Other than being Ariel's father-in-law, I have no relationship to any luxury watch business. I have never sold a luxury watch. I have never purchased a luxury watch for resale. I have never received a luxury watch as a gift. I have never shared in the proceeds of a luxury watch sale or benefited from the sale of a luxury watch in any way.

     9.     I did not make an anonymous call to anyone on December 23, 2020. I have never (anonymously or otherwise) threatened or instructed anyone to "pay $4.5 million [to Ariel] within a few hours or suffer grave consequences." Compl. ¶64.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 16, 2022

_____
Roy Graber

- 2 -

# EXHIBIT I

1   Constantine P. Economides (*pro hac vice forthcoming*)
    (Florida Bar No. 118177)
2   Brianna K. Pierce (CA Bar No. 336906)
    ROCHE FREEDMAN LLP
3   1 SE 3rd Avenue, Suite 1240
    Miami, FL 33131
4   Tel: (305) 851-5997
    Email: ceconomides@rochefreedman.com
5            bpierce@rochefreedman.com

6   *Counsel for Defendants*

7

8                  **UNITED STATES DISTRICT COURT**

9                 **NORTHERN DISTRICT OF CALIFORNIA**

10                    **SAN FRANCISCO DIVISION**

11

12   YUTING CHEN,                          Case No. 21-cv-09393-YGR

13                  PLAINTIFF,

14        v.

15

16   ARIEL ABITTAN, ABRAHAM ABITTAN,
     RACHEL ABITTAN, BRIAN ABITTAN,
17   JACOB ABITTAN, ALYSSA ABITTAN,
     ELIANA ABITTAN, ROY GRABER, TOVA
18   GRABER, REALTIME NY LLC, a New York
     Limited Liability Company, and DOES 1-20,
19   inclusive

20                  DEFENDANTS.

21

22

23

24

25

26

27

28

DECLARATION OF TOVA GRABER                    CASE NO. 21-CV-09393-YGR

# DECLARATION OF TOVA GRABER

I, Tova Graber, declare as follows:

    1.     I am a resident of Memphis, Tennessee.

    2.     Ariel Abittan is married to my daughter, Eliana Abittan.

    3.     I am a retail store clerk. I do not conduct any business or own any assets in California.

    4.     About twenty (20) years ago, I traveled to California for a family vacation. It was the first and only time I have ever been to California.

    5.     I have never interacted with a woman who introduced herself to me as Yuting Chen.

    6.     I have never interacted with a person (by any name or gender) engaged in a watch business with my son-in-law, Ariel Abittan ("Ariel").

    7.     I have never told anyone that I owned a big real-estate development business or that I had developed properties over billions of dollars. I have never told anyone that I owned numerous premier properties or that Saks Fifth Avenue was my tenant.

    8.     Other than being Ariel's mother-in-law, I have no relationship to any luxury watch business. I have never sold a luxury watch. I have never purchased a luxury watch. I have never received a luxury watch as a gift. I have never shared in the proceeds of a luxury watch sale or benefited from the sale of a luxury watch in any way.

    9.     I did not make an anonymous call to anyone on December 23, 2020. I have never (anonymously or otherwise) threatened or instructed anyone to "pay $4.5 million [to Ariel] within a few hours or suffer grave consequences." Compl. ¶64.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 16, 2022

_Tova Graber_
Tova Graber

- 2 -

# EXHIBIT 4

Motion to strike answer to complaint, ECF No. 40, in the Underlying Action

Craig A. Hansen (SBN 209622)
 Email: craig@hansenlawfirm.net
Stephen C. Holmes (SBN 200727)
 Email: steve@hansenlawfirm.net
Sarah Wager (SBN 209277)
 Email: sarah@hansenlawfirm.net
Philip E. Yeager (SBN 265939)
 Email: phil@hansenlawfirm.net
Collin D. Greene (SBN 326548)
 Email: collin@hansenlawfirm.net
HANSEN LAW FIRM, P.C.
75 E. Santa Clara Street, Suite 1150
San Jose, CA 95113-1837
Telephone: (408) 715 7980
Facsimile: (408) 715 7001

Jingjing Ye (Admitted Pro Hac Vice)
 Email: yelaw@pm.me
YE & ASSOCIATES, PLLC
3400 N. Central Expy, #500
Plano, TX 75080
Telephone (469) 410-5232

Attorneys for Plaintiff Yuting Chen

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| YUTING CHEN, | Case No.: 21-CV-09393-YGR |
| Plaintiff, | **PLAINTIFF YUTING CHEN'S MOTION TO STRIKE PORTIONS OF DECLARATIONS ANNEXED TO DEFENDANTS' ANSWER** |
| v. | |
| ARIEL ABITTAN, ABRAHAM ABITTAN, RACHEL ABITTAN, BRIAN ABITTAN, JACOB ABITTAN, ALYSSA ABITTAN, ELIANA ABITTAN, ROY GRABER, TOVA GRABER, REALTIME NY LLC, a New York Limited Liability Company, and DOES 1-20, inclusive. | Date: July 12, 2022 |
| | Time: 2:00 PM |
| | Place: Courtroom 1 |
| | Judge: Hon. Yvonne Gonzalez-Rogers |
| Defendants. | |
| . | |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................................. 1

II.   ARGUMENT .................................................................................................................... 2

    A.    The Subject Declarations' Statements are Inadmissible Under FRE 408.................... 2

    B.    The Subject Declarations' Statements Constitute an Insufficient Defense ................. 3

    C.    The Subject Declarations' Statement are Redundant.................................................. 3

    D.    The Subject Declarations' Statement are Immaterial ................................................. 4

    E.    The Subject Declarations' Statements are Impertinent............................................... 4

    F.    The Subject Declarations' Statements are Scandalous ............................................... 4

III.  CONCLUSION ................................................................................................................. 5

# TABLE OF AUTHORITIES

Page

**Cases**

*Burke v. Mesta Mach Co.*, 5 F.R.D. 134 (W.D. Penn. 1946) ................................................................ 4

*Gilbert v. Eli Lilly & Co., Inc.,* 56 F.R.D. 116, 120, n. 4 (D.P.R.1972) ................................. 3, 4

*Kamakeeaina v. City & Cty. of Honolulu*, 2013 WL 816411, at *3 (D. Haw. Feb. 15, 2013) ............. 4

*Manhattan Fire and Marine Ins. Co. v. Nassau Estates II*, 217 F.Supp. 196 (D.N.J.1963) ................. 4

*Morely-Murphy Co. v. Zenith Electronics Crop.*, 910 F. Supp, 450, 456 (W. D. Wisc. 1996) ........... 5

*Schell v. City of Chicago*, 407 F.2d 1084, 1085 (7th Cir. 1969) ................................................. 2

*Sirois v. East West Partners, Inc.*, 285 F. Supp. 1152, 1161-1162 (D. Haw. 2018) ........................... 4

*Talbot v. Robert Matthews Distrib., Co.*, 961 F.2d 654, 664–65 (7th Cir. 1992) ................................ 4

*Whittlestone, Inc. v. Handi Craft Co.*, 618 F. 3d 970, 973-974 (9th Cir. 2010) ........................... 2, 4

*Wilkerson v. Butler* 229 F.R.D. 166, 170 (E.D. Cal. 2005) .......................................................... 3, 4

**Rules**

Federal Rule of Civil Procedure 12(f) ............................................................................................ 2

Federal Rule of Evidence 408 ........................................................................................................ 2

FRCP 12(f) ................................................................................................................................... 3, 4

FRE 408 ......................................................................................................................................... 3, 4

**Secondary Sources**

Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07 (1990) .... 4

## NOTICE OF MOTION AND MOTION TO STRIKE

TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 12, 2022 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Yvonne Gonzalez-Rogers, located at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, Plaintiff Yuting Chen ("Chen") will, and hereby does, move to strike portions of declarations annexed to the Defendants' Amended Answer (the "Amended Answer") that describe an alleged offer to compromise. Chen moves to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure and Federal Rule of Evidence 408 because those statements in the declarations are inadmissible, and thus: (1) do not constitute a defense; (2) are redundant; (3) immaterial; (4) impertinent; and (5) scandalous. Specifically, the following language from the declarations of defendants Abraham Abittan, Rachel Abittan, Brian Abittan, Jacob Abittan, Alyssa Portal, and Eliana Abittan, annexed to Defendants' Amended Answer, must be stricken:

> To the contrary, it is my understanding that Tiffany[1], through counsel, **offered** to pay Ariel $4.5 million to settle their dispute related to the luxury watch and cryptocurrency businesses. (Emphasis in Original)

This motion is based on the Memorandum of Points and Authorities below, the [Proposed] Order, the arguments of counsel, and any other matters properly before the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Yuting Chen ("Chen") filed her complaint on December 3, 2021.[2] All named defendants, represented by the same counsel, filed an answer on April 25, 2022.[3] Notably, no declarations were attached to the original answer.

On May 16, 2022, all defendants filed an amended answer pursuant to FRCP 15.[4] The Amended Answer attached 9 declarations and incorporated them by reference. (See Amended

---

[1] Defendants allege that Plaintiff Yuting Chen also goes by the name "Tiffany Chen" (See Amended Answer 11:9-11:16).
[2] See Dkt. 1.
[3] See Dkt. 32.
[4] See Dkt. 37.

Answer 12:21-13:8)  The attached declarations are from each individually named defendant (other than Ariel Abittan) and defendant Realtime NY LLC.

Of these nine declarations, six of them (from individual defendants Abraham Abittan, Rachel Abittan, Brian Abittan, Jacob Abittan, Alyssa Portal, and Eliana Abittan) attached to the answer as Exhibits B-G, respectively (the "Subject Declarations") contain the following language[5]:

> To the contrary, it is my understanding that Tiffany, through counsel, **offered** to pay Ariel $4.5 million to settle their dispute related to the luxury watch and cryptocurrency businesses. (Emphasis in Original)

The *alleged* offer is inadmissible under Federal Rule of Evidence 408 which prevents offers to compromise, or statements made during negotiations to compromise a claim, from being used as evidence in litigation.[6]  As such, the statements meet each of the 5 categories under FRCP 12(f) for a motion to strike in that: (1) they constitute an insufficient defense; (2) they are redundant; (3) they are immaterial; (4) they are impertinent; and (5) they are scandalous.  (See *Whittlestone, Inc. v. Handi Craft Co.*, 618 F. 3d 970, 973-974 (9th Cir. 2010.)   Therefore, the allegation of an offer to compromise in the Subject Declarations must be stricken pursuant to FRCP 12(f).

## II.    ARGUMENT

In filing the Subject Declarations with the Amended Answer and referencing them in it, the Defendants have made the Subject Declarations part of the Amended Answer.  (See *Schell v. City of Chicago*, 407 F.2d 1084, 1085 (7th Cir. 1969)).  As a part of the Amended Answer, the Subject Declarations are susceptible to a Motion to Strike under Federal Rule of Civil Procedure 12(f), which allows for the Court to strike from pleadings matters which provide an insufficient defense or are redundant, immaterial, impertinent, or scandalous – all of which apply to the alleged offer to compromise in the Subject Declarations.

### A.    The Subject Declarations' Statements are Inadmissible Under FRE 408

As this Court is well aware, Federal Rule of Evidence 408 prevents offers of compromise, such as what is alleged in the Subject Declarations, from being used as evidence to "…prove or disprove the validity or amount of a disputed claim or to impeach a prior inconsistent statement or a

---

[5] See Dkt. 37-2 through Dkt. 37-7.
[6] By filing this Motion, Plaintiff does not admit that any offer to compromise was made.

1  contradiction."

2  Defendants' flout FRE 408 by doing what the rule prevents, as evidenced by the preceding

3  sentence in each of the Subject Declarations:

4  I did not make an anonymous call to Tiffany (or anyone else) on
   December 23, 2020. I have never threatened Tiffany, her family, or her
5  children. I did not (anonymously or otherwise) instruct Tiffany to "pay
   $4.5 million [to Ariel] within a few hours or suffer grave
6  consequences." Compl. ¶64.

7  Thus, the next sentence, subject to Chen's motion to strike, is being used as evidence to

8  disprove a specific allegation of Yuting Chen in her Complaint and attempts to impeach Ms. Chen:

9  To the contrary, it is my understanding that Tiffany, through counsel,
   **offered** to pay Ariel $4.5 million to settle their dispute related to the
10  luxury watch and cryptocurrency businesses.

11  This is the very conduct that FRE 408 prevents.  Furthermore, none of the exceptions to FRE

12  408 (such as proving a witnesses' bias or prejudice or negating a contention of undue delay) apply

13  here.

14  As such, the alleged offer to compromise in the Subject Declarations is inadmissible

15  evidence under FRE 408.

16  **B.    The Subject Declarations' Statements Constitute  an Insufficient Defense**

17  FRCP 12(f) allows for the Court to strike portions of a pleading that do not constitute a

18  defense.  In this case, the Subject Declarations refer to an alleged offer from "Tiffany" to settle the

19  dispute regarding the "luxury watch and cryptocurrency businesses."  As this alleged offer is

20  inadmissible evidence pursuant to FRE 408, this statement is an insufficient defense to the

21  allegations in Ms. Chen's Complaint, which never references a "cryptocurrency" business as referred

22  to in the Subject Declarations.  Thus, because the statement is an inadmissible offer to compromise

23  and refers to items outside the scope of the complaint, it is an insufficient defense which should be

24  stricken under FRCP 12(f).

25  **C.    The Subject Declarations' Statement are Redundant**

26  The test of whether a matter is "redundant" under FRCP12(f) is when allegations

27  "…constitute a needless repetition of other averments or which are foreign to the issue to be

28  decided."  (See *Wilkerson v. Butler* 229 F.R.D. 166, 170 (E.D. Cal. 2005) citing *Gilbert v. Eli Lilly*

1  *& Co., Inc.,* 56 F.R.D. 116, 120, n. 4 (D.P.R.1972); *Manhattan Fire and Marine Ins. Co. v. Nassau*

2  *Estates II,* 217 F.Supp. 196 (D.N.J.1963).

3    In the present case, the earlier portion of the Subject Declarations, as well as the Amended

4  Answer itself, makes it clear that the Defendants deny Ms. Chen's allegations that any of them made

5  a threatening phone call demanding $4.5 million to Ms. Chen. Thus, the additional statement is also

6  redundant and must be stricken.

7    **D.    The Subject Declarations' Statement are Immaterial**

8    The test of whether a matter is "immaterial" under FRCP 12(f) is "[when a] matter consists

9  of statements that do not pertain, and are not necessary, to the issues in question." (See *Whittlestone,*

10 *Inc.*, 229 F.R.D. 166, quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and*

11 *Procedure* § 1382, at 706–07 (1990). Since the alleged offer to compromise is inadmissible under

12 FRE 408 and does not constitute a defense, the statements are also immaterial and must be stricken.

13   **E.    The Subject Declarations' Statements are Impertinent**

14   The test of whether a matter or allegation is "impertinent" under FRCP 12(f) is whether the

15 matter is not responsive, not relevant, or cannot be used as evidence between the parties. (See

16 *Wilkerson v. Butler*, 229 F.R.D. 166, citing *Gilbert*, 56 F.R.D. at 120 and *Burke v. Mesta Mach Co.*,

17 5 F.R.D. 134 (W.D. Penn. 1946).) In this situation, the alleged offer to compromise in the Subject

18 Declarations is not responsive, not relevant, and is not inadmissible evidence. As such, it is also

19 "impertinent" under FRCP 12(f) and must be stricken.

20   **F.    The Subject Declarations' Statements are Scandalous**

21   Under FRCP 12(f) "[a]llegations may be stricken as *scandalous* if the matter bears no

22 possible relation to the controversy, or when it may cause 'prejudice' to the objecting party. (See

23 *Sirois v. East West Partners, Inc.*, 285 F. Supp. 1152, 1161-1162 (D. Haw. 2018), citing *Talbot v.*

24 *Robert Matthews Distrib., Co.*, 961 F.2d 654, 664–65 (7th Cir. 1992) (emphasis added) (citations

25 omitted); *Kamakeeaina v. City & Cty. of Honolulu*, 2013 WL 816411, at *3 (D. Haw. Feb. 15,

26 2013) (citing *Talbot*, 961 F.2d 654), *recommendation adopted*, 2013 WL 816090 (D. Haw. Mar. 5,

27 2013).)

28   In the present case, the alleged offer to compromise referenced in the Subject Declarations

may cause prejudice to Yuting Chen because the Defendants are attempting to use the alleged offer to undercut Ms. Chen's allegations.  FRE 408 advances the public policy of encouraging settlement discussions, but the Rule is also in effect because such an offer for compromise "…may be motivated by the offeror's desire for peace rather than from any concession that its position is weak[.]"   (See *Morely-Murphy Co. v. Zenith Electronics Crop.*, 910 F. Supp, 450, 456 (W. D. Wisc. 1996) 450, rev'd on other grounds, 142 F.3d 373 (7th Cir. 1998)).  This allegation implies that the alleged offer to compromise was made from a point of weakness – not from a desire for peace.  As such, the alleged offer to compromise in the Subject Declarations is scandalous under FRCP 12(f) and must be stricken.

### III.   CONCLUSION

For the reasons stated above, the alleged offer to compromise in the Subject Declarations must be stricken.

DATED:  June 2, 2022                    Respectfully submitted,

HANSEN LAW FIRM, P.C.

By:   ___/s/ Philip E. Yeager_____
Craig A. Hansen
Stephen C. Holmes
Philip E. Yeager
Collin D. Greene
HANSEN LAW FIRM, P.C.
75 E. Santa Clara Street, Suite 1250
San Jose, CA 95113-1837
Telephone: (408) 715 7980
Facsimile: (408) 715 7001

Attorneys for Plaintiff Yuting Chen

# EXHIBIT 5

Order denying motion to strike answer to complaint, entered as a text-only docket entry, ECF No. 51, in the Underlying Action

Activity in Case 5:21-cv-09393-NC Chen v. Abittan et al Order on Motion to Strike

ECF-CAND@cand.uscourts.gov <ECF-CAND@cand.uscourts.gov>
Sun 8/28/2022 8:24 PM
To: efiling@cand.uscourts.gov <efiling@cand.uscourts.gov>

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### California Northern District

### Notice of Electronic Filing

The following transaction was entered on 8/28/2022 at 8:23 PM and filed on 8/28/2022
**Case Name:**       Chen v. Abittan et al
**Case Number:**       5:21-cv-09393-NC
**Filer:**
**Document Number:** 51(No document attached)

**Docket Text:**
**Order denying [40] Motion to Strike [37] Answer to Complaint, entered by Magistrate Judge Nathanael M. Cousins. The Court is not persuaded that the motion satisfies Rule 12(f). The attachments to the Answer may be inadmissible, but the Court finds it is premature to reach that conclusion on the present record.** *(This is a text-only entry generated by the court. There is no document associated with this entry.)*

**5:21-cv-09393-NC Notice has been electronically mailed to:**

**Brianna K Pierce     bpierce@rochefreedman.com, akaradjas@rochefreedman.com, ECF_Notifications@rochefreedman.com**

**Constantine Philip Economides     ceconomides@rochefreedman.com, ceconomides@ecf.courtdrive.com, ECF_Notifications@rochefreedman.com**

**Craig Alan Hansen     craig@hansenlawfirm.net, christina@hansenlawfirm.net, collin@hansenlawfirm.net, gina@hansenlawfirm.net, phil@hansenlawfirm.net, sarah@hansenlawfirm.net**

**Jingjing Ye     jye@yefirm.com, c.shakir@yefirm.com**

**Philip Eugene Yeager    phil@hansenlawfirm.net, christina@hansenlawfirm.net, gina@hansenlawfirm.net**

**Sarah Wager    swager@mcmanislaw.com**

**Stephen C. Holmes    steve@hansenlawfirm.net, gina@hansenlawfirm.net**

**5:21-cv-09393-NC Please see [Local Rule 5-5](#); Notice has NOT been electronically mailed to:**

# EXHIBIT 6

Notice of substitution of counsel, <u>ECF No. 60</u>, in the Underlying Action

Craig A. Hansen (SBN 209622)
    Email: craig@hansenlawfirm.net
Stephen C. Holmes (SBN 200727)
    Email: steve@hansenlawfirm.net
Sarah Wager (SBN 209277)
    Email: sarah@hansenlawfirm.net
Philip E. Yeager (SBN 265939)
    Email: phil@hansenlawfirm.net
Collin D. Greene (SBN 326548)
    Email: collin@hansenlawfirm.net
HANSEN LAW FIRM, P.C.
75 E. Santa Clara Street, Suite 1150
San Jose, CA 95113-1837
Telephone: (408) 715 7980
Facsimile: (408) 715 7001

Attorneys for Plaintiff
Yuting Chen

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUTING CHEN,<br><br>                    Plaintiff,<br><br>          v.<br><br>ARIEL ABITTAN, ABRAHAM ABITTAN, RACHEL ABITTAN, BRIAN ABITTAN, JACOB ABITTAN, ALYSSA ABITTAN, ELIANA ABITTAN, ROY GRABER, TOVA GRABER, REALTIME NY LLC, a New York Limited Liability Company, and DOES 1-20, inclusive.<br><br>                    Defendants. | Case No. 21-cv-09393-NC<br><br>**NOTICE OF WITHDRAWAL AS COUNSEL; [PROPOSED ORDER]**<br><br>Courtroom: Courtroom 5 – 4th Floor<br>Judge: Hon. Nathanael Cousins<br><br>Complaint Filed: December 3, 2021 |

1         PLEASE TAKE NOTICE that Hansen Law Firm, P.C. is withdrawing from representation

2    of Plaintiff Yuting Chen ("Plaintiff") in the above-captioned matter.  The signature of the Plaintiff

3    consenting to the withdrawal is below.

4

5    Consent of Plaintiff Yuting Chen to Hansen Law Firm, P.C.'s withdrawal:

6    _____
     Yuting Chen

7

8    DATED:  November 18, 2022          HANSEN LAW FIRM, P.C.

9

10                  By:  _____/s/ Craig A. Hansen_____
                      Craig A. Hansen

11                  Attorneys for Plaintiff Yuting Chen

12

13                **[PROPOSED] ORDER**

14        Pursuant to Hansen Law Firm, P.C.'s Notice of Withdrawal of Counsel, and good cause

15   appearing, the Court ORDERS that Hansen Law Firm, P.C. is no longer counsel of record for

16   Plaintiff Yuting Chen in the above-referenced matter.

17

18   Entered this ___ day of _____, 2022.

19

20               _____
               Hon. Nathanael Cousins
               United States Magistrate Judge

21

22

23

24

25

26

27

28

# EXHIBIT 7

Order setting hearing on notice of withdrawal of counsel Hansen Law Firm, <u>ECF No. 61</u>, in the Underlying Action

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

ARIEL ABITTAN,

        Plaintiff,

    v.

LILY CHAO, and others,

        Defendants.

YUTING CHEN,

        Plaintiff,

    v.

ARIEL ABITTAN, and others,

        Defendants.

TEMUJIN LABS INC. (a Delaware and Cayman Islands Corp.),

        Plaintiff,

    v.

TRANSLUCENCE RESEARCH, INC., and others,

        Defendants.

Case No. 20-cv-09340-NC

Case No. 21-cv-09393-NC

Case No. 21-cv-09152 NC

**ORDER SETTING HEARING ON NOTICE OF WITHDRAWAL OF COUNSEL HANSEN LAW FIRM**

Hearing: Dec. 19, 2022

10:30 a.m. by Zoom video

1    On November 22, 2022, attorneys from the Hansen Law Firm provided notice of

2    their requested withdrawal from representation of clients Temujin Labs Inc. (Cayman

3    Islands), Lily Chao, and Damien Ding (in Case No. 20-cv-9340); Temujin Labs Inc.

4    (Delaware and Cayman Islands) (in Case No. 21-cv-9152); and Yuting Chen (in Case No.

5    21-cv-09393). The Court sets all three requests for hearing on December 19, 2022, at

6    10:30 a.m. by Zoom video. The Hansen Law Firm is ordered to provide this Order to each

7    of its clients in these cases. The clients and Hansen Law Firm are ordered to appear for the

8    hearing. If the clients will be represented by new attorneys, those attorneys must file an

9    appearance and appear at the hearing. If the individual, non-corporation defendants seek

10   to represent themselves, they will need to provide their contact information (mailing

11   address, telephone, and email) for communications from the Court. The Court provides

12   free and confidential resources to qualifying self-represented civil litigants who cannot

13   afford counsel. Self-represented litigants may call the Federal Pro Se Program at (408)

14   297-1480 to make an appointment. Self-represented litigants must be familiar with and

15   comply with the rules of the Court.

16   As to Temujin Labs Inc. (both the Delaware and Cayman Islands corporations), "[a]

17   corporation may appear in federal court only through licensed counsel." *U.S. v. High*

18   *Country Broadcasting Co., Inc.*, 3 F.3d 1244, 1244 (9th Cir. 1993) (citing *Rowland v. Cal.*

19   *Men's Colony*, 506 U.S. 194, 201 (1993)). As a result, Temujin Labs may not represent

20   itself. If the request to withdraw is granted, then the Court may strike the pleadings by

21   Temujin Labs Inc. and dismiss the claims in which Temujin Labs is a plaintiff (Case No.

22   21-cv-9152) and enter default judgment against it in the case where it is a defendant (Case

23   No. 20-cv-9340).

24

25   The case deadlines are not changed by this Order.

26   **IT IS SO ORDERED.**

27   Dated: November 22, 2022    _____

28                                NATHANAEL M. COUSINS
                                  United States Magistrate Judge

United States District Court
Northern District of California

# EXHIBIT 8

Notice of appearance by Brian A. Barnhorst OF SAC Attorneys LLP on behalf of Plaintiff Yuting Chen, <u>ECF No. 62</u>, in the Underlying Action

James Cai (SBN: 200189)
*jcai@sacattorneys.com*
Brian A. Barnhorst (SBN: 130292)
*bbarnhorst@sacattorneys.com*
Jackson D. Morgus (SBN: 318453)
*jmorgus@sacattorneys.com*
Woody Wu (SBN: 309317)
*wwu@sacattorneys.com*
SAC ATTORNEYS LLP
1754 Technology Drive, Suite 122
San Jose, CA 95110
Telephone: (408) 436-0789

Attorneys for Plaintiff
*Yuting Chen*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Yuting Chen,<br><br>          Plaintiff,<br><br>      v.<br><br>Abittan et al,<br><br>          Defendants. | Case No. 5:21-cv-09393-NC<br><br>Judge: Hon. Nathanael M. Cousins<br><br>**NOTICE OF APPEARANCE OF SAC ATTORNEYS LLP ON BEHALF OF PLAINTIFF YUTING CHEN**<br><br>Case Filed: December 3, 2021 |

**TO THE CLERK OF THIS COURT AND ALL PARTIES OF RECORD:**

PLEASE TAKE NOTICE that James Cai, Brian A. Barnhorst, Jackson D. Morgus and Woody Wu of SAC ATTORNEYS, LLP, hereby enter an appearance as counsels for Yuting Chen, in the above-referenced actions. Please serve said counsels with all pleadings and notices in this action.

James Cai
*jcai@sacattorneys.com*
Brian A. Barnhorst
*bbarnhorst@sacattorneys.com*
Jackson D. Morgus
*jmorgus@sacattorneys.com*
Woody Wu
*wwu@sacattorneys.com*
SAC ATTORNEYS LLP
1754 Technology Drive, Suite 122
San Jose, CA 95110
Telephone: (408) 436-0789

Date: December 16, 2022

**SAC ATTORNEYS LLP**
JAMES CAI
BRIAN A. BARNHORST
JACKSON D. MORGUS
WOODY WU

By: /s/ James Cai _____
JAMES CAI

ATTORNEYS FOR PLAINTIFF

**PROOF OF SERVICE Electronic Filing**

I HEREBY CERTIFY that on December 16, 2022, I served the document described as:  **NOTICE OF**

**APPEARANCE OF SAC ATTORNEYS LLP ON BEHALF OF PLAINTIFF YUTING CHEN** by

electronic mail on the following parties:


Constantine Philip Economides
Freedman Normand Friedland LLP
Roche Freedman LLP
1 SE 3rd Ave.
Suite 1240
Miami, FL 33131
305-851-5997
ceconomides@fnf.law

Craig Alan Hansen,
Collin Dane Greene,
Stephen C. Holmes,
Philip E. Yeager,
Hansen Law Firm, P.C.
75 East Santa Clara Street, Suite 1150
San Jose, CA 95113
(408) 715-7980
craig@hansenlawfirm.net
craig@hansenlawfirm.net
steve@hansenlawfirm.net
phil@ hansenlawfirm.net

/s/  Maria Butler
Maria Butler

# EXHIBIT 9

Order vacating hearing on notice of withdrawal of counsel Hansen Law Firm; approving change in counsel, <u>ECF No. 63</u>, in the Underlying Action

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARIEL ABITTAN,

           Plaintiff,

     v.

LILY CHAO, and others,

           Defendants.

YUTING CHEN,

           Plaintiff,

     v.

ARIEL ABITTAN, and others,

           Defendants.

TEMUJIN LABS INC. (a Delaware and Cayman Islands Corp.),

           Plaintiff,

     v.

TRANSLUCENCE RESEARCH, INC., and others,

           Defendants.

Case No. 20-cv-09340-NC

Case No. 21-cv-09393-NC

Case No. 21-cv-09152 NC

**ORDER VACATING HEARING ON NOTICE OF WITHDRAWAL OF COUNSEL HANSEN LAW FIRM; APPROVING CHANGE IN COUNSEL**

Hearing: Dec. 19, 2022

10:30 a.m. by Zoom video

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5

6        On November 22, 2022, attorneys from the Hansen Law Firm provided notice of

7  their requested withdrawal from representation of clients Temujin Labs Inc. (Cayman

8  Islands), Lily Chao, and Damien Ding (in Case No. 20-cv-9340); Temujin Labs Inc.

9  (Delaware and Cayman Islands) (in Case No. 21-cv-9152); and Yuting Chen (in Case No.

10 21-cv-09393).  The Court set all three requests for hearing on December 19, 2022, at 10:30

11 a.m. by Zoom video.  Subsequently, new counsel from SAC Attorneys LLC filed

12 appearances for the parties previously represented by Hansen Law Firm.  The Court

13 therefore GRANTS the requested withdrawal of Hansen Law Firm (Dkt. 58 in No 21-cv-

14 9152; Dkt. 60 in 21-cv-9393; and Dkt. 163 in 20-cv-9340) and accepts the appearance of

15 new counsel.  There is no longer a need for a hearing, so the December 19 hearing is

16 VACATED.  The case schedule remains in place in all three cases.  New counsel should

17 take particular note that there is a motion to dismiss set for hearing on January 4, 2023, at

18 1:00 p.m. by Zoom video in Case No. 21-cv-9152 NC.

19        **IT IS SO ORDERED.**

20

21 Dated: December 19, 2022                    _____

22                                             NATHANAEL M. COUSINS
                                              United States Magistrate Judge
23
24
25
26
27
28

                                    2

# EXHIBIT 10

Motion for judgment on the pleadings, <u>ECF No. 75</u>, in the Underlying Action

1    Constantine P. Economides (*pro hac vice*)
     (Florida Bar No. 118177)
2    Brianna K. Pierce
     (CA Bar No. 336906)
3    FREEDMAN NORMAND
     FRIEDLAND LLP
4    1 SE 3rd Avenue, Suite 1240
     Miami, FL 33131
5    Tel: (305) 971-5943
     Email: ceconomides@fnf.law
6          bpierce@fnf.law

7    *Counsel for Defendants*

8              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
9                    **SAN JOSE DIVISION**

10

11   YUTING CHEN,                          Case No. 21-CV-09393-NC

              Plaintiff,
12
                                           **DEFENDANTS' MOTION FOR**
        v.                                 **JUDGMENT ON THE PLEADINGS**
13
     ARIEL ABITTAN, ABRAHAM ABITTAN,       Date:    May 3, 2023
14   RACHEL ABITTAN, BRIAN ABITTAN,        Time:    1:00 p.m.
     JACOB ABITTAN, ALYSSA ABITTAN,        Judge:   Hon. Nathanael Cousins
15   ELIANA ABITTAN, ROY GRABER, TOVA      Place:   Courtroom 5, 4th Floor
     GRABER, REALTIME NY LLC, a New York
16   Limited Liability Company, and DOES 1-20,
     inclusive.
17
              Defendants.
18

19

20

21

22

23

24

25

26

27

28

---

1    **TO THE COURT AND TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

2        PLEASE TAKE NOTICE that on, May 3, 2023, at 1:00 p.m. or as soon thereafter as the matter

3    may be heard in the courtroom of the Honorable Nathanael M. Cousins, located at the United States

4    District Court for the Northern District of California, 280 South First Street, 4th Floor, San Jose,

5    California 95113, Moving Defendants, Abraham Abittan, Rachel Abittan, Brian Abittan, Jacob

6    Abittan, Alyssa Abittan, Eliana Abittan, Roy Graber, Tova Graber, Realtime NY LLC and Ariel

7    Abittan (collectively, "Defendants") will, and hereby does, move for an order granting judgment

8    on the pleadings and dismiss, with prejudice, the claims against the Moving Defendants.

9    Dated: March 24, 2023                         */s/ Constantine P. Economides*

10                                                 Constantine P. Economides (*pro hac vice*)
                                                   Brianna K. Pierce (CBN 336906)
11                                                 FREEDMAN NORMAND
                                                   FRIEDLAND LLP
12                                                 1 SE Third Avenue, Suite 250
                                                   Miami, Florida 33131
13                                                 Tel: (305) 971-5943
                                                   Email: ceconomides@fnf.law
14                                                          bpierce@fnf.law

15                                                 *Counsel for Defendants*

16

17

18

19

20

21

22

23

24

25

26

27

28

---

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ......................................................................................................................... 1

STATEMENT OF ISSUE TO BE DECIDED ............................................................................... 2

FACTUAL BACKGROUND ......................................................................................................... 2

I.       ARIEL ABITTAN'S PARENTS: DEFENDANTS ABRAHAM ABITTAN AND
         RACHEL ABITTAN ......................................................................................................... 3

II.      ARIEL ABITTAN'S SIBLINGS: DEFENDANTS BRIAN ABITTAN, JACOB
         ABITTAN, AND ALYSSA ABITTAN ............................................................................ 5

III.     ARIEL ABITTAN'S WIFE AND IN-LAWS: DEFENDANTS ELIANA
         ABITTAN, ROY GRABER, AND TOVA GRABER ....................................................... 6

IV.      DEFENDANT REALTIME NY, LLC ............................................................................... 7

LEGAL STANDARD .................................................................................................................... 8

ARGUMENT ................................................................................................................................. 10

I.       THE COURT LACKS GENERAL JURISDICTION OVER THE MOVING
         DEFENDANTS ................................................................................................................. 11

         A.        The Individual Moving Defendants ..................................................................... 12

         B.        RealTime NY, LLC ............................................................................................. 13

II.      THE COURT LACKS SPECIFIC JURISDICTION OVER THE MOVING
         DEFENDANTS ................................................................................................................. 14

         A.        The Moving Defendants did not "purposefully avail" themselves of the
                   privilege of conducting relevant activities in California or "purposefully
                   direct" activities towards California ..................................................................... 15

                   1.        Roy and Tova Graber ............................................................................... 17

                   2.        Jacob, Brian, and Alyssa Abittan ............................................................ 17

                   3.        Abraham and Rachel Abittan .................................................................... 17

                   4.        Elaina Abittan ........................................................................................... 18

                   5.        RealTime NY LLC ................................................................................... 18

B.      Plaintiff's claims do not "arise out of" the Moving Defendants' forum-related activities .......................................................................................... 19

C.      The exercise of jurisdiction over the Moving Defendants in California would be unreasonable .......................................................................................... 21

III.      THE JURISDICTIONAL DEFICIENCIES CANNOT BE CURED ................................ 22

CONCLUSION ............................................................................................................... 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>**CASES**</u>

3

*Alexandria Real Estate Equities, Inc. v. Runlabs (UK) Ltd.*,

4
No. 18-CV- 07517-LHK, 2019 WL 4221590 (N.D. Cal. Sept. 5, 2019) ............................... 16

5
*Atkinson v. Meta Platforms, Inc.*,
No. 20-17489, 2021 WL 5447022 (9th Cir. Nov. 22, 2021) ................................................... 22

6

7
*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) ................................................................................................... 10

8

9
*Benedith v. Case W. Rsrv. Univ.*,
No. 17-CV-05896-JST, 2018 WL 659412 (N.D. Cal. Jan. 31, 2018) ..................................... 14

10
*Beverly Hills Reg'l Surgery v. Grp. Hospitalization & Med. Servs.*,
No. CV 22-01217-RSWL-MRWx, 2022 WL 1909550 (C.D. Cal. June 3, 2022) ................. 19

11

12
*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017).................................................................................................................. 13

13
*Bonin v. Calderon*,
59 F.3d 815 (9th Cir. 1995) ..................................................................................................... 22

14

15
*Brand v. Menlove Dodge*,
796 F.2d 1070 (9th Cir. 1986) ................................................................................................. 11

16

17
*Bungie, Inc. v. Thorpe*,
No. 21-CV-05677-EMC, 2023 WL 2145522 (N.D. Cal. Feb. 21, 2023) ................................ 15

18

19
*Chavez v. Stellar Mgmt. Grp. VII, LLC*,
No. 19-CV-01353-JCS, 2019 WL 2716292 (N.D. Cal. June 28, 2019)................................. 11

20
*Chubchai v. AbbVie, Inc.*,
599 F. Supp. 3d 866 (N.D. Cal. 2022) .............................................................................. 14, 16

21

22
*Chung v. Chih-Mei*,
No. 22-CV-01983-BLF, 2023 WL 2250288 (N.D. Cal. Feb. 27, 2023) ................................. 14

23
*Chung v. Chung, et al.*,
No. 22-CV-01983-BLF, 2023 WL 2250288 (N.D. Cal. Feb. 27, 2023) .................... 11, 15, 19

24

25
*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) ................................................................................................. 13

26

27
*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) ..................................................................................................... 9

28

*Eclipse Grp. LLP v. Target Corp.*,
No. 15cv1411-JLS-BLM, 2016 WL 8395077 (S.D. Cal. May 26, 2016) ................................. 9

*Elite Semiconductor, Inc. v. Anchor Smeiconductor, Inc.*,
No. 5:20-CV-06846-EJD, 2021 WL 3037701 (N.D. Cal. July 19, 2021) ....................... 11, 12

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ............................................................................................. 23

*Entrepreneur Media v. EYGN*,
No. SACV 08-0608 DOC (MLGx), 2008 WL 11338010 (C.D. Cal. Dec. 17,
2008) .................................................................................................................................... 9

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
905 F.3d 597 (9th Cir. 2018) ......................................................................................... 15, 16

*Future Motion, Inc. v. JW Batteries LLC*,
No. 21-CV-06771-EMC, 2022 WL 1304102 (N.D. Cal. May 2, 2022) ................................ 10

*Garcia v. Woldemichael*,
No. 21-CV-05079-DMR, 2022 WL 3590328 (N.D. Cal. Aug. 22, 2022) .............................. 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ........................................................................................................... 11

*Gordon v. APM Terminals N. Am., Inc.*,
No. 17-CV-03970-MEJ, 2017 WL 3838092 (N.D. Cal. Sept. 1, 2017) ................................ 13

*Gregg v. Haw. Dep't of Pub. Safety*,
870 F.3d 833 (9th Cir. 2017) ............................................................................................... 8

*Hatset v. Century 21 Gold Coast Realty*,
649 F. App'x 400 (9th Cir. 2016) ........................................................................................ 19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ........................................................................................................... 18

*Hudson-munoz, LLC v. U.S. Waffle Co., Inc.*,
No. 2:19-cv-01960-ODW (RAO), 2019 WL 3548919 (C.D. Cal. Aug. 5, 2019) ................. 21

*Hunt v. Erie Ins. Grp.*,
728 F.2d 1244 (9th Cir. 1984) ............................................................................................ 19

*Iconlab Inc. v. Valeant Pharms. Int'l, Inc.*,
No. 8:16-CV-01321-JLS-KES, 2017 WL 7240856 (C.D. Cal. Apr. 25, 2017) ..................... 11

*Ji v. Naver Corp.*,
No. 21-CV-05143-HSG, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ............................... 9

*Jibreel v. Hock Seng Chin*,
No. C 13-03470 LB, 2014 WL 12600278 (N.D. Cal. Apr. 17, 2014),
*report and recommendation adopted*, No. 13-CV-03470-JST, 2014 WL
12617420 (N.D. Cal. May 5, 2014) ...................................................................................... 23

*Komaiko v. Baker Techs., Inc.*,
No. 19-CV-03795-DMR, 2020 WL 1915884 (N.D. Cal. Apr. 20, 2020) .............................. 22

*Krantz v. Bloomberg L.P.*,
No. 221CV06275ABRAOX, 2022 WL 2102111 (C.D. Cal. Jan. 19, 2022).................... 11, 23

*Lamont v. Pilkington*,
No. 17-CV-5942-JSC, 2018 WL 2176100 (N.D. Cal. Apr. 23, 2018) .................................. 19

*LeGarie v. Nurse*,
No. 21-CV-04739-JCS, 2021 WL 5771144 (N.D. Cal. Dec. 6, 2021).................................. 22

*Lin v. Solta Med., Inc.*,
No. 21-CV-05062-PJH, 2022 WL 2222987 (N.D. Cal. June 21, 2022).................................. 21

*Marek v. Molson Coors Beverage Co.*,
580 F. Supp. 3d 848 (N.D. Cal. 2022) .................................................................................. 15

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014) .............................................................................................. 13

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ........................................................................................ 9, 13

*Medimpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*,
No. 19CV1865-GPC(LL), 2020 WL 1433327 (S.D. Cal. Mar. 24, 2020) ............................ 18

*MGA Ent. v. Cabo Concepts*,
No. CV 20-10170 FMO (JPRx), 2021 WL 4733784 (C.D. Cal. June 7, 2021) ..................... 19

*Mocha Mill, Inc. v. Port of Mokha, Inc.*,
No. 18-cv-02539-HSG, 2019 WL 1048252 (N.D. Cal. Mar. 5, 2019).................................. 20

*Moledina v. Marriott Int'l, Inc.*,
No. 222CV03059SPGJPR, 2022 WL 16630276 (C.D. Cal. Oct. 17, 2022) ...................... 8, 14

*Monster Energy Co. v. Metro Giant, Inc.*,
No. EDCV202616JGBSHKX, 2021 WL 3524125 (C.D. Cal. Apr. 9, 2021) ........................ 21

*Nichols v. 360 Ins. Grp. LLC*,
No. 22-CV-03899-RS, 2023 WL 163201 (N.D. Cal. Jan. 11, 2023) .................................... 16

*Page v. Broberg*,
No. 22-CV-06194-JSW, 2023 WL 105094 (N.D. Cal. Jan. 4, 2023)................................. 9, 11

*Parnell Pharms., Inc. v. Parnell, Inc.*,
   No. 5:14-CV-03158-EJD, 2015 WL 5728396 (N.D. Cal. Sept. 30, 2015) ............................. 10

*Pestmaster Franchise Network, Inc. v. Mata*,
   No. 16-cv-07268-EMC, 2017 WL 1956927 (N.D. Cal. May 11, 2017) .................... 13, 20, 21

*Peterson v. Kennedy*,
   771 F.2d 1244 (9th Cir. 1985) ............................................................................................. 19

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015) ....................................................................................... 17, 20

*Prevail Legal, Inc. v. Gordon*,
   No. 20-CV-07173-BLF, 2021 WL 1947578 (N.D. Cal. May 14, 2021) ................................. 9

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .............................................................................................. 15

*Sher v. Johnson*,
   911 F.2d 1357 (9th Cir. 1990) ............................................................................................. 10

*Soares v. Varner*,
   No. 21-CV-04526-VKD, 2022 WL 35611 (N.D. Cal. Jan. 4, 2022) ..................................... 14

*Span Const. & Eng'g, Inc. v. Stephens*,
   No. CIVF 06-0286 AWIDLB, 2006 WL 1883391 (E.D. Cal. July 7, 2006) ......................... 12

*Stack v. Progressive Select Ins. Co.*,
   No. 20-cv-00338-LB, 2020 WL 5517300 (N.D. Cal. Sept. 14, 2020) ..................................... 9

*Surface Supplied Inc. v. Kirby Morgan Dive Sys., Inc.*,
   No. C 13-575 MMC, 2013 WL 2355446 (N.D. Cal. May 29, 2013) ..................................... 11

*United Fabrics Int'l v. Metro 22*,
   No. CV 14-6969 MRW, 2015 WL 12670376 (C.D. Cal. Mar. 6, 2015) ................................. 22

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................................... 16, 17, 19

*Yamashita v. LG Chem, Ltd.*,
   No. 20-17512, 2023 WL 2374776 (9th Cir. Mar. 6, 2023) ..................................................... 9

*Zieger v. Wellpet LLC*,
   304 F. Supp. 3d 837 (N.D. Cal. 2018) ................................................................................. 10

## **OTHER AUTHORITIES**

Fed. R. Civ. P. 12(c) ................................................................................................................. 8

DEFENDANTS' MOTION FOR JUDGMENT ON
THE PLEADINGS
    vi
    CASE NO. 21-CV-09393-NC

1                                     **INTRODUCTION**

2         Plaintiff's false, conclusory allegations are not sufficient to establish personal jurisdiction

3 over Abraham Abittan, Rachel Abittan, Brian Abittan, Jacob Abittan, Alyssa Abittan, Eliana

4 Abittan, Roy Graber, Tova Graber, and RealTime NY LLC (collectively "Moving Defendants").

5 Plaintiff alleges that the Moving Defendants and Ariel Abittan (collectively "Defendants") learned

6 of Plaintiff's "financial status and lack of business sophistication and dubbed her as a prime target

7 for a calculated scheme to defraud Chen, and later her friends, for millions of dollars." [ECF No.

8 1] at ¶ 2.[1] She further claims that the Defendants "concocted countless fabricated stories…" which

9 "lured Chen into business dealings with Ariel Abittan…" *Id.* at ¶ 3–4. As a result, Plaintiff is now

10 seeking "recovery in this action for her tremendous financial losses resulting from her business

11 relationship with Ariel Abittan, induced and maintained with the assistance of the remining co-

12 conspirator defendants who are believed to have financially benefitted from the business

13 transactions, and mental/emotional anguish resulting from their deceitful and malicious conduct."

14 *Id.* at ¶ 5.

15         Critically, the Complaint lacks allegations showing that the Moving Defendants have any

16 contacts with the State of California. Moreover, each Moving Defendant has filed a ***sworn***

17 declaration indicating the lack of jurisdictional contacts with California and the attenuated contact

18 (if any contact) with Plaintiff. *See* Exs. A–I [ECF Nos. 37-1-37-9]. As established by this evidence,

19 Plaintiff cannot meet her burden to establish personal jurisdiction over the Moving Defendants. *See*

20 *id.*

21         In sum, the Court should grant judgment on the pleadings because it lacks personal

22 jurisdiction over the Moving Defendants. Additionally, no additional facts could be alleged in good

23 faith so as to establish relevant contacts between the Moving Defendants and California. Thus,

24 leave to amend would be futile, and the Court should dismiss the claims against the Moving

25 Defendants with prejudice.

26

27

28

---

[1] Citations to "¶" refer to the Complaint [ECF No. 1]. Unless otherwise noted, all emphasis has been added, and internal citations have been omitted.

---

DEFENDANTS' MOTION FOR JUDGMENT                   CASE NO. 21-CV-09393-NC
ON THE PLEADINGS

**STATEMENT OF ISSUE TO BE DECIDED**

The Moving Defendants move the Court for a judgment on the pleadings, under Rule 12(c) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction.[2]

**FACTUAL BACKGROUND**

Plaintiff, Yuting Chen ("Plaintiff" or "Chen"), alleges claims arising from a business venture through which Plaintiff and Defendants purportedly bought and resold luxury watches. ¶ 24. In 2016, Ariel Abittan purportedly "responded to one of Chen's online listings for a particular high-end watch" and began "convers[ing] with Chen's friend about the listing[.]" ¶ 29. Following this initial contact, Plaintiff alleges that Ariel Abittan "form[ed] and maintain[ed] a regular business relationship with Chen in connection with her watch business." ¶ 28.

Plaintiff further alleges that Ariel Abittan "quickly" discovered that Chen was "wealthy" and that Chen had a "limited command in English, was an immigrant and lacked social experiences and contacts outside her circle of family and friends in California." ¶ 32. According to Plaintiff, Ariel Abittan and the Moving Defendants "[r]ealiz[ed] that Chen was a vulnerable target" and then "bombard[ed]" Plaintiff with lies as part of a "broader scheme to convince Chen that doing business with Ariel Abittan would bring access to some of the most elite business people in the country in terms of his family members directly, and their personal multi-millionaire connections." ¶ 41. Plaintiff claims that Ariel Abittan then took possession of a "large collection of highly valuable and sought-after watches" worth millions of dollars, sold or retained the watches, and underpaid or failed to pay Plaintiff her share of the profits. ¶¶ 47-52.

Notably, Plaintiff does not allege that the Moving Defendants were involved in Plaintiff's and Ariel Abittan's joint watch business. Rather, Plaintiff makes only the following specific allegations about each Moving Defendant's involvement in a purported "scheme" to convince Plaintiff to do business with Ariel Abittan.

---

[2] The Moving Defendants have not consented to personal jurisdiction and have preserved their rights and defenses under Rules 12(b)(2), 12(b)(3), 12(b)(6), and 12(b)(7). *See* ECF Nos. 32, 37.

## I. ARIEL ABITTAN'S PARENTS: DEFENDANTS ABRAHAM ABITTAN AND RACHEL ABITTAN

Plaintiff makes claims against Abraham Abittan and Rachel Abittan—Ariel Abittan's parents—for Aiding and Abetting Breach of Fiduciary Duty, Fraud, Unjust Enrichment, Imposition of Constructive Trust, Intentional Infliction of Emotional Distress, and Civil Conspiracy. In support of those claims, Plaintiff alleges that, in or around late 2019, Abraham Abittan and Rachel Abittan "flew to California in an attempt to further their fraudulent scheme on Chen and her friends. They asked Chen and her friends to continue to pay for Ariel Abittan's credit card debt and said that they would repay her. They did not." ¶ 60. The other allegations about Abraham Abittan and Rachel Abittan relate to conduct outside of California or individuals other than Plaintiff (such as Plaintiff's allegation that Abraham Abittan "lured" Plaintiff's "friend" into a $10,000 facial in New York). *See, e.g.*, ¶ 42.

In reality, Abraham Abittan is a resident of Lawrence, New York; is a dermatologist licensed to practice medicine in the state of New York; and owns a practice in Woodmere, New York. Ex. B, ¶ 1, 3. He does not conduct business or own any assets in California. *Id.* at ¶ 3. He has never interacted with a woman who introduced herself to him as Yuting Chen, but he did meet a woman who introduced herself as Tiffany Chen and who was engaged in a watch business with Ariel. *Id.* at ¶ 4. Abraham Abittan first met Tiffany Chen at Jacob Abittan's wedding. *Id.* at ¶ 5. While at the wedding, he did not engage in a substantive conversation about Ariel's and Tiffany Chen's business relationship. *Id.* at ¶ 6. Nor did they discuss Tiffany Chen's finances or family background. *Id.*

Abraham Abittan met Tiffany Chen on two other occasions in New York. *Id.* at ¶ 7. On or about May 13, 2019, and June 27, 2019, Abraham Abittan flew to California to meet with Tiffany Chen to discuss the return of funds to investors in a cryptocurrency business, known at the time as Eian Labs Inc. *Id.* at ¶ 9. They also discussed a huge debt incurred by Tiffany Chen, Damien Ding, and their agents on a credit card issued to Ariel's company, RealTime NY, LLC. *Id.* These two meetings lasted approximately two (2) hours total. *Id.* at ¶ 10. Abraham had no other contact with

1    Tiffany Chen aside from these two meetings. *Id*. He does not have any relationship to—and has not

2    benefitted in any way from—Tiffany Chen's and Ariel Abittan's watch business. *Id.* at ¶ 12.

3         Similarly, Rachel Abittan is a resident of Lawrence, New York. Ex. C, ¶ 1. She is an office

4    manager in Abraham Abittan's dermatologist's office and does not conduct any business or own

5    any assets in California. *Id.* at ¶ 3. She has never interacted with a woman who introduced herself

6    to her as Yuting Chen, but she did meet a woman who introduced herself as Tiffany Chen, who

7    was engaged in a watch business with Ariel. *Id.* at ¶ 4. She first met Tiffany at Jacob's wedding.

8    *Id.* at ¶ 5. While at the wedding, Rachel Abittan did not engage in a substantive conversation about

9    Ariel's and Tiffany's business relationship. *Id*. at ¶ 6. Nor did they discuss Tiffany's finances or

10   family background. *Id*. Rachel and Tiffany exchanged pleasantries via text message on rare

11   occasions, such as a happy birthday or thank you message. *Id*. at ¶ 7. Rachel met Tiffany a second

12   time in March of 2019 when Tiffany flew to New York for a meeting with Ariel and investors in a

13   cryptocurrency business, known as Eian Labs Inc. at the time. *Id*. at ¶ 8. They did not discuss the

14   watch business or luxury watches. *Id.*

15        The third and final time Rachel met Tiffany was on or about June 27, 2019, when Rachel

16   flew to California with her husband, Abraham. *Id.* at ¶ 9. They discussed the return of Eian Labs

17   Inc.'s investors' funds and a huge debt incurred by Tiffany, Damien, and their agents on a credit

18   card in the name of Ariel's company, RealTime NY, LLC. *Id*. The meeting lasted approximately

19   two (2) hours. *Id.* Rachel did not have any other contact with Tiffany in the State of California after

20   this meeting. *Id.* Tiffany was engaged in a business relationship with Ariel for over a year before

21   Rachel met her. *Id.* at ¶ 10.

22        Abraham Abittan and Rachel Abittan do not have any involvement in Plaintiff's and Ariel

23   Abittan's watch business. Ex. B, ¶ 12; C, ¶ 11. Abraham Abittan and Rachel Abittan have not

24   benefitted from the watch business. *Id.* They did not make an anonymous phone call to Plaintiff on

25   December 23, 2020. Ex. B, ¶ 13; C, ¶ 12. In sum, they have no connection to the claims made in

26   this lawsuit, and they lack jurisdictional contacts with California.

27

28

## II.  ARIEL ABITTAN'S SIBLINGS: DEFENDANTS BRIAN ABITTAN, JACOB ABITTAN, AND ALYSSA ABITTAN

Plaintiff makes claims against Brian Abittan, Jacob Abittan, and Rachel Abittan (the "Abittan Siblings")—Ariel Abittan's siblings—for Aiding and Abetting Breach of Fiduciary Duty, Fraud, Unjust Enrichment, Imposition of Constructive Trust, Intentional Infliction of Emotional Distress, and Civil Conspiracy. In support of those claims, Plaintiff alleges that Brian Abittan and Jacob Abittan "represented to Chen and her friends that they were famous and well-connected lawyers." ¶ 40. Plaintiff alleges that Alyssa Abittan "represented to Chen and her friends that her husband was a wealthy businessman." *Id*. Plaintiff does not allege that any of these statements were made in California or made to Plaintiff while she was in California.

In reality, Brian Abittan is a resident of Lawrence, New York. Ex. D, ¶ 1. He met Plaintiff at Jacob Abittan's wedding. *Id.* at ¶ 6. He had a conversation with Plaintiff for approximately five (5) minutes, where he told her that he recently graduated medical school and was entering his residency program. *Id.* at ¶ 7. Brian's only trips to California were vacations about fifteen (15) years ago. *Id.* at ¶ 4.

Similarly, Jacob Abittan is a resident of Lawrence, New York. Ex. E, ¶ 1. He met Plaintiff during his wedding, which was the only time he ever met, spoke, saw, or interacted with Plaintiff in any way. *Id.* at ¶ 6. The conversation lasted for approximately one (1) minute, and only entailed a brief introduction and congratulations for Jacob's nuptials. *Id.* at ¶ 7. Jacob's first and only time to California was for a family vacation about fifteen (15) years ago. *Id.* at 4.

Like her brothers and parents, Alyssa Abittan is also a resident of Lawrence, New York. Ex. F, ¶ 1. She met Plaintiff at Jacob's wedding. *Id.* at ¶ 6. She had a one (1) minute conversation with Plaintiff which included a brief introduction, and then they parted ways. *Id.* at ¶ 7. Alyssa Abittan's first and only time to California was for a family vacation about fifteen (15) years ago. *Id.* at ¶ 4.

Moreover, the Abittan Siblings do not have any involvement in Plaintiff's and Ariel Abittan's watch business. Ex. D, ¶ 9; E, ¶ 10; F, ¶ 11. The Abittan Siblings have not benefitted

1    from the watch business. *Id.* The Abittan Siblings did not make an anonymous phone call to

2    Plaintiff on December 23, 2020. Ex. D, ¶ 10; E, ¶ 11; F, ¶ 12. In sum, the Abittan Siblings have no

3    connection to the claims made in this lawsuit and no contacts with California.

4    **III.**    **ARIEL ABITTAN'S WIFE AND IN-LAWS: DEFENDANTS ELIANA ABITTAN, ROY GRABER, AND TOVA GRABER**

5

6        Plaintiff makes claims against Eliana Abittan—Ariel Abittan's wife—and Roy Graber and

7    Tova Graber—Ariel Abittan's in-laws—for Aiding and Abetting Breach of Fiduciary Duty, Fraud,

8    Unjust Enrichment, Imposition of Constructive Trust, Intentional Infliction of Emotional Distress,

9    and Civil Conspiracy. In support of those claims, Plaintiff states: "Elaina Abittan together with her

10    parents, Roy and Tova Graber, represented to Chen and her friends that they owned big real-estate

11    development businesses and had developed properties over billions of dollars. They represented to

12    Chen and her friends that they owned numerous premier properties and the famed department store

13    Saks Fifth Avenue was their tenant." ¶ 40. Plaintiff does not allege that any of these statements

14    were made in California or made to Plaintiff while she was in California.

15        In reality, Eliana Abittan is a resident of Lawrence, New York. Ex. G, ¶ 1. She is an office

16    assistant, and she does not conduct any business or own any assets in California. *Id.* at ¶ 3. Eliana

17    has never interacted with a woman who introduced herself to her as Yuting Chen. *Id.* at ¶ 4. At

18    Jacob's wedding, Eliana met a woman who introduced herself as Tiffany Chen, who was engaged

19    in a watch business with Ariel. *Id.* at ¶ 5.

20        In April of 2018, Eliana and her children stayed at Tiffany's house in California. *Id.* at 6.

21    No business was conducted at this social visit. *Id.* After the visit, Ariel and Tiffany purchased only

22    one watch together. *Id.* In July of 2018, Eliana began helping Ariel and Tiffany with payroll for

23    their cryptocurrency business. *Id.* at ¶ 7. Her role had no relationship to the watch business. *Id.* She

24    never told Tiffany or anyone else that she owned a big real-estate development business, that she

25    developed properties over billions of dollars, that she owned numerous premier properties, or that

26    Saks Fifth Avenue was her tenant. *Id.* at ¶ 8.

27        Roy Graber is a resident of Memphis, Tennessee. Ex. H, ¶ 1. He is the owner of GTS

28    Technologies LLC, a computer support company formed under the laws of Tennessee with its

1   principal place of business located in Memphis, Tennessee. *Id.* at ¶ 3. He does not conduct any

2   business or own any assets in California. *Id.* He has never interacted with any person engaged in a

3   watch business with Ariel. *Id.* at ¶ 6. He has never interacted with a woman who introduced herself

4   to him as Yuting Chen. *Id.* at ¶ 5. He has never told anyone that he owns a big real-estate

5   development, that he developed properties over billions of dollars, that he owned numerous premier

6   properties, or that Saks Fifth Avenue was his tenant. *Id.* at ¶ 7. Roy Graber's first and only time

7   traveling to California was for a family vacation about twenty (20) years ago. *Id.* at ¶ 4.

8          Tova Graber is a resident of Memphis, Tennessee. Ex. I, ¶ 1. She is a retail store clerk, and

9   she does not conduct any business or own any assets in California. *Id.* at ¶ 3. She has never

10  interacted with any person engaged in a watch business with Ariel. *Id.* at ¶ 6. She has never

11  interacted with a woman who introduced herself to him as Yuting Chen. *Id.* at ¶ 5. She has never

12  told anyone that she owns a big real-estate development, that she developed properties over billions

13  of dollars, that she owned numerous premier properties, or that Saks Fifth Avenue was her tenant.

14  *Id.* at ¶ 7. Tova Graber's first and only time to California was for a family vacation about twenty

15  (20) years ago. *Id.* at ¶ 4.

16         Moreover, Eliana Abittan, Roy Graber, and Tova Graber do not have any involvement in

17  Plaintiff's and Ariel Abittan's watch business. Ex. F, ¶ 9; H, ¶ 8; I, ¶ 8. Aside from being married

18  to Ariel Abittan, Eliana Abittan has not directly benefitted from the watch business. Ex. E, ¶ 9. Roy

19  Graber and Tova Graber have not benefited from the watch business. Ex. H, ¶ 8; I, ¶ 8.  Eliana

20  Abittan, Roy Graber, and Tova Graber did not make an anonymous phone call to Plaintiff on

21  December 23, 2020. Ex. F, ¶ 12; H, ¶ 9; I, ¶ 9.  In sum, Eliana Abittan, Roy Graber, and Tova

22  Graber have no connection to the claims made in this lawsuit and no contacts with California.

23  **IV.    DEFENDANT REALTIME NY, LLC**

24         Plaintiff makes claims against RealTime NY, LLC for Fraud, Unjust Enrichment,

25  Imposition of Constructive Trust, Intentional Infliction of Emotional Distress, and Civil

26  Conspiracy. In support of those claims, Plaintiff alleges that Ariel Abittan used the business "in

27  transactions, sending and receiving funds using bank account in its name to defraud Chen." *Id.* at ¶

28

49. Plaintiff does not allege that RealTime conducts business in California or directs its activities into California. Nor does Plaintiff even allege that she conducted business with RealTime.

In reality, RealTime is a limited liability company formed under the laws of New York. Ex. A, ¶ 1. RealTime's principal place of business is, and always has been, in Lawrence, New York. *Id.* at ¶ 2. RealTime buys and sells ultra-luxury watches from and to people throughout the United States and the world. *Id.* at ¶ 5. RealTime primarily uses dealers located outside California and passive online platforms to conduct business. *Id.* RealTime does not purposefully direct its business into California over any other domestic or foreign jurisdiction. *Id.*

## **LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A judgment on the pleadings is properly granted when, 'taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 833, 887 (9th Cir. 2017) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)). "This standard is 'functionally identical' to the standard for determining a motion to dismiss under Rule 12(b)(6)." *Moledina v. Marriott Int'l, Inc.*, No. 222CV03059SPGJPR, 2022 WL 16630276, at *1 (C.D. Cal. Oct. 17, 2022) (quoting *Gregg*, 870 F.3d at 887).

"Because a Rule 12(c) motion is 'functionally identical' to a Rule 12(b)(6) motion, 'the same standard of review applies to motions brought under either rule.'" *Gregg*, 870 F.3d at 887 (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054n.4 (9th Cir. 2011)).

Similarly, when a defendant argues "lack of personal jurisdiction through a motion brought under Fed. R. Civ. P. 12(c) rather than 12(b)(2)," the same standard of review will apply, so long as a defendant preserved its jurisdictional defense. *Moledina*, 2022 WL 16630276, at *2  (finding that when "Defendant raised its objection to personal jurisdiction in its first responsive pleading," the "Defendant sufficiently preserved its jurisdictional defense pursuant to Rule 12(h) and is free to argue lack of personal jurisdiction in its Rule 12(c) motion at this stage in the proceeding."); *see also Entrepreneur Media v. EYGN*, No. SACV 08-0608 DOC (MLGx), 2008 WL 11338010, at *3

1  (C.D. Cal. Dec. 17, 2008) (applying Rule 12(b)(2) standard to a Rule 12(c) motion for judgment
2  on the pleadings for lack of personal jurisdiction).

3      "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the
4  burden of demonstrating that the court has jurisdiction over the defendant." *Ji v. Naver Corp.*, No.
5  21-CV-05143-HSG, 2022 WL 4624898, at *2 (N.D. Cal. Sept. 30, 2022) (quoting *Pebble Beach*
6  *Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). "[A] Rule 12(b)(2) challenge to personal
7  jurisdiction may attack the legal theory supporting jurisdiction based on the facts as pleaded (a
8  facial attack) or the facts themselves (a factual attack)." *Eclipse Grp. LLP v. Target Corp.*, No.
9  15cv1411-JLS-BLM, 2016 WL 8395077, at *7 (S.D. Cal. May 26, 2016). The Court "may consider,
10 declarations and other evidence outside the pleadings in determining whether it has personal
11 jurisdiction." *Stack v. Progressive Select Ins. Co.*, No. 20-cv-00338-LB, 2020 WL 5517300, at *4
12 (N.D. Cal. Sept. 14, 2020) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)). The
13 Court "may not assume the truth of [the complaint's] allegations . . . which are contradicted by" a
14 declaration. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).
15 Additionally, "the court need not assume the truth of mere **conclusory allegations**." *Page v.*
16 *Broberg*, No. 22-CV-06194-JSW, 2023 WL 105094, at *2 (N.D. Cal. Jan. 4, 2023).
17 "Uncontroverted allegations in the complaint are taken as true, but in the face of a contradictory
18 [declaration], the 'plaintiff cannot simply rest on the bare allegations of its complaint.'" *Yamashita*
19 *v. LG Chem, Ltd.*, No. 20-17512, 2023 WL 2374776, at *3 (9th Cir. Mar. 6, 2023) (quoting *Mavrix*
20 *Photo, Inc.*, 647 F.3d at 1223). "If . . . the defendant adduces evidence controverting the allegations,
21 the plaintiff must 'come forward with facts, by affidavit or otherwise, supporting personal
22 jurisdiction,' for a court 'may not assume the truth of allegations in a pleading which are
23 contradicted by affidavit.'" *Prevail Legal, Inc. v. Gordon*, No. 20-CV-07173-BLF, 2021 WL
24 1947578, at *2 (N.D. Cal. May 14, 2021). "Additionally, conclusory allegations or 'formulaic
25 recitation of the elements' of a claim are not entitled to the presumption of truth." *Id.* (quoting
26 *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). "'Nor is the court required to accept as true allegations
27 that are ... unwarranted deductions of fact, or unreasonable inferences.'" *Id.* (quoting *In re Gilead*
28 *Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

## **ARGUMENT**

Plaintiff cannot establish personal jurisdiction over the Moving Defendants in California. "'Where … no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits. California's long-arm statute is coextensive with federal due process requirements, [so] the jurisdictional analyses under state law and federal due process are the same.'" *Future Motion, Inc. v. JW Batteries LLC*, No. 21-CV-06771-EMC, 2022 WL 1304102, at *4 (N.D. Cal. May 2, 2022) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011)). "A district court's exercise of jurisdiction over a nonresident defendant comports with due process when the defendant has at least 'minimum contacts' with the forum and subjecting the defendant to an action in that forum would 'not offend traditional notions of fair play and substantial justice.'" *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Applying the "minimum contacts" analysis, "[p]ersonal jurisdiction may be either general or specific." *Garcia v. Woldemichael*, No. 21-CV-05079-DMR, 2022 WL 3590328, at *2 (N.D. Cal. Aug. 22, 2022) (citing *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017)).

Additionally, "personal jurisdiction must be established as to each individual defendant." *Parnell Pharms., Inc. v. Parnell, Inc.*, No. 5:14-CV-03158-EJD, 2015 WL 5728396, at *4 (N.D. Cal. Sept. 30, 2015). Where a party makes jurisdictional arguments generally against all or multiple defendants together, such allegations are insufficient to establish jurisdiction over any individual party. *See Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ("[J]urisdiction depends only upon each defendant's relationship with the forum. Regardless of their joint liability, jurisdiction over each defendant must be established individually."); *Zieger v. Wellpet LLC*, 304 F. Supp. 3d 837, 848-49 (N.D. Cal. 2018) ("Plaintiffs must make a prima facie showing of jurisdictional facts giving rise to specific jurisdiction over each defendant separately."). The requirement to plead individually exists even if a plaintiff may be asserting joint liability, as liability is a wholly separate and unrelated inquiry from jurisdiction. *Parnell Pharms., Inc.*, 2015 WL 5728396, at *4 ("Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum.").

1      "[C]ourts within this circuit routinely reject the use of a 'single enterprise' theory as a basis to

2  establish personal jurisdiction." *Krantz v. Bloomberg L.P.*, No. 221CV06275ABRAOX, 2022 WL

3  2102111, at \*5 (C.D. Cal. Jan. 19, 2022) (quoting *Campanelli v. Image First Unif. Rental Serv.,*

4  *Inc.*, No. 15-CV-04456-PJH, 2016 WL 4729173, at \*7 (N.D. Cal. Sept. 12, 2016) (holding that

5  "'single enterprise' and 'joint employer' theories are bases for liability, not tests for personal

6  jurisdiction.")); *Iconlab Inc. v. Valeant Pharms. Int'l, Inc.*, No. 8:16-CV-01321-JLS-KES, 2017

7  WL 7240856, at \*6 (C.D. Cal. Apr. 25, 2017) ("Plaintiffs' other, exotic theories of imputing

8  contacts—"single enterprise," "aiding and abetting," and "ratification"—are not valid theories of

9  establishing personal jurisdiction in the Ninth Circuit to the extent that they stray from the well-

10  established alter ego and agency theories)).

11  **I.   THE COURT LACKS GENERAL JURISDICTION OVER THE MOVING**
12       **DEFENDANTS**

13      "General personal jurisdiction, which enables a court to hear cases unrelated to the defendant's

14  forum activities, exists if the defendant has 'substantial' or 'continuous and systematic' contacts

15  with the forum state." *Surface Supplied Inc. v. Kirby Morgan Dive Sys., Inc.*, No. C 13-575 MMC,

16  2013 WL 2355446, at \*3 (N.D. Cal. May 29, 2013) (quoting *Brand v. Menlove Dodge*, 796 F.2d

17  1070, 1073 (9th Cir. 1986)). "The standard for establishing general jurisdiction is 'fairly high.'"

18  *Chavez v. Stellar Mgmt. Grp. VII, LLC*, No. 19-CV-01353-JCS, 2019 WL 2716292, at \*5 (N.D.

19  Cal. June 28, 2019) (citing *Menlove Dodge*, 796 F.2d at 1073) ("Our cases demonstrate that

20  'substantial' is intended to be a fairly high standard."). "General personal jurisdiction exists when

21  the defendant's contacts 'are so continuous and systematic as to render [it] essentially at home in

22  the forum state." *Chung v. Chung, et al.*, No. 22-CV-01983-BLF, 2023 WL 2250288, at \*2 (N.D.

23  Cal. Feb. 27, 2023) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "The 'paradigm'

24  for general jurisdiction over an individual is 'the individual's domicile.'" *Page*, 2023 WL 105094,

25  at \*2 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "An

26  individual's frequent **visits** to a forum, or even his owning property in a forum, do not, alone, justify

27  the exercise of general jurisdiction over him," *Elite Semiconductor, Inc. v. Anchor Smeiconductor,*

28  *Inc.*, No. 5:20-CV-06846-EJD, 2021 WL 3037701, at \*7 (N.D. Cal. July 19, 2021).

---

DEFENDANTS' MOTION FOR JUDGMENT ON
THE PLEADINGS

11

CASE No. 21-CV-09393-NC

### A. The Individual Moving Defendants[3]

None of the Individual Moving Defendants have had "substantial" or "continuous and systematic" contacts with California that would justify rendering them "at home" in California. Abraham, Rachel, Brian, Jacob, Alyssa, and Eliana are all individuals residing in Lawrence, New York. ¶ 8-13. Roy and Tova are individuals residing in Memphis, Tennessee. *Id*. at ¶ 14-15. Brian, Jacob, Alyssa, Roy, and Tova's last contact with California was over fifteen (15) years ago, and that contact was for the purpose of a vacation. *See* Exs. D, ¶ 4; E, ¶ 4; F, ¶ 4; H, ¶ 4; I, ¶ 4. Eliana made one social visit to Plaintiff's residence in California, where she was accompanied by her children, and no business was conducted. Ex. G, ¶ 6. Thus, each defendant's *single visit* with California cannot justify the exercise of general jurisdiction. *See Elite Semiconductor*, 2021 WL 3037701, at *7 (holding that "frequent visits to a forum … do not, alone, justify the exercise of general jurisdiction[.]).

Similarly, Abraham and Rachel have spent approximately twenty-four hours in California in the last fifteen (15) years, with only two (2) of those hours meeting the Plaintiff regarding a separate business. Exs. B, ¶ 10; C, ¶ 9.[4] This meeting occurred after Ariel and Plaintiff had already stopped transacting in their watch business together. *Id.* Two (2) hours of contact with the Plaintiff in California does not justify general jurisdiction over Abraham and Rachel. *See Span Const. & Eng'g, Inc. v. Stephens*, No. CIVF 06-0286 AWIDLB, 2006 WL 1883391, at *5 (E.D. Cal. July 7, 2006) (no general jurisdiction when "… Defendant was in California for work purposes between seven and fourteen days each year; Defendant communicated at least once a week with his supervisor who was in California; Defendant communicated at least once a day with his administrative

---

[3] The "Individual Moving Defendants" are Abraham Abittan, Rachel Abittan, Brian Abittan, Jacob Abittan, Alyssa Abittan, Eliana Abittan, Roy Graber, Tova Graber.

[4] Plaintiff has repeatedly claimed that this case about the watch business is factually distinct from the litigation related to the blockchain business. *See* ECF Nos. 55, 66. Even assuming, arguendo, that Abraham and Rachel did travel to California and met with Plaintiff for two (2) hours regarding this matter, that contact alone would not support an exercise of general jurisdiction. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986) (even when "[Defendant] has travelled to [forum state] on numerous occasions… frequently visits [forum state] for recreation, and … [Defendant'] has transacted a great deal of business in [forum state] …, [Defendant]'s frequent journeys into [forum state] for personal and recreational purposes would not by themselves constitute the level of contact which must exist for general jurisdiction to lie.)

1    assistant who was in California …"). These limited contacts cannot subject Abraham, Rachel,

2    Brian, Jacob, Alyssa, Eliana, Roy, or Tova to general jurisdiction in California.

3        **B.    RealTime NY, LLC**

4        The "paradigm forums" for the exercise of general jurisdiction over a corporation are "the

5    corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*,

6    581 U.S. 402, 413 (2017). General jurisdiction outside of those forums is available "[o]nly in an

7    exceptional case," *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014), where the

8    defendant's contacts are so "continuous and systematic" as to "'approximate physical presence' in

9    the forum state." *Pestmaster Franchise Network, Inc. v. Mata*, No. 16-cv-07268-EMC, 2017 WL

10   1956927, at *2 (N.D. Cal. May 11, 2017) (Chen, J.) (quoting *Mavrix Photo, Inc.*, 647 F.3d at 1223-

11   24). "'The standard for general jurisdiction is an exacting standard, as it should be, because a

12   finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer

13   for any of its activities anywhere in the world.'" *Gordon v. APM Terminals N. Am., Inc.*, No. 17-

14   CV-03970-MEJ, 2017 WL 3838092, at *5 (N.D. Cal. Sept. 1, 2017) (quoting *CollegeSource, Inc.*,

15   653 F.3d at 1074). Where a defendant business is not incorporated in the forum state and does not

16   maintain its principal place of business there, it must be "so heavily engaged in activity in [forum

17   state] 'as to render [it] essentially at home' in that State." *BNSF*, 137 S. Ct. at 1559 (quoting

18   *Daimler*, 571 U.S. at 127, 134). A defendant business's contacts will "fall well short of the requisite

19   showing for general jurisdiction" when it "has no offices or staff in California, is not registered to

20   do business in the state, has no registered agent for service of process, and pays no state [income]

21   taxes." *Mavrix Photo*, 647 F.3d at 1225; *CollegeSource*, 653 F.3d at 1074.

22       Under those standards, RealTime NY LCC is not subject to general jurisdiction in

23   California. RealTime NY LLC is formed under the laws of New York, and its principal place of

24   business is in Lawrence, New York. Ex. A, ¶¶ 1–2. It has no offices or staff in California, is not

25   registered to do business in the state, has no registered agent for service of process, and pays no

26   state income taxes. *See Mavrix Photo*, 647 F.3d at 1225; *CollegeSource*, 653 F.3d at 1074

27   ("[Plaintiff] has not satisfied the 'exacting' standard necessary to establish general jurisdiction.

28   [Defendant business] has no offices or staff in California; is not registered to do business in the

DEFENDANTS' MOTION FOR JUDGMENT ON          13          CASE NO. 21-CV-09393-NC
THE PLEADINGS

state; has no registered agent for service of process; and pays no state taxes."). Thus, RealTime NY LLC's contacts with California fall short of the requisite showing for general jurisdiction.

## II. THE COURT LACKS SPECIFIC JURISDICTION OVER THE MOVING DEFENDANTS

"Specific jurisdiction exists when the plaintiff's claims or causes of action 'arise out of or relate to' the defendant's contacts with the forum state." *Moledina*, 2022 WL 16630276, at *2. "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts … such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Chung v. Chih-Mei*, No. 22-CV-01983-BLF, 2023 WL 2250288, at *2 (N.D. Cal. Feb. 27, 2023) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)). For there to be "minimum contacts" that allow a State to assert specific jurisdiction over a nonresident defendant consistent with Due Process, "the defendant's suit-related conduct must create a *substantial* connection with the forum State." *Chubchai v. AbbVie, Inc.*, 599 F. Supp. 3d 866, 872 (N.D. Cal. 2022) (quoting *Walden*, 571 U.S. at 284) (emphasis added). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Soares v. Varner*, No. 21-CV-04526-VKD, 2022 WL 35611, at *3 (N.D. Cal. Jan. 4, 2022) (quoting *Walden*, 571 U.S. at 283–84). "[T]he relationship between the nonresident defendant, the forum, and the litigation 'must arise out of contacts that the *defendant himself* creates with the forum State.'" *Id.* (quoting *Walden*, 571 U.S. at 284).

The "[u]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Benedith v. Case W. Rsrv. Univ.*, No. 17-CV-05896-JST, 2018 WL 659412, at *2 (N.D. Cal. Jan. 31, 2018) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). Additionally, "the minimum contacts analysis examines 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Soares*, 2022 WL 35611, at *3 (quoting *Walden*, 571 U.S. at 285). "[D]efendant's conduct that must form the necessary connection with the forum State that is the basis for its

jurisdiction over him." *Id.* at *4. Due process does not allow a defendant "be haled into court 'based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State.'" *Bungie, Inc. v. Thorpe*, No. 21-CV-05677-EMC, 2023 WL 2145522, at *6 (N.D. Cal. Feb. 21, 2023) (quoting *Walden*, 571 U.S. at 286).

The Ninth Circuit analyzes specific jurisdiction according to a three-prong test: (1) the non-resident defendant must "purposefully direct" his activities towards California or a resident thereof, or perform an act which "purposefully avails" him of the privilege of conducting activities in California; (2) the plaintiff's claims "arise out of" those forum-related activities; and (3) the exercise of jurisdiction is "reasonable." *See Chung v. Chung, et al.*, No. 22-CV-01983-BLF, 2023 WL 2250288, at *3 (N.D. Cal. Feb. 27, 2023) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). "The plaintiff bears the burden on proving the first two prongs." *Id.* If plaintiff does so, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* Plaintiff cannot meet this burden.

### A. The Moving Defendants did not "purposefully avail" themselves of the privilege of conducting relevant activities in California or "purposefully direct" activities towards California

"The first prong of [the specific jurisdiction] test may be satisfied by 'purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof.'" *Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848, 854 (N.D. Cal. 2022) (quoting *Yahoo! Inc. v. La Ligue Control Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)). The "[plaintiff] must show either purposeful availment or purposeful direction by [defendant]." *Chung*, 2023 WL 2250288, at *3. "[A] showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions *in* the forum, such as executing or performing a contract there." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018) (quoting *Schwarzenegger*, 374 F.3d at 802). "By contrast, '[a] showing that a defendant purposefully directed his conduct toward a forum state … usually consists of evidence of the defendant's actions *outside* the forum state that are directed at the forum, such as the distribution

1  in the forum state of goods originating elsewhere.'" *Id.* (quoting *Schwarzenegger*, 374 F.3d at 803).

2  "[A] purposeful availment analysis is 'most often used in suits sounding in contract,' whereas a

3  purposeful direction analysis is 'most often used in suits sounding in tort.'" *Id.* (quoting

4  *Schwarzenegger*, 374 F.3d at 802).

5        Purposeful direction occurs only where a defendant "(1) committed an intentional act, (2)

6  expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

7  suffered in the forum state." *Nichols v. 360 Ins. Grp. LLC*, No. 22-CV-03899-RS, 2023 WL

8  163201, at *3 (N.D. Cal. Jan. 11, 2023) (citing *Schwarzenegger*, 374 F.3d at 803). "Failing to

9  sufficiently[] plead any one of these three elements … is fatal to Plaintiff[s'] attempt to show personal

10  jurisdiction." *Alexandria Real Estate Equities, Inc. v. Runlabs (UK) Ltd.*, No. 18-CV- 07517-LHK,

11  2019 WL 4221590, at *7 (N.D. Cal. Sept. 5, 2019) (internal quotations omitted). When determining

12  whether an intentional act was expressly aimed at the forum state, courts must only review "the

13  defendant's suit-related conduct[.]" *See Chubchai*, 599 F. Supp. 3d at 872 (quoting *Walden*, 571

14  U.S. at 284). The "'minimum contacts' analysis looks to the defendant's contacts with the forum

15  State itself, not the defendant's contacts with persons who reside there." *Bungie*, 2023 WL 2145522

16  at *5 (quoting *Walden*, 571 U.S. at 285). In other words, "[t]he plaintiff cannot be the only link

17  between the defendant and the forum; rather, the defendant's conduct must form the necessary

18  connection with the forum in order to establish jurisdiction…" *Chubchai*, 599 F. Supp. 3d at 872

19  (citing *Walden*, 571 U.S. at 285).

20        Here, there are no facts to support the position that the Moving Defendants purposefully

21  availed themselves of the privilege of doing business in California or purposefully directed their

22  activities towards California. Beyond conclusory allegations that the Moving Defendants made

23  representations as a broad scheme to convince Chen to do business with Ariel—allegations that the

24  Moving Defendants' sworn declarations expose as baseless—Plaintiff does not provide any facts

25  that show each individual defendant purposefully directed himself or herself to California. The only

26  contacts that the Moving Defendants have with California stem from family vacations from over

27  fifteen (15) years ago or short visits with Plaintiff on an unrelated matter. *See* Exs. A-I.

28

1                      1.      <u>Roy and Tova Graber</u>

2       Roy and Tova have never met Yuting Chen, nor have they ever interacted with anyone that

3 has engaged in a watch business with their son-in-law, Ariel. Exs. H, ¶ 5–6; I, ¶ 5–6. The last time

4 they were in California was over twenty (20) years ago, when they traveled there for family

5 vacation. Exs. H, ¶ 4; I, ¶ 4. The mere allegation that they "represented to Chen and her friends that

6 they owned big real-estate development business and had developed properties over billions of

7 dollars," or that "they owned numerous premier properties and the famed department store Saks

8 Fifth Avenue was their tenant," without any additional facts detailing the date, time, or place these

9 representations took place, is insufficient to establish purposeful direction. *See Sher v. Johnson*,

10 911 F.2d 1357, 1365 (9th Cir. 1990) (Where a party makes jurisdictional arguments generally

11 against all or multiple Defendants together, such allegations are insufficient to establish jurisdiction

12 over any individual party.).

13                      2.      <u>Jacob, Brian, and Alyssa Abittan</u>

14       Jacob, Brian, and Alyssa have only traveled to California for vacation once, over fifteen

15 (15) years ago. *See* Exs. D ¶ 4, E ¶ 4, F ¶ 4. The first and only time they met Plaintiff was at Jacob's

16 wedding in Rye, New York on December 10, 2017. *See* Exs. D ¶ 6, E ¶ 6, F ¶ 6. Each had a brief

17 conversation lasting approximately five minutes or less. *See* Exs. D ¶ 7, E ¶ 7, F ¶ 7. Those

18 attenuated, fortuitous introductions at Jacob's wedding do not constitute the minimum contacts due

19 process requires. *See Walden*, 571 U.S. at 285–86 ("[T]he plaintiff cannot be the only link between

20 the defendant and the forum. . . . Due process requires that a defendant be haled into court in a

21 forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or

22 attenuated' contacts he makes by interacting with other persons affiliated with the State.").

23                      3.      <u>Abraham and Rachel Abittan</u>

24       "While 'physical entry into the State … is certainly a relevant contact," a defendant's

25 transitory presence will support jurisdiction only if it was meaningful enough to 'create a substantial

26 connection with the forum State." *Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015) (finding

27 "[defendant]'s two trips to California did not create sufficient minimum contacts to subject him to

28 personal jurisdiction there."); *Medimpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, No.

---

DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS        17        CASE NO. 21-CV-09393-NC

1  19CV1865-GPC(LL), 2020 WL 1433327, at *12 (S.D. Cal. Mar. 24, 2020) (granting defendant's

2  motion to dismiss where defendant "visited [California] once to meet with [Plaintiff]… The visit

3  lasted two days and they discussed [business] … [Defendant] admits he visited California one other

4  time after 2013 that was entirely personal in nature…").

5         Abraham's two trips and Rachel's sole trip to California cannot establish that he or she

6  purposefully directed conduct towards California. Because those trips focused on the blockchain

7  business and occurred **after** Ariel and his business partner stopped transacting in their watch

8  business together, the trips did not create sufficient minimum contacts for specific personal

9  jurisdiction. Ex. B, ¶ 10–11; Ex. C, ¶ 9–10.

10              4.      Elaina Abittan

11         Similarly, Eliana's one visit, with her children, to Plaintiff's California home, during which

12  no business was conducted, is not enough to create sufficient minimum contacts to subject her to

13  personal jurisdiction. *See Medimpact Healthcare Sys., Inc*., 2020 WL 1433327 at *12 (defendant's

14  two trips to California, one business trip and one personal trip where no business was conducted,

15  was not sufficient for personal jurisdiction, even when defendant "sent mail…, sent emails…, and

16  conducted phone calls" with California residents).

17              5.      RealTime NY LLC

18         The only potential jurisdictional allegation is that RealTime NY LLC sent funds to

19  California and received funds from California. Those allegations are insufficient to confer personal

20  jurisdiction. *See Helicopteros*, 466 U.S. at 417 ("purchases and related trips, standing alone, are not

21  a sufficient basis for a State's assertion of jurisdiction").

22                              *       *       *

23

24

25

26

27

28

1  In sum, the Complaint lacks allegations showing purposeful availment or direction by any

2  Moving Defendant.[5] Even if there were such allegations, moreover, there are no allegations

3  showing how those activities gave rise to Plaintiff's claims.

4  **B.     Plaintiff's claims do not "arise out of" the Moving Defendants' forum-related**

5  **        activities**

6  "Under the second prong, in determining whether a plaintiff's claim arises out of or relates

7  to the defendant's forum-related activities, 'the Ninth Circuit' follows the 'but for' test." *Chung*,

8  2023 WL 2250288, at *3 (quoting *Menekn v. Emm*, 503 F.3d 1050 (9th Cir. 2007)). Thus, a plaintiff

9  "must show that she would not have suffered an injury 'but for' [defendant]'s California-related

10  conduct." *Id*.

11  "[A] defendant's general connections with the forum are not enough." *MGA Ent. v. Cabo*

12  *Concepts*, No. CV 20-10170 FMO (JPRx), 2021 WL 4733784, at *2 (C.D. Cal. June 7, 2021)

13  (Olguin, J.) (quoting *Bristol-Myers Squibb v. Superior Ct. of California*, 137 S. Ct. 1773, 1781

14  (2017)). If the alleged injury would have been suffered irrespective of defendant's alleged contacts

---

[5] Additionally, purposeful direction or availment cannot be established through generalized, fact-deficient allegations that co-defendant family members made representations collectively through various in person and telephonic/video "family" meetings. *See* ¶ 97; *see also Beverly Hills Reg'l Surgery v. Grp. Hospitalization & Med. Servs*., No. CV 22-01217-RSWL-MRWx, 2022 WL 1909550, at *5 (C.D. Cal. June 3, 2022) (Lew, J.) ("The alleged representations made by Defendant over the phone are also insufficient" to establish personal jurisdiction); *Hatset v. Century 21 Gold Coast Realty*, 649 F. App'x 400, 402 (9th Cir. 2016) ("[Defendant] communicated with [Plaintiff] while [Plaintiff] was physically present in California, but these communications connect only [Defendant] to [Plaintiff], not to California specifically."); *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) ("'[O]rdinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state.'"); *Hunt v. Erie Ins. Grp*., 728 F.2d 1244, 1248 (9th Cir. 1984) ("The mere fact that [defendant] communicated with [plaintiff] in the state, and may have committed a tort in the exchange of correspondence, does not show that [defendant] purposefully availed itself of the privilege of conducting business in California."). Similarly, Plaintiff's alleged contact with the Moving Defendants in New York is insufficient to establish personal jurisdiction. *See Lamont v. Pilkington*, No. 17-CV-5942-JSC, 2018 WL 2176100, at *4 (N.D. Cal. Apr. 23, 2018) ("All of the conduct alleged here occurred in New York. There is no allegation that the Defendants directed their activities toward California … Plaintiff describes his injuries as a result of Defendants' conduct at length, but he fails to demonstrate that the Defendants conducted any activities in this forum."); *Walden*, 571 U.S. at 285, 291 ("Petitioner's relevant conduct occurred entirely in Georgia, and the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.").

---

DEFENDANTS' MOTION FOR JUDGMENT ON
THE PLEADINGS

19

CASE NO. 21-CV-09393-NC

1  with the forum state, the second element has not been satisfied. *Pestmaster Franchise Network,*
2  *Inc.*, 2017 WL 1956927, at *3.

3  Plaintiff does not identify any activity that the Moving Defendants conducted in or toward
4  California that was the but-for cause of Plaintiff's alleged harms. Ariel began conducting business
5  with Plaintiff in 2016. ¶ 29. Plaintiff first met most of the Moving Defendants at Jacob's wedding
6  on December 10, 2017 (she has never met or interacted with Roy or Tova). *See* Exs. B-I. By that
7  time, Ariel and Plaintiff had already developed a business relationship together. *See* Defs' Am.
8  Answer to Compl. [ECF No. 37], at p. 11. Thus, Plaintiff cannot connect her claims to any forum-
9  related activity by Plaintiff and, in turn, cannot establish specific personal jurisdiction. *See, e.g.,*
10  *Mocha Mill, Inc. v. Port of Mokha, Inc.*, No. 18-cv-02539-HSG, 2019 WL 1048252, at *5-6 (N.D.
11  Cal. Mar. 5, 2019) ("Court finds that the operative complaint has not adequately alleged forum-
12  related activities that relate to the claims in this action.").

13  Additionally, Plaintiff has never met or interacted with Roy or Tova. Accordingly, Plaintiff
14  does not (and cannot) allege specific facts that would connect her conclusory allegations to any
15  California activity by Roy or Tova.

16  Although Abraham and Rachel did travel to California, those trips were in 2019 (three (3)
17  years after Ariel and Plaintiff began their business relationship and months after they stopped
18  transacting in the watch business), and both trips focused on Ariel's and Plaintiff's blockchain
19  business. *See* Exs. B, C. These attenuated visits to California—relating to an entirely different
20  matter and occurring **after** Ariel and Plaintiff had already stopped transacting in their watch
21  business together—cannot be the but-for cause for Plaintiff's harms. *See Picot*, 780 F.3d at 1213
22  ("[W]e hold that the oral agreement and [Defendant's] two trips to California did not create
23  sufficient minimum contacts to subject him to personal jurisdiction there.").

24  Similarly, Eliana's trip with her children to Plaintiff's home did not involve any business.
25  Ex. G, ¶ 6. Regardless, the trip was in April 2018, two (2) years after the business relationship
26  between Ariel and Plaintiff had already begun. Thus, that trip was not a but-for cause of Plaintiff's
27  alleged harm. *See id.*

28

1    Finally, the jurisdictional allegations for RealTime NY LLC do not show that the claims

2 arise from forum-related activities. Plaintiff alleges that "Ariel Abittan had used RealTime NY

3 LLC, believed to be an entity he created and controls, in transactions, sending and receiving funds

4 using via bank account in its name to defraud Chen." ¶ 49. Even if those transactions were related

5 to California, there are no allegations identifying liability or damage arising from those specific

6 transactions in California. *See Pestmaster Franchise Network, Inc.*, 2017 WL1956927 at *3 ("The

7 second prong demands that the claim arise out of the defendant's forum-related activities.").

8    **C.    The exercise of jurisdiction over the Moving Defendants in California would**
9         **be unreasonable[6]**

10    "Jurisdiction may be exercised reasonably if under the totality of the circumstances the

11 defendant could reasonably anticipate being called upon to present a defense in a distant forum."

12 *Monster Energy Co. v. Metro Giant, Inc.*, No. EDCV202616JGBSHKX, 2021 WL 3524125, at *6

13 (C.D. Cal. Apr. 9, 2021) (quoting *Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*, 828 F.2d 1439,

14 1442 (9th Cir. 1987)). The Ninth Circuit has identified seven relevant factors in determining the

15 reasonableness of asserting jurisdiction over a nonresident defendant: "(1) the extent of the

16 defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of

17 defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state;

18 (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution

19 of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and

20 effective relief; and (7) the existence of an alternative forum." *Lin v. Solta Med., Inc.*, No. 21-CV-

21 05062-PJH, 2022 WL 2222987, at *4 (N.D. Cal. June 21, 2022) (quoting *CollegeSource*, 653 F.3d

22 at 1079).

23    "[T]he smaller the element of purposeful interjection the less is jurisdiction to be anticipated

24 and the less reasonable is its exercise." *LeGarie v. Nurse*, No. 21-CV-04739-JCS, 2021 WL

25 ─────────────
[6] Because Plaintiff cannot establish the first two prongs of the personal jurisdiction analysis, the
26 Court need not consider the "reasonableness" prong. *Hudson-munoz, LLC v. U.S. Waffle Co., Inc.*,
No. 2:19-cv-01960-ODW (RAO), 2019 WL 3548919, at *4 (C.D. Cal. Aug. 5, 2019) ("As Plaintiff
27 has not made a prima facie showing of the first two prongs of specific jurisdiction, the Court does
not reach the issue of reasonableness."). Nonetheless, the exercise of personal jurisdiction over the
28 Moving Defendants would be unreasonable.

DEFENDANTS' MOTION FOR JUDGMENT ON          21          CASE No. 21-CV-09393-NC
THE PLEADINGS

5771144, at *9 (N.D. Cal. Dec. 6, 2021) (quoting *Ins. Co. of N. Am. v. Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981)). "Although sovereignty interests may carry significant weight when jurisdiction is asserted over a defendant from a foreign country, the importance of this factor with respect to state sovereignty is minimal." *United Fabrics Int'l v. Metro 22*, No. CV 14-6969 MRW, 2015 WL 12670376, at *5 (C.D. Cal. Mar. 6, 2015) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 841 (9th Cir. 1986)). Additionally, "the plaintiff's convenience is not of paramount importance." *Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884, at *10 (N.D. Cal. Apr. 20, 2020) (quoting *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1116 (9th Cir. 2002)). Finally, "[p]laintiffs bear the burden of proving the unavailability of an alternative forum." *Id.* (quoting *Freestream Aircraft (Bermuda) Ltd.*, 905 F.3d at 609).

Under those factors, it is not reasonable to drag any of the Moving Defendants into California litigation. No Moving Defendant has personally interjected himself or herself into California. It would be a burden for them to defend this case in California. They have rarely traveled to California. *See* Exs. B ¶ 10, C ¶ 9, G ¶ 6. Exs. D ¶ 4, E ¶ 4, F ¶ 4, H ¶ 4, I ¶ 4.

Although the Court *may* have some interest in determining causes of actions asserted by a California resident, there has been no purposefully directed activity at California, and most of Plaintiff's contact with the Moving Defendants occurred in New York (if at all). Finally, the most efficient judicial resolution of this matter would not occur in California, as eight (8) of the named Defendants reside in Lawrence, New York. ¶ 8–13, 16.

Thus, the balance of these factors demonstrates that the exercise of jurisdiction in California would not be reasonable for the Moving Defendants. Judgment on the pleadings should be granted, and the claims against the Moving Defendants should be dismissed.

## III.     THE JURISDICTIONAL DEFICIENCIES CANNOT BE CURED

"Dismissal with prejudice and without leave to amend is appropriate when any amendment would be futile." *Atkinson v. Meta Platforms, Inc.*, No. 20-17489, 2021 WL 5447022, at *3 (9th Cir. Nov. 22, 2021); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (holding "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend."); *Jibreel v. Hock Seng Chin*, No. C 13-03470 LB, 2014 WL 12600278, at *3 (N.D. Cal. Apr. 17, 2014), *report and*

1   *recommendation adopted*, No. 13-CV-03470-JST, 2014 WL 12617420 (N.D. Cal. May 5, 2014)

2   (citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)) ("Dismissal

3   of a complaint without leave to amend should be granted only where the jurisdictional defect cannot

4   be cured by amendment."); *Krantz*, 2022 WL 2102111, at *6 (denying leave to amend and granting

5   motion to dismiss with prejudice for lack of personal jurisdiction, when plaintiff relies on "'single

6   entity' and 'joint employer' theories" of personal jurisdiction, and when "[p]laintiff simply relies

7   on conclusory allegations, and fails to present evidence that contradicts the declarations filed by

8   [d]efendant…").

9        The Complaint's jurisdictional deficiencies are incurable. Given the sworn testimony

10   presented by the Moving Defendants, there is no good faith amendment that would establish

11   minimum contacts between the Moving Defendants and California. Simply put, those contacts

12   never existed. Thus, Defendants' Motion should be granted with prejudice.

13                       **CONCLUSION**

14        For the reasons stated above, Defendants respectfully request that the Court grant judgment

15   on the pleadings and dismiss, with prejudice, the claims against the Moving Defendants.

16

17   Dated: March 24, 2023               Respectfully Submitted,

18                            */s/ Constantine P. Economides*
                              Constantine P. Economides (*pro hac vice*)

19                             Brianna K. Pierce (CBN 336906)
                            FREEDMAN NORMAND

20                             FRIEDLAND LLP
                            1 SE Third Avenue, Suite 250

21                             Miami, Florida 33131
                            Tel: (305) 971-5943

22                             Email: ceconomides@fnf.law
                                 bpierce@fnf.law

23                             *Counsel for Defendants*

24

25

26

27

28

# EXHIBIT 11

Motion for judgment on the pleadings, <u>ECF No. 83</u>, in the Underlying Action

1    Constantine P. Economides (*pro hac vice*)
     (Florida Bar No. 118177)
2    Brianna K. Pierce
     (CA Bar No. 336906)
3    FREEDMAN NORMAND
     FRIEDLAND LLP
4    1 SE 3rd Avenue, Suite 1240
     Miami, FL 33131
5    Tel: (305) 971-5943
     Email: ceconomides@fnf.law
6            bpierce@fnf.law

7    *Counsel for Defendants*

8                    **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**
9                        **SAN JOSE DIVISION**

10

11   YUTING CHEN,                          Case No. 21-CV-09393-NC

12                  Plaintiff,

13          v.                             **DEFENDANT ARIEL ABITTAN'S**
                                           **MOTION FOR JUDGMENT ON THE**
14   ARIEL ABITTAN, ABRAHAM ABITTAN,       **PLEADINGS**
     RACHEL ABITTAN, BRIAN ABITTAN,
15   JACOB ABITTAN, ALYSSA ABITTAN,        Date:   May 24, 2023
     ELIANA ABITTAN, ROY GRABER, TOVA      Time:   1:00 p.m.
16   GRABER, REALTIME NY LLC, a New York   Judge:  Hon. Nathanael Cousins
     Limited Liability Company, and DOES 1-20,   Place:  Courtroom 5, 4th Floor
17   inclusive.

18                  Defendants.

19

20

21

22

23

24

25

26

27

28

1  **TO THE COURT AND TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

2      PLEASE TAKE NOTICE that on, May 24, 2023, at 1:00 p.m. or as soon thereafter as the

3  matter may be heard in the courtroom of the Honorable Nathanael M. Cousins, located at the

4  United States District Court for the Northern District of California, 280 South First Street, 4th

5  Floor, San Jose, California 95113, Defendant Ariel Abittan will, and hereby does, move the Court

6  for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), on the grounds that Plaintiff's

7  claims against Defendant Ariel Abittan must be dismissed because Plaintiff was required to assert

8  her claims against Defendant Ariel Abittan as compulsory counterclaims in the pending state court

9  action.

10      This Motion is based upon this Notice of Motion, the accompanying Memorandum of

11  Points and Authorities, the Declaration of Constantine P. Economides and the exhibit attached

12  thereto, the Request for Judicial Notice, filed concurrently herewith, all of the pleadings, papers

13  and records of this action, all matters upon which judicial notice may be taken, on such oral

14  argument and evidence that may be presented at the hearing on this Motion, as well as upon such

15  other and further matters, papers, and arguments as may be submitted to the Court.

16  Dated: April 18, 2023                    */s/ Constantine P. Economides*
                                            Constantine P. Economides (*pro hac vice*)
17                                          Brianna K. Pierce (CBN 336906)
                                            FREEDMAN NORMAND
18                                          FRIEDLAND LLP
                                            1 SE Third Avenue, Suite 250
19                                          Miami, Florida 33131
                                            Tel: (305) 971-5943
20                                          Email: ceconomides@fnf.law
                                                      bpierce@fnf.law
21
22                                          *Counsel for Defendants*

23

24

25

26

27

28

---

DEFENDANT ARIEL ABITTAN'S MOTION                          Case No. 21-CV-09393-NC
FOR JUDGMENT ON THE PLEADINGS

### INTRODUCTION

This case involves Yuting Chen's ("Chen") claims, against Ariel Abittan ("Abittan"), arising out of the same transactions and occurrences underlying Abittan's claims against Chen in state court. On November 3, 2021, in the Superior Court of Santa Clara County, Abittan asserted claims, against Chen, involving their luxury watch business. One month later, on December 3, 2021, Chen filed this action, raising claims against Abittan (and Abittan's family members) involving the same luxury watch business.

Pursuant to Section 426.30(a) of the California Code of Civil Procedure, therefore, Chen must assert her claims against Abittan as compulsory counterclaims in the pending state court action. Because Chen has not done so, her claims against Abittan must be dismissed.

### STATEMENT OF ISSUE TO BE DECIDED

Abittan moves the Court for a judgment on the pleadings, under Rule 12(c) of the Federal Rules of Civil Procedure, because the claims must have been brought as compulsory counterclaims in earlier-filed state court litigation.

### FACTUAL BACKGROUND

On November 3, 2021, a month before Chen filed her complaint, Abittan filed a cross-complaint, asserting multiple claims against Chen (and others) in the Superior Court of the State of California, County of Santa Clara, Case No. 20-cv-372622 (the "State Action"). *See* Exhibit 1.[1] The claims arose from, *inter alia*, Chen's and Abittan's business venture of buying and reselling high-end, including Patek Philippe. *Id.* at ¶¶ 39-42. To purchase these watches, Abittan would wire his share of the money to a bank account controlled by Chen. *Id.* at ¶ 43. Chen, at times, paid her portion for the watch purchases, but at other times, Chen used Abittan's credit cards to pay her portion. *Id.* Eventually, Abittan discovered that Chen was engaged in a fraudulent scheme, and as a result, Abittan filed claims against Chen in the State Action.

On December 3, 2021, Chen commenced this litigation against Abittan based on the same business venture. *See* [ECF No. 1] at ¶ 24. Chen's allegations and claims explicitly address the

---

[1] All citations to "Exhibit" refer to the exhibit attached to the Declaration of Constantine P. Economides, filed concurrently herewith.

parties' luxury watch business, as well as Chen's use of Abittan's credit cards. *See id.* at ¶ 29-54, 58-59.

In sum, the State Action and this action—both with Chen and Abittan as adverse parties— involve overlapping transactions and occurrences. Thus, as explained below, Chen was required to file her claims against Abittan in the State Action, and this action against Abittan must be dismissed.

## **LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A judgment on the pleadings is properly granted when, 'taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 833, 887 (9th Cir. 2017) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)). "This standard is 'functionally identical' to the standard for determining a motion to dismiss under Rule 12(b)(6)." *Moledina v. Marriott Int'l, Inc.*, No. 222CV03059SPGJPR, 2022 WL 16630276, at *1 (C.D. Cal. Oct. 17, 2022) (quoting *Gregg*, 870 F.3d at 887).

"Because a Rule 12(c) motion is 'functionally identical' to a Rule 12(b)(6) motion, 'the same standard of review applies to motions brought under either rule.'" *Gregg*, 870 F.3d at 887 (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054n.4 (9th Cir. 2011)). And "[a] court may also consider, on a Rule 12(c) motion, facts that are contained in materials of which the court may take judicial notice." *Williams v. City of Antioch*, No. C 08-02301 SBA., 2010 WL 3632199, at *2 (N.D. Cal. Sept. 2, 2010) (citation and internal quotations omitted); *see also*, *Emberton v. San Francisco Gov.*, No. 22-cv-05440-TSH, 2023 WL 2010951, at *3 (N.D. Cal. Feb. 15, 2023) ("Generally, a court may not consider any material beyond the pleadings in ruling on a Rule 12(c) motion, but a 'court may consider facts that are contained in materials of which the court may take judicial notice.'").

<u>**ARGUMENT**</u>

**I.** **CHEN'S CLAIMS AGAINST ABITTAN MUST BE BROUGHT IN THE PENDING STATE ACTION**

Chen's claims against Abittan must be dismissed because they are compulsory counterclaims in the earlier-filed State Action. Section 426.30(a) of the California Code of Civil Procedure ("CCP") provides:

> [I]f a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded.

*See* Cal. Code Civ. Proc. § 426.30(a). Courts in the Ninth Circuit have held "that section 426.30 is 'outcome determinative' and therefore substantive law applicable in federal court." *Abittan v. Chao*, No. 20-cv-09340-NC, at 7 (N.D. Cal. July 19, 2021); *see also Minna v. Washer*, No. 09-cv-1373-DOC (ANx), 2010 WL 11595820, at *3 (C.D. Cal. May 5, 2010) (explaining that CCP § 426.30 applies in federal court because "procedural rules of preclusive effect are different, since their application may implicate principles of *res judicata* or collateral estoppel"); *Laguna Beach Sober Living, LLC v. City of Dana Point*, No. 19-cv-00024-AG (JDEx), 2020 WL 947946, at *2 (C.D. Cal. Jan. 6, 2020) ("Though state procedural rules don't usually apply in federal court, [CCP § 426.30] governs whether a federal claim should've been asserted as a compulsory counterclaim in an earlier-filed state court action."); *see also Pochiro v. Prudential Ins. Co. of America*, 827 F.2d 1246, 1249–50 (9th Cir. 1987) (holding that Arizona's similar compulsory counterclaim statute applies in federal court).

The term "complaint" as used in CCP § 426.30 includes a cross-complaint. *See* Cal. Code. Civ. Pro. § 426.10(a). Moreover, the term "related" as used in CCP § 426.30 means a cause of action that "arises out of the same transaction, occurrence, or series of transactions or occurrences" as the claims alleged in the prior complaint. *See* Cal. Code. Civ. Pro. § 426.10(c). "[T]he purpose of California's compulsory counterclaim statute is to prevent "piecemeal litigation. Because of the liberal construction given to the statute to accomplish its purpose of avoiding a multiplicity of actions, 'transaction' is construed broadly; it is not confined to a single, isolated act or occurrence

1    but may embrace a series of acts or occurrences logically interrelated." *AEG Holdco LLC v.*

2    *Vazquez*, No. 2:21-cv-05290-VAP (AGRx), 2021 WL 4859975, at *9 (C.D. Cal. Sept. 22, 2021).

3    More specifically, "relevant inquiry is whether the claims are logically related, that is, whether

4    there are any factual or legal issues relevant to both [sets of] claims[.]" *Id.* It "is not outcome

5    determinative" whether the claims in both actions are identical; rather, the question is whether the

6    factual or legal issues are logically related. *See id.* at *10; *see also ZF Micro Devices, Inc. v. TAT*

7    *Capital Partners, Ltd.*, 5 Cal. App. 5th 69, 82 (2016) (broadly construing the "relatedness

8    requirement" of CCP § 426.30 and holding that causes of action arise out of the "same transaction

9    or occurrence" if the factual or legal issues are logically related). "At the heart of the approach is

10    the question of duplication of time and effort; <u>i.e.</u>, are any factual or legal issues relevant to both

11    claims?" *Vazquez*, 2021 WL 4859975, at *9.

12        Under those standards, Chen's claims in this action must be brought in the State Action.

13    Both actions involve the same transactions and occurrences. In this case, Chen alleges that Abittan

14    breached obligations and committed fraud as to a luxury watch business and the use of Abittan's

15    credit cards. *See* [ECF No. 1] at ¶¶ 29-54, 58-59. In the State Action, Abittan alleges that Chen

16    breached obligations and committed fraud as to a luxury watch business and the use of Abittan's

17    credit cards. *See* Exhibit 1 at ¶¶ 85-96, 110-117. In both actions, moreover, Chen and Abittan,

18    respectively, assert claims for breach of contract, fraud, unjust enrichment, and accounting.

19    *Compare* Exhibit 1 at ¶¶ 248-52, 241-47, 213-16, 217-220 *with* [ECF No. 1] at ¶¶ 68-72, 90-99,

20    105-09, 118-20.

21        Thus, the State Action and this action are logically related, and Chen's claims are

22    compulsory counterclaims that, under CCP § 426.30, must be bought in the pending State Action.

23    Accordingly, this Court must dismiss Chen's claims against Abittan.

24    **II.    THE JURISDICTIONAL DEFICIENCIES CANNOT BE CURED**

25        "Dismissal with prejudice and without leave to amend is appropriate when any amendment

26    would be futile." *Atkinson v. Meta Platforms, Inc.*, No. 20-17489, 2021 WL 5447022, at *3 (9th

27    Cir. Nov. 22, 2021); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (holding "[f]utility of

28    amendment can, by itself, justify the denial of a motion for leave to amend."); *Lopez v. Smith*, 203

1   F.3d 1122, 1130 (9th Cir. 2000) ("In addition, we have repeatedly held that 'a district court should

2   grant leave to amend even if no request to amend the pleading was made, unless it determines that

3   the pleading could not possibly be cured by the allegation of other facts.'").

4          The Court should decline to grant leave to amend. There are no additional facts Chen could

5   plead in good faith to prevent the application of CCP § 426.30. *See Abittan v. Chao*, No. 20-cv-

6   09340-NC, at 10 (N.D. Cal. July 19, 2021) ("Here, the Court declines to grant leave to amend

7   because there are no facts Abittan could plead to prevent these claims from being compulsory in

8   the state action under section 426.30."). Consequently, the dismissal should be with prejudice.

9                                    <u>**CONCLUSION**</u>

10         For the reasons stated above, Abittan respectfully requests that the Court grant judgment

11   on the pleadings and dismiss, with prejudice, the claims against Abittan.

12   Dated:   April 18, 2023                    Respectfully Submitted,

13                                              */s/ Constantine P. Economides*
                                                Constantine P. Economides (*pro hac vice*)
14                                              Brianna K. Pierce (CBN 336906)
                                                FREEDMAN NORMAND
15                                              FRIEDLAND LLP
                                                1 SE Third Avenue, Suite 250
16                                              Miami, Florida 33131
                                                Tel: (305) 971-5943
17                                              Email: ceconomides@fnf.law
                                                          bpierce@fnf.law
18
                                                *Counsel for Defendants*
19

20

21

22

23

24

25

26

27

28

# EXHIBIT 12

Order dismissing case with conditions, ECF No. 92, in the Underlying Action

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUTING CHEN, | Case No. 21-cv-09393 NC |
| Plaintiff, | **ORDER DISMISSING CASE WITH CONDITIONS** |
| v. | |
| ARIEL ABITTAN, and others, | |
| Defendants. | |

At a hearing today in open court, counsel for Plaintiff Yuting Chen moved to voluntarily dismiss this case with prejudice under Fed. R. Civ. P. 41(a)(2). Under that provision, an action may be dismissed only by court order, on terms that the court considers proper. The Court GRANTS dismissal with prejudice, with conditions set forth in this order. The Court retains jurisdiction to address the following issues. Defendants may file a motion for award of fees, costs, and sanctions by May 11, 2023; opposition due May 24, 2023; hearing May 31, 2023, at 11:00 a.m. in courtroom 5.

The parties also have until May 3, 2023, to jointly or separately propose a protective order to regulate certain documents that were produced in the case.

Counsel for Chen additionally stated a request to withdraw from the case. Supporting information must be filed by May 11, 2023 (including whether client agrees or objects; new counsel; or if Chen will be self-represented), and notice provided to Chen; response by May 24, 2023; hearing May 31, 2023, at 11:00 a.m. in courtroom 5.

1      The Court denied the other discovery issues in ECF 90 as moot in light of the

2  dismissal.  The Court vacated the April 27 deposition of Chen.  The Clerk must terminate

3  ECF 75, 83 and 90 without prejudice and administratively close this case.

4      IT IS SO ORDERED.

5      Date: April 26, 2023                    _____

6                                               Nathanael M. Cousins
                                                 United States Magistrate Judge

# EXHIBIT 13

Motion for sanctions, fees, and costs, <u>ECF No. 101</u>, in the Underlying Action

Constantine P. Economides (*pro hac vice*)
(Florida Bar No. 118177)
Brianna K. Pierce
(CA Bar No. 336906)
FREEDMAN NORMAND
FRIEDLAND LLP
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Tel: (305) 971-5943
Email: ceconomides@fnf.law
        bpierce@fnf.law

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| YUTING CHEN, | Case No. 21-cv-09393-NC |
| PLAINTIFF, | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS, FEES, AND COSTS** |
| v. | |
| | Date: May 31, 2023 |
| | Time: 11:00 a.m. |
| ARIEL ABITTAN, ABRAHAM ABITTAN, RACHEL ABITTAN, BRIAN ABITTAN, JACOB ABITTAN, ALYSSA ABITTAN, ELIANA ABITTAN, ROY GRABER, TOVA GRABER, REALTIME NY LLC, a New York Limited Liability Company, and DOES 1-20, inclusive | Judge: Hon. Nathanael Cousins |
| | Place: Courtroom 5, 4th Floor |
| DEFENDANTS. | |

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................2

II.    RELEVANT FACTS.......................................................................................3

   A. THE CONCEALMENT OF YUTING CHEN'S IDENTITY AND OF THE
       BASIS FOR FILING THIS THIRD ACTION .......................................... 3

   B. THE CHRONIC FAILURE TO PROVIDE PROPER INITIAL DISCLOSURES
       SUPPORTING YUTING CHEN'S CLAIMS..........................................7

III.   LEGAL STANDARD ...................................................................................8

   A. SANCTIONS UNDER THE COURT'S INHERENT POWERS ...................... 8

   C. SANCTIONS UNDER 28 U.S.C. § 1927 ...................................... 10

   D. SANCTIONS UNDER RULE 37...................................................... 10

   E. COSTS UNDER RULE 54.............................................................. 10

IV.   ARGUMENT................................................................................................11

   A. YUTING CHEN AND HER COUNSEL INITIATED AND MAINTAINED A
       FRIVOLOUS, HARASSING ACTION IN BAD FAITH AND, THEREFORE,
       ARE SUBJECT TO SANCTIONS UNDER THE COURT'S INHERENT
       AUTHORITY, 28 U.S.C. § 1927, AND RULE 37. ....................... 11

      1.  To Justify the Commencement of This Separate Action, Yuting Chen and Her
         Counsel Misrepresented Yuting Chen's Identity and, in Turn, Her Relationship to
         Abittan...............................................................................................................11

      2.  Yuting Chen and Her Counsel Manufactured Frivolous Allegations and Claims to
         Harass Abittan and His Family Members ........................................................15

      3.  Yuting Chen and Her Counsel Refused To Provide Evidence Supporting The
         Commencement or Maintenance of This Action or Rebutting the Evidence Submitted By
         Defendants........................................................................................................18

         i.  Yuting Chen and Her Counsel Opposed an Immediate pre-Rule 26(f)
            Conference Deposition That Would Have Promptly Revealed this Case's
            Procedural and Substantive Impropriety ................................................. 18

         ii.  Yuting Chen Refused to Rebut Abittan's and the Family Defendants'
            Sworn Declarations ................................................................................. 18

         iii. Yuting Chen's Counsel Provided Contradictory Information About
            Yuting Chen's Availability for a Deposition in May 2022 ...................... 19

- i -

iv.  As Her Deposition Approached in the State Temujin Action, Yuting Chen and Her Counsel Filed a Strategic, Unmeritorious Motion to Disqualify Abittan's Counsel .................................................................................... 19

v.  After the Disqualification Motion Failed, Yuting Chen's Counsel Withdrew and Further Delayed the Identity Depositions Which Would Have Negated Yuting Chen's Allegations ......................................................... 20

vi.  To Prevent Yuting Chen's Identity Deposition in the State Temujin Action, Yuting Chen's New Counsel Filed a Frivolous Motion Arguing that Yuting Chen Was Not a Party to the Case. ............................................ 20

vii.  To Prevent Yuting Chen's Deposition as Plaintiff in this Action, Yuting Chen and Her Counsel Filed a Frivolous Motion to Stay Discovery..................... 20

viii. Yuting Chen and Her Counsel Have Prevented Service of a Subpoena for a Deposition in the related Abittan Action Before This Court. ......................... 21

ix.  Yuting Chen, Lily Chao, Damien Ding, and Their Shared Counsel Failed to Appear for a Properly Noticed Deposition on Yuting Chen's Identity in the State Temujin Action. ........................................................................ 21

B.  THE COURT SHOULD HOLD YUTING CHEN AND HER ATTORNEYS JOINTLY AND SEVERALLY LIABLE FOR DEFENDANTS' ATTORNEYS' FEES AND COSTS ........................................................................................ 22

C.  DEFENDANTS RESPECTFULLY REQUEST LEAVE TO FILE SUPPLEMENTAL BRIEFING AND EVIDENCE AS TO THE AMOUNT OF FEES AND COSTS ........................................................................................ 23

D.  IF THE COURT BELIEVES THERE ARE MATERIAL, UNANSWERED FACTUAL ISSUES, DEFENDANTS REQUEST AN EVIDENTIARY HEARING ........................................................................................ 24

V.  CONCLUSION ........................................................................................ 25

DEFENDANTS' MOTION FOR
SANCTIONS, FEES, AND COSTS

CASE NO. 21-CV-09393-NC

# **TABLE OF AUTHORITIES**

**Cases**

*AF Holdings LLC v. Navasca*,
 No. C-12-2396 EMC, 2013 WL 3815677 (N.D. Cal. July 22, 2013)..........................................11

*Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*,
 16-MC-80076-JSC, 2016 WL 7212308 (N.D. Cal. Dec. 13, 2016) ..........................................26

*Bowen v. Garland*,
 122CV00402SKOHC, 2022 WL 2672477 (E.D. Cal. July 11, 2022), *report and
 recommendation adopted*, 122CV00402AWISKOHC, 2022 WL 17405867 (E.D. Cal. Dec. 2,
 2022) .........................................................................................................................................10

*DNA Sports Performance Lab, Inc. v. Major League Baseball*,
 C 20-00546 WHA, 2020 WL 6290374 (N.D. Cal. Oct. 27, 2020), *aff'd sub nom. Nix v. Major
 League Baseball*, 20-17283, 2022 WL 4482455 (9th Cir. Sept. 27, 2022) ..............................24

*EZconn Corp. v. PCT Int'l, Inc.*,
 CV-16-00508-PHX-NVW, 2018 WL 6738844 (D. Ariz. Nov. 1, 2018) .....................................9

*Full Tilt Boogie LLC v. Kep Fortune LLC*,
 219CV09090ODWKESX, 2021 WL 7285992 (C.D. Cal. Dec. 28, 2021) .................................24

*Guild Mortgage Co. LLC v. CrossCountry Mortgage LLC*,
 C21-1376-JCC-MLP, 2022 WL 18999842 (W.D. Wash. Dec. 6, 2022), report and
 recommendation adopted, C21-1376-JCC-MLP, 2023 WL 1860663 (W.D. Wash. Feb. 9, 2023)
 .....................................................................................................................................................9

*Harris v. Engels*,
 CV 19-5590-PA (KK), 2021 WL 4699538 (C.D. Cal. Aug. 6, 2021).......................................10

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
 18-MD-02843-VC, 2023 WL 1871107 (N.D. Cal. Feb. 9, 2023) ........................................9, 10

*Interstate Petroleum Corp. v. Morgan*,
 249 F.3d 215 (4th Cir.2001) ...................................................................................................16

*Kaass Law v. Wells Fargo Bank, N.A.*,
 799 F.3d 1290 (9th Cir. 2015) ...............................................................................................25

*Krause v. Krause*,
 121CV01706JLTSAB, 2023 WL 2541912 (E.D. Cal. Mar. 16, 2023), *report and
 recommendation adopted*, 121CV01706JLTSAB, 2023 WL 2760903 (E.D. Cal. Apr. 3, 2023)
 (quoting 28 U.S.C. § 1927)......................................................................................................10

- iii -

*Lake v. Hobbs*,
 CV-22-00677-PHX-JJT, 2022 WL 17351715 (D. Ariz. Dec. 1, 2022)......................................10

*Lambright v. Ryan*,
 698 F.3d 808 (9th Cir. 2012) .............................................................................................26

*Lampkin v. Cnty. of Sacramento*,
 220CV01204JAMJDP, 2022 WL 3327469 (E.D. Cal. Aug. 11, 2022) ...................................18

*Nguyen v. Wells Fargo, N.A.*,
 20-CV-07991-EMC, 2022 WL 17738734 (N.D. Cal. Dec. 16, 2022) ........................................9

*Orthopaedic Hosp. v. Encore Med., L.P.*,
 319CV00970JLSAHG, 2021 WL 5449041 (S.D. Cal. Nov. 19, 2021) ...................................10

*Phillips v. P.F. Chang's China Bistro, Inc.*,
 No. 15-CV-00344-RMW, 2016 WL 3136925 (N.D. Cal. June 6, 2016) .................................11

*Primus Automotive Fin. Servs., Inc. v. Batarse*,
 115 F.3d 644 (9th Cir. 1997) .................................................................................................9

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
 531 U.S. 497 (2001)...............................................................................................................16

*Shalaby v. BernzOmatic*,
 311CV00068AJBDHB, 2021 WL 308339 (S.D. Cal. Jan. 29, 2021) ...................................25

*State Bank of Texas v. Parabia*,
 14-CV-3031-L-DHB, 2021 WL 1170210 (S.D. Cal. Mar. 29, 2021) ...................................26

*Steel Co. v. Citizens for a Better Env't*,
 523 U.S. 83 (1998)...............................................................................................................16

*United Studios of Self Def., Inc. v. Rinehart*,
 SACV181048DOCDFMX, 2020 WL 1230621 (C.D. Cal. Feb. 10, 2020)..............................24

**Other Authorities**

28 U.S.C...............................................................................................................................11, 25

Fed. R. Civ. P. 54.......................................................................................................................11

Fed.R.Civ.P. 41...........................................................................................................................16

- iv -

1    **TO THE COURT AND TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

2         PLEASE TAKE NOTICE, that, pursuant to Civil Local Rules 7-8, 7-2, and 37-4, and this

3    Court's April 26, 2023 Order (ECF No. 92), on May 31, 2023 at 11:00 a.m., or as soon thereafter

4    as the matter may be heard in the courtroom of the Honorable Nathanael M. Cousins, located at the

5    United States District Court for the Northern District of California, 280 South First Street, 4th Floor,

6    San Jose, California 95113, Defendants Ariel Abittan, Abraham Abittan, Rachel Abittan, Brian

7    Abittan, Jacob Abittan, Alyssa Abittan, Eliana Abittan, Roy Graber, Tova Graber, and Realtime

8    NY LLC (collectively, "Defendants") will and hereby do move the Court for an order granting

9    sanctions, fees, and costs.

10        This Motion is made on the grounds that, pursuant to the Court's inherent authority, 28

11   U.S.C. § 1927, and Fed. R. Civ. P. 37 and 54, Plaintiff Yuting Chen and her past and present

12   counsel, jointly and severally, should be sanctioned and ordered to pay the full attorneys' fees and

13   costs that Defendants incurred in this frivolous, harassing, and needlessly-prolonged litigation.

14        This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and

15   Authorities; the Declaration of Constantine P. Economides and the exhibits annexed thereto, filed

16   concurrently herewith; the pleadings and papers on file in this action; any matters upon which the

17   Court may take judicial notice; the arguments of counsel; and any other matter the Court may

18   properly consider.

19   Dated: May 15, 2023              **FREEDMAN NORMAND FRIEDLAND LLP**

20                                    */s/ Constantine P. Economides*
                                      Constantine P. Economides (pro hac vice)
21                                    (Florida Bar No. 118177)
                                      Brianna Pierce (CA Bar No. 336906)
22                                    1 SE 3rd Avenue, Suite 1240
                                      Miami, Florida 33131
23                                    Tel: (305) 851-5997
                                      Email: ceconomides@fnf.law
24                                           bpierce@fnf.law

25                                    *Counsel for Defendants*

26

27

28

## I. INTRODUCTION

From its inception, this case involved frivolous allegations, harassment, and bad faith by Plaintiff Yuting Chen and her current and former counsel. They filed this case to retaliate against Ariel Abittan ("Abittan") for his good faith, accurate claims and cross-claims in the related cases. They sued Abittan's wife, parents, siblings, and parents-in-law—even though those family members were never involved in Abittan's luxury watch business. As a pretext to commence a third action, they falsely claimed that Abittan knew he had two female business partners—one involved with the watch business and the other with the cryptocurrency business, Findora—and that Abittan's questions about identity were feigned.

But the web of lies has finally started to unravel. Lily Chao's testimony confirmed that Abittan's allegations of identity mischief were spot on. She admitted that she had repeatedly lied to Abittan (and his wife) about her, Damien Ding's, and Yuting Chen's identities; had never revealed her or Yuting Chen's true names to Abittan; had sometimes used the alias "Tiffany Chen" while Yuting Chen used the same alias; and had shared a phone and phone number with Yuting Chen, without disclosing that material fact to people with whom they texted from that number.

Despite representing Yuting Chen, Lily Chao, and Damien Ding—and, therefore, having access to those damning facts—counsel never corrected the record. For 17 months of litigation, Yuting Chen and her counsel never even attempted to take discovery in this action or prove their version of events. When Defendants submitted sworn declarations denying the allegations, Yuting Chen and her counsel unsuccessfully moved to strike. When Abittan raised these foundational identity issues, Yuting Chen and her counsel accused him of fabrications. When Abittan demanded proper initial disclosures, Yuting Chen and her counsel consistently provided insufficient, contradictory information. And when Abittan sought to depose Yuting Chen at the outset of the case and thereafter, her counsel raised every possible obstacle, including strategic withdrawals, a frivolous motion to stay discovery, and then a voluntary dismissal with prejudice.

The record evidences frivolous allegations, harassment, and bad faith—all architected by an evolving coterie of counsel who forced Defendants to needlessly incur substantial attorneys'

fees and costs. For the reasons set forth herein, therefore, Defendants seek sanctions against Yuting Chen and her current and former counsel for the full amount of attorneys' fees and costs incurred in this frivolous case.

## II.   RELEVANT FACTS[1]

### A.   The Concealment of Yuting Chen's Identity and of the Basis for Filing This Third Action

On December 24, 2020, Abittan asserted claims related to his luxury watch business and blockchain business (d/b/a "Findora") against "Lily Chao (a/k/a Tiffany Chen a/k/a Yuting Chen)." *See Ariel Abittan v. Lily Chao, et al.*, United States District Court, Northern District of California, Case No. 20-cv-09340-NC (the "Abittan Action")*,* [ECF No. 1] at ¶¶ 41-56, 203-209. On November 3, 2021, Abittan asserted cross-claims against "Yuting Chen a/k/a Tiffany Chen a/k/a Lily Chao" in a related state court action initiated by Temujin Labs, Inc. *See Temujin Labs Inc. v. Ariel Abittan, et al.*, Santa Clara Superior Court, Case No. 20-cv-372622 (the "Temujin Action"). In both actions, Abittan alleged that his former, fraudulent partners used aliases to obfuscate their identities. But Abittan was unequivocal about a key point: his partners for the luxury watch business and Findora had included one woman, using the name Lily Chao (and other aliases) and one man, using the name Damien Ding (and other aliases). In other words, Abittan did not have separate partners for the watch business and Findora. Accordingly, when a woman named Yuting Chen filed this third action on December 3, 2021—and alleged claims relating solely to the watch business but not Findora—Defendants questioned Plaintiff's identity. On March 31, 2022, counsel for Defendants wrote to counsel for Plaintiff, stating: "Your clients have taken the position— informally and in sworn court documents—that Yuting Chen is not the person Ariel Abittan knew as Tiffany Chen or Lily Chao. We have repeatedly asked you and your colleagues to substantiate this allegation via identifying documents or a brief identity-focused deposition." Ex. A at 2.[2]

---

[1] Defendants incorporate the entire records from this case, the Abittan Action, and the Temujin Action. These facts are not exhaustive but summarize certain critical events underlying this motion.
[2] All citations to "Ex." refer to exhibits attached to the Declaration of Constantine P. Economides, filed concurrently herewith.

- 3 -

Following two failed meet and confers about clarifying Plaintiff's identity, on April 13, 2022, Defendants filed a motion for administrative relief (ECF No. 28), together with a joint discovery letter relating to Defendants' request for pre-Rule 26(f) conference deposition of Yuting Chen for the purpose of identification (ECF No. 29). Defendants stated:

> In sum, A. Abittan was engaged in one watch business with one woman between 2016 and 2020 and that person used the name Lily Chao, Tiffany Chen, and Yuting Chen at different times in different contexts. Until that person identifies herself under oath, Defendants are left wondering exactly who Plaintiff is. If she is not the woman who used the names "Lily Chao" and "Tiffany Chen," then she has no connection to A. Abittan's watch business. Yet, a person named Lily Chao is represented by counsel, has appeared in the Abittan Action, and is defending against A. Abittan's claims as to the watch business.

[ECF 29] at 3.

Plaintiff opposed the opportunity to clarify Plaintiff's identity and accused Abittan of an "absurd attempt to manufacture confusion [by] conflating the two women as one." [ECF 29] at 4. Instead of resolving the identity issue—and, in turn, issues of whether the claims should be part of the Abittan Litigation or Temujin Litigation—at an early stage (so that the parties were not needlessly dragged through litigation), Plaintiff and her counsel argued that Plaintiff's identity should be "born out in the normal course of discovery." *Id.*

On May 2, 2022, counsel for all parties participated in the Rule 26(f) conference, at which time Defendants' counsel reiterated Defendants' need for an immediate deposition of Yuting Chen and requested deposition dates.[3] Plaintiff's counsel did not provide a date and would not commit to providing a deposition date for Plaintiff.[4] After three more attempts to coordinate Plaintiff's deposition date, Plaintiff's counsel responded, stating:

---

[3] Prior to the parties consenting to magistrate jurisdiction, the Court did not rule on Defendants' motion for administrative relief before the deadline to file a response to the Complaint. On April 25, 2022, Defendants filed their answer; preserved their rights and defenses under Rules 12(b)(2), 12(b)(3), 12(b)(6), and 12(b)(7); and did not consent to personal jurisdiction. [ECF 32].

[4] In a further effort to impede the discovery that would clarify Plaintiff's identity, Plaintiff sought and obtained a stay of Lily Chao's and Damien Ding's depositions in the Abittan Case based on the pretext that identity-based depositions would be part of a narrowed pre-mediation discovery plan in the Temujin Action. However, Plaintiff unsuccessfully sought to stop that deposition and ultimately failed to appear.

- 4 -

Tragically, Yuting Chen's mother in China just suffered a stroke. Yuting will be flying to China ASAP to take care of her mother in China through the end of July [2022].

We investigated possibly having Yuting's deposition be taken by Zoom while she is in China, but, unfortunately, according to the U.S. State Department such depositions are not permitted . . . .

\*       \*       \*

Thus, the earliest Ms. Chen can appear for deposition when she returns from China, and for when we are available, is August 18 or 19. Please let us know which of those days work for you so we can get the deposition calendared.

Ex. B at 7-8.

On May 16, 2022, Defendants filed an amended answer, as of right, and attached sworn declarations negating the Complaint's allegations. Each Defendant stated that they had not met a person named "Yuting Chen." Some of the Defendants stated that they had, on very limited occasions, met Abittan's business associate who used the names "Tiffany Chen" and "Lily Chao." *See* [ECF Nos. 37 – 37-9].

On September 27, 2023, the parties filed a joint case management statement, wherein Plaintiff's (and Chao's) counsel stated: "[Abittan knows that Lily Chao ('Chao') and Yuting Chen ('Chen') are two separate individuals. [Abittan] also knows that the watch business involved Chen, whereas the crypto business involved Chao." [ECF no. 57] at 6-7. Plaintiff's counsel also stated that they had filed a motion to disqualify Abittan's counsel in the Temujin Action, that discovery should not proceed in that action until the motion was resolved, and that discovery should not proceed before this Court given the pre-mediation discovery plan.[5] *Id.* at 36-37.

Defendants reiterated their lack of clarity on Plaintiff's identity and noted that "[d]epending on [Plaintiff's] identity, Chen Case Defendants cannot rule out filing a motion for sanctions pursuant to Rule 11[.]" [ECF no. 57] at 17. Defendants further indicated that they intended to promptly schedule Plaintiff's deposition (given her purported return from China). *Id.* at 38.

---

[5] Notably, Plaintiff filed the motion to disqualify Abittan's counsel on the date she was court-ordered to produce identification documents, including her passport and driver's license. The filing of the motion to disqualify also stayed Lily Chao's and Damien Ding's depositions in the state action. In other words, the meritless motion to disqualify was filed as a pretext to avoid giving Abittan the evidence needed to substantiate Plaintiff's identity (and verify her misrepresentations).

- 5 -

On November 16, 2022, Judge Kulkarni tentatively denied Plaintiff's motion to disqualify Abittan's counsel, thereby opening the door to identity depositions.[6] But, as another attempt to avoid depositions, Plaintiff's counsel filed a substitution of counsel on November 22, 2022.

On January 6, 2023, Judge Kulkarni issued a final order denying the disqualification motion. On January 27, 2023, the parties met and conferred about a date for Plaintiff's deposition. During the meet and confer, Defendants' counsel reminded Plaintiff's counsel that Defendants had been attempting to schedule Plaintiff's deposition since February 2021, but that the deposition was postponed due to Plaintiff's trip to China. Plaintiff's counsel stated orally and, later in writing, that Plaintiff had not been in China in the summer of 2021 and that Defendants' counsel were fabricating that assertion. *See* Ex. B at 6. Finally, on February 28, 2023, Plaintiff's counsel agreed to produce Chen for a deposition on April 27, 2023, and requested an interpreter. Ex. C at 1.

In the interim, on March 30 and 31, 2023, Abittan deposed Lily Chao and Damien Ding on identity issues in the Temujin Action. During their depositions, Abittan finally obtained critical information about the identities of Lily Chao, Damien Ding, and Yuting Chen. Abittan confirmed that the deponents appearing as Lily Chao and Damien Ding were Abittan's former partners in the watch business and Findora. *See, generally, Exs. D, E.*

According to Chao's and Ding's testimony, moreover, Yuting Chen is a woman who had been introduced to Abittan as "Selena Chen." Ex. D at 139:22-140:24; Ex. E at 93:1-93:5; *see also,* Ex. E at 101:24-103:15. "Selena Chen" (*i.e.*, Plaintiff) lived at 69 Isabella Ave., where Ariel had stayed and conducted business with Lily Chao and Damien Ding. *See* Ex. D at 104:21-105:1; Ex. E at 142:1-142:3. However, Abittan never did any business with Selena Chen, who spoke Mandarin and very limited English. *See, e.g.,* Ex. F at 97:24-98:17, 103:4-103:9. Furthermore, the identity depositions confirmed that Lily Chao and Damien Ding repeatedly misrepresented their names and biographies to Abittan. *See, e.g.*, Ex. D at 153:21-154:8; Ex. E at 91:5-92:25. In other words,

---

[6] On November 16, 2022, Judge Kulkarni issued a tentative ruling denying Plaintiff's motion to disqualify Abittan's counsel, thereby opening the door to identity depositions.[6] But in yet another calculated attempt to avoid depositions, on November 22, 2022, Plaintiff's counsel filed a substitution of counsel.

- 6 -

Abittan's "confusion" as to identities arose directly from Lily Chao's and Damien Ding's lies about identities. *See* Section IV.A.1, *infra*.

On April 25, 2023—two days before her deposition that had been agreed-to two months prior—Yuting Chen filed an improper motion to stay her deposition, which this Court promptly denied. [ECF No. 88]. On April 26, 2023, Plaintiff requested to voluntarily dismiss her claims—purportedly worth $10 million in damages (*see* [ECF No. 2])—with prejudice. *See* [ECF No. 92].

### B. The Chronic Failure to Provide Proper Initial Disclosures Supporting Yuting Chen's Claims

On January 19, 2023, the parties filed a joint case management statement, wherein Defendants reiterated the identity issues, preserved their personal jurisdiction defenses, and raised deficiencies in Plaintiff's initial disclosures. [ECF No. 66]. On January 20, 2023, the Court ordered the parties to meet and confer about the initial disclosures and raise any remaining disputes in a joint discovery letter brief by January 31, 2023. [ECF No. 67]. Defendants raised numerous deficiencies, including Plaintiff's repeated omission of identifying information, such as Plaintiff's own phone number and address. Defendants also raised Plaintiff's failure to produce documents in support of her damages claims, despite representing that she possessed financial statements and documents in support of her damages calculation. [ECF No. 68]. On February 8, 2023, the parties appeared at an initial disclosures hearing, and the Court granted Defendants' request for supplemental witness, document, and damages disclosures. [ECF No. 70].

Plaintiff then served deficient supplemental disclosures. *See* [ECF No. 71]. For example, in a continued attempt to avoid providing information about her identity, Plaintiff represented that her documents could be located at her attorneys' office; however, Plaintiff's counsel later clarified that they were not actually in possession of Plaintiff's documents and, therefore, that the representation made to the Court in the supplemental disclosures was false. *See id.* On March 8, 2023, the parties appeared at an initial disclosures hearing, and the Court granted Defendants' request for supplemental initial disclosures. [ECF No. 73].

- 7 -

On March 22, 2023, and March 27, 2023, respectively, Plaintiff served (and filed) third and fourth supplemental disclosures. [ECF Nos. 74, 76]. Plaintiff identified 69 Isabella Avenue as her address (*i.e.*, the infamous address underlying substantial motion practice about service of process in the Abittan Action). *See* (Abittan Case, ECF Nos. 53-55, 61-64, 72-74, 77, 78, 83-87, 99, 103, 113). Indeed, on July 9, 2021, Yuting Chen had previously filed a sworn declaration in the Abittan Action, stating that she had "occasionally stated at the property at 69 Isabella Avenue in Atherton prior to this year, and act as an informal manager of the property, but no one has lived there in 2021." Abittan Action, [ECF No. 74].

On March 29, 2023, the parties filed a joint discovery letter. [ECF No. 77]. On April 12, 2023, the parties appeared at a third initial disclosure hearing and the Court ordered Plaintiff to supplement her disclosures with her personal residence and held that Plaintiff's "damages disclosures are conclusory, elusive, and deficient." [ECF No. 82].

On April 18, 2023, Plaintiff served and filed fifth supplemental disclosures. [ECF No. 86]. Following a meet and confer, Plaintiff served (but did not file) sixth supplemental disclosures. Ex. G. On March April 25, 2023, the parties filed a joint discovery letter to inform the Court that deficiencies remained. [ECF No. 90]. Plaintiff's sixth amended disclosures remain deficient, in large part, because Plaintiff failed to provide a category of damages for each cause of action or adequate supporting documentation, as she had been repeatedly ordered to do.

### III.  LEGAL STANDARD[7]
#### A.  SANCTIONS UNDER THE COURT'S INHERENT POWERS

"A court may impose sanctions under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 18-MD-02843-VC, 2023 WL 1871107, at *20 (N.D. Cal. Feb. 9, 2023). "Before

---

[7] In addition the sources cited herein, Rule 11 provides the Court with discretion to *sua sponte* impose sanctions if certain procedural requirements are met. *See, e.g., Guild Mortgage Co. LLC v. CrossCountry Mortgage LLC*, C21-1376-JCC-MLP, 2022 WL 18999842, at *10 (W.D. Wash. Dec. 6, 2022), report and recommendation adopted, C21-1376-JCC-MLP, 2023 WL 1860663 (W.D. Wash. Feb. 9, 2023). Because Plaintiff voluntarily dismissed with prejudice before her deposition— which would have provided additional confirmation of egregious, sanctionable conduct— Defendants did not serve a Rule 11 motion and trigger the safe harbor prior to the dismissal.

DEFENDANTS' MOTION FOR SANCTIONS, FEES, AND COSTS

CASE NO. 21-CV-09393-NC

1    imposing sanctions, the court must find that the conduct 'constituted or was tantamount to bad

2    faith.'" *Id.* at \*20 (quoting *Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th

3    Cir. 1997)).

4         "[B]ad faith, including conduct done vexatiously, wantonly, or for oppressive reasons,

5    requires proof of bad intent or improper purpose." *Nguyen v. Wells Fargo, N.A.*, 20-CV-07991-

6    EMC, 2022 WL 17738734, at \*1 (N.D. Cal. Dec. 16, 2022). Nonetheless, "[b]ad faith . . . is not

7    restricted to situations where the action was filed in bad faith. Bad faith may also be found in the

8    conduct of the litigation." *Id.* at \*1. Indeed, "[a] finding of bad faith does not require proof of total

9    frivolousness; where a litigant is motivated substantially by intent to deceive, the assertion of a

10   colorable claim will not bar assessment of attorney fees." *EZconn Corp. v. PCT Int'l, Inc.*, CV-16-

11   00508-PHX-NVW, 2018 WL 6738844, at \*10 (D. Ariz. Nov. 1, 2018).

12        "Conduct that is tantamount to bad faith includes recklessness when combined with an

13   additional factor such as frivolousness, harassment, or an improper purpose." *Smith v. Chanelo*,

14   116CV01356NONEBAMPC, 2021 WL 107221, at \*3 (E.D. Cal. Jan. 12, 2021). "Th[e] standard

15   may be met when a party misrepresents the law or the facts to the court." *In re Facebook*, 2023 WL

16   1871107, at \*20. The standard "may also be met when a party acts for an improper purpose—even

17   if the act consists of making a truthful statement or a non-frivolous argument or objection." *Id*. For

18   example, "[a] party demonstrates bad faith by delaying or disrupting the litigation or hampering

19   enforcement of a court order." *Harris v. Engels*, CV 19-5590-PA (KK), 2021 WL 4699538, at \*5

20   (C.D. Cal. Aug. 6, 2021). Additionally, "[s]anctions may be imposed . . . for repeatedly making

21   arguments that have been rejected." *In re Facebook*, 2023 WL 1871107, at \*20.

22        Furthermore, "[f]raud on the court is an example of bad faith conduct meriting sanctions

23   under the court's inherent authority." *MacKinnon v. Gray*, 118CV00964DADHBK, 2022 WL

24   198397, at \*9 (E.D. Cal. Jan. 21, 2022). "[S]anctions are warranted if it is established by clear and

25   convincing evidence that [a party] has sentiently set in motion some unconscionable scheme

26   calculated to interfere with the judicial system's ability impartially to adjudicate the action." *Bowen

27   v. Garland*, 122CV00402SKOHC, 2022 WL 2672477, at \*4 (E.D. Cal. July 11, 2022).

28

- 9 -

1

### B. SANCTIONS UNDER 28 U.S.C. § 1927

"'Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Krause v. Krause*, 121CV01706JLTSAB, 2023 WL 2541912, at *26 (E.D. Cal. Mar. 16, 2023) (quoting 28 U.S.C. § 1927). "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Id.* at *27. "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Id.* "Sanctions based on recklessness must be accompanied by a finding that the objectionable conduct is frivolous or was intended to harass." *Kari Lake v. Hobbs*, CV-22-00677-PHX-JJT, 2022 WL 17351715, at *3 (D. Ariz. Dec. 1, 2022).

### C. SANCTIONS UNDER RULE 37

"If the Court grants a motion to compel discovery, Rule 37 of the Federal Rules of Civil Procedure provides that 'the court must, after giving an opportunity to be heard, require the party [ ] whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.'" *Orthopaedic Hosp. v. Encore Med., L.P.*, 319CV00970JLSAHG, 2021 WL 5449041, at *5 (S.D. Cal. Nov. 19, 2021). "The party contesting the discovery sanction on a properly brought motion under Rule 37(a)(5) bears the burden of establishing substantial justification or that other circumstances make an award of expenses unjust." *Id.* "Ultimately, the imposition of Rule 37 sanctions is 'left to the sound discretion' of the Court." *Id.*

### D. COSTS UNDER RULE 54

Irrespective of bad faith, "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "[A] prevailing party is presumptively entitled to costs of litigation." *Phillips v. P.F. Chang's China Bistro, Inc.*, No. 15-CV-00344-RMW, 2016 WL 3136925, at *3 (N.D. Cal. June 6, 2016). A defendant is the prevailing party entitled to costs after a plaintiff voluntarily dismisses the case with prejudice. *See AF Holdings LLC v. Navasca*, No. C-

- 10 -

12-2396 EMC, 2013 WL 3815677, at *1-5 (N.D. Cal. July 22, 2013) (granting costs to defendant as prevailing party after voluntary dismissal with prejudice).

Here, Plaintiff dismissed the case with prejudice, rendering Defendants to be prevailing parties. In addition to the requested sanctions, therefore, Defendants also seek costs under Rule 54.

## IV.    ARGUMENT

### A.    YUTING CHEN AND HER COUNSEL INITIATED AND MAINTAINED A FRIVOLOUS, HARASSING ACTION IN BAD FAITH AND, THEREFORE, ARE SUBJECT TO SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY, 28 U.S.C. § 1927, AND RULE 37.

There are <u>three</u> primary indicators of bad faith conduct giving rise to sanctions under the Court's inherent authority and 28 U.S.C. § 1929. <u>First</u>, to justify the commencement of this separate action, Yuting Chen and her counsel misrepresented her identity and, in turn, her relationship to Abittan. <u>Second</u>, Yuting Chen and her counsel manufactured frivolous allegations and claims to harass Abittan and his family members. <u>Third</u>, Yuting Chen and her counsel refused to provide evidence supporting the commencement or maintenance of this action or rebutting the evidence submitted by Defendants.

#### 1.    <u>To Justify the Commencement of This Separate Action, Yuting Chen and Her Counsel Misrepresented Yuting Chen's Identity and, in Turn, Her Relationship to Abittan</u>

On December 3, 2021, Yuting Chen and her counsel commenced this new action, despite the existence of the Abittan Action and the Temujin Action involving allegations and claims over the same watch business. *See, generally,* Complaint [ECF No. 1]. In the earlier-filed Abittan Action, Abittan had already alleged claims about the watch business against "Lily Chao (a/k/a Tiffany Chen, a/k/a Yuting Chen)." Abittan Action, Amended Complaint, [ECF No. 149] ¶¶ 41-56, 203-209. In the earlier-filed Temujin Action, Abittan had already alleged cross claims about the same watch business against Yuting Chen (a/k/a Tiffany Chen a/k/a Lily Chao). *See, e.g.*, Temujin Action, Cross Complaint ¶¶ 39-44. In both actions, Abittan alleged, in good faith, that he had engaged in the watch business—as well as the related blockchain business—with one woman who had purposefully and repeatedly used aliases, including the names of Lily Chao, Tiffany Chen, and

- 11 -

1    Yuting Chen. *See* Abittan Action, [ECF No. 149] ¶ 3 n1, 183-191; Temujin Action, Cross-

2    Complaint, ¶¶ 14, 38.[8]

3           Given that context, Yuting Chen and her counsel lacked a basis to commence a third

4    overlapping action. *See* Abittan Action, [ECF No. 78]. Nonetheless, Yuting Chen and her counsel

5    *repeatedly* provided the same justification to the Defendants, their counsel, and this Court:

6    •    Lily Chao and Yuting Chen were different people;

7    •    Lily Chao had worked on the blockchain business only, whereas Yuting Chen had
          worked on the watch business only;
8

9    •    Abittan knew the truth about Lily Chao's and Yuting Chen's identities but was
          feigning confusion;

10   •    Even if there were legitimate questions as to identity, Abittan could seek answers
          through the normal course of discovery.
11

     More specifically, Yuting Chen and her counsel represented:

12   •    <u>April 13, 2022:</u>"[I]n his absurd attempt to manufacture confusion and
          conflating the two women as one, a necessity to buttress those otherwise
13        unsustainable actions, but a  hindrance in this matter, defendant A.
          Abittan has taken a new position that plaintiff in this matter, Yuting Chen,
14        is not the same person that he sued under his cross-complaint in a separate
          statement matter, Lily Chao.
15                                          *        *        *

16        This action was clearly filed by "Yuting Chen" –not "Lily Chao" or
          "Tiffany Chen." So there is no basis for A. Abittan to claim any confusion
17        or mistake as to who is suing him and the other defendants in this matter. If
          Mr. Abittan asserts that there has been any confusion concerning Ms.
18        Chen's identity, that can be born out in the normal course of discovery.
          [ECF No. 29] at 4.

19   •    <u>April 18, 2022:</u>"There is one plaintiff in this action. Her name is Yuting
          Chen. Any alleged lack of clarity about Ms. Chen's identity can be fleshed
20        out during the course of traditional discovery – discovery permitted after
          the Rule 26(f) conference. As stated in the Joint Discovery Letter dated,
21        April 13, 2022 (Dkt, 29), which plaintiff incorporates by reference, there is
          no need to conduct early discovery before Defendants respond to the
22        complaint. Defendants have failed to identify the specific questions that
          they would ask Ms. Chen if they deposed her concerning her identity and
23        indeed such a deposition would undoubtedly snowball into the merits of her
          claims. If any such discovery is allowed, defendant Ariel Abittan should be
24        ordered to sit for deposition instead of the plaintiff and/or any third party.

25   ────────────────────

26   [8] *See also* [ECF No. 29] at 3:1-3:4 ("In sum, A. Abittan was engaged in one watch business with
     one woman between 2016 and 2020 and that person used the name Lily Chao, Tiffany Chen, and
27   Yuting Chen at different times in different contexts. Until that person identifies herself under oath,
     Defendants are left wondering exactly who Plaintiff is. If she is not the woman who used the names
28   "Lily Chao" and "Tiffany Chen," then she has no connection to A. Abittan's watch business.")

Ms. Chen is not confused about any of the defendants' identities – she knows exactly who she sued." [ECF No. 30] at 2.

- <u>September 27, 2022</u>: "[Abittan knows that Lily Chao ('Chao') and Yuting Chen ('Chen') are two separate individuals. [Abittan] also knows that the watch business involved Chen, whereas the crypto business involved Chao." [ECF no. 57] at 6-7.

- <u>January 19, 2023</u>: "Abittan Case Plaintiff's complaint starts out by falsely identifying the Defendants in the action. Abittan Case Plaintiff knows that Lily Chao ("Chao") and Yuting Chen ("Chen") are two separate individuals. Plaintiff also knows that the watch business involved Chen, whereas the cryptocurrency business involved Chao." [ECF No. 66] at 4.

As evidenced by the sworn testimony of Abittan, Lily Chao, and Damien Ding, those representations by Yuting Chen and her counsel were false. During her identity-related deposition on March 30, 2023, Lily Chao testified that:

- Her legal name was Yang Rong (Ex. D at 18:15-25, 26:5-6);

- She repeatedly used aliases, including the names "Lily Chao," "Selena Chen," "Tiffany Chen," and "Yuting Chen" (*id.* at 140:1-16);

- Lily Chao had stayed at 69 Isabella Ave. with Damien Ding and had represented that house to be her home while Abittan had visited to discuss business (*id.* at 151:19-25, 152:2);

- Lily Chao had told Abittan that Damien Ding was her husband and that they were the parents of the 2 children also staying at 69 Isabella Ave. (*id.* at 152:4-9, 153:21-25, 154:1-3);

- Lily Chao had told Abittan that the other woman staying at 69 Isabella Ave. was named "Selena Chen" (*id.* at 139:22 -140:24);

- In reality, Lily Chao had never been married to or romantically involved with Damien Ding (*id.* at 53:24-25, 54:1-10);

- In reality, Yuting Chen was the woman whom Lily Chao had introduced to Abittan as Damien Ding's "sister" named "Selena Chen" (*id.* at 140:19-24) ;

- In reality, that woman was Damien Ding's ex-wife and the mother of the children, who had no biological or legal relationship to Lily Chao (*id.* at 78:16-18);

- Lily Chao and Yuting Chen had both used the alias "Tiffany Chen" (*id.* at 150:5-7);

- Lily Chao had never had her own cell phone account in the U.S. and, instead, had used an account and phone number in Yuting Chen's name with a phone that Yuting Chen let her use (*id.*);

- Lily Chao had done business with Abittan using that shared cell phone and cell phone number (*id.*);

- 13 -

- At times, while Lily Chao was using that cell phone and cell phone number, Yuting Chen had also used that phone and number (*id.* at 150:8-14);

- Lily Chao never told people, including Ariel, that she was using Yuting Chen's phone or phone number (*id.* at 105:15-19);

- Lily Chao was not a U.S. citizen but no longer possessed her Chinese passport because she had sent it, with her U.S. visa, to China with a friend (*id.* at 83:1-84:12);

- Lily Chao was a "contributor" to the blockchain business, did not remember or know much about the business, and had invested less than Yuting Chen who had a greater role in that business (*id.* at 35:16-25, 106:16-25, 107:1-12);

- Lily Chao could not "remember" selling luxury watches with Abittan—but did not state that she had no involvement with the luxury watch business (*id.* at 141:14-143:24).

During his deposition, moreover, Damien Ding did not contradict that testimony. *See, e.g.*, Ex. E at 83:5-13, 84:2-85:10, 91:11-16.

In contrast to Lily Chao and Damien Ding, Abittan willingly testified, reiterated his allegations under oath, and concealed nothing. *See, generally*, Ex. J. Abittan confirmed that the woman testifying as "Yang Rong" a/k/a "Lily Chao" was the woman with whom Abittan (and his wife and kids) had stayed at 69 Isabella Ave. and with whom Abittan had partnered on the luxury watch and blockchain ventures. *Id.* at 65:19-68:22.

This evidence confirms that Yuting Chen and her counsel made false representations to the Court, that counsel did not conduct adequate due diligence into the allegations, and that Yuting Chen and her counsel filed and maintained this action in bad faith. When interacting with Abittan, Lily Chao **purposefully** obfuscated her name, marital status, parental status, and phone numbers. She shared an alias, phone number, phone, and address with the non-English-speaking woman now claiming to be Yuting Chen. Abittan's allegations and representations to the Court about obscured identities arose solely from his experience dealing with those striking lies.

Furthermore, Yuting Chen, Lily Chao, Damien Ding, and the Temujin entities have consistently shared counsel, who should have easily confirmed the truth behind their clients' identities and strategic uses of aliases. Even a cursory inquiry by counsel would have revealed impropriety as to the representations made by Lily Chao, Damien Ding, and Yuting Chen. Instead, counsel repeatedly impugned Abittan's careful, well-sourced, and accurate representations.

- 14 -

1    Indeed—in a particularly damning misstep by Yuting Chen and her counsel—Yuting

2    Chen's consent to withdrawal confirms the falsity of the critical assertion that "the watch business

3    involved Chen, whereas the crypto business involved Chao." [ECF no. 57] at 6-7. Yuting Chen's

4    purported consent shows that her counsel sent that document for e-signature to the email address

5    selena@findora.org and that a person using the email address provided the e-signature. [*See* ECF

6    No. 93-1.]. If Yuting Chen worked solely on the watch business and not Findora, then Yuting

7    Chen's email address would **not** be "@findora.org." And if these individuals did not use aliases,

8    then Yuting Chen's email address would not be "selena@findora.org."

9    In sum, Yuting Chen and her counsel filed a procedurally frivolous action, and as a

10   justification, they falsely represented to the Court that Abittan was fabricating disputes as to the

11   parties' identities. This extraordinary, baseless conduct constitutes bad faith and warrants sanctions.

12       **2.   Yuting Chen and Her Counsel Manufactured Frivolous Allegations and
              Claims to Harass Abittan and His Family Members**

13

14   Yuting Chen and her counsel initiated and maintained this action to harass Abittan and the

15   Family Defendants. The relatively sparse docket (given that Yuting Chen refused to engage in

16   discovery) demonstrates that the claims were not warranted by existing law or nonfrivolous

17   arguments, that the factual allegations lacked evidentiary support, and that the factual allegations

18   were not likely to have evidentiary support after a reasonable opportunity for further investigation.

19   Specifically, three sets of filings demonstrate that the claims are frivolous and harassing.

20   First, the Family Defendants' motion for judgment on the pleadings reveals that Yuting

21   Chen and her counsel had no basis to prosecute this suit against the Family Defendants. *See* ECF

22   Nos. 75, 79, 80. In March 2023, the Family Defendants filed a well-researched and factually

23   supported 22-page motion for judgment on the pleadings based on a lack of personal jurisdiction.

24   *See* [ECF No. 75]. In support, the Family Defendants relied on their sworn testimony previously

25   submitted with their Amended Answer [ECF No. 37].

26   In response, Yuting Chen and her counsel filed a 5-page opposition raising frivolous and

27   non-sensical arguments that conflated subject-matter jurisdiction, personal jurisdiction, and venue:

28
                                    - 15 -

While Plaintiff urges the Court that it would be inappropriate to dismiss any of the Moving Defendants under the instant Motion, if the Court does so, it should be without prejudice and with leave to amend. This would be inappropriate. A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits. *See* Fed.R.Civ.P. 41(b); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998); *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 222 (4th Cir.2001). Therefore, even if Moving Defendants' motion is granted, it should be without prejudice and with leave to amend.

Further in the alternative, if the Court does find that venue in the Northern District of California is not proper, Moving Defendants, the plurality of them (along with the non-moving Defendant Ariel Abittan) are residents of the Southern District of New York, and Plaintiff requests that the matter be transferred to that jurisdiction.

[ECF No. 79]. Worse yet, they failed to identify individualized jurisdictional allegations or facts for each of the individual Family Defendants. *See id*. In response to the Family Defendants' sworn testimony ([see ECF No. 37]), moreover, Yuting Chen submitted a scant 6-paragraph declaration providing vague references as to only Abraham, Rachel, and Eliana Abittan and falling woefully short of meeting the burden to establish personal jurisdiction over any of the Family Defendants. *See* [ECF No. 79-1]. Thus, Yuting Chen's Complaint and briefing reveal an absence of legal support, factual support, or colorable arguments.

Second, beyond the issue of personal jurisdiction, the Family Defendants' unrebutted declarations confirm that Yuting Chen's suit was frivolous. Each Family Defendant provided sworn testimony indicating that:

- they had never interacted with a woman who introduced herself as Yuting Chen;

- some (but not all) had met a "Tiffany Chen"—primarily at a Jacob Abittan's wedding in New York—who had engaged in a watch business with Abittan;

- they were not involved in Abittan's watch business and had not otherwise engaged in the conduct or made the false statements alleged by Yuting Chen.

*See* ECF Nos. 37-3 - 37-10. Other than her deficient declaration regarding personal jurisdiction (see [ECF No. 79-1], Yuting Chen has never provided testimony supporting her claims or rebutting the Family Defendants' declarations.

Third, Yuting Chen and her counsel repeatedly failed to provide adequate initial disclosures. By April 24, 2023, they had served their "sixth amended initial disclosures," replete with omissions

- 16 -

and inconsistencies. *See* [ECF Nos. 74, 76, 86]; *see* Ex. G. Critically, they repeatedly refused to provide basic information such as Plaintiff's personal address, phone number, or documents supporting damages. They had no legitimate reason to repeatedly withhold or obfuscate the basic information purportedly supporting their claims for $10,000,000 in damages. *See* [ECF No. 2]. Consequently, Yuting Chen's and her counsel's conduct indicates that they lacked even the most basic evidentiary support for the claims against Abittan and his family.

Finally, Abittan's motion for judgment on the pleadings reveals that, pursuant to CCP § 426.30(a), any viable claims against Abittan should have been brought in the state Temujin Action. *See* [ECF No. 83]. In the Abittan Action, this Court previously held "that section 426.30 is 'outcome determinative' and therefore substantive law applicable in federal court." *Abittan v. Chao*, No. 20-cv-09340-NC, at 7 (N.D. Cal. July 19, 2021).[9] That same standard, therefore, applies to this action:

> In this case, Chen alleges that Abittan breached obligations and committed fraud as to a luxury watch business and the use of Abittan's credit cards. In the State Action, Abittan alleges that Chen breached obligations and committed fraud as to a luxury watch business and the use of Abittan's credit cards. In both actions, moreover, Chen and Abittan, respectively, assert claims for breach of contract, fraud, unjust enrichment, and accounting. Thus, the State Action and this action are logically related, and Chen's claims are compulsory counterclaims that, under CCP § 426.30, must be bought in the pending State Action.

[ECF No. 83] (internal citations omitted). Yuting Chen and her counsel lacked a viable argument in opposition to this motion, and before responding, they dismissed the case with prejudice.

In sum, those facts reveal an unrebutted conclusion: as harassment in retaliation for Abittan's credible claims in the Abittan and Temujin Actions, Yuting Chen and her counsel commenced a frivolous case. Using Abittan's parents, siblings, wife, and parents-in-law as leverage, Yuting Chen and her counsel aimed to pressure Abittan to relinquish his well-founded claims. At every turn, moreover, they evaded a simple deposition of the sole plaintiff, which likely could have resulted in dismissal at the outset of the litigation. When Abittan and his family were on the eve of obtaining damning testimony exposing this case as a sham, Yuting Chen dismissed her case with prejudice, and her counsel sought to withdraw. That conduct reflects frivolous

---

[9] Abittan had raised colorable good faith, albeit unmeritorious, arguments to oppose the application of § 426.30 to the Abittan Action. *See* Abittan Action, [ECF No. 78].

- 17 -

allegations, the unreasonable and vexatious multiplication of the proceedings, harassment, and bad faith. Thus, sanctions are proper. *See, e.g., Lampkin v. Cnty. of Sacramento*, 220CV01204JAMJDP, 2022 WL 3327469, at *2 (E.D. Cal. Aug. 11, 2022) (awarding sanctions where "Plaintiffs' counsel maintained their erroneous position without any reasonably competent investigation for over 18 months, requiring Defendant's counsel to expend time and resources defending this frivolous claim.").

### 3. Yuting Chen and Her Counsel Refused To Provide Evidence Supporting The Commencement or Maintenance of This Action or Rebutting the Evidence Submitted By Defendants

If she were a plaintiff acting in good faith, Yuting Chen should have been eager to prove her case. Throughout the litigation, however, she and her counsel actively evaded a deposition and other discovery through which she could have supported her claims and debunked Abittan's assertions. In reality, Yuting Chen and her counsel were hiding from the revelation that the case was frivolous and the product of bad faith. As described below, there were at least <u>nine</u> instances of dilatory tactics, obfuscation, or other impropriety that prolonged the revelation of the truth.

i. Yuting Chen and Her Counsel Opposed an Immediate pre-Rule 26(f) Conference Deposition That Would Have Promptly Revealed this Case's Procedural and Substantive Impropriety

As soon as this case was filed, Abittan sought a pre-Rule 26(f) Conference deposition of Yuting Chen. *See* [ECF No. 29]. Through that deposition, Abittan and his counsel could have expeditiously confirmed the relevant facts. Abittan could have identified the deponent, asked about the identities of his business partners in pictures he took while visiting 69 Isabella Ave., and authenticated numerous texts in which he discussed the luxury watch and blockchain ventures with a person using the name "Lily Chao." Instead of welcoming the opportunity to prove her case or to dismantle Abittan's "absurd attempt to manufacture confusion and conflating the two women as one," Yuting Chen argued that the early deposition was premature and unnecessary. *See* [ECF No. 29] ("If Mr. Abittan asserts that there has been any confusion concerning Ms. Chen's identity, that can be born out in the normal course of discovery.").

ii. Yuting Chen Refused to Rebut Abittan's and the Family Defendants' Sworn Declarations

- 18 -

On May 16, 2022, Abittan and the Family Defendants filed an Amended Answer incorporating declarations from each of the Family Defendants swearing to having had no contact with a person introduced as "Yuting Chen" and limited or no contact with a person named "Tiffany Chen." *See* [ECF No. 37]. In response, Yuting Chen did **not** provide testimony to support her claims or rebut the Defendants' testimony. Nor did she seek discovery to probe the veracity of each Defendant's declaration. Instead, Yuting Chen filed an unmeritorious motion to strike those sworn declarations. *See* [ECF Nos. 40, 49, 50, 51]. That conduct indicates that Yuting Chen and her counsel aimed to conceal, rather than discover and prove, the underlying facts.

iii.    <u>Yuting Chen's Counsel Provided Contradictory Information About Yuting Chen's Availability for a Deposition in May 2022</u>

After the Rule 26(f) Conference in May 2022, Yuting Chen continued to thwart the normal course of discovery. In response to Abittan's repeated requests for a date for Yuting Chen's deposition, her counsel stated that she would be traveling to China to tend to her sick mother and could not be deposed until mid-August. *See* Section II.A, *supra*.

In a baffling exchange in January and February 2023, however, Yuting Chen's counsel repeatedly insisted that Yuting Chen had not previously traveled to China and that Abittan's counsel were (inexplicably) fabricating the existence of that trip. *See* Ex. B. When confronted with their own emails about Yuting Chen's 2022 trip to China, counsel then claimed that there was an innocent misunderstanding. *See* Ex. B at 2. This conduct indicates that Yuting Chen's ever-shifting counsel had lost track of their earlier pretexts to prevent Yuting Chen from providing testimony.

iv.    <u>As Her Deposition Approached in the State Temujin Action, Yuting Chen and Her Counsel Filed a Strategic, Unmeritorious Motion to Disqualify Abittan's Counsel</u>

By August 2022, Abittan was focused on scheduling identity-related depositions that Judge Kulkarni, in the state Temujin Action, had ordered to take place by October 31, 2022, in advance of a global mediation. *See* Ex. H. On September 21, 2022, however, Yuting Chen moved to disqualify Abittan's counsel and to stay the identity discovery until that motion was resolved. *See* [ECF No. 64]. Although the disqualification was unmeritorious, it succeeded in further delaying depositions in each case.

- 19 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     v.      <u>After the Disqualification Motion Failed, Yuting Chen's Counsel Withdrew and Further Delayed the Identity Depositions Which Would Have Negated Yuting Chen's Allegations</u>

On or about November 22, 2022—immediately after Judge Kulkarni's tentative denial of the motion to disqualify (*see* Ex. I)—Yuting Chen's counsel (other than Ye & Associates, PLLC, admitted *pro hac vice*) withdrew from this action and the related actions. *See* [ECF No 60]; *see also*, Ex. J.[10] That strategic withdrawal of Yuting Chen's, Lily Chao's, and Damien Ding's counsel—the *third* law firm to withdraw from representing those parties in the related cases— caused further delay in negotiating and finalizing identity depositions.

     vi.      <u>To Prevent Yuting Chen's Identity Deposition in the State Temujin Action, Yuting Chen's New Counsel Filed a Frivolous Motion Arguing that Yuting Chen Was Not a Party to the Case.</u>

In March 2023, Yuting Chen's new counsel filed a motion to quash service, in the Temujin Action, arguing that Yuting Chen was not a party to that action. *See* Ex. K. The purpose was to thwart a limited deposition into Yuting Chen's identity—even though the identity depositions were aimed at confirming the relevant parties' identities so that the global mediation could proceed in good faith. Moreover, Yuting Chen and her counsel filed that motion even though Abittan had named "Yuting Chen a/k/a Tiffany Chen a/k/a Lily Chao" as a cross-defendant and had served that individual twelve (12) months earlier pursuant to a court order. *Id*. Needless to say, the state court denied the motion. *See* Ex. L.

     vii.      <u>To Prevent Yuting Chen's Deposition as Plaintiff in this Action, Yuting Chen and Her Counsel Filed a Frivolous Motion to Stay Discovery.</u>

On February 23, 2023, Abittan served a notice to take Yuting Chen's deposition in this action, and by February 28, 2023, the parties had agreed for the deposition to take place on April 27, 2023. *See* Ex. C. On April 25, 2023, however, Yuting Chen and her counsel filed a frivolous motion seeking to "stay depositions and discovery pending Defendants' motions for judgment on the pleadings." *See* [ECF No. 88]. Within the two hours, the Court denied the motion. [ECF No.

---

[10] Judge Kulkarni issued at tentative denial of the motion on November 16, 2022. Ex. I. Following the filing of a modified protective order and various declarations, Judge Kulkarni issued a final denial of the motion on December 19, 2022. *See* [ECF No. 64].

DEFENDANTS' MOTION FOR
SANCTIONS, FEES, AND COSTS

CASE NO. 21-CV-09393-NC

89]. The next day, Yuting Chen's counsel appeared in Court, sought to voluntarily dismiss the case with prejudice, and requested to withdraw as counsel. *See* [ECF No. 91]. By dismissing her own case—without having ever sought or provided any discovery to support her claims for $10,000,000—Yuting Chen once again evaded her deposition.

> viii.   <u>Yuting Chen and Her Counsel Have Prevented Service of a Subpoena for a Deposition in the Related Abittan Action Before This Court.</u>

On May 5, 2023, Abittan issued a subpoena to depose Yuting Chen in the Abittan Action before this Court. Abittan's counsel emailed a copy to Yuting Chen's counsel, asking if they were authorized to accept service, but they have not responded. *See* Ex. M. Abittan has also sought to serve the subpoena at 69 Isabella Ave.—where, upon requesting withdrawal, counsel represented under oath that "[Yuting Chen] will receive service of process at this address"—but the process server could not find any person at that address and left the documents at the front door. Ex. N. Once again, this conduct evidences that Yuting Chen and her counsel fear that the deposition will confirm the conspiratorial, fraudulent conduct alleged by Abittan.

> ix.   <u>Yuting Chen, Lily Chao, Damien Ding, and Their Shared Counsel Failed to Appear for a Properly Noticed Deposition on Yuting Chen's Identity in the State Temujin Action.</u>

Yuting Chen and her counsel failed to appear for an identity deposition properly noticed in the state Temujin Action. On April 12, 2023, Abittan noticed that deposition for May 11, 2023 (a date that Yuting Chen's counsel had previously represented to be available). *See* Ex. O. On April 14, 2023, Judge Kulkarni granted a motion indicating that Yuting Chen's identity deposition should proceed. *See* Ex. L at 3-5. On May 1, 2023, however, Yuting Chen's counsel filed self-executing withdrawals from representing Yuting Chen, while continuing to represent Lily Chao, Damien Ding, the Temujin entities, and the other cross-defendants. *See* Exs. P, Q.

Believing the withdrawal to be a strategic ploy to prevent Yuting Chen's deposition—and attempting to prevent the additional incursion of fees and expenses if Yuting Chen failed to appear—Abittan filed a motion to compel on May 2, 2023. *See* Ex. R. Despite their withdrawal from representing Yuting Chen, Ye & Associates, PLLC filed a puzzling opposition that failed to

- 21 -

1  explain which parties were opposing the motion, why anyone but Yuting Chen would have

2  standing, or how counsel who had withdrawn in that action could raise an argument for Yuting

3  Chen. *See* Ex. S.  Ultimately, Judge Kulkarni denied the motion as premature, given that Yuting

4  Chen had not yet failed to appear at her deposition. *See* Ex. T. On May 11, 2023, Abittan's counsel

5  proceeded with the deposition, as properly noticed, but Yuting Chen did not appear. Furthermore,

6  counsel for the other cross-defendants (*e.g.*, Lily Chao, Damien Ding, Temujin Cayman, and

7  Temujin Delaware)—who are also Yuting Chen's current counsel of record in this action and

8  former counsel of record in the Temujin Action—did not appear or provide any advance notice that

9  the witness would not appear. In other words, they likely knew that Yuting Chen would not appear,

10  yet they took no steps to mitigate the time and expenses needlessly incurred by Abittan.

11                                   *     *     *

12      This ongoing conduct by Yuting Chen and her current and former counsel demonstrates bad

13  faith and harassment from the inception of this action through the present. Yuting Chen commenced

14  and maintained this lawsuit without any intention or ability to prove her claims, and her only

15  purpose was to harass Abittan and his family. Yuting Chen's counsel knowingly and continuously

16  assisted her improper conduct and spent their resources trying to prevent discovery rather than

17  prosecuting their client's case in good faith. In sum, none of the Defendants should have needed to

18  spend a single dollar or hour to defend this harassing and frivolous lawsuit. Consequently, Yuting

19  Chen and her counsel should pay the **entirety** of the Defendants' legal fees and expenses, all of

20  which arose from the bad faith filing and maintenance of this lawsuit.

21  
22      **B.  THE COURT SHOULD HOLD YUTING CHEN AND HER ATTORNEYS
            JOINTLY AND SEVERALLY LIABLE FOR DEFENDANTS' ATTORNEYS'
            FEES AND COSTS**

23      Defendants request that the Court order that Yuting Chen and her past and present counsel,

24  jointly and severally, pay the full attorneys' fees and costs that Defendants' incurred in this

25  frivolous and needlessly-prolonged litigation. Under its inherent authority, the Court may award

26  such sanctions against parties and counsel. *See, e.g., DNA Sports Performance Lab, Inc. v. Major*

27  *League Baseball*, C 20-00546 WHA, 2020 WL 6290374, at *5 (N.D. Cal. Oct. 27, 2020) ("In

28
                                        - 22 -

addition to Rule 11, federal courts have broad inherent powers to sanction **parties, counsel, and firms** that engage in conduct which abuses the judicial process."); *United Studios of Self Def., Inc. v. Rinehart*, SACV181048DOCDFMX, 2020 WL 1230621, at *4 (C.D. Cal. Feb. 10, 2020) ("The Court HOLDS Plaintiff and Mr. Mattera **jointly and severally liable** to Defendants in the amount of $1,241,784 in fees and $84,528.72 in costs under its inherent authority to issue fees and costs as a sanction."). Rule 37 also permits the imposition of joint and several liability against parties and counsel. *See Full Tilt Boogie LLC v. Kep Fortune LLC*, 219CV09090ODWKESX, 2021 WL 7285992, at *5 (C.D. Cal. Dec. 28, 2021) (imposing Rule 37 fee sanctions on the party and counsel).

Under 28 U.S.C. § 1927, however, the sanctions must be against individual attorneys, rather than the law firms or parties. *See Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015) ("Based on our review of the plain language of the statute, and our consideration of the persuasive reasoning of some of our sister circuits, . . . we hold that 28 U.S.C § 1927 does not permit the award of sanctions against a law firm.").

Under these standards, the Court should issue sanctions against Yuting Chen and every attorney and law firm that represented her in this action. Each law firm and attorney filed or served pleadings or other papers in bad faith, as described *supra*. No law firm or attorney reviewed the applicable records and then repudiated or corrected the Complaint or Yuting Chen's improper, untrue representations to the Court. Consequently, all counsel of record and their firms are culpable under the Court's inherent authority, Rule 37 (as to discovery violations), and § 1927 (as to the attorneys who signed each improper filing, which, in turn, needlessly prolonged this litigation).

### C. DEFENDANTS RESPECTFULLY REQUEST LEAVE TO FILE SUPPLEMENTAL BRIEFING AND EVIDENCE AS TO THE AMOUNT OF FEES AND COSTS

As of May 14, 2023, Defendants have incurred $4,149.83 in costs and $132,556.23 in fees for approximately 247.60 billable hours in this action. *See* Economides Decl. ¶¶ 2-6. Defendants' counsel tracked those hours, fees, and costs separately from those incurred in the related Abittan Action and Temujin Action. *See* Economides Decl. ¶ 7.

1    However, the compensable amounts could vary with the Court's holdings—specifically as

2    to the source of the award (*e.g.*, inherent authority, Rule 37, Rule 54, § 1927) and as to whether the

3    entire litigation (or specific conduct) warrants sanctions. Additionally, the hours, fees, and costs

4    continue to accrue as Defendants pursue these sanctions.

5    Thus, to the extent the Court finds that sanctions (and/or costs) are warranted but that

6    additional information is required to determine the amounts, Defendants respectfully request leave

7    to file supplemental briefing and evidence as to the amounts. *See, e.g.*, *Shalaby v. BernzOmatic*,

8    311CV00068AJBDHB, 2021 WL 308339, at *1 (S.D. Cal. Jan. 29, 2021) (noting that, after

9    determining entitlement to sanctions, "the Court requested supplemental briefing detailing

10   Defendant's fees"); *Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc*., 16-MC-80076-

11   JSC, 2016 WL 7212308, at *1 (N.D. Cal. Dec. 13, 2016) ("[T]he Court GRANTS the motion for

12   sanctions, but orders supplemental briefing to address the amount of fees and costs."); *State Bank*

13   *of Texas v. Parabia*, 14-CV-3031-L-DHB, 2021 WL 1170210, at *9 (S.D. Cal. Mar. 29, 2021)

14   ("[T]he Bank's motion for sanctions is granted insofar as the Court finds that the Bank has met its

15   burden to show that sanctions against Lopez are appropriate pursuant to 28 U.S.C. § 1927. The

16   Court reserves the issue of reasonable attorneys' fees for decision based upon further briefing and

17   submission of evidence.").

18   **D.   IF THE COURT BELIEVES THERE ARE MATERIAL, UNANSWERED**
19   **       FACTUAL ISSUES, DEFENDANTS REQUEST AN EVIDENTIARY**
     **       HEARING**

20   "A 'district court has the discretion, but is not required, to hold an evidentiary hearing prior

21   to imposing sanctions on a party.'" *EZconn Corp.,* 2018 WL 6738844, at *11 (quoting *Lambright*

22   *v. Ryan*, 698 F.3d 808, 826 (9th Cir. 2012)).

23   Defendants respectfully submit that the record, as discussed *infra*, sufficiently warrants

24   sanctions. If, however, the Court identifies material questions of fact requiring further evidentiary

25   support, Defendants request that the Court hold an evidentiary hearing. Defendants proffer that, in

26   addition to the egregious conduct set forth herein, an evidentiary hearing would reveal that, *inter*

27   *alia*:

28

- 24 -

- Plaintiff has no knowledge of luxury watches and cannot provide testimony or documents supporting her Complaint or negating Defendants' defenses;

- Plaintiff is unfamiliar with her allegations and claims and with the procedural posture of this litigation;

- Plaintiff's current and former counsel lack any evidence supporting the Complaint, negating Abittan's and the Family Defendants' testimony, or justifying the repeated representations to the Court that Abittan was purposefully fabricating questions as to Yuting Chen's and Lily Chao's identities;

- Lily Chao and Damien Ding purposefully, tactfully, and illicitly use Yuting Chen's identity to sign documents, file pleadings, and wrongfully attenuate their connections to a pattern of fraud and other improper conduct.

Thus, Defendants request that the Court either grant this motion for sanctions based on the current record or, alternatively, hold an evidentiary hearing to determine any material disputed facts.

## V.   CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court grant Defendants' motion and order, pursuant to the Court's inherent authority, 28 U.S.C. § 1927, Rule 37, and Rule 54, Plaintiff and her past and present counsel, jointly and severally, to pay the full attorneys' fees and costs that Defendants' incurred in this frivolous, harassing, and needlessly-prolonged litigation.

Dated: May 15, 2023

**FREEDMAN NORMAND FRIEDLAND LLP**

*/s/ Constantine P. Economides*
Constantine P. Economides (pro hac vice)
(Florida Bar No. 118177)
Brianna Pierce (CA Bar No. 336906)
1 SE 3rd Avenue, Suite 1240
Miami, Florida 33131
Tel: (305) 851-5997
Email: ceconomides@fnf.law
          bpierce@fnf.law

*Counsel for Defendants*

- 25 -

# EXHIBIT 14

Minute entry for proceedings held before Magistrate Judge Nathanael M. Cousins, entered as a text-only docket entry, <u>ECF No. 113</u>, in the Underlying Action

| 06/21/2023 | 113 | **Minute Entry for proceedings held before Magistrate Judge Nathanael M. Cousins. Motion hearing held on 6/21/2023 via Zoom webinar.** |
|---|---|---|
| | | **Motions to withdraw, Dkt. Nos. 93 , 95 - Denied without prejudice in light of near-end of the case.** |
| | | **Motion for sanctions, Dkt. 101 - Denied for the reasons stated. The denial is without prejudice to filing of a regular bill of costs pursuant to the federal rules of civil procedure and local rules. The Court will enter judgment. Joint update on bill of costs status due 7/5/2023.** |
| | | Attorneys for Plaintiff: Patrick O'Shaughnessy, Jingjing Ye. |
| | | Attorneys for Defendants: Constantine Economides, Brianna Pierce. |
| | | Non-party Hansen Law Firm: Craig Hansen, Philip Yeager, Colin Greene. |
| | | Zoom webinar 11:04am - 11:57am. |
| | | *(This is a text-only entry generated by the court. There is no document associated with this entry.)* |
| | | (lmh, COURT STAFF) (Date Filed: 6/21/2023) (Entered: 06/21/2023) |

# EXHIBIT 15

Declaration of Yuting Chen, <u>ECF No. 107-1</u>, in the Underlying Action

1  James Cai (SBN: 200189)
   *jcai@sacattorneys.com*
2  Brian A. Barnhorst (SBN: 130292)
   *bbarnhorst@sacattorneys.com*
3  Patrick E. O'Shaughnessy (SBN: 218051)
   *poshaughnessy@sacattorneys.com*
4  Woody Wu (SBN: 309317)
   *wwu@sacattorneys.com*
5  SAC ATTORNEYS LLP
   1754 Technology Drive, Suite 122
6  San Jose, CA 95110
   Telephone: (408) 436-0789
7
   Jingjing Ye (Admitted *Pro Hac Vice*)
8  *jye@yefirm.com*
   YE & ASSOCIATES, PLLC
9  3400 N. Central Expy, #500
   Plano, TX 75080
10 Telephone: (469) 410-5232

11 *Attorneys for Temujin Labs Inc. (Delaware)*
   *Temujin Labs Inc. (Cayman Islands), Lily Chao,*
12 *and Damien Ding, and (motion for withdrawal*
   *pending) Plaintiff Yuting Chen*
13

14             UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16                   SAN JOSE DIVISION

17

18
   YUTING CHEN,
19                                      Case No. 21-CV-09393-NC
                          Plaintiff,
20                                      **CHEN DECLARATION IN SUPPORT
                                        OF OPPOSITION TO DEFENDANT'S
21      v.                              MOTION FOR FEES AND COSTS, AND
                                        CROSS-MOTIONS FOR ASSOCIATED
22 ARIEL ABITTAN et al.,                FEES AND COSTS**

23                        Defendants.
                                        Judge:   Hon. Nathanael Cousins
24
                                        Date:    May 31, 2023
25
                                        Time:    11:00 a.m.
26
                                        Place:   Courtroom 5
27

28

                    CHEN DECL. ISO OPPOSITION TO
              DEFENDANT'S MOTION FOR FEES AND COSTS
                                                              Page 1

I, Yuting Chen, declare,

1.    I, Yuting Chen, am the plaintiff in the above-captioned case. I have used the nickname Selena at times in the past. I submit this declaration in support of all opposition to Defendant's motion for fees and costs (the "Motion"), and in support of any opposing motions for fees and costs against Defendant associated with responding to the Motion. I possess personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify thereto.

2.    I can no longer maintain this lawsuit from the perspective of personal property and the current economic situation. Defendant Ariel Abittan cheated me a lot in the watch business, and I did not make money in my Temujin's investment because of his sabotage. Under this double blow, I can no longer afford the high legal fees associated with this litigation. This is the main reason for my dismissing the case.

3.    In the past two years of the lawsuit, Defendant published the name and photo of my child and the school where the child goes to school without my permission.

4.    This has had a major impact on my child's life and study. After my parents learned about it, they have been asking me to take the child back to China, and they do not want to continue to expose more information about the child in lawsuits and courts.

5.    In the past two months, my mother's health has become unwell due to long-term worries about me and the children. I finally decided to take the child back to China. But if the lawsuit continues, I will not be able to take my child back to China to live a normal life.

6.    I cannot let my parents continue to worry about me like this. This is the second reason for my dismissing the case.

7.    This lawsuit has been seen by many watch dealers. They have blacklisted me.

8.    If this matter continues, I may not be able to buy watches in the future because the brands of these watches do not allow buyers to buy them just to increase the price and sell them to others.

9.    In this way, my business will not be able to continue at all. This is the third reason for my dismissing the case.

10. So far, all the factual information in filings in this lawsuit have been provided by me based on the real situation, and there is no fault of the lawyers.

11. It is common in my experience for individuals whose names do not translate well into Romanized characters to use an American nickname or nicknames.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: May 26, 2023

Ms. Yuting Chen

Plaintiff

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____Orange_____ )

On __May 26, 2023__ before me, Stephanie E. Garcia, Notary Public,
(insert name and title of the officer)

personally appeared _____Yuting Chen_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____     **(Seal)**

STEPHANIE E. GARCIA
COMM. #2435210
Notary Public - California
Orange County
My Comm. Expires Jan. 21, 2027

# EXHIBIT 16

Judgment, <u>ECF No. 114</u>, in the Underlying Action

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

YUTING CHEN,

          Plaintiff,

      v.

ARIEL ABITTAN, and others,

          Defendants.

Case No. 21-cv-09393 NC

**JUDGMENT**

    In accordance with the April 26, 2023, order conditionally dismissing this case with prejudice under Fed. R. Civ. P. 41(a)(2), ECF 92, Judgment is entered against Plaintiff Yuting Chen.  This matter is now closed, but for the bill of costs permitted in ECF 113.

    IT IS SO ORDERED.

    Date: June 30, 2023

                                _____

                                Nathanael M. Cousins
                                United States Magistrate Judge

# EXHIBIT 17

The Docket in the Underlying Action

ADRMOP,CLOSED,CONSENT

**U.S. District Court**
**California Northern District (San Jose)**
**CIVIL DOCKET FOR CASE #: 5:21-cv-09393-NC**

Chen v. Abittan et al                                    Date Filed: 12/03/2021
Assigned to: Magistrate Judge Nathanael M. Cousins      Date Terminated: 04/26/2023
Demand: $4,500,000                                       Jury Demand: Both
Cause: 28:1332 Diversity-Fraud                           Nature of Suit: 370 Other Fraud
                                                        Jurisdiction: Diversity

**Plaintiff**

**Yuting Chen**                        represented by    **Craig Alan Hansen**
                                                        Hansen Law Firm, P.C.
                                                        75 East Santa Clara Street, Suite 1150
                                                        San Jose, CA 95113
                                                        (408) 715-7980
                                                        Email: craig@hansenlawfirm.net
                                                        *TERMINATED: 12/19/2022*
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Philip Eugene Yeager**
                                                        Hansen Law Firm P.C.
                                                        75 East Santa Clara Street, Suite 1150
                                                        San Jose, CA 95113
                                                        (408) 715-7980
                                                        Email: phil@hansenlawfirm.net
                                                        *TERMINATED: 12/19/2022*
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Di Wu**
                                                        SAC Attorneys LLP
                                                        1754 Technology Drive, Suite 122
                                                        San Jose, CA 95110
                                                        (408) 436-0789
                                                        Email: jcai@sacattorneys.com
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jingjing Ye Bennett**
                                                        Ye & Associates, P.C.
                                                        Texas
                                                        3400 N Central Expy
                                                        Suite 110-321
                                                        Richardson, TX 75080
                                                        469-410-5232
                                                        Fax: 469-751-5507
                                                        Email: jye@yefirm.com
                                                        *ATTORNEY TO BE NOTICED*

**Sarah Wager**
McManis Faulkner
50 W. San Fernando Street
10th Floor
San Jose, CA 95113
408-279-8700
Fax: 408-279-3244
Email: swager@mcmanislaw.com
*ATTORNEY TO BE NOTICED*

**Stephen C. Holmes**
Hansen Law Firm, P.C.
75 E. Santa Clara St.
Suite 1150
San Jose, CA 95113-1837
408-715-7980
Fax: 408-715-7001
Email: steve@hansenlawfirm.net
*TERMINATED: 12/19/2022*
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Ariel Abittan**                           represented by   **Brianna K Pierce**
Bellatrix Law, P.C.
16868 Via Del Campo Ct., Ste 100
San Diego, CA 92127
858-338-5650
Email: bkp@bellatrix-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constantine Philip Economides**
Dynamis LLP
Roche Freedman LLP
1111 Brickell Ave.
10th Floor
Miami, FL 33131
305-985-2959
Email: ceconomides@dynamisllp.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**Abraham Abittan**                         represented by   **Brianna K Pierce**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constantine Philip Economides**
(See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rachel Abittan**                     represented by  **Brianna K Pierce**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constantine Philip Economides**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brian Abittan**                     represented by  **Brianna K Pierce**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constantine Philip Economides**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jacob Abittan**                     represented by  **Brianna K Pierce**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constantine Philip Economides**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Alyssa Abittan**                     represented by  **Brianna K Pierce**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constantine Philip Economides**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Eliana Abittan**                          represented by **Brianna K Pierce**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constantine Philip Economides**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Roy Graber**                             represented by **Brianna K Pierce**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constantine Philip Economides**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Tova Graber**                            represented by **Brianna K Pierce**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constantine Philip Economides**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Realtime NY LLC**                        represented by **Brianna K Pierce**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constantine Philip Economides**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Miscellaneous**

**Hansen Law Firm, P.C.**                  represented by **Craig Alan Hansen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip Eugene Yeager**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/03/2021 | 1 | COMPLAINT against All Defendants ( Filing fee $ 402, receipt number ACANDC-16688692.). Filed byYuting Chen. (Yeager, Philip) (Filed on 12/3/2021) (Entered: 12/03/2021) |
| 12/06/2021 | | Electronic filing error. Completed Civil Cover Sheet missing. Judge will not be randomly assigned to case until completed civil cover sheet has been e-filed. Please Submit your document using Civil Events > Other Filings > Other Documents > Civil Cover Sheet re 1 omplaint filed by Yuting Chen (bw, COURT STAFF) (Filed on 12/6/2021) (Entered: 12/06/2021) |
| 12/06/2021 | 2 | Civil Cover Sheet by Yuting Chen *re 1 Complaint filed by Yuting Chen*. (Yeager, Philip) (Filed on 12/6/2021) (Entered: 12/06/2021) |
| 12/06/2021 | 3 | Proposed Summons. (Yeager, Philip) (Filed on 12/6/2021) (Entered: 12/06/2021) |
| 12/06/2021 | 4 | Certificate of Interested Entities by Yuting Chen (Yeager, Philip) (Filed on 12/6/2021) (Entered: 12/06/2021) |
| 12/06/2021 | 5 | Case assigned to Magistrate Judge Alex G. Tse.<br><br>Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening.<br><br>Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5-1(e)(7). A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 12/20/2021. (bw, COURT STAFF) (Filed on 12/6/2021) (Entered: 12/07/2021) |
| 12/07/2021 | 6 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 3/4/2022. Initial Case Management Conference set for 3/11/2022 02:00 PM in San Francisco, Courtroom A, 15th Floor. (sfb, COURT STAFF) (Filed on 12/7/2021) (Entered: 12/07/2021)** |
| 12/07/2021 | 7 | Summons Issued as to Brian Abbittan, Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. (sfb, COURT STAFF) (Filed on 12/7/2021) (Entered: 12/07/2021) |
| 01/04/2022 | 8 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Yuting Chen.. (Hansen, Craig) (Filed on 1/4/2022) (Entered: 01/04/2022) |
| 01/07/2022 | 9 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now reassign this case to a District Judge because a party has not consented to the jurisdiction of a Magistrate Judge. You will be informed by separate notice of the district judge to whom this case is reassigned.<br><br>ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR |

| | | |
|---|---|---|
| | | HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED.<br><br>*This is a text only docket entry; there is no document associated with this notice.* (shy, COURT STAFF) (Filed on 1/7/2022) (Entered: 01/07/2022) |
| 01/10/2022 | 10 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Yvonne Gonzalez Rogers for all further proceedings. Magistrate Judge Alex G. Tse no longer assigned to case, Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras.. Signed by Clerk on 1/10/22. (Attachments: # 1 Notice of Eligibility for Video Recording)(as, COURT STAFF) (Filed on 1/10/2022) (Entered: 01/10/2022)** |
| 01/11/2022 | 11 | CLERK'S NOTICE SETTING CASEMANAGEMENT CONFERENCE Joint Case Management Statement due by 3/7/2022. Initial Case Management Conference set for 3/14/2022 02:00 PM in Oakland, - Videoconference Only. (Attachments: # 1 Standing Order) (amg, COURT STAFF) (Filed on 1/11/2022) (Entered: 01/11/2022) |
| 02/02/2022 | 12 | CERTIFICATE OF SERVICE by Yuting Chen *Proof of Service (RoyGraber)* (Hansen, Craig) (Filed on 2/2/2022) (Entered: 02/02/2022) |
| 02/02/2022 | 13 | CERTIFICATE OF SERVICE by Yuting Chen *Proof of Service (Tova Graber)* (Hansen, Craig) (Filed on 2/2/2022) (Entered: 02/02/2022) |
| 02/02/2022 | | Electronic filing error. **Incorrect event used. [err101]Please re-file in its entirety as Summons Returned Executed.**<br><br>Re: 13 Certificate of Service filed by Yuting Chen , 12 Certificate of Service filed by Yuting Chen (sfb, COURT STAFF) (Filed on 2/2/2022) (Entered: 02/02/2022) |
| 02/18/2022 | 14 | CERTIFICATE OF SERVICE by Yuting Chen (Hansen, Craig) (Filed on 2/18/2022) (Entered: 02/18/2022) |
| 02/18/2022 | 15 | CERTIFICATE OF SERVICE by Yuting Chen *Proof of Service of Summons - Alyssa Abittan* (Hansen, Craig) (Filed on 2/18/2022) (Entered: 02/18/2022) |
| 02/18/2022 | 16 | CERTIFICATE OF SERVICE by Yuting Chen *Proof of Service of Summons - Brian Abittan* (Hansen, Craig) (Filed on 2/18/2022) (Entered: 02/18/2022) |
| 02/18/2022 | 17 | CERTIFICATE OF SERVICE by Yuting Chen *Proof of Service of Summons - Jacob Abittan* (Hansen, Craig) (Filed on 2/18/2022) (Entered: 02/18/2022) |
| 02/18/2022 | | Electronic filing error. **Incorrect event used. [err101]Please re-file in its entirety as Summons Returned Executed.** Re: 17 Certificate of Service filed by Yuting Chen, [ 15] Certificate of Service filed by Yuting Chen, 13 Certificate of Service filed by Yuting Chen, 12 Certificate of Service filed by Yuting Chen, 14 Certificate of Service filed by Yuting Chen, 16 Certificate of Service filed by Yuting Chen (sfb, COURT STAFF) (Filed on 2/18/2022) (Entered: 02/18/2022) |
| 02/18/2022 | 18 | SUMMONS Returned Executed by Yuting Chen. Abraham Abittan served on 2/1/2022, answer due 2/22/2022. (Hansen, Craig) (Filed on 2/18/2022) (Entered: 02/18/2022) |
| 02/18/2022 | 19 | SUMMONS Returned Executed by Yuting Chen. Alyssa Abittan served on 2/1/2022, answer due 2/22/2022. (Hansen, Craig) (Filed on 2/18/2022) (Entered: 02/18/2022) |
| 02/18/2022 | 20 | SUMMONS Returned Executed by Yuting Chen. Brian Abittan served on 2/1/2022, answer due 2/22/2022. (Hansen, Craig) (Filed on 2/18/2022) (Entered: 02/18/2022) |

| 02/18/2022 | 21 | SUMMONS Returned Executed by Yuting Chen. Roy Graber served on 1/27/2022, answer due 2/17/2022. (Hansen, Craig) (Filed on 2/18/2022) (Entered: 02/18/2022) |
| 02/18/2022 | 22 | SUMMONS Returned Executed by Yuting Chen. Tova Graber served on 1/27/2022, answer due 2/17/2022. (Hansen, Craig) (Filed on 2/18/2022) (Entered: 02/18/2022) |
| 02/22/2022 | 23 | SUMMONS Returned Executed by Yuting Chen. Jacob Abittan served on 2/2/2022, answer due 2/23/2022. (Hansen, Craig) (Filed on 2/22/2022) (Entered: 02/22/2022) |
| 02/22/2022 | 24 | SUMMONS Returned Executed by Yuting Chen. Rachel Abittan served on 2/1/2022, answer due 2/22/2022. (Hansen, Craig) (Filed on 2/22/2022) (Entered: 02/22/2022) |
| 02/28/2022 | 25 | STIPULATION WITH PROPOSED ORDER *Joint Stipulation re Service and CMC* filed by Yuting Chen. (Attachments: # 1 Declaration)(Hansen, Craig) (Filed on 2/28/2022) (Entered: 02/28/2022) |
| 03/02/2022 | 26 | **ORDER by Judge Yvonne Gonzalez Rogers Granting 25 STIPULATION RE SERVICE AND JOINT REQUEST TO CONTINUE CASE MANAGEMENT CONFERENCE AND RELATED DEADLINES. Joint Case Management Statement due by 5/16/2023. Initial Case Management Conference set for 5/23/2022 02:00 PM in Oakland, Courtroom 1, 4th Floor.(amg, COURT STAFF) (Filed on 3/2/2022) (Entered: 03/02/2022)** |
| 04/12/2022 | 27 | NOTICE of Change of Address by Craig Alan Hansen *Notice of Change of Suite Number* (Hansen, Craig) (Filed on 4/12/2022) (Entered: 04/12/2022) |
| 04/13/2022 | 28 | First ADMINISTRATIVE MOTION seeking an order modifying Defendants time to respond to the complaint until thirty (30) days after the conclusion of an expedited deposition relating to Plaintiffs identity filed by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. Responses due by 4/18/2022. (Attachments: # 1 Declaration, # 2 Proposed Order)(Pierce, Brianna) (Filed on 4/13/2022) (Entered: 04/13/2022) |
| 04/13/2022 | 29 | First Discovery Letter Brief*regarding Defendants request to conduct a pre-Rule 26(f) Conference deposition of Plaintiff Yuting Chen* filed by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. (Pierce, Brianna) (Filed on 4/13/2022) (Entered: 04/13/2022) |
| 04/18/2022 | 30 | OPPOSITION/RESPONSE (re 28 First ADMINISTRATIVE MOTION seeking an order modifying Defendants time to respond to the complaint until thirty (30) days after the conclusion of an expedited deposition relating to Plaintiffs identity ) filed byYuting Chen. (Hansen, Craig) (Filed on 4/18/2022) (Entered: 04/18/2022) |
| 04/22/2022 | 31 | MOTION for leave to appear in Pro Hac Vice *JINGJING YE APPLICATION FOR ADMISSION OF ATTORNEY PRO HAC VICE* ( Filing fee $ 317, receipt number ACANDC-17111684.) filed by Yuting Chen. (Ye, Jingjing) (Filed on 4/22/2022) (Entered: 04/22/2022) |
| 04/25/2022 | 32 | ANSWER to Complaint with Jury Demand byAbraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. (Pierce, Brianna) (Filed on 4/25/2022) (Entered: 04/25/2022) |
| 04/26/2022 | 33 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number ACANDC-17118446.) filed by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. (Economides, Constantine) (Filed on 4/26/2022) (Entered: 04/26/2022) |

| | | |
|---|---|---|
| 04/29/2022 | [34](#) | **ORDER by Judge Yvonne Gonzalez Rogers DENYING [28](#) ADMINISTRATIVE MOTION REGARDING TIME TO RESPOND TO COMPLAINT AND TERMINATING DISCOVERY DISPUTE AS MOOT. (amg, COURT STAFF) (Filed on 4/29/2022) (Entered: 04/29/2022)** |
| 05/06/2022 | [35](#) | **ORDER by Judge Yvonne Gonzalez Rogers Granting [31](#) Motion for Pro Hac Vice. (amg, COURT STAFF) (Filed on 5/6/2022) (Entered: 05/08/2022)** |
| 05/06/2022 | [36](#) | **ORDER by Judge Yvonne Gonzalez Rogers Granting [33](#) Motion for Pro Hac Vice. (amg, COURT STAFF) (Filed on 5/6/2022) (Entered: 05/08/2022)** |
| 05/16/2022 | [37](#) | *Amended* ANSWER to Complaint with Jury Demand byAbraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit B, # [3](#) Exhibit C, # [4](#) Exhibit D, # [5](#) Exhibit E, # [6](#) Exhibit F, # [7](#) Exhibit G, # [8](#) Exhibit H, # [9](#) Exhibit I) (Pierce, Brianna) (Filed on 5/16/2022) (Entered: 05/16/2022) |
| 05/16/2022 | [38](#) | JOINT CASE MANAGEMENT STATEMENT *(5/23/22 Hearing)* filed by Yuting Chen. (Hansen, Craig) (Filed on 5/16/2022) (Entered: 05/16/2022) |
| 05/18/2022 | 39 | CLERK'S NOTICE CONTINUING CASE MANAGEMENT CONFERENCE. Notice is hereby given that the case management conference previously set for 5/23/2022 is continued to 6/6/2022 at 2:00 p.m. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* Initial Case Management Conference set for 6/6/2022 02:00 PM in Oakland, - Videoconference Only. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/ygr<br><br>**General Order 58.** Persons granted access to court proceedings held by tele phone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>Initial Case Management Conference set for 6/6/2022 02:00 PM in Oakland, - Videoconference Only. (amg, COURT STAFF) (Filed on 5/18/2022) (Entered: 05/18/2022) |
| 06/02/2022 | [40](#) | MOTION to Strike [37](#) Answer to Complaint, filed by Yuting Chen. Motion Hearing set for 7/12/2022 02:00 PM in Oakland, Courtroom 1, 4th Floor before Judge Yvonne Gonzalez Rogers. Responses due by 6/16/2022. Replies due by 6/23/2022. (Attachments: # [1](#) Proposed Order)(Yeager, Philip) (Filed on 6/2/2022) (Entered: 06/02/2022) |
| 06/06/2022 | [41](#) | **Minute Entry for proceedings held before Judge Yvonne Gonzalez Rogers: Initial Case Management Conference held via Zoom on 6/6/2022. Initial Case Management Conference set for 6/13/2022 02:00 PM in Oakland, - Videoconference Only.Total Time in Court: 4 minutes. Court Reporter: Raynee Mercado. (amg, COURT STAFF) (Date Filed: 6/6/2022) (Entered: 06/06/2022)** |
| 06/09/2022 | [42](#) | STIPULATION WITH PROPOSED ORDER *Stipulation Consenting to Judge Nathanael Cousins Conducting All Further Proceedings In This Matter* filed by Yuting Chen. (Hansen, Craig) (Filed on 6/9/2022) (Entered: 06/09/2022) |
| 06/10/2022 | [43](#) | **ORDER by Judge Yvonne Gonzalez Rogers Granting [42](#) STIPULATION CONSENTING TO JUDGE NATHANAEL COUSINS CONDUCTING ALL** |

| | | FURTHER PROCEEDINGS IN THIS MATTER.(amg, COURT STAFF) (Filed on 6/10/2022) (Entered: 06/10/2022) |
|---|---|---|
| 06/10/2022 | 44 | **ORDER REASSIGNING CASE. Case reassigned to Magistrate Judge Nathanael M. Cousins for all further proceedings. Judge Yvonne Gonzalez Rogers no longer assigned to case. Signed by The Clerk on 06/10/2022. (jrs, COURT STAFF) (Filed on 6/10/2022) (Entered: 06/10/2022)** |
| 06/10/2022 | 45 | CLERK'S NOTICE SETTING Case Management Conference for 8/24/2022, at 10:00 AM by telephone. Joint Case Management Statement due by 8/17/2022.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)*<br>(lmh, COURT STAFF) (Filed on 6/10/2022) (Entered: 06/10/2022) |
| 07/01/2022 | 46 | CLERK'S NOTICE VACATING Hearing set for 7/12/2022 re: 40 Motion to Strike. Parties are ordered to meet and confer and file by 7/11 a stipulation proposing a briefing and hearing schedule for Plaintiff's motion.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (lmh, COURT STAFF) (Filed on 7/1/2022) (Entered: 07/01/2022) |
| 07/11/2022 | 47 | STIPULATION WITH PROPOSED ORDER re 46 Clerk's Notice, 40 MOTION to Strike 37 Answer to Complaint, , 45 Clerk's Notice, *Stipulation Re Case Management Conference and Motion to Strike; [Proposed] Order* filed by Yuting Chen. (Attachments: # 1 Declaration Declaration of Craig A. Hansen)(Hansen, Craig) (Filed on 7/11/2022) (Entered: 07/11/2022) |
| 07/11/2022 | 48 | **ORDER *AS MODIFIED* GRANTING 47 Stipulation Re: Case Management Conference and Motion to Strike. Case Management Conference set for 8/24/2022 is continued to 9/7/2022, at 01:00 PM. Case Management Statement shall be filed by 8/31/2022. Hearing on Motion to Strike, Dkt. 40 , is also set for 9/7/2022, at 01:00 PM by Zoom webinar. Opposition due 8/10/2022. Reply shall be filed by 8/24/2022. Signed by Judge Nathanael M. Cousins on 7/11/2022.** (lmh, COURT STAFF) (Filed on 7/11/2022) (Entered: 07/11/2022) |
| 08/10/2022 | 49 | OPPOSITION/RESPONSE (re 40 MOTION to Strike 37 Answer to Complaint, ) filed byAbraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. (Pierce, Brianna) (Filed on 8/10/2022) (Entered: 08/10/2022) |
| 08/24/2022 | 50 | REPLY TO OPPOSITION (re 40 MOTION to Strike 37 Answer to Complaint ) filed by Yuting Chen. (Hansen, Craig) (Filed on 8/24/2022) Modified text on 8/25/2022 (dhm, COURT STAFF). (Entered: 08/24/2022) |
| 08/28/2022 | 51 | **Order denying 40 Motion to Strike 37 Answer to Complaint, entered by Magistrate Judge Nathanael M. Cousins. The Court is not persuaded that the motion satisfies Rule 12(f). The attachments to the Answer may be inadmissible, but the Court finds it is premature to reach that conclusion on the present record. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (Entered: 08/28/2022)** |
| 08/29/2022 | 52 | CLERKS NOTICE SETTING ZOOM HEARING. Case Management Conference set for 9/7, is continued to 9/14/2022, at 11:00 AM. Joint Statement due by 9/7/2022. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/nc |

| | | |
|---|---|---|
| | | **General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (lmh, COURT STAFF) (Filed on 8/29/2022) (Entered: 08/29/2022) |
| 09/07/2022 | 53 | STIPULATION WITH PROPOSED ORDER *Joint Stipulation re CMC* filed by Yuting Chen. (Attachments: # 1 Declaration of Craig Hansen)(Hansen, Craig) (Filed on 9/7/2022) (Entered: 09/07/2022) |
| 09/07/2022 | 54 | **ORDER GRANTING 53 Stipulation re CMC. Case Management Conference set for 9/14/2022 is continued to 9/28/2022, at 11:00 AM via Zoom webinar. Case Management Statement due by 9/21/2022. Signed by Judge Nathanael M. Cousins.** (lmh, COURT STAFF) (Filed on 9/7/2022) (Entered: 09/07/2022) |
| 09/21/2022 | 55 | CASE MANAGEMENT STATEMENT filed by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. (Pierce, Brianna) (Filed on 9/21/2022) (Entered: 09/21/2022) |
| 09/24/2022 | 56 | **ORDER STRIKING Separately Filed Case Management Statements and Directing Filing of Joint Statement. The Court strikes the separate statement at Dkt. No. 53 . The parties must confer further and file an updated joint statement by 9/27 at noon. Signed by Judge Nathanael M. Cousins on 9/24/2022.** (lmh, COURT STAFF) (Filed on 9/24/2022) (Entered: 09/24/2022) |
| 09/27/2022 | 57 | CASE MANAGEMENT STATEMENT filed by Yuting Chen. (Attachments: # 1 Exhibit) (Hansen, Craig) (Filed on 9/27/2022) (Entered: 09/27/2022) |
| 09/28/2022 | 58 | **Minute Entry for proceedings held before Magistrate Judge Nathanael M. Cousins. Further Case Management Conference held on 9/28/2022.**<br><br>**Court to issue case schedule. Further Case Management Conference set for 1/25/2023, at 11:00 AM via Zoom webinar.**<br>**Updated Joint Case Management Statement due by 1/18/2023.**<br><br>Attorneys for Plaintiff: Craig Hansen, Collin Greene.<br>Attorneys for Defendants: Constantine Economides, Brianna Pierce.<br><br>Zoom recording: 11:01am - 11:24am.<br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (lmh, COURT STAFF) (Date Filed: 9/28/2022) (Entered: 09/28/2022) |
| 09/28/2022 | 59 | **CASE MANAGEMENT SCHEDULING ORDER:**<br>**All non-expert discovery must be completed by 8/3/2023.**<br>**Parties must complete all discovery of expert witnesses by 8/3/2023.**<br>**Dispositive motions to be filed by 9/15/2023.**<br>**Pretrial Statements and Motions in Limine due 1/3/2024.**<br>**Pretrial Conference set for 1/17/2024, at 02:00 PM.**<br>**Jury Trial set for 2/12/2024, at 09:30 AM in San Jose, Courtroom 5, 4th Floor.**<br>**Signed by Judge Nathanael M. Cousins on 9/28/2022.** (lmh, COURT STAFF) (Filed on 9/28/2022) (Entered: 09/28/2022) |

| 11/22/2022 | 60 | NOTICE of Substitution of Counsel by Craig Alan Hansen *Yuting Chen* (Hansen, Craig) (Filed on 11/22/2022). (Entered: 11/22/2022) |
|---|---|---|
| 11/22/2022 | 61 | **ORDER SETTING HEARING on Notice of Withdrawal of Counsel Hansen Law Firm, Dkt. No. 60 . The Court sets a hearing on this request for 12/19/2022, at 10:30 AM. This proceeding will be held via a Zoom webinar. Signed by Judge Nathanael M. Cousins on 11/22/2022.**<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/nc<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>(lmh, COURT STAFF) (Filed on 11/22/2022) (Entered: 11/22/2022) |
| 12/16/2022 | 62 | NOTICE of Appearance by Brian A. Barnhorst *OF SAC ATTORNEYS LLP ON BEHALF OF PLAINTIFF YUTING CHEN* (Barnhorst, Brian) (Filed on 12/16/2022) (Entered: 12/16/2022) |
| 12/19/2022 | 63 | **ORDER VACATING Hearing on Notice of Withdrawal of Counsel Hansen Law Firm; Approving Change in Counsel. Re: 60 . Signed by Judge Nathanael M. Cousins.** (lmh, COURT STAFF) (Filed on 12/19/2022) (Entered: 12/19/2022) |
| 01/06/2023 | 64 | NOTICE by Ariel Abittan (Attachments: # 1 Exhibit A - Order Denying Motion to Disqualify)(Pierce, Brianna) (Filed on 1/6/2023) (Entered: 01/06/2023) |
| 01/18/2023 | 65 | Certificate of Interested Entities by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan (Economides, Constantine) (Filed on 1/18/2023) (Entered: 01/18/2023) |
| 01/19/2023 | 66 | JOINT CASE MANAGEMENT STATEMENT filed by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. (Pierce, Brianna) (Filed on 1/19/2023) (Entered: 01/19/2023) |
| 01/20/2023 | 67 | CLERK'S NOTICE RE: 66 Joint Statement. The Court orders the party to confer further on any disputes concerning the sufficiency of initial disclosures. By 1/31/23, they must file a joint discovery letter brief if there are any remaining disputes about the disclosures. The CMC is continued from 1/25 to 6/7/23 1:00 PM by zoom, with joint case update due 5/31/23. The case schedule remains as previously set.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (lmh, COURT STAFF) (Filed on 1/20/2023) (Entered: 01/20/2023) |
| 01/31/2023 | 68 | Joint Discovery Letter Brief *regarding Initial Disclosures* filed by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. (Pierce, Brianna) (Filed on 1/31/2023) (Entered: 01/31/2023) |
| 02/01/2023 | 69 | CLERK'S NOTICE RE: 68 . Please take notice the Joint Discovery Letter Brief *regarding Initial Disclosures* is set for hearing 2/8/2023, at 10:30 AM **in person** in San Jose, Courtroom 5, 4th Floor before Magistrate Judge Nathanael M. Cousins. The parties must bring a copy of the disputed disclosures to the hearing. |

| | | |
|---|---|---|
| | | *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (lmh, COURT STAFF) (Filed on 2/1/2023) (Entered: 02/01/2023) |
| 02/08/2023 | 70 | **Minute Entry for proceedings held before Magistrate Judge Nathanael M. Cousins. Hearing re: 68 Joint Discovery Letter Brief re Initial Disclosures held on 2/8/2023.** <br><br> **Request to compel supplemental initial disclosures granted in part and denied in part as explained at hearing.** <br> **1) As to witnesses, no further disclosure required.** <br> **2) As to documents, supplemental disclosure with more specificity of categories of documents due 2/22.** <br> **3) As to damages, supplemental disclosure with more specificity as to computation of damages due 2/22.** <br><br> **Parties to confer by 3/1 and file joint status report indicating whether initial disclosure disputes resolved or if there are remaining disputes. No fees or costs awarded at present.** <br><br> Attorney for Plaintiff: Jackson Morgus, Raymond Hora. <br> Attorneys for Defendants: Brianna Pierce. <br><br> Liberty recording: 10:34am-10:36am/10:50am-10:57am. <br> *(This is a text-only entry generated by the court. There is no document associated with this entry.)* <br> (lmh, COURT STAFF) (Date Filed: 2/8/2023) (Entered: 02/08/2023) |
| 03/01/2023 | 71 | STATUS REPORT *Regarding Initial Disclosures* by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. (Pierce, Brianna) (Filed on 3/1/2023) (Entered: 03/01/2023) |
| 03/02/2023 | 72 | CLERK'S NOTICE SETTING IN PERSON HEARING. Please take notice a Discovery Hearing re: Dkt. 71 is set for 3/8/2023, 10:30 AM in San Jose, Courtroom 5, 4th Floor before Magistrate Judge Nathanael M. Cousins. <br><br> *(This is a text-only entry generated by the court. There is no document associated with this entry.)* <br> (lmh, COURT STAFF) (Filed on 3/2/2023) (Entered: 03/02/2023) |
| 03/08/2023 | 73 | **Minute Entry for proceedings held before Magistrate Judge Nathanael M. Cousins: Discovery Hearing re: Dkt. 71 held on 3/8/2023 with case 5:20-cv-09340.** <br> As to discovery brief dkt. 71, re second amended initial disclosures, Court ordered as follows: <br><br> Defendants in the 5:20-cv-09340 matter, and plaintiff in the 5:21-cv-09393 matter, ordered to file and serve amended initial disclosures by 3/22/2023 with these improvements: <br> 1. Describing subjects of information known by witnesses with more specificity. <br> 2. Disclosing known address and telephone number of all witnesses. <br> 3. Describing location and categories of documents with more specificity. <br> 4. Producing or disclosing with more specificity documents supporting damages calculation. <br><br> Parties are ordered to meet and confer and file joint letter brief by 3/29/2023 addressing the supplemental disclosures. No fees and costs presently awarded. The Court may impose Rule 37 sanctions if the disclosures are not timely cured. |

| | | |
|---|---|---|
| | | Digital Recording Time: Liberty Recording 10:37-10:41am/10:49-10:58am (13 mins). Plaintiff Attorney: Jackson Morgus & Raymond Hora. Defendant Attorney: Brianna Pierce.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jhf, COURT STAFF) (Date Filed: 3/8/2023) (Entered: 03/08/2023) |
| 03/22/2023 | 74 | AMENDED DOCUMENT by Yuting Chen. *PLAINTIFF'S THIRD AMENDED INITIAL DISCLOSURES.* (Barnhorst, Brian) (Filed on 3/22/2023) (Entered: 03/22/2023) |
| 03/24/2023 | 75 | MOTION for Judgment on the Pleadings filed by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. Motion Hearing set for 5/3/2023 01:00 PM in San Jose, Courtroom 5, 4th Floor before Magistrate Judge Nathanael M. Cousins. Responses due by 4/7/2023. Replies due by 4/14/2023. (Economides, Constantine) (Filed on 3/24/2023) (Entered: 03/24/2023) |
| 03/27/2023 | 76 | AMENDED DOCUMENT by Yuting Chen. *PLAINTIFF'S FOURTH AMENDED INITIAL DISCLOSURES.* (Barnhorst, Brian) (Filed on 3/27/2023) (Entered: 03/27/2023) |
| 03/29/2023 | 77 | Joint Discovery Letter Brief*Regarding Initial Disclosures* filed by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. (Pierce, Brianna) (Filed on 3/29/2023) (Entered: 03/29/2023) |
| 03/30/2023 | 78 | CLERK'S NOTICE SETTING IN PERSON HEARING. Please take notice the Joint Discovery Letter Brief *Regarding Initial Disclosures*, Dkt. 77 , is set for 4/12/2023, at 11:00 AM in San Jose, Courtroom 5, 4th Floor before Magistrate Judge Nathanael M. Cousins.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)*<br>(lmh, COURT STAFF) (Filed on 3/30/2023) (Entered: 03/30/2023) |
| 04/07/2023 | 79 | OPPOSITION/RESPONSE (re 75 MOTION for Judgment on the Pleadings ) filed byYuting Chen. (Attachments: # 1 Declaration of Yuting Chen)(Barnhorst, Brian) (Filed on 4/7/2023) (Entered: 04/07/2023) |
| 04/11/2023 | 80 | REPLY (re 75 MOTION for Judgment on the Pleadings ) filed byAbraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. (Economides, Constantine) (Filed on 4/11/2023) (Entered: 04/11/2023) |
| 04/12/2023 | 81 | **Minute Entry for proceedings held before Magistrate Judge Nathanael M. Cousins. Hearing re 77 Joint Discovery Letter Brief Regarding Initial Disclosures held on 4/12/2023.**<br><br>**Joint status report due 4/25/2023, noon.**<br>**Further Discovery Hearing set for 4/26/2023, at 11:00 AM in San Jose, Courtroom 5, 4th Floor.**<br><br>Attorneys for Plaintiffs: Jackson Morgus, James Giachetti.<br>Attorney for Defendants: Brianna Pierce.<br><br>Liberty recording: 11:05am - 11:50am.<br>*(This is a text-only entry generated by the court. There is no document associated with* |

| | | |
|---|---|---|
| | | *this entry.)*<br>(lmh, COURT STAFF) (Date Filed: 4/12/2023) (Entered: 04/12/2023) |
| 04/12/2023 | 82 | **ORDER on Discovery Disputes Concerning Initial Disclosures. Re: Dkt. No. 77 . Signed by Judge Nathanael M. Cousins.** (lmh, COURT STAFF) (Filed on 4/12/2023) (Entered: 04/12/2023) |
| 04/18/2023 | 83 | MOTION for Judgment on the Pleadings filed by Ariel Abittan. Motion Hearing set for 5/24/2023 01:00 PM in San Jose, Courtroom 5, 4th Floor before Magistrate Judge Nathanael M. Cousins. Responses due by 5/2/2023. Replies due by 5/9/2023. (Pierce, Brianna) (Filed on 4/18/2023) (Entered: 04/18/2023) |
| 04/18/2023 | 84 | Declaration of Constantine P. Economides in Support of 83 MOTION for Judgment on the Pleadings filed byAriel Abittan. (Attachments: # 1 Exhibit Exhibit 1)(Related document(s) 83 ) (Pierce, Brianna) (Filed on 4/18/2023) (Entered: 04/18/2023) |
| 04/18/2023 | 85 | Request for Judicial Notice re 83 MOTION for Judgment on the Pleadings , 84 Declaration in Support filed byAriel Abittan. (Related document(s) 83 , 84 ) (Pierce, Brianna) (Filed on 4/18/2023) (Entered: 04/18/2023) |
| 04/19/2023 | 86 | AMENDED DOCUMENT by Yuting Chen. *Plaintiff's Fifth Amended Initial Disclosures.* (Barnhorst, Brian) (Filed on 4/19/2023) (Entered: 04/19/2023) |
| 04/20/2023 | 87 | CLERK'S NOTICE SETTING IN PERSON HEARING. Please take notice the Motions for Judgment on the Pleadings, Dkt. Nos. 75 and 83 , are rescheduled for 5/31/2023, at 11:00 AM in San Jose, Courtroom 5, 4th Floor before Magistrate Judge Nathanael M. Cousins.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)*<br>(lmh, COURT STAFF) (Filed on 4/20/2023) (Entered: 04/20/2023) |
| 04/25/2023 | 88 | Discovery Letter Brief *to Stay Depositions and Discovery Pending Resolution of Defendants' Motions for Judgment on the Pleadings* filed by Yuting Chen. (Attachments: # 1 Affidavit Declaration in Support of Plaintiff's Letter Brief to Stay Depositions and Discovery)(Barnhorst, Brian) (Filed on 4/25/2023) (Entered: 04/25/2023) |
| 04/25/2023 | 89 | **Order denying 88 Discovery Letter Brief entered by Magistrate Judge Nathanael M. Cousins. The unilateral discovery motion fails to comply with my civil standing order. The motion is also not supported by good cause. A party deposition, conducted after 17 months of litigation, is not premature and is not a "free lunch" as asserted in the motion. If plaintiff does not want to litigate simultaneously in federal and state court there is an obvious and available option: dismiss the federal case. No fees and costs awarded at present. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (Entered: 04/25/2023)** |
| 04/25/2023 | 90 | Joint Discovery Letter Brief *regarding Initial Disclosures and Agenda* filed by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. (Pierce, Brianna) (Filed on 4/25/2023) (Entered: 04/25/2023) |
| 04/26/2023 | 91 | **Minute Entry for proceedings held before Magistrate Judge Nathanael M. Cousins. Further Hearing re 90 Joint Discovery Letter Brief held on 4/26/2023.**<br><br>**Court grants Plaintiff's request for dismissal.**<br>**Discovery issues in Dkt. 90 are moot in light of dismissal; 4/27 deposition of Chen is vacated.** |

| | | |
|---|---|---|
| | | Court to issue order.<br><br>Attorneys for Plaintiffs: James Giachetti.<br>Attorney for Defendants: Brianna Pierce.<br><br>Liberty recording: 11:07am - 11:59am.<br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)*<br>(lmh, COURT STAFF) (Date Filed: 4/26/2023) (Entered: 04/26/2023) |
| 04/26/2023 | 92 | **ORDER DISMISSING CASE WITH CONDITIONS. Signed by Judge Nathanael M. Cousins on 4/26/2023.** (lmh, COURT STAFF) (Filed on 4/26/2023) (Entered: 04/26/2023) |
| 05/02/2023 | 93 | MOTION to Withdraw filed by Yuting Chen. Motion Hearing set for 5/31/2023 11:00 AM in San Jose, Courtroom 5, 4th Floor before Magistrate Judge Nathanael M. Cousins. Responses due by 5/24/2023. (Attachments: # 1 Affidavit Declaration of James Cai in Support of Motion to Withdraw)(Barnhorst, Brian) (Filed on 5/2/2023) (Entered: 05/02/2023) |
| 05/02/2023 | 94 | Proposed Order re 93 MOTION to Withdraw by Yuting Chen. (Barnhorst, Brian) (Filed on 5/2/2023) (Entered: 05/02/2023) |
| 05/02/2023 | 95 | MOTION to Withdrawal as Counsel: [Proposed Order] by Jingjing Ye (Ye, Jingjing) (Filed on 5/2/2023) Modified on 5/4/2023 (sfb, COURT STAFF). (Entered: 05/02/2023) |
| 05/04/2023 | | Electronic filing error. **Incorrect event used. [err101]Corrected by Clerk's Office.**<br><br>No further action is necessary. Re: 95 Notice of Substitution of Counsel filed by Yuting Chen (sfb, COURT STAFF) (Filed on 5/4/2023) (Entered: 05/04/2023) |
| 05/05/2023 | 96 | Proposed Order *Proposed Protective Order* by Yuting Chen. (Ye, Jingjing) (Filed on 5/5/2023) (Entered: 05/05/2023) |
| 05/05/2023 | 97 | NOTICE by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC re 96 Proposed Order (Pierce, Brianna) (Filed on 5/5/2023) (Entered: 05/05/2023) |
| 05/09/2023 | 98 | MOTION for Extension of Time to File *Motion for Fees, Costs, and Sanctions* filed by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. (Attachments: # 1 Declaration, # 2 Proposed Order)(Pierce, Brianna) (Filed on 5/9/2023) (Entered: 05/09/2023) |
| 05/10/2023 | 99 | **Order granting in part and denying in part 98 Motion for Extension of Time to File entered by Magistrate Judge Nathanael M. Cousins. The Court extends the deadline to file the motion to May 15, 2023; opposition due May 26, 2023. No change to hearing. The Court will be in trial and is not available for a hearing on the requested June 7 date. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (Entered: 05/10/2023)** |
| 05/10/2023 | 100 | **ORDER DENYING 96 Proposed Protective Order. Signed by Judge Nathanael M. Cousins on 5/10/2023.** (lmh, COURT STAFF) (Filed on 5/10/2023) (Entered: 05/10/2023) |
| 05/15/2023 | 101 | MOTION for Sanctions *, Fees, and Costs* filed by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. Motion Hearing set for 5/31/2023 11:00 AM in San Jose, Courtroom 4, 5th Floor before Magistrate Judge Nathanael M. Cousins. Responses due by |

| | | 5/26/2023. (Attachments: # 1 Proposed Order)(Pierce, Brianna) (Filed on 5/15/2023) (Entered: 05/15/2023) |
|---|---|---|
| 05/15/2023 | 102 | Declaration of Constantine P. Economides in Support of 101 MOTION for Sanctions , *Fees, and Costs* filed byAbraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T)(Related document(s) 101 ) (Pierce, Brianna) (Filed on 5/15/2023) (Entered: 05/15/2023) |
| 05/17/2023 | 103 | NOTICE by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC re 102 Declaration in Support,, 101 MOTION for Sanctions , *Fees, and Costs* (Pierce, Brianna) (Filed on 5/17/2023) (Entered: 05/17/2023) |
| 05/18/2023 | 104 | MOTION for Extension of Time to File *Under Local Rule 6 To Enlarge Time to Respond to Defendants' Motion for Fees, Costs, and Sanctions* filed by Hansen Law Firm, P.C.. (Attachments: # 1 Declaration Declaration of Philip E. Yeager, # 2 Exhibit Exhibit A to Declaration of Philip E. Yeager, # 3 Exhibit Exhibit B to Declaration of Philip E. Yeager, # 4 Proposed Order [Proposed] Order Granting Motion)(Hansen, Craig) (Filed on 5/18/2023) (Entered: 05/18/2023) |
| 05/24/2023 | 105 | OPPOSITION/RESPONSE (re 93 MOTION to Withdraw , 95 MOTION to Withdraw as Attorney ) filed byAbraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Hansen Law Firm, P.C., Realtime NY LLC. (Pierce, Brianna) (Filed on 5/24/2023) (Entered: 05/24/2023) |
| 05/26/2023 | 106 | **ORDER GRANTING 104 Non-Party Hansen Law Firm, P.C.'s Motion ot Enlarge Time to Respond to Defendants' Motion for Fees, Costs and Sanctions. Opposition due 6/2/2023. Hearing set for 5/31/2023 at 110:00 AM is VACATED. Signed by Judge Nathanael M. Cousins.** (lmh, COURT STAFF) (Filed on 5/26/2023) (Entered: 05/26/2023) |
| 05/26/2023 | 107 | OPPOSITION/RESPONSE (re 101 MOTION for Sanctions , *Fees, and Costs* ) *of Ms. Chen and Current Counsel* filed byYuting Chen. (Attachments: # 1 Declaration of Yuting Chen, # 2 Declaration of James Cai, # 3 Exhibit A to Cai Decl., # 4 Exhibit B to Cai Decl., # 5 Exhibit C to Cai Decl.)(Barnhorst, Brian) (Filed on 5/26/2023) (Entered: 05/26/2023) |
| 05/30/2023 | 108 | CLERK'S NOTICE RE: 93 Motion to Withdraw filed by SAC Attorneys LLP. The hearing scheduled for 5/31/2023, at 11:00 AM is VACATED.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)*<br>(lmh, COURT STAFF) (Filed on 5/30/2023) (Entered: 05/30/2023) |
| 06/02/2023 | 109 | OPPOSITION/RESPONSE (re 101 MOTION for Sanctions , *Fees, and Costs* ) filed byHansen Law Firm, P.C.. (Attachments: # 1 Declaration Declaration of Craig Alan Hansen)(Yeager, Philip) (Filed on 6/2/2023) (Entered: 06/02/2023) |
| 06/05/2023 | 110 | CLERK'S NOTICE RESETTING Motions to Withdraw, Dkt. Nos. 93 , 94 , and Motion for Sanctions, Fees and Costs, Dkt. No. 101 . Hearing set for 6/21/2023, at 11:00 AM in San Jose, Courtroom 5, 4th Floor before Magistrate Judge Nathanael M. Cousins.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* |

| | | (lmh, COURT STAFF) (Filed on 6/5/2023). (Entered: 06/05/2023) |
|---|---|---|
| 06/20/2023 | 111 | CLERKS NOTICE CONVERTING IN PERSON HEARING TO ZOOM WEBINAR. The hearing re Motions to Withdraw, Dkt. Nos. 93 , 94 and Motion for Sanctions, Dkt. 101 , set for 6/21/2023 at 11:00 AM will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/nc<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)*<br>(lmh, COURT STAFF) (Filed on 6/20/2023) (Entered: 06/20/2023) |
| 06/20/2023 | 112 | NOTICE by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Hansen Law Firm, P.C., Realtime NY LLC *Regarding Order Granting Issue Sanctions* (Attachments: # 1 Exhibit A)(Pierce, Brianna) (Filed on 6/20/2023) (Entered: 06/20/2023) |
| 06/21/2023 | 113 | **Minute Entry for proceedings held before Magistrate Judge Nathanael M. Cousins. Motion hearing held on 6/21/2023 via Zoom webinar.**<br><br>**Motions to withdraw, Dkt. Nos. 93 , 95 - Denied without prejudice in light of near-end of the case.**<br><br>**Motion for sanctions, Dkt. 101 - Denied for the reasons stated. The denial is without prejudice to filing of a regular bill of costs pursuant to the federal rules of civil procedure and local rules. The Court will enter judgment. Joint update on bill of costs status due 7/5/2023.**<br><br>Attorneys for Plaintiff: Patrick O'Shaughnessy, Jingjing Ye.<br>Attorneys for Defendants: Constantine Economides, Brianna Pierce.<br>Non-party Hansen Law Firm: Craig Hansen, Philip Yeager, Colin Greene.<br><br>Zoom webinar 11:04am - 11:57am.<br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)*<br>(lmh, COURT STAFF) (Date Filed: 6/21/2023) (Entered: 06/21/2023) |
| 06/30/2023 | 114 | **JUDGMENT entered against Plaintiff Yuting Chen. Signed by Judge Nathanael M. Cousins on 6/30/2023.** (lmh, COURT STAFF) (Filed on 6/30/2023) (Entered: 06/30/2023) |
| 07/05/2023 | 115 | STATUS REPORT *REGARDING BILL OF COSTS* by Abraham Abittan, Alyssa Abittan, Ariel Abittan, Brian Abittan, Eliana Abittan, Jacob Abittan, Rachel Abittan, Roy Graber, Tova Graber, Realtime NY LLC. (Pierce, Brianna) (Filed on 7/5/2023) (Entered: 07/05/2023) |

**PACER Service Center**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

*Abittan, Abraham v. Hansen Law Firm, PC, et al.*
United States District Court Case No. 5:25-cv-5427

At the time of service I was over 18 years of age and not a party to this action.  I am employed by Wilson, Elser, Moskowitz, Edelman & Dicker LLP in the County of San Francisco, State of California.  My business address is 655 Montgomery Street, Suite 900, San Francisco, California 94111.  My business Facsimile number is (415) 434-1370.  On this date I served the following document(s):

**DEFENDANTS HANSEN LAW FIRM, P.C., STEPHEN HOLMES, AND CRAIG HANSEN'S <u>REQUEST FOR JUDICIAL NOTICE</u> IN SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) AND CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16**
on the person or persons listed below, through their respective attorneys of record in this action, by placing true copies thereof in sealed envelopes or packages addressed as shown below by the following means of service:

☒:      By E-Service in conjunction with E-Filing the document(s) listed above through the Court's CM/ECF system, which effects electronic service on counsel and parties who are registered with the CM/ECF system.

**<u>SEE ATTACHED SERVICE LIST</u>**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

EXECUTED on October 17, 2025, at San Francisco, California.

*/s/ Peter Catalanotti*
Peter Catalanotti

DEFENDANTS HANSEN LAW FIRM, P.C., STEPHEN HOLMES, AND CRAIG HANSEN'S RFJN IN
SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFFS' COMPLAINT

322463705v.1

1

## **SERVICE LIST**

2

*Abittan, Abraham v. Hansen Law Firm, PC, et al.*
United States District Court Case No. 5:25-cv-5427

3

4

| Brianna K. Pierce<br>BELLATRIX LAW, P.C.<br>16868 Via Del Campo Ct., Ste 100<br>San Diego, California 92127<br>Telephone: (858) 338-5650<br>Email: bkp@bellatrix-law.com<br><br>*Attorneys for Plaintiffs*<br>**Abrahham Abittan, Rachel Abittan, Brian Abittan, Jacob Abittan, Alyssa Portal, Eliana Abittan, Roy Graber, and Tova Graber** | Bruce Douglas MacLeod<br>DAVIS, BENGTSON & YOUNG<br>1960 The Alameda, Ste 210<br>San Jose, CA 95126<br>Telephone: (669)288-6727<br>Email: bmacleod@dby-law.com<br><br>*Attorneys for Defendants*<br>**James Cai, Brian Barnhorst, Patrick O'Shugnessy** |
|---|---|
| Jingjing Ye Bennett<br>YE & ASSOCIATES, P.C.<br>3400 N Central Expy, Ste 110-321<br>Richardson, TX 75080<br>Telephone: (469)410-5232<br>Email: jye@yefirm.com<br><br>*Attorneys for Defendants*<br>**Ye & Associates PLLC and Jingjing Ye** | |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

DEFENDANTS HANSEN LAW FIRM, P.C., STEPHEN HOLMES, AND CRAIG HANSEN'S RFJN IN
SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFFS' COMPLAINT

322463705v.1