UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABRAHAM ABITTAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HANSEN LAW FIRM, P.C., et al.,<br><br>Defendants. | Case No.  25-cv-05427-SVK<br><br>**ORDER RESOLVING DEFENDANTS'<br>PENDING MOTIONS TO DISMISS OR<br>STRIKE PLAINTIFFS' CLAIMS**<br><br>Re: Dkt. Nos. 19, 20, 33, 35 |

Plaintiffs bring this action against Defendants for malicious prosecution, arising out of an alleged course of conduct (in particular, their representation of Yuting Chen) described below. *See, infra*, § I ("Background").  The Defendants fall into three categories:  Hansen Law Firm, P.C., Craig Hansen and Stephen Holmes (the "HLF Defendants");  SAC Attorneys LLP, James Cai, Brian Barnhorst and Patrick O'Shaughnessy (the "SAC Defendants");  and Ye & Associates PLLC and Jingjing Ye (the "Ye Defendants") (collectively, the "Defendants").  Before the Court are the Defendants' three motions to dismiss and/or strike Plaintiffs' claims:  (1), (2) the HLF and SAC Defendants' Motions to Strike or Dismiss the Complaint pursuant to Cal. Code Civ. Proc. §425.16, (Dkts. 33 (the "HLF Motion") and 19 (the "SAC Motion"), respectively) and (3) the Ye Defendants' Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction, (Dkt. 20 (the "Ye Motion")).  On October 18, 2025, the Ye Defendants also filed a notice of Conditional Joinder in the HLF and SAC Motions.  Dkt. 35 ("Conditional Joinder").  The Parties have also filed numerous requests for judicial notice.  Dkts. 19-1, 33-3, 56, 66-1, 67-1. The Court now resolves the pending motions and addresses the status of the Conditional Joinder.

All Parties have consented to magistrate-judge jurisdiction.  Dkts. 11, 23, 25, 34.  The Court determines that the motions may be resolved without oral argument.  Civil L.R. 7-1(b). Having considered the Parties' submissions, the record in this action and the relevant law, the

Court **GRANTS IN PART** and **DENIES IN PART** the HLF Motion, the SAC Motion and the Ye Motion, and **DENIES** the Ye Defendants' request for Conditional Joinder.

## I.    BACKGROUND

### A.    The Parties, Relevant Non-Parties and Nature of the Suit

This case arises out of an alleged course of conduct between two parties not before the Court:  Ariel Abittan ("Mr. Abittan") and Yuting Chen ("Ms. Chen").  *See* Dkt. 1 ("Complaint"), ¶ 21.  The Plaintiffs are:

- Dr. Abraham Abittan, Mr. Abittan's father;

- Rachel Abittan, Mr. Abittan's mother;

- Brian Abittan and Jacob Abittan, both Mr. Abittan's brothers;

- Alyssa Portal (née Abittan), Mr. Abittan's sister;

- Eliana Abittan, Mr. Abittan's wife;

- Roy Graber, Mr. Abittan's father-in-law;  and

- Tova Graber, Mr. Abittan's mother-in-law.

*Id.*, ¶¶ 15.[1]  The Defendants are three law firms and certain individual attorneys associated with the firms that at various times represented Ms. Chen.  *Id.*, ¶¶ 16-20.  Plaintiffs bring this action against Defendants alleging malicious prosecution conducted on behalf of Ms. Chen.  *See, generally, id.*

### B.    Judicial Notice and Declarations

In general, in ruling on a motion to dismiss, a court may consider "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice."  *Metzler Inv. GmBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061. (9th Cir. 2008).  A special motion to strike a complaint pursuant to California's anti-SLAPP statute,[2] however, is somewhat different.  "[A] special motion may be premised on legal deficiencies inherent in the plaintiff's claim, analogous to a motion to dismiss under Federal Rule of Civil Procedure

---

[1] Due to the overlap in Plaintiffs last names and for purposes of clarity, where the Court refers to a Plaintiff individually, it will do so by his or her first name.

[2] SLAPP refers to the focus of the statute authorizing such motions and stands for "Strategic Lawsuit Against Public Participation."  Cal. Code Civ. P. § 425.16

United States District Court
Northern District of California

12(b)(6)." *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 976 (C.D. Cal. 1999). "Or, a motion may assume that the plaintiff has stated a claim but assert that the plaintiff cannot support that claim with evidence, analogous to a motion for summary judgment under Federal Rule of Civil Procedure 56." *Id.* In any case, courts may take judicial notice of facts "not subject to reasonable dispute," either because they are "generally known" or "can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). In relevant part, "a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Id.* The case at bar is based upon the Defendants' conduct in bringing and maintaining the underlying related legal actions. Thus, the background herein is drawn from Plaintiffs' Complaint (Dkt. 1) and the attachments thereto, as well as other matters of public record of which the Court takes judicial notice.

The Parties in this case have filed a number of requests for judicial notice. *See* Dkt. 19-1 ("SAC Defendants' First RJN"); Dkt. 33-3 ("HLF Defendants' First RJN"); Dkt. 56 ("Plaintiffs' RJN"); Dkt. 66-1 (HLF Defendants' Second RJN"); Dkt. 67-1 ("SAC Defendants' Second RJN"). No party has opposed any other party's requests for judicial notice. The Court hereby **GRANTS IN PART** and **DENIES IN PART** the requests for judicial notice as follows:

- All Parties' requests for judicial notice of filings in the related judicial actions are **GRANTED IN PART** as matters of public record, but **only** as to the facts that are recounted, cited or relied upon herein.

- The Court otherwise **DENIES AS MOOT** all requests for judicial notice to the extent a fact is not cited, because the Court does not rely on such matters.

Additionally, Ye Defendants filed a declaration from a front-desk employee for "Common Desk, a co-working space provider as a subsidiary of WeWork, a global shared workspace and service provider" in support of the Ye Motion. Dkt. 20-1. Plaintiffs' counsel in turn submitted a declaration in opposition, attaching certain exhibits and averring certain facts. Dkt. 32-1. The Court will consider the averments of the Parties for the purposes of the Ye Motion but, because the Court does not hold an evidentiary hearing, "[c]onflicts between parties over statements

3

contained in affidavits must be resolved in the [P]laintiff[s'] favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

### C.     Relevant History of the Underlying Actions

On November 6, 2020, after a breakdown in an alleged business relationship between Mr. Abittan and Ms. Chen, a company (Temujin Labs Inc., the "Company") with which Ms. Chen was involved[3] filed suit against Mr. Abittan in California state court. *See Temujin Labs Inc. et al. v. Abittan et al.*, Superior Court of California, County of Santa Clara, Case No. 20-cv-372622 (the "State Action"). On December 24, 2020, Mr. Abittan filed a federal action against "Lily Chao (a/k/a Tiffany Chen, a/k/a Yuting Chen)"[4] and the Company. *See Abittan v. Chao et al.*, No. 20-cv-9340, Dkt. 1 (N.D. Cal.). The Honorable Nathaniel Cousins granted the Company's motion to dismiss in that action without leave to amend on July 19, 2021, finding that Mr. Abittan's claims were compulsory counterclaims in the State Action. *Id.*, Dkt. 78. On November 3, 2021, Mr. Abittan filed his cross-complaint in the State Action against Ms. Chen, her Company, and others alleging, *inter alia*, causes of action for racketeering, fraud and breach of contract. Dkt. 1, ¶ 21 and Ex. J. The alleged business relationship involved two businesses: a luxury watch venture and a cryptocurrency business. *See, e.g.*, Dkt. 1, Ex. A, ¶¶ 24, 29 and Ex. J, ¶ 4.

A month later, on December 3, 2021, Ms. Chen filed a federal action against Mr. Abittan as well as against Plaintiffs for a civil conspiracy. Dkt. 1, Ex. A (*Chen v. Abittan et al.*, No. 21-cv-9393 (N.D. Cal.) (the "Federal Action")). Among other claims, Ms. Chen brought three counts of breach of contract and a count of conversion against Mr. Abittan, while alleging claims for aiding and abetting breach, fraud, unjust enrichment, intentional infliction of emotional distress ("IIED") and civil conspiracy against Plaintiffs. *Id.*; *see also id.*, ¶ 2. The Federal Action "was terminated in favor of Plaintiffs when the complaint was dismissed with prejudice and judgment entered in Plaintiffs' favor on June 30, 2023." *Id.*, ¶ 29.[5]

---

[3] Exhibit J to the Complaint alleges that Ms. Chen was "the coleader of a fraudulent association-in-fact enterprise" including the Company. Dkt. 1, Ex. J, ¶ 14.

[4] The precise relationship between Ms. Chen and Ms. Chao, including whether they are one and the same, is a topic of some of the Parties' arguments and is addressed in Section III.A.2.c.

[5] The underlying State Action also terminated in Mr. Abittan's favor, at least with regard to Ms. Chao, when on September 26, 2023 the Honorable Sunil R. Kulkarni maintained his entry of

4

On June 27, 2025, Plaintiffs filed the Complaint, the gravamen of which is that the Federal Action was frivolous and brought for an improper purpose as to Plaintiffs (Mr. Abittan is not a plaintiff in this matter).  Dkt. 1, ¶ 23 ("[T]he claims against Plaintiffs were untenable, that the allegations against Plaintiffs were fabricated, and that Plaintiffs had never met, interacted with, or transacted business with Chen.").  More particularly, Plaintiffs allege that the HLF Defendants, "acting on behalf of and in concert with [Ms. Chen], without probable cause and for an improper and malicious purpose" filed the Federal Action.  *Id.*, ¶ 2.  They allege that the SAC Defendants and Ye Defendants "maintained the case until its conclusion, despite knowing at all times that the Federal Action was legally untenable and brought for an improper purpose."  *Id.*  Plaintiffs allege that the Federal Action was dismissed "on the eve of Chen's deposition—where Chen's lack of relationship to or with Plaintiffs would have been on full display."  *Id.*, ¶ 26.

**D.      Relevant Procedural History of this Action**

On October 1, 2025, SAC Defendants appeared and moved to dismiss or strike the Complaint pursuant to Rule[6] 12(b)(6) and California's Anti-SLAPP statute.  Dkt. 19.  The same day, Ye Defendants—who, unlike the SAC and HLF Defendants, are based in Texas—filed a motion to dismiss for lack of personal jurisdiction and improper service of process.  Dkt. 20.  On October 17, 2025, the HLF Defendants appeared and moved to dismiss or strike the Complaint pursuant to Rule 12(b)(6) and the Anti-SLAPP statute.  Dkt. 33.  On October 18, 2025, Ye Defendants filed a Notice of Conditional Joinder to the SAC and HLF Defendants' Anti-SLAPP Motions.  Dkt. 35.

In briefing, the Ye Defendants also filed an administrative motion seeking (1) to defer ruling on their Anti-SLAPP joinder until after the Court ruled on the Ye Motion and (2) leave to submit additional briefing and a supplemental declaration in support of their Anti-SLAPP position.  *See* Dkt. 63.  On December 2, 2025, the Court denied the administrative motion, explaining that the Ye Defendants' request for a deferred ruling on their Anti-SLAPP joinder was already

_____

terminating sanctions against Ms. Chao for her "failure to produce all responsive documents concerning [her] identit[y]."  Dkt. 56-9 at 4.
[6] Unless otherwise noted, references to a "Rule" or "Rules" herein are references to the Federal Rule of Civil Procedure.

contained in the notice (Dkt. 35 at 3) and that the Court would "request for supplemental briefing and evidence … if and to the extent deemed helpful." Dkt. 65.

All pending motions were fully briefed by December 2, 2025. *See* Dkt. 32 (Plaintiffs' opposition to the Ye Motion);  Dkt. 42 (Ye Defendants' Reply);  Dkt. 55 (Plaintiffs' consolidated opposition to the SAC and HLF Motions);  Dkt. 66 (HLF Defendants' Reply);  Dkt. 67 (SAC Defendants' Reply).

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Rule 12(b)(5) – Improper Service of Process

Rule 12(b)(5) authorizes dismissal for "insufficient service of process." Fed. R. Civ. P. 12(b)(5).  "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).  "The court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion." *Fairbank v. Underwood*, 986 F. Supp. 2d 1222, 1228 (D. Or. 2013).  "If a district court determines that service of process is insufficient, the court may exercise discretion in determining whether to dismiss the action or simply quash service of process." *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-cv-02460-LHK, 2011 WL 2607158, at *3 n.2 (N.D. Cal. July 1, 2011) (citing *Stevens v. Security Pac. Nat. Bank,* 538 F.2d 1387, 1389 (9th Cir. 1976)).

### B.    Motion to Dismiss Under Rule 12(b)(2) – Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2).  "[T]he plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Where, as here, the Court "decides the motion without an evidentiary hearing," the Court "only inquires into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (cleaned up).  "Uncontroverted allegations in the plaintiff's complaint must be taken as true," and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.*

////

////

**C.      California Code of Civil Procedure § 425.16 – Anti-SLAPP Motions to Strike**

Cal. Code Civ. Proc. § 425.16(b)(2) provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  The Ninth Circuit has "confirmed that defendants sued in federal courts can bring anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when they prevail."  *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).  "The purpose of the anti-SLAPP statute is "to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation."  *Id.* at 1090.

Under California's anti-SLAPP law, courts proceed through a two-step inquiry.  First, "the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech."  *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013);  *see also Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002).  If the defendant satisfies the first step, the burden shifts to the plaintiff to "show a 'reasonable probability' of prevailing in its claims for those claims to survive dismissal."  *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001);  *see also Equilon Enters.*, 29 Cal. 4th 53 (2002).  This burden varies depending on whether a legal deficiency or a factual deficiency is at issue:

> A special motion to strike can be based on any defect in the plaintiff's action. Thus, a special motion may be premised on legal deficiencies inherent in the plaintiff's claim, analogous to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Or, a motion may assume that the plaintiff has stated a claim but assert that the plaintiff cannot support that claim with evidence, analogous to a motion for summary judgment under Federal Rule of Civil Procedure 56.

*Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 976 (C.D. Cal. 1999).  In other words, "a defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or when no evidence of sufficient substantiality exists to support a judgment for the plaintiff."  *Metabolife*, 264 F.3d at 840 (9th Cir. 2001).

Additionally, in considering anti-SLAPP motions filed "before the plaintiff has completed discovery," district courts must comply with Federal Rule of Civil Procedure 56, which "ensures that adequate discovery will occur before summary judgment is considered." *Id.* at 846 (quoting *Rogers*, 57 F. Supp. 2d at 982).

## III.   DISCUSSION

The Court's analysis follows the sequence of representation by the Defendants of Ms. Chen.  It thus begins by addressing the HLF Motion and the SAC Motion, in turn.  The Court then turns to address Ye Defendants' Motion, which seeks to dismiss the claims against them for lack of jurisdiction because, as the Ninth Circuit explained in a recent *en banc* decision, "the questions that must be answered to resolve an anti-SLAPP motion are in fact inextricably intertwined with the merits of the litigation."  *Gopher Media LLC v. Melone*, 154 F.4th 696, 702 (9th Cir. 2025) (en banc) (quotation marks and citations omitted);  *see also Bhs Law LLP v. Worldex Indus. & Trading Co.*, No. 25-cv-04471-SVK, 2025 WL 3754296, at *18-19 (N.D. Cal. Dec. 29, 2025) (this Court has previously found that it could not award "anti-SLAPP attorney's fees" where "it lack[ed] subject matter jurisdiction over [the plaintiff's claim].").  Finally, because the Court finds that it lacks personal jurisdiction over Ye Defendants, its analysis ends there (except to address the Ye Defendants "Conditional Joinder" request).

### A.   Plaintiffs Abraham, Rachel and Eliana's Claims Against the HLF and SAC Defendants Are Dismissed Pursuant to California's Anti-SLAPP Statute, but the Other Plaintiffs' Claims Raise a Sufficient Factual Dispute to Survive

The Court begins with the two-step inquiry under California's anti-SLAPP statute.  In their consolidated opposition to the HLF and SAC Motions, "Plaintiffs concede that the first step … is satisfied[.]" Dkt. 55 at 14-15.  Thus, the Court turns to the second step:  Have the Plaintiffs shown a "reasonable probability" of prevailing in their claims against the HLF and SAC Defendants?

#### 1.   Plaintiffs' Allegations of Malicious Prosecution

In California, claims for malicious prosecution require the plaintiff to show "(1) the defendants commenced the prior action or directed it, and the defendants pursued the action to legal termination in the plaintiff's favor; (2) the defendants brought the action without probable cause; and (3) the defendants initiated the action with malice." *Kim v. R Consulting & Sales, Inc.*,

67 Cal. App. 5th 263, 271 (2021), *as modified* (Aug. 27, 2021) (internal citations omitted).

As to these elements, all Plaintiffs' malicious prosecution allegations are as follows.

First, Plaintiffs allege that the HLF Defendants, on behalf if Ms. Chen, filed the Federal Action against them. Dkt. 1, ¶¶ 2, 22. Plaintiffs allege that the SAC Defendants and Ye Defendants "maintained the Federal Action until its conclusion." *Id.* Plaintiffs further allege that the Federal Action terminated favorably for them when Ms. Chen withdrew it with prejudice. *See id.*, ¶¶ 26-27.

Second, Plaintiffs allege that, "[f]rom its inception but no later than May 16, 2022," the HLF Defendants "knew, and any reasonable attorney would have known," that Ms. Chen's claims lacked merit. *Id.*, ¶ 23. As to the SAC and Ye Defendants, Plaintiffs allege that they knew or should have known the claims lacked merit "[w]hen [they] appeared in the Federal Action." *Id.* Specifically, Plaintiffs allege that the claims were legally untenable because the "Plaintiffs had never met with, interacted with, or transacted business with Chen," and that this was known to each of the Defendants at least as of May 16, 2022 when Plaintiffs "provided credible evidence" via "informal communications between counsel and sworn declarations filed in the Federal Action." *Id.*

Third, Plaintiffs allege several circumstances from which they assert a factfinder could infer malice. They allege that the Federal Action was brought in retaliation for the State Action complaint. *Id.*, ¶ 22. They allege, to the best of the Court's understanding,[7] that (a) Defendants did not ensure that "[Ms. Chen] was not simply a person being used by other individuals[ *i.e.*,] Lily Chao and Damien Ding" as a "strawperson" and (b) to the extent they "relied on facts provided by someone other than Yuting Chen, they did so with no reasonable cause to believe the truth of the claims filed against Plaintiffs." *Id.*, ¶ 24-25. Plaintiffs also allege that "the claims and allegations against Plaintiffs stood in [] direct contrast with arguments and allegations made by

---

[7] There appears to be a typographical error in Plaintiffs' Complaint at this juncture. For two reasons, the Court interprets this paragraph of the Complaint as it does. First, Plaintiffs are the non-moving parties, and thus the Court should draw reasonable inferences in their favor under either a motion-to-dismiss or motion-for-summary-judgment standard. Second, this interpretation accords with the arguments in Plaintiffs' opposition.

Defendants on behalf of" others in the related actions. *Id.* Finally, Plaintiffs allege that the Federal Action was only dismissed "on the eve of Chen's deposition deposition—where Chen's lack of relationship to or with Plaintiffs would have been on full display." *Id.*, ¶ 26. In sum, Plaintiffs allege malicious intent because "Defendants knew and did not care that the claims lacked probable cause." *Id.*, ¶ 24.

**2.    The HLF and SAC Defendants' Challenges to Plaintiffs' Complaint**

The HLF and SAC Defendants challenge Plaintiffs' claims on several grounds, many of which are common to the two sets of defendants. The Court addresses each ground in turn.

**a.    Plaintiffs Have a Reasonable Probability of Showing that a Favorable Termination Occurred**

On the first element, the HLF and SAC Defendants argue that malicious prosecution requires a "favorable determination," *i.e.*, not just a dismissal but one "related to the merits of the case and indicated the innocence or lack of responsibility for the alleged misconduct." *See* Dkt. 33 at 15-16 (HLF Defendants); Dkt. 19 at 13-14 (SAC Defendants). They argue that Ms. Chen's voluntary dismissal was insufficient to meet this element. *Id.*

As an initial matter, the HLF and SAC Defendants' position here is one of factual deficiency; they do not contend that a voluntary dismissal can never be a favorable termination. *See* Dkt. 33 at 15 (HLF Defendants contending only that a "voluntary dismissal *on technical grounds*, such as lack of jurisdiction, laches, [etc.]" is not a favorable termination); Dkt. 19 at 14 (SAC Defendants conceding that whether a voluntary dismissal "is a 'favorable determination' depends upon the specific circumstances and language of the dismissal order."). Accordingly, because the question is whether Ms. Chen's voluntary dismissal was a favorable termination based on the specific facts and circumstances, the summary-judgment-like standard applies. *See Rogers*, 57 F. Supp. 2d at 976. "This burden is much like that used in determining a motion for nonsuit or directed verdict, which mandates dismissal when no reasonable jury could find for the plaintiff." *Metabolife*, 264 F.3d at 840 (internal quotation marks and citations omitted).

Here, the Court agrees with Plaintiffs. They have proffered the admissible fact—via the Parties' requests for judicial notice—that Ms. Chen voluntarily dismissed her case *with* prejudice.

10

United States District Court
Northern District of California

*See, e.g.*, Dkt. 56-14 (J. Cousins' April 26, 2023 "Order Dismissing Case with Conditions" explaining:  "[A]t a hearing in open court, counsel for Plaintiff Yuting Chen moved to voluntarily dismiss this case with prejudice under Fed. R. Civ. P. 41(a)(2). … The Court GRANTS dismissal with prejudice, with conditions set forth in this order.").  "A voluntary dismissal is presumed to be a favorable termination on the merits," (*Jay v. Mahaffey*, 218 Cal. App. 4th 1522, 1540 (2013)), because there is a "natural assumption that one does not simply abandon a meritorious action once instituted." *Chevron Corp. v. Bonifaz*, No. 09-cv-05371 CW, 2010 WL 1948681, at *5 (N.D. Cal. May 12, 2010).

To be sure, Defendants may ultimately rebut this presumption by pointing to admissible evidence surrounding the circumstances of the dismissal. *See Jay*, 218 Cal. App. 4th at 1540. SAC Defendants do present evidence, by way of Ms. Chen's declaration in the Federal Action averring that she dismissed the litigation due to a lack of litigation funding and an intent to return to China.  Dkt. 19 at 7-8 (citing Dkt. 19-2, Ex. C).  That declaration, however, was not submitted at the time of the dismissal, but rather in opposition to a motion for attorney's fees. *See id.*  The Court does not find that this declaration averring a lack of funding when fees are on the line conclusively rebuts the presumption. *See Drummond v. Desmarais*, 176 Cal. App. 4th 439, 457 (2009), *as modified* (Aug. 18, 2009) ("[A] factfinder would be entitled to flatly disbelieve [the defendant's] declaration based upon its own contents and surrounding circumstances. That declaration therefore cannot establish, as a matter of law, that plaintiffs would be unable to establish the element of favorable termination.").

Rather, the declaration raises a factual dispute as to Ms. Chen's reasons for dismissing the litigation.  Plaintiffs' opposing position is supported by other parts of the record, namely Ms. Chen's attempt on April 25 (one day prior) to stay her deposition and Judge Cousins' denial of the request. *See* Dkt. 56-13 (J. Cousins April 25, 2023 Minute Order noting that:  "The motion is … not supported by good cause. A party deposition, conducted after 17 months of litigation, is not premature and is not a 'free lunch' as asserted in the motion.  If plaintiff does not want to litigate simultaneously in federal and state court there is an obvious and available option:  dismiss the federal case.").  This supports Plaintiffs' allegation that Ms. Chen dismissed the Federal Action to

11

avoid her deposition, a reason that could well be related to the merits.

Thus, as to the "favorable termination" element, Plaintiffs have met their burden.  They have shown a "reasonable probability" of prevailing on this element, *i.e.*, they have shown that there is a sufficient factual dispute to reach a jury.  *Cf. Drummond*, 176 Cal. App. 4th at 457.

        **b.**        **Ms. Chen's Claims Against Abraham, Rachel and Eliana Were Supported by Probable Cause;  Ms. Chen's Claims Against the Other Plaintiffs May Not Have Been Supported by Probable Cause, Raising a Fact Issue as to Defendants' Knowledge**

The HLF and SAC Defendants argue that Plaintiffs cannot show a reasonable probability of success under the "lack of probable cause" element of malicious prosecution.  Dkt. 33 at 16-23 (HLF Defendants);  Dkt. 19 at 14-17 (SAC Defendants).  "The question of probable cause is whether as an objective matter, the prior action was legally tenable or not." *Soukup v. L. Offs. of Herbert Hafif*, 39 Cal. 4th 260, 292 (2006) (internal quotation marks and citations omitted).  "A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him." *Id.*  To prevail, a plaintiff may allege a lack of probable cause either "as of the time the action was initiated or while it was being prosecuted." *See Sycamore Ridge Apartments, LLC v. Naumann*, 157 Cal. App. 4th 1385, 1402 (2007).

With regard to the HLF Defendants, Plaintiffs allege a lack of probable cause in both initiating and in maintaining the Federal Action.  Plaintiffs allege that HLF Defendants actually knew, or that a reasonable attorney would have known, that the Federal Action was meritless as against Plaintiffs when brought, (Dkt. 1, ¶¶ 23-24);  and they allege that the HLF Defendants knew, or that a reasonable attorney would have known, that the Federal Action was meritless as of May 16, 2022, (*id.*).  As to the SAC Defendants, Plaintiffs allege that the SAC Defendants "knew, and any reasonable attorney would have known, that the Claims against Plaintiffs were untenable … [and] fabricated]" at the time they "appeared in the Federal Action." *Id.*

The HLF and SAC Defendants do not attack Plaintiffs allegations as legally insufficient.  *See* Dkt. 33 at 16-23 (HLF Defendants);  Dkt. 19 at 14-17 (SAC Defendants).  Rather, they attack

United States District Court
Northern District of California

them as being factually deficient. *Id.*[8] Accordingly, for this attack, the summary-judgment-like standard applies. *See Rogers*, 57 F. Supp. 2d at 976. However, unlike with regard to the other elements of malicious prosecution, the "existence or nonexistence of probable cause is a legal question to be resolved by the court," based on an "objective determination of the 'reasonableness' of the defendant's conduct, *i.e.*, … whether, on the basis of the facts known to the defendant, the institution [or maintenance] of the prior action was legally tenable." *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 878 (1989).

At this stage, it is Plaintiffs' burden show that they have a "reasonable probability" of prevailing in their claims that the HLF and SAC Defendants lacked probable cause to initiate and then maintain Ms. Chen's claims. The Court addresses the arguments made and evidence raised in Plaintiffs' opposition.

First, Plaintiffs make a number of arguments as to why Ms. Chen's claims (as submitted by the HLF Defendants) were insufficiently pleaded, including that her statements regarding the court's personal jurisdiction over Plaintiffs were frivolous and knowingly unsupported. Dkt. 55 at 19-20. However, this basis does not appear in Plaintiffs' Complaint, (*see, generally*, Dkt. 1), and, in any case, it is not clear that such pleading deficiencies can form the basis of a malicious prosecution action because they are not deficiencies in the *merits* of a claim. *Cf. supra*, § III.A.2.i (quoting *Maleti v. Wickers*, 82 Cal. App. 5th 181, 204 (2022), *as modified on denial of reh'g* (Sept. 9, 2022) and explaining that under the "favorable termination" prong, "termination must *reflect* on the merits of the underlying action." Analogously, under the "probable cause" prong, the Court is convinced by SAC Defendants' argument that the claim must allege a lack of probable cause reflecting the merits (*see* Dkt. 67 at 10-11). Plaintiffs cite no authority to the contrary).

As for allegations going to the merits of Ms. Chen's underlying claim, Plaintiffs only plead

_____

[8] The Court notes that the HLF Defendants make a general attack on Plaintiffs' probable cause allegations, and *also* attack the allegations specifically as to each of Ms. Chen's causes of action in the Federal Action – (1) Aiding and Abetting Breach of Fiduciary Duty, (2) Fraud, (3) Unjust Enrichment, (4) Constructive Trust, (5) Intentional Infliction of Emotional Distress and (6) Civil Conspiracy. Dkt. 33 at 20-23. The SAC Defendants make only a general attack, treating all of the claims under a single umbrella. Dkt. 19 at 14-17. As explained further below, the Court follows SAC Defendants' approach because Plaintiffs' allegations and evidence (to the extent submitted) apply equally for the purposes of the Court's anti-SLAPP analysis.

United States District Court
Northern District of California

that the Defendants knew or should have known, at various times, that "Plaintiffs had never met with, interacted with, or transacted business with Chen." Dkt. 1, ¶¶ 23-24. If true, then the Court could find that at least some of the claims against Plaintiffs—*e.g.*, fraud and IIED—were legally untenable.[9] Accordingly, although the element of probable cause is ultimately a legal determination for the Court, (*see Sheldon Appel Co.*, 47 Cal. 3d at), it may involve a preliminary factual dispute over what the HLF and SAC Defendants knew. *See, e.g.*, *Medley Cap. Corp. v. Sec. Nat'l Guar., Inc.*, 17 Cal. App. 5th 33, 48 (2017) ("[W]hen there is a dispute as to the state of the defendant's knowledge and the existence of probable cause turns on resolution of that dispute, there becomes a fact question that must be resolved…"). Plaintiffs make several arguments that their well-pleaded facts support the existence of "a dispute as to each Defendants' knowledge during their representation of Chen." Dkt. 55 at 20-23. However, "[a]lthough the opposing party need only show 'minimal merit' to satisfy the burden, the plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial." *Murray v. Tran*, 55 Cal. App. 5th 10, 36 (2020) (collecting California appellate cases). The only **evidence** presented by Plaintiffs in support of "knowledge of falsity" are the declarations of Plaintiffs in the Federal Actions. Dkt. 55 at 9-13 (citing HLF Defendants' First RJN, Ex. 3, *i.e.*, Dkt. 33-3 at 33-63).

This, then, is the question that must be resolved at this juncture: Does the evidence presented by Plaintiffs (*i.e.*, their declarations) raise a reasonable probability that they will show that Defendants knew, or should have known, the facts surrounding Plaintiffs' lack of interaction with Ms. Chen such that bringing or maintaining at least one of her claims was legally untenable?

"On May 16, 2022, Plaintiffs filed an amended answer [in the Federal Action] and attached thereto sworn declarations from each Plaintiff denying each fact of Chen's Complaint." Dkt. 55 at 9 (citing *id.*). These declarations were short, one-to-two-page declarations setting forth specific facts about each of the Plaintiffs. Dkt. 33-3 at 33-63. In relevant part:

////

---

[9] While claims such as aiding and abetting or conspiracy are not necessarily ruled out by a lack of direct interaction with the plaintiffs, other causes of action—*e.g.*, fraud and IIED—require *some* interaction between Plaintiffs and Ms. Chen and are thus foreclosed if (as all Plaintiffs argue their declarations aver) no such interaction occurred.

14

United States District Court
Northern District of California

- Abraham declared that he was a resident of Lawrence, New York;  he was a practicing dermatologist who did "not conduct any business or own any assets in California;"  he had "never interacted with a woman who introduced herself to me as Yuting Chen" but "did, however, meet a woman who was engaged in a watch business with my son, Ariel Abittan" who "introduced herself … as Tiffany Chen" and also "used the name Lily Chao;" he met this person at the wedding of Jacob in New York, spoke for a brief period not about business, and never, at any subsequent meeting with Ms. Chen and/or Ms. Chao did they discussed the watch business at issue in the Federal Action;  but he acknowledges that he did fly to California and participated in or at least attended several meetings related to Ms. Chen's and/or Ms. Chao's cryptocurrency business.  Dkt. 33-3 at 36-37.

- Rachel declared that she was resident of Lawrence, New York;  she was an office manager in a dermatologist's office;  and she otherwise described the same course of interactions as her husband, Abraham.  *Id.* at 40-41.

- Brian declared that he was a resident of Lawrence, New York;  that he was a board-certified dermatologist licensed to practice in New York; and that he had even fewer interactions with Ms. Chen and/or Ms. Chao than his parents.  *Id.* at 44-45. Specifically, he declared that he had only been to California twice in his life and not in the past 15 years, had met Ms. Chen and/or Ms. Chao only the one time at Jacob's wedding, had not "spoken with [her] … since Jacob's wedding," had "never called, emailed or texted [her]," had "never travelled to California to meet [her]" and had "never spoken with [her] … about" business.  *Id.*

- Jacob declared that he was a resident of Lawrence, New York;  that he was a third-year law student at Cardozo School of Law in New York; and had been to California only one time 15 years ago on a family vacation.  *Id.* at 48.  His declaration was substantively similar to that of his brother, Brian, except to note that his wedding included "approximately 500 guests" and that Ms. Chen and/or Ms. Chao were among them.  *Id.* at 48-49.

15

- Alyssa declared that she was a resident of Lawrence, New York and a registered nurse in New York. *Id.* at 52. Her declaration was otherwise substantively similar to Brian's and Jacob's declarations. *Id.* at 52-53.

- Eliana declared that she was a resident of Lawrence, New York and that she worked as an office assistant. *Id.* at 56. Her declaration explains that she, too, first met Ms. Chen and/or Ms. Chao at Jacob's wedding, but goes on to declare that she and her children stayed at Ms. Chen's house in California in 2018, although she averred that she "did not conduct any business while staying at [Ms. Chen's] house." *Id.* She further declares that, in July of 2019, she "began helping Ariel" and Ms. Chen "with payroll for their cryptocurrency business." *Id.*

- Roy declared that he was a resident of Memphis, Tennessee, and the owner of a computer support company there. *Id.* at 60. He alleged that he "never interacted with" Ms. Chen, nor any "person (by any name or gender) engaged in a watch business with [his] son-in-law, Ariel Abittan." *Id.*

- Tova declared that she was a resident of Memphis, Tennessee and a retail store clerk. Dkt. 33-3 at 63. Similarly to Roy, she declared that she "never interacted with" Ms. Chen, nor any "person (by any name or gender) engaged in a watch business with [her] son-in-law, Ariel Abittan." *Id.*

These declarations form the only evidentiary basis for Plaintiffs' allegations that "no later than May 16, 2022," the HLF Defendants and, subsequently when they appeared on December 16, 2022, the SAC Defendants knew or should have known that Ms. Chen's claims against Plaintiffs were legally untenable. *See* Dkt. 55 at 9-13 (citing only these facts for support of "knowledge of falsity"). In response, the HLF and SAC Defendants' arguments are, in essence, that the declarations "presented naked self-interested denials, with no independent way to verify" Plaintiffs' accounts, and that the Defendants were not required to "believe their Declarations over [Ms.] Chen's allegations." *See* Dkt. 66 at 5; Dkt. 67 at 5, 10.

Each position has some merit. On the one hand, a requirement that plaintiff's counsel take the self-serving denials of an answer as conclusive over the word of their own client goes too far.

16

United States District Court
Northern District of California

*See, e.g.*, *Citizens of Human., LLC v. Hass*, 46 Cal. App. 5th 589, 600-01 (2020) ("[I]f [Plaintiff] merely called [Defendant] a liar or asserted she was a shill [plaintiff], without evidence," that would be insufficient).  A reasonable attorney may be permitted to investigate, including (if warranted) through further discovery, the veracity of a defendant's denials without becoming liable for malicious prosecution.  Yet some fundamental denials, such when "attorneys [for a defendant] notif[y] [plaintiff's] counsel in writing four times—once before and thrice after the underlying litigation was filed—that [their client] was not a proper party" to the action, may be sufficient to raise "a fact question that must be resolved" by the jury as to the counsel's "knowledge before they filed the []complaint," including "what [counsel] knew, or what research he did, or even to whom he spoke." *Medley Cap. Corp. v. Sec. Nat'l Guar., Inc.*, 17 Cal. App. 5th 33, 48.  Such declarations should at least raise questions that a reasonable attorney must pursue.

In light of the guidance of the California Courts of Appeals in such cases, the Court finds that, although Plaintiffs and Defendants treat the declarations and Plaintiffs all collectively, they are more properly divided into four categories, with two different results.

First are Mr. Abittan's parents, Abraham and Rachel.  They allege that they met Ms. Chen multiple times and even "flew to California to meet with" Ms. Chen and "discuss[] the return of funds to investors in [the] cryptocurrency business" between Ms. Chen and Mr. Abittan.  Dkt. 33-3 at 36-37, 40-41.  While their declarations undoubtedly denied certain details, for example the alleged "anonymous call" to Ms. Chen demanding payment of $4.5 million to Ariel, Abraham and Rachel did not categorically deny knowing Ms. Chen and having been involved in business relationships with her.  *Id.*

Second is Mr. Abittan's wife, Eliana.  Although not admitting as high-level a relationship with Ms. Chen and/or Ms. Chao as Abraham and Rachel, Eliana nonetheless admitted to having visited Ms. Chen's house and then, ultimately, to "helping" with "payroll" for Ms. Chen's and Mr. Abittan's cryptocurrency venture.  Dkt. 33-3 at 56.

Third are Mr. Abittan's siblings:  Brian, Jacob, and Alyssa.  Each of them admitted to meeting Ms. Chen at Jacob's wedding but otherwise denied having any interaction with Ms. Chen or even having visited California since their youth.  Dkt. 33-3 at 44-45, 48-49, 52-53.

Fourth are Mr. Abittan's parents-in-law, residents of Tennessee, who simply deny any involvement with the entire affair and any interaction with *any* person with regards to Mr. Abittan's business. *Id.* at 60, 63.

Ms. Chen's claims against Plaintiffs in the Federal Action were for 1) Aiding and Abetting Breach of Fiduciary Duty, (2) Fraud, (3) Unjust Enrichment, (4) Constructive Trust, (5) Intentional Infliction of Emotional Distress and (6) Civil Conspiracy. *See* Dkt. 1, Ex. A. However, Plaintiffs need not show a reasonable probability of success as to all six of these claims. Although the "favorable termination" analysis "requires favorable resolution of the underlying action in its entirety, not merely a single cause of action," (*e.g.*, *Citizens of Human., LLC v. Ramirez*, 63 Cal. App. 5th 117, 128 (2021)), "[p]robable cause must exist for *every* cause of action advanced in the underlying action, (*Cuevas-Martinez v. Sun Salt Sand, Inc.*, 35 Cal. App. 5th 1109, 1118 (2019) (emphasis in original)). "Thus, a cause of action for malicious prosecution lies when but one of alternate theories of recovery is maliciously asserted." *Cuevas-Martinez*, 35 Cal. App. 5th at 1118. This is key, as a "malicious prosecution action seeks 'to vindicate a single primary right—the right to be free from defending against a lawsuit initiated with malice and without probable cause.'" *Id.* (quoting *Hindin v. Rust*, 118 Cal. App. 4th 1247, 1258 (2004)).

Here, some of Plaintiffs' declarations were so unequivocal—specifically, those of Mr. Abittan's siblings and parents-in-law— that, if true, they made Ms. Chen's claims legally untenable and, thus, the HLF and SAC Defendants had a duty, at least, to investigate whether Ms. Chen's claims as to these Plaintiffs were tenable. *See Medley*, 17 Cal. App. 5th at 48. There is "necessarily a dispute as to the state of [their] knowledge, … especially as [the HLF and SAC Defendants] put in no evidence to show what [they] knew, or what research [they] did, or even to whom [they] spoke." *Id.* Thus, Brian, Jacob, Alyssa, Roy and Tova have shown a reasonable probability of prevailing in showing a lack of probable cause as to some of the claims against them, depending on what the HLF and SAC Defendants did to investigate their declarations. In other words, they have shown at least the "'minimal merit' [needed] to satisfy the burden" of opposing anti-SLAPP dismissal. *See Murray v. Tran*, 55 Cal. App. 5th at 36 (2020).

By contrast, Abraham, Rachel and Eliana have not shown a reasonable probability of

prevailing on the "probable cause" element. This is because, even if their declarations were true, they are not unequivocal and *admit* to having some business interactions with Ms. Chen. Accordingly, they are the sort of self-serving, carefully crafted declarations that a reasonable attorney could take with a grain of salt; certainly, they left room for explanation via further discovery, *e.g.*, via depositions, that might have maintained the viability of Ms. Chen's claims. Thus, these declarations alone would not suggest to a reasonable attorney that the causes of action against Abraham, Rachel or Eliana are "untenable," as required for a claim of malicious prosecution. On the record before the Court, there is thus insufficient evidence to raise a dispute of fact as to Ms. Chen's claims against these Plaintiffs

### c.    Plaintiffs Abraham, Rachel and Eliana Are Not Entitled to Discovery Under Rule 56(d)

As a fallback position, Plaintiffs argue that, "to the extent Plaintiffs have not made a prima facie showing of any of the foregoing elements of their malicious prosecution claim, this Court must permit Plaintiffs an opportunity to engage in the discovery necessary to prove their claim of malicious prosecution." Dkt. 55 at 28-29. As a general matter:

> [W]hen an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply. But in such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court. A contrary reading of these anti-SLAPP provisions would lead to the stark collision of the state rules of procedure with the governing Federal Rules of Civil Procedure while in a federal district court.

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018); *see also Metabolife*, 264 F.3d at 846 (9th Cir. 2001) ("Because the discovery-limiting aspects of [the anti-SLAPP statute] collide with the discovery-allowing aspects of Rule 56, these aspects of [the statute] cannot apply in federal court.").

Defendants do not challenge that Rule 56(d), which provides that the need for discovery may defeat a motion for summary judgment, is applicable and may defeat an anti-SLAPP motion to strike. *See* Dkt. 67 at 13-15; *see also, generally*, Dkt. 66. Rather, the SAC Defendants argue that Plaintiffs have not met the procedural requirements of Rule 56(d) and also cannot show that their proposed discovery could be obtained "in a reasonable time frame," if at all, in light of the

19

attorney-client privilege, (Dkt. 67 at 13-15), while the HLF Defendants—although not directly addressing Rule 56(d)—oppose Plaintiffs' requested discovery as impermissible in light of the attorney-client privilege, (Dkt. 66 at 10-11).  The Court agrees with Defendants.

First, Plaintiffs have not submitted an "affidavit or declaration" setting forth the "specified reasons [why they] cannot present facts essential to justify [their] opposition."  Fed. R. Civ. P. 56(d).  Plaintiffs attempt to make the substantive showing in their opposition, but an opposition is not a declaration or affidavit, and the Court may deny the request for discovery on that ground. *See, e.g.*, *Hash v. Giacomazzi*, No. 22-cv-07162 EJD, 2025 WL 2798913, at *1 (N.D. Cal. Sept. 30, 2025) ("Plaintiff's request [for discovery prior to summary judgment] is DENIED for failure to file a supporting affidavit or declaration as required by Rule 56(d).").

Second, even assuming the Court treated Plaintiffs' opposition as sufficient to make the substantive showing under Rule 56(d) and waived the procedural requirement for an affidavit or declaration, the Court is persuaded that, because of the limitations of attorney-client privilege, much if not all of Plaintiffs' requested discovery would be foreclosed.  *See, supra*, § III.B. (explaining why the attorney-client privilege forecloses discovery in this case under the California *General Dynamics* test).  Accordingly, for this independent reason, Rule 56(d) discovery— although theoretically available—does not save Plaintiffs' claims.

#### d.    Plaintiffs Brian, Jacob, Alyssa, Roy and Tova Have Provided Sufficient Evidence of Malice to Find a Factual Dispute

Finally, Plaintiffs allege that the HLF and SAC Defendants initiated or maintained Ms. Chen's claims with malice.  Dkt. 1, ¶¶ 22-26.  The SAC Defendants do not challenge the malice element;  the HLF Defendants do.  *Compare, generally*, Dkt. 19 *with* Dkt. 33 at 23-25.

"The 'malice' element ... relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action.  The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose."  *Soukup v. L. Offs. of Herbert Hafif*, 39 Cal. 4th at 292 (2006) (emphasis in original).  Malice "is not limited to actual hostility or ill will toward plaintiff but exists when the proceedings are instituted primarily for an improper purpose.

… [It] may range anywhere from open hostility to indifference." *Id.*

Plaintiffs' allegations as to malice, as described in Section III.A.1., above, depend on inferences from circumstantial evidence. *See, supra*, § III.A.1. In part, Plaintiffs argue that this inference should be drawn from the same facts (*i.e.*, their lack of interaction with Ms. Chen and the defendant-law-firms alleged failure to investigate that fact) as support the probable cause element. *See* Dkt. 55 at 25-26. For at least those reasons discussed in Section III.A.2.b., above, the Court finds that a factfinder could draw an inference of malice if discovery showed, for example, that the HFL Defendants failed to investigate the declarations of Brian, Jacob, Alyssa, Roy and Tova after May 16, 2022. *See, supra*, § III.A.2.b.; *see also, e.g.*, *Soukup*, 39 Cal. 4th at 292 ("Malice may also be inferred from the facts establishing lack of probable cause.").

Additionally, the Court briefly addresses two other allegations—supported by the judicial records proffered by Plaintiffs—from which an inference of malice could be drawn. First, there is the matter of Ms. Chen's identity. There is marked confusion in the record and in the Parties' papers as to the identity of Ms. Chen and, specifically, whether she is the same person as Tiffany Chen and/or Lily Chao, or whether some or all of these individuals are agents of the other. *See, generally*, Dkt. 55 at 24-26; Dkt. 66 at 9; Dkt. 67 at 7-9.[10] The HLF and SAC Defendants criticize what they suggest are inconsistent, varying positions with regard to Ms. Chen's identity. *See* Dkt. 66 at 9; Dkt. 67 at 6-7. The Court finds, however, that Plaintiffs positions are not "inconsistent" but rather "in the alternative." Plaintiffs coherently argue that, based on the

---

[10] Up to this point, based on the record in the Federal Action as well as the State Action and the December 24, 2020 action by Mr. Abittan, wherein "Lily Chao (a/k/a Tiffany Chen, a/k/a Yuting Chen)" were sued as a single individual, the Court has assumed them to be aliases of a single person. *See Abittan v. Chao*, No. 20-cv-9340, Dkt. 1 (N.D. Cal.). The Court views this as more likely correct than the alternative, in light of Mr. Abittan's allegations in his 2020 lawsuit that his business with Ms. Chen "was often conducted in person such that, even though Chao used many aliases including Yuting Chen, Ariel was certain as to the woman with whom he had interacted for more than four years." Dkt. 55 at 6 (citing Dkt. 56-1); *see* Dkt. 56-1, ¶¶ 28, 31, 53-58. However, the Court acknowledges the uncertainty around this fact, and it is not the first court to have been confronted with this uncertainty. *See, e.g.*, Dkt. 56-9 at 4 (J. Kulkarni's final order entering terminating sanctions against Ms. Chao in the State Action based on her failure to substantiate her identity). This uncertainty does not affect the Court's decision as to probable cause, above, because whether Ms. Chen and Ms. Chao were different or the same individuals, at most, **adds** an additional factual question relating to Defendants' knowledge that must be resolved before dismissal with regard to Brian, Jacob, Alyssa, Roy and Tova.

United States District Court
Northern District of California

underlying record, **either:**  (1) Ms. Chen and Ms. Chao are the same person, in which case the Defendant law firms and attorneys should have dismissed the case after receiving Plaintiffs' declarations denying any association with Ms. Chao (and, thus, Ms. Chen), as discussed above, (*see, supra*, § III.A.2.b.);  **or** (2) Ms. Chen and Ms. Chao are not the same person, in which case the Defendant law firms and attorneys initiated and maintained a suit knowingly on behalf of the wrong party.  *See* Dkt. 55 at 13.  In either case, this is circumstantial evidence supporting malice.

Second and relatedly, Plaintiffs have proffered facts showing that all of the Defendant law firms have represented **both** Ms. Chen and Ms. Chao at different times.  They represented Ms. Chao in *Abittan v. Chao et al.*, No. 20-cv-9340-NC (Craig Hansen of the HLF Defendants, Di Wu of the SAC Defendants and Jingjing Ye Bennett of the Ye Defendants), and they represented Ms. Chen in the Federal Action, No. 21-cv-9393-NC (among others, the same three attorneys).  Accordingly, Plaintiffs argue that, whatever the true nature of Ms. Chen vis-à-vis Ms. Chao is, (*see* n. 10 herein), Defendants have, "at all times, ha[d] actual knowledge of the woman with whom Ariel conducted the watch business."  Dkt. 55 at 13-14.  Their "complicitly in concealing Chen's identity is of particularly probative value."  *Id.*  The Court agrees.  Having represented Ms. Chen and/or Ms. Chao, the HLF and SAC Defendants should have known the identit(ies) of their client(s).  Either they knew, in which case the "obfuscation" pointed to by Plaintiffs may support the inference of an improper motive, or they did not know, in which case a reckless disregard to investigate the identit(ies) of their own client(s) could support such an inference.[11]

Simply put, "malice is such a highly factual issue that it often precludes summary disposition."  *Medley*, 17 Cal. App. 5th 33 at 49.  Plaintiffs have put forth sufficient circumstantial evidence relating to their declarations, as well as the records in the various related actions, to survive the HLF Defendants' anti-SLAPP motion on this ground.

* * *

In sum, with regard to the HLF and SAC Defendants arguments for anti-SLAPP dismissal,

---

[11] The Court is also troubled that, rather than elucidate the issue for the Court in their papers, the HLF and SAC Defendants elected to rely on the "confusion" surrounding this issue as a reason for moving to strike Plaintiffs' claims.

United States District Court
Northern District of California

applying the summary-judgment-like standard required where factual deficiencies are asserted, the Court finds that Plaintiffs Brian, Jacob, Alyssa, Roy and Tova have shown a reasonable probability of prevailing on their claims for malicious prosecution, while Plaintiffs Abraham, Rachel and Eliana have not.  The Court's decision hinges on the fact that Plaintiffs "need only show 'minimal merit' to satisfy the[ir] burden," but cannot rely solely "on the allegations of the complaint [and] must produce evidence that would be admissible at trial."  *Murray*, 55 Cal. App. 5th at 36 (2020) (collecting California appellate cases).  With regard to the "probable cause" elements of malicious prosecution, the former group of Plaintiffs' declarations provide such evidence, while the latter group's declarations do not.

Accordingly, the HLF and SAC Defendants' Motions are **GRANTED IN PART** and **DENIED IN PART**.

### B.       As to the Remaining Claims by Brian, Jacob, Alyssa, Roy and Tova, While Not Foreclosed as a Matter of Anti-SLAPP Law, These Claims Cannot Proceed Due to Attorney-Client Privilege Under *General Dynamics*

Both the HLF Motion and SAC Motion are also, in part, motions to dismiss under Rule 12(b)(6).  *See* Dkt. 19;  Dkt. 33.  While the division of arguments in these Motions is not crystal clear, it appears that this refers to the HLF and SAC Defendants' arguments that, even if there was a sufficient dispute of fact so as to warrant further discovery, Plaintiffs case must be dismissed on due process grounds.  Specifically, the HLF and SAC Defendants argue that Ms. Chen, not the various Defendant-law firms, holds the right to waive the attorney-client privilege, and thus that Defendants will be incapable of fairly defending themselves in this action.  *See* Dkt. 33 at 25-26; Dkt. 66 at 9-11.[12]

The HLF and SAC Defendants rely on cases decided in other contexts. In *McDermott, Will & Emery v. Superior Court*, 83 Cal. App 4th 378 (2000), the California Court of Appeals held that

---

[12] This argument set forth primarily in the HLF Defendants' briefs, although the SAC Defendants incorporate the same arguments. *See* Dkt. 19 at 8 n. 4; Dkt. 67 at 11, 15-16 (noting that "The Hansen Defendants discussed this concept in more detail in their moving papers" and incorporating the same arguments).  Although the arguments were not properly raised by SAC Defendants in their opening papers, Plaintiffs responded to the HLF and SAC Motions with a consolidated opposition, substantively briefed this argument, and the SAC Defendants addressed the argument properly in their reply.  Accordingly, the Court will consider this argument as it applies to the SAC Defendants as well as the HLF Defendants.

United States District Court
Northern District of California

shareholder derivative actions suing a non-party corporation for legal malpractice cannot proceed because it "has the dangerous potential for robbing the attorney defendant of the only means he or she may have to mount any meaningful defense." *Id.* at 383-84.  Similarly, in *Solin v. O'Melveny & Myers* (2001) 89 Cal.App.4th 451, the California Court of Appeals held that a suit for negligent advice cannot proceed if the communications at issue are protected by a non-party's attorney-client privilege.  *Id.* at 461, 463.  Yet the HLF and SAC Defendants cite no cases applying this rule categorically to malicious prosecution actions.  *See* Dkt. 33 at 25-26 (relying on *McDermott, Will & Emery* and *Solin*).

The Court is persuaded that the standard is as set forth by Plaintiffs:  "Dismissal is a drastic measure that applies only in the rare case that, by its nature, requires the defendant to disclose privileged information highly material to the defense, and where it would be unfair to allow the plaintiff to proceed with the lawsuit." *Frymer v. Law*, No. B267213, 2016 WL 3962234, at *6 (Cal. Ct. App. July 22, 2016) (unpublished case in the malicious prosecution context) (citing *Dietz v. Meisenheimer & Herron* 177 Cal. App. 4th 771, 792-794 (2009)).  As the court in *Dietz* explained, "there are at least four factors that a court must consider … before a court may dismiss a case on the ground that a defendant-attorney's due process right to present a defense would be violated by the defendant's inability to disclose a client's confidential information[.]" *Dietz*, 177 Cal. App. 4th at 792.  They are as follows:

> [(1)] First, the evidence at issue must be the client's confidential information, and the client must be insisting that the information remain confidential. …
>
> [(2)] Second, the confidential information at issue in [] cases [where dismissal was found] was highly material to the defendants' defenses. …
>
> [(3)] Third, before dismissing a case on due process grounds, the trial court must determine whether it is able to effectively use 'ad hoc measures from [its] equitable arsenal,' including techniques such as 'sealing and protective orders, limited admissibility of evidence, orders restricting the use of testimony in successive proceedings, and, where appropriate, in camera proceedings,' so as to permit the action to proceed. …
>
> [(4)] Finally, a trial court should consider whether it would be 'fundamentally unfair' to allow the action to proceed.

*Dietz v. Meisenheimer & Herron*, 177 Cal. App. 4th at 792-93 (cleaned up and numerals added for readability).  This test has come to be known as the *General Dynamics* test, after the case from which it arises, *Gen. Dynamics Corp. v. Superior Ct.*, 7 Cal. 4th 1164, 1170 (1994).  *See id.*;  *see also, e.g.*, *ABN Corp. v. Groupe Pelm Int'l Corp.*, No. 23-cv-00004-RFL, 2024 WL 6884707, at *3-*4 (N.D. Cal. June 5, 2024) (treating this as an affirmative defense suitable under California public policy).

Here, the first factor appears to favor the HLF and SAC Defendants.  The client Ms. Chen's confidential information is at issue because the question, placed at issue by Plaintiffs' declarations (for at least the "probable cause" element), is what investigation the Defendants undertook in response to these declarations.  *See, supra*, § III.A.2.b.i.  That will likely include conversations with Ms. Chen as well as attorney work-product.  *See id.*  Moreover, while the Court does not know whether Ms. Chen is "insisting that the information remain confidential," as the SAC Defendants point out, Ms. Chen is not a party to this action and thus has little incentive to waive the attorney-client privilege.  *See* Dkt. 67 at 15-16 (arguing that a party-client "will commonly agree to waive the privilege so that the client can argue that she acted at the advice of her counsel);  *cf., also*, *Siebel v. Mittlesteadt*, 41 Cal. 4th 735, 745 n. 7 (2007) (acknowledging this dynamic and, for that reason, casting doubt, "for public policy reasons," on whether "a one-sided settlement agreement" that protects the client, but not an attorney, from a malicious prosecution action could "be deemed a favorable termination.").

The second factor clearly favors the HLF and SAC Defendants.  The confidential information relating to these Defendants' investigation will not only be "highly material" to the claims, but they will likely rise or fall entirely on the sufficiency of the investigation.

The third factor is mixed.  The proceedings between Ms. Chen and Mr. Abittan, as far as the Court can tell, have concluded and Ms. Chen has returned to China.  *See* Dkt. 19-2 at 11-13 (declaration submitted by SAC Defendants on behalf of Ms. Chen in the Federal Action, in opposition to Plaintiffs' motion for fees therein, declaring her reasons for wherein she declares her reasons for dismissing the Federal Action).  Accordingly, the Court could fashion limited-use orders, conduct *in camera* hearings and otherwise use "ad hoc" measures to ensure that none of

United States District Court
Northern District of California

the disclosure of confidential information has any adverse effect on Ms. Chen. However, there may be some cases where revealing the HLF and SAC Defendants' work-product would give Plaintiffs an unfair advantage even in *this* litigation, which the Court cannot avert. Moreover, that is to say nothing of the time and cost such idiosyncratic proceedings are likely to impose on the Parties and the Court, as all discovery disputes would necessarily carry with them an extra layer of privilege analysis. Thus, the Court finds that this factor weighs neutrally.

Finally, the fourth factor also weighs against Plaintiffs. It is not the case that "malicious prosecution cases against attorneys are inherently unfair." *See, e.g.*, *Frymer*, 2016 WL 3962234, at *6. Rather, "[f]undamental fairness in this context is an extension of the principle that, the privilege which protects attorney-client communications may not be used both as a sword and a shield." *ABN Corp.*, 2024 WL 6884707, at *4. Thus, "fundamentally unfair" cases are those where, like in *Solin*, it would be "unfair for a party to sue upon advice provided by an attorney and then seek to prevent the attorney from presenting evidence pertaining to why the advice was given." *Dietz*, 177 Cal. App. 4th at 794 (characterizing *Solin*, 89 Cal. App. 4th at 463). Here, Plaintiffs are not suing based on the advice of the HLF and SAC Defendants. However, Plaintiffs *are* seeking to hold the defendants accountable for, essentially, taking their client at her word and for an (alleged) lack of investigation. *See* Dkt. 1, ¶¶ 22-26. In such a case, there is some fundamental unfairness if Plaintiffs do not *also* sue the client (here, Ms. Chen), because, in so proceeding, they eliminate any incentive for Ms. Chen to waive the attorney-client privilege and they place the Defendants in an impossible position. *Cf. Siebel*, 41 Cal. 4th at 745 n. 7. Accordingly, Plaintiffs' decision to sue the Defendants on their work for and communication with Ms. Chen, while omitting Ms. Chen from this suit, weighs against them.

In sum, the Court concludes that in this case, California public policy prohibits the claims against the HLF and SAC Defendants. Thus, the HLF Motion and SAC Motions are **GRANTED** on this ground.

////

////

////

United States District Court
Northern District of California

**C.    The HLF and SAC Defendants' Request for Anti-SLAPP Attorney's Fees**

"[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Code Civ. Proc. § 415.16(c)(1). "The attorneys' fees provision under anti-SLAPP motions is mandatory, unlike fees for motions to dismiss." *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1026 (N.D. Cal. 2017). Hence, even though the Court ultimately dismisses all the Plaintiffs' claims pursuant to California public policy under *General Dynamics*, (*see, supra*, § III.B.), it was nonetheless required to analyze the HLF and SAC Defendants' anti-SLAPP challenges. *See, e.g.*, *id.* at 1024 ("Although each of [the] claims is dismissed … for failure to state a claim …, this Court nonetheless addresses the motions to strike because the issue of attorney's fees and costs is not rendered moot by a dismissal." (internal quotation marks omitted)).

However, where the Court grants in part and denies in part an anti-SLAPP motion, "the Defendants are entitled to recover attorney fees and costs incurred in moving to strike the claims on which ... they prevailed, but not fees and costs incurred in moving to strike the remaining claims." *Id.* at 1027 (cleaned up). Accordingly, the HLF and SAC Defendants are entitled to fees and costs as to Plaintiffs' Abraham, Rachel and Eliana's claims, but not for the claims brought by Brian, Jacob, Alyssa, Roy and Tova. Their request for attorney's fees is thus **GRANTED IN PART** and **DENIED IN PART**.

Plaintiffs, the HLF Defendants and the SAC Defendants shall meet and confer as to the proper amount of attorney's fees and costs and submit either a joint stipulation or abbreviated briefing of any dispute as ordered in Section IV, below. The Parties must meet and confer in good faith and consider that, even in the anti-SLAPP context, "[t]he district court has wide discretion in determining the reasonableness of attorney's fees." *Garrison v. Ringgold*, No. 19-cv-00244-GPC (RBB), 2019 WL 5684401, at *3 (S.D. Cal. Nov. 1, 2019). The HLF and SAC Defendants are entitled to "fees and costs incurred in moving to strike the claims on which ... they prevailed, but not fees and costs incurred in moving to strike the remaining claims." *Resolute Forest Prods.*, 302 F. Supp. 3d at 1027. Thus, the Parties should consider whether, for example, an award of attorney's fees for 3/8 the time spent on the anti-SLAPP motions is appropriate. *E.g.*, *Griffin v.*

27

*Strauss*, No. 22-cv-06183-MEMF (PLAx), 2024 WL 647650, at *4 (C.D. Cal. Jan. 3, 2024) ("Here, the Professional Defendants appear to request compensation for all time spent on the Anti-SLAPP Motion. This is plainly contrary to California law. The Court will reduce the fee in an amount commensurate with the partial success of the Anti-SLAPP Motion. … The Court finds it appropriate to reduce the award by 2/3 to account for the partial success of the Motion.").

### D. Plaintiffs Have Not Properly Served the Ye Defendants, So the Court Does Not Reach Other Issues of Personal Jurisdiction

Separately, the Ye Defendants assert that service upon them was improper and that the Court lacks personal jurisdiction over them for Plaintiffs' claims.  Upon the Ye Defendants' challenge, Plaintiffs "bear the burden of establishing that service was valid under Rule 4," (*Brockmeyer*, 383 F.3d at 801), and "of establishing that jurisdiction is proper," (*Boschetto*, 539 F.3d at 1015).  The Court begins with the challenge to service.

#### 1. Plaintiffs Did Not Properly Serve the Ye Defendants

The Ye Defendants consist of the law firm Ye & Associates, PLLC and Jingjing Ye Bennett, who appears to be the principal attorney at Ye & Associates.  Dkt. 1, ¶ 18 ("References in this Complaint to 'Ye' refer to Ye[ & Associates, PLLC] and Jingjing Ye, individually and collectively," and "Jingjing Ye is, and at all times mentioned was, an attorney licensed to practice law in Texas who practiced law **as Ye**" (emphasis added)).

Under Rule 4(e), an individual (*i.e.*, Ms. Ye) may be served by "(1) following state law for serving a summons" where the district court sits, *i.e.*, the laws of California or "(2)(A) delivering a copy of the summons and of the complaint to the individual personally;  (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there;  or (C) delivering a copy of each to an agent authorized by appointment or by law…"  Fed. R. Civ. P. 4(e).  As for Ye & Associates, the firm must be served (1)(A) "in the manner prescribed by Rule 4(e)(1) for serving an individual," *i.e.*, according to the laws of California or (2)(B) "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law."  Fed. R. Civ. P. 4(h).

Additionally, California law provides for certain options for substitute service.  For an individual, if "the summons and complaint cannot with reasonable diligence be personally delivered," service may be made by "by leaving a copy of the summons and complaint at the person's … usual place of business … in the presence of … a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box … who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint …  to the person…." Cal. Code. Civ. Proc. § 415.20(b).  For a corporation or other association, "a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office … with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served." *Id.* at § 415.20(a).

The Parties address the law firm first, and Ms. Ye second;  however, because service upon Ms. Ye would constitute service upon Ye & Associates, PLLC, as Ms. Ye is alleged to be an attorney thereof, the Court takes the inquiry in the reverse order.

### a.   Ms. Ye Was Not Properly Served

Plaintiffs admit that Ms. Ye was not served pursuant to any of the provisions of Rule 4(e)(2). *See* Dkt. 32 at 14-17.  Rather, the summons and complaint were left at the Ye Defendants' shared lobby at Common Desk, with the front-desk employee Mr. Jordan Neel. *See* Dkt. 39;  Dkt. 20-1.  Plaintiffs argue that this satisfies Section 415.20(b)'s requirements for substitute service. *See* Dkt. 32 at 14-17.  Ye Defendants challenge this service for two reasons: first, they argue that Mr. Neel was not "apparently in charge" of the office and, second, that Plaintiffs had not first made reasonably diligent efforts to serve Ms. Ye personally.  Dkt. 20 at 9.

The Court is not persuaded by Ye Defendants' first contention.  Mr. Neel is responsible: "for greeting and assisting members and visitors, managing check-ins, answering inquiries, coordinating mail and deliveries, maintaining a professional and welcoming workspace environment, and supporting daily operations of the Common Desk." Dkt. 20-1, ¶ 2.  Here, the Court finds that Mr. Neel qualifies as having been "apparently in charge of" Ye Defendants office and usual mailing address when Plaintiffs' process server arrived. *See, e.g.*, *NGV Gaming, Ltd. v.*

*Upstream Point Molate, LLC*, No. 04-cv-3955-SC (JCS), 2009 WL 4258550, at *2 (N.D. Cal. Nov. 24, 2009) (citing *Direct Mail Specialists v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir.1988));  *Home Safety Ass'n of Am., LLC v. Universal Adm'rs Servs., Inc.*, No. 15-cv-00838-BRO (JEMx), 2015 WL 1459982, at *5 (C.D. Cal. Mar. 30, 2015) ("To hold otherwise would be to ignore the realities of corporate life, in which the duty to sign for mail received often resides with a designated mail room employee, a receptionist, a secretary, or an assistant." (quoting *Cruz v. Fagor America, Inc.*, 146 Cal. App. 4th 488 (2007)).

However, the Court is persuaded by Ye Defendants' second contention:  Plaintiffs have not shown reasonable diligence in first attempting personal service.  Plaintiffs' only argument for reasonable diligence is that their process server asked for Ms. Ye at the front desk on Wednesday, September 10 and Thursday, September 11 before attempting substituted service on Friday, September 12, 2025.  Dkt. 32 at 16-17 (relying on Dtk. 39 at 2).  "Reasonable diligence 'denotes a thorough, systematic investigation and inquiry conducted in good faith by the party or his agent or attorney.'"  *United Specialty Ins. Co. v. Green Med Trans, Inc.*, No. 23-cv-01092-MEMF (SP), 2023 WL 12087108, at *2 (C.D. Cal. Nov. 13, 2023) (quoting *Kott v. Superior Court*, 45 Cal. App. 4th 1126, 1137 (1996)).  "Often, courts find reasonable diligence requires 'two or three attempts to personally serve a defendant at a proper place' and 'attempts to serve the defendant by at least one other method.'"  *Id.* (quoting *Rodriguez v. Cho*, 236 Cal. App. 4th 742, 750 (2015)).  Here, two factors persuade this Court that Plaintiffs' attempts were not reasonably diligent.

First, all of Plaintiffs attempts were targeted to the same location and method, Ms. Ye's place of business, with *no* attempt having been made to serve Ms. Ye by any alternate means, *e.g.*, at her "dwelling or usual place of abode."  Fed. R. Civ. P. 4(e)(2)(B).  Attempting to serve Ms. Ye even once at her dwelling may have avoided the need for substitute service entirely, if any competent adult could be found at the dwelling.  Second, all of Plaintiffs attempts were made in a narrow span of three days (Wednesday to Friday), thereby increasing the odds that an innocuous reason—such as vacation or illness—would cause Ms. Ye to be absent.  Plaintiffs' bare-bones affidavit does not indicate that they or their process server ever attempted to discern (a) why Ms. Ye was absent from her business or (b) where else she might be found.  Accordingly, Plaintiffs'

attempts do not meet the bar of reasonable diligence. *See, e.g.*, *United Specialty Ins. Co.*, 2023 WL 12087108, at *2 (noting that diligence must reflect "a number of honest attempts to learn defendant's whereabouts or his address."). Here, Plaintiffs' attempts at service do not reflect "honest attempts" to learn Ms. Ye's whereabouts, but a tick-the-box approach to qualify for substitute service. Accordingly, the Court finds service on Ms. Ye was improper.

### b.      Ye & Associates, PLLC Was Not Properly Served

Because the Court finds that Ms. Ye was not properly served, Plaintiffs cannot have served Ye & Associates by service upon her. Thus, Plaintiffs only route for service of process here is, as above, substitute service. California Code of Civil Procedure Section 415.20(a) is similar to subsection (b), except that there is no requirement for "reasonable diligence" prior to turning to substitute service for a corporation. *See* Cal. Code Civ. Proc. § 415.20(a).

However, here, Ye Defendants' raise an additional challenge: they contend that Plaintiffs failed to follow required mailing procedures because they did not mail the summons and complaint to the same address at which they attempted substitute service. *See* Dkt. 20 at 10; Dkt. 42 at 10-11. Substitute service under California law requires Plaintiffs to "thereafter mail[] a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Code Civ. Proc. § 415.20(a). As Ye Defendants point out, and Plaintiffs do not dispute despite having filed "corrected" affidavits of service to substantiate their argument that prior attempts were made, (*compare* Dkts. 12-13 *with* Dkts. 39-40), the summons and complaint were ultimately mailed to Suite 110-312 of the Common Desk work address, whereas Ye Defendants place of business is at Suite 110-321. Dkt. 42 at 10-11.

Because substitute service is already a substitute, "when an alternative method of service is attempted, strict compliance with the letter and spirit of the statutes is required." *United Specialty Ins. Co.*, 2023 WL 12087108, at *3 (cleaned up) (quoting *Olvera v. Olvera*, 232 Cal. App. 3d 32, 41 (1991)). Here, strict compliance has not been met.

////

////

**2.      The Court Does Not Address Other Issues of Personal Jurisdiction, But Will Permit Plaintiffs to Re-Attempt Service**

"[S]ervice of process … is an indispensable prerequisite to the court's jurisdiction to proceed." *Beecher v. Wallace*, 381 F.2d 372, 373 (9th Cir. 1967); *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Thus, as the Court finds that Ye Defendants were not properly served and have not waived service, it lacks personal jurisdiction over them.

Accordingly, the Court does not resolve the Parties' dispute over whether the Ye Defendants' affirmative decision to take on a case and client in California state and/or federal courts constitutes "purposeful direction" sufficient to meet minimum contacts for the purposes of specific jurisdiction over Plaintiffs' malicious prosecution claim. *Compare* Dkt. 20 at 11-12; Dkt. 32 at 7-13.

Finally, "[i]f a district court determines that service of process is insufficient, the court may exercise discretion in determining whether to dismiss the action or simply quash service of process." *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-cv-02460-LHK, 2011 WL 2607158, at *3 n.2 (N.D. Cal. July 1, 2011) (citing *Stevens v. Security Pac. Nat. Bank,* 538 F.2d 1387, 1389 (9th Cir. 1976)). "[S]ervice generally will be quashed and the action preserved in those situations in which there is a reasonable prospect that the plaintiff ultimately will be able to serve the defendant properly." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1354 (4th ed. 2025). Here, because of the nature of the defects identified and because the follow-up mailing address error could be easily corrected, the Court concludes that there is a reasonable prospect that Plaintiffs would ultimately be able to serve the Ye Defendants. *See, supra*, §§ III.D.1.a.-b.

Thus, the Court **GRANTS IN PART** and **DENIES IN PART** the Ye Motion. The Ye Defendants' requests for dismissal are **DENIED**, but the Court will **QUASH** service. Plaintiffs may re-attempt service as provided in Section IV, below.

////

United States District Court
Northern District of California

### E.   Ye Defendants' "Conditional Joinder" is Denied

Finally, the Court addresses Ye Defendants' notice of "Conditional Joinder" with regard to the HLF and SAC Motions.

"Allowing one party to join another party's motion is a matter well within the district court's substantial case management discretion." *Apothio, LLC v. Kern Cnty.*, 599 F. Supp. 3d 983, 1002 (E.D. Cal. 2022).

> When reviewing whether to allow a party to join in a motion, the court will allow the joinder when either (1) the parties are so similarly situated that filing an independent motion would be redundant, or (2) the party seeking joinder specifically points out: which parts of the motion apply to the joining party, the joining party's basis for standing, and the factual similarities between the joining party and moving party that give rise to a similar claim or defense.

*Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1151 (C.D. Cal. 2016).  Here, Ye Defendants have not met the requirements to proceed under the second prong.  *See* Dkt. 35.  Thus, the Court is left to consider whether joinder is appropriate under the first prong.

With regard to the facts alleged as underlying Plaintiffs' malicious prosecution claims, the Ye Defendants and SAC Defendants are almost identically situated.  That weighs in favor of joinder.  However, Ye Defendants' joinder request is confusing and problematic because it is styled a "conditional" joinder, but the "condition" under which the Ye Defendants seek to join the HLF and SAC Motions is unclear.

The best reading of the Motion is that "Ye Defendants respectfully request that the Court apply to the Ye Defendants any rulings that grant relief to similarly situated the Co-Defendants…." Dkt. 35 at 2-3.  In other words, it appears the Ye Defendants seek to join the HLF and SAC Motions if they are granted but not join them if they are denied.  Such a "heads I win, tails you lose" joinder request is improper;  if the Court were to permit Ye Defendants to join their co-Defendants motion, they must be bound by the outcome, whether favorable or unfavorable.

A more charitable reading of the Motion is that Ye Defendants seek to join the HLF and SAC Motions if their own motion to dismiss is denied, but do not join it if it is granted.  *Cf.* Dkt. 35 at 3 ("The Ye Defendants respectfully request that the Court … [d]efer further consideration of this Conditional Joinder until after the Court resolves the Ye Defendants' Motion to Dismiss….").

33

Such a "condition" on joinder is appropriate, since the only pertinent difference between the Ye Defendants' and SAC Defendants' posture is that the Ye Defendants are based in Texas. Thus, if the Court denied the Ye Motion, these two categories of defendants would become "so similarly situated that filing an independent motion would be redundant." *See Tatung Co.*, 217 F. Supp. 3d at 1151. However, to the extent this is the Ye Defendants' request, the Court has not fully denied, but rather granted in part, the Ye Motion. Thus, the condition for joinder would not have been met and the request would be moot.

Accordingly, the Court **DENIES** the Ye Defendants' Conditional Joinder notice as either legally improper or moot, depending on how it reads the request.

## IV. CONCLUSION

For the foregoing reasons, the pending motions are resolved as follows.

The HLF and SAC Defendants' Motions are resolved as **GRANTED IN PART** and **DENIED IN PART**.

- The requests to strike Plaintiffs' claims on anti-SLAPP grounds are **GRANTED** as to Plaintiffs Abraham, Rachel and Eliana and **DENIED** as to Brian, Jacob, Alyssa, Roy and Tova.

- The requests to dismiss Plaintiffs' claims on California public policy grounds in light of the inextricably intertwined issues of attorney-client privilege are **GRANTED** for all Plaintiffs.

- The Plaintiffs' claims against the HLF and SAC Defendants are thus **DISMISSED WITH PREJUDICE**.

- The requests for attorney's fees are **GRANTED IN PART** as to the claims brought by Abraham, Rachel and Eliana and are otherwise **DENIED**. The Parties shall meet and confer **no later than April 1, 2026** as to the appropriate amount of fees. **No later than April 6, 2026,** the Parties shall either submit a joint stipulation as to the amount of fees and costs or, if they cannot reach agreement, the HLF and SAC Defendants shall submit a joint motion for attorney's fees of **no more than 10 pages**, with separate supporting declarations as necessary. Plaintiffs shall file their

response to the motion **no later than April 16, 2026**, also **not to exceed 10 pages**. The HLF and SAC Defendants may, but are not required, to file a reply **no later than April 21, 2026**, **not to exceed 5 pages**.

The Ye Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**. The Ye Defendants' request to dismiss for improper service is converted into a request to quash and is **GRANTED with leave to re-attempt service**. The Ye Defendants' request for dismissal for lack of personal jurisdiction is **DENIED without prejudice**. Accordingly, **no later than April 8, 2026** Plaintiffs shall file **either** certificates evidencing new service upon the Ye Defendants or a notice dismissing them from the case.

Finally, as explained above, the Ye Defendants' Conditional Joinder notice as either legally improper or moot, depending on how it reads the request.

**SO ORDERED.**

Dated: March 26, 2026

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California