United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ABRAHAM ABITTAN, et al.,

Plaintiffs,

v.

HANSEN LAW FIRM, P.C., et al.,

Defendants.

Case No.  25-cv-05427-SVK

**ORDER RE AWARD OF ATTORNEY'S FEES**

Re: Dkt. No. 72

This malicious prosecution action involved a complex web of parties:  eight plaintiffs ("Plaintiffs") and three groups of defendants, three law firms and individual attorneys belonging to those firms (Hansen Law Firm P.C. and its attorneys (the "HLF Defendants");  SAC Attorneys, LLP and its attorneys (the "SAC Defendants");  and Ye & Associates PLLC and Jingjing Ye (the "Ye Defendants")).  *See, generally*, Dkt. 1 ("Complaint").  On March 26, 2026, the Court resolved the following then-pending motions:  HLF and SAC Defendants' motions to dismiss Plaintiffs' claims on public policy/attorney-client privilege grounds and/or to strike Plaintiffs' claims under California's anti-SLAPP[1] statute;  Ye Defendants' motion to dismiss Plaintiffs' claims;  and Ye Defendants' notice of conditional joinder.  Dkt. 71 (the "Prior Order").  Therein, the Court granted in part and denied in part HLF and SAC Defendants' request for attorney's fees under the anti-SLAPP statute and ordered those Defendants to meet and confer with Plaintiffs as to the amount of fees sought.[2]

---

[1] SLAPP stands for "Strategic Lawsuit Against Public Participation." Cal. Code Civ. P. § 425.16

[2] The Court's Prior Order granted in part and denied in part Ye Defendants' motion to dismiss for improper service, denying dismissal but quashing service, and give Plaintiffs a chance to re-serve Ye Defendants. Dkt. 71 at 28-32.  Plaintiffs did not timely re-serve Ye Defendants, and the Court dismissed the claims against Ye Defendants on April 20, 2026.  Dkts. 75, 77.

United States District Court
Northern District of California

Now before the Court is Defendants'[3] joint motion for attorney's fees. Dkt. 72 (the "Fee Motion"). The Court determines that this matter may be resolved without oral argument. Civil L.R. 7-1(b). For the foregoing reasons, the Court **GRANTS AN AWARD** of attorney's fees in the amount of $9,762.94, divided as $6,290.06 for the HLF Defendants and $3,472.88 for the SAC Defendants, representing 3/8 of 50% of Defendants' reasonably accrued fees but **DENIES** any fees for negotiating or bringing the Fee Motion.

## I.      RELEVANT BACKGROUND

The complicated factual background of this case is discussed at length in the Court's Prior Order and is not repeated here. *See* Dkt. 71 at 2-6, 8-10, 15-23. For the purposes of the Fee Motion, the key facts are as follows. Plaintiffs sued Defendants for malicious prosecution on behalf of their client in the underlying actions, Ms. Chen/Chao, but did not sue Ms. Chen herself. *See id.*; *see also id.* at 21-22. Defendants sought to dismiss Plaintiffs claims on two grounds: First, on anti-SLAPP grounds for lacking a reasonable probability of success on any of the elements of malicious prosecution (a favorable termination, lack of probable cause and malice); second, for being fundamentally unfair on California public policy grounds under the framework set forth in *General Dynamics Corp. v. Superior Ct.*, 7 Cal. 4th 1164, 1170 (1994). *See* Dkts. 19, 33, 66, 67.

The Court ultimately granted Defendants' motion to dismiss on public policy grounds. Dkt. 71 at 24-26. However, because "[t]he attorney's fees provision under anti-SLAPP motions is mandatory, unlike fees for motions to dismiss," the Court "was nonetheless required to analyze the HLF and SAC Defendants' anti-SLAPP challenges." Dkt. 71 at 27. The Court granted in part and denied in part the anti-SLAPP motion and determined that Defendants are entitled to fees and costs as to the claims of three of the Plaintiffs, but not for the remaining five Plaintiffs. *Id.* 10-23, 27. The Court issued guidance that "fees for 3/8 the time spent on the anti-SLAPP motions" might be appropriate and directed the Parties to meet and confer as to the amount of fees or, if they could not agree, directed Defendants to file a joint motion. Dkt. 71 at 27-28, 34-35.

---

[3] Having dismissed Ye Defendants from this case, the Court refers to the HLF and SAC Defendants collectively as "Defendants" going forward, unless further specificity is needed.

United States District Court
Northern District of California

## II.    LEGAL STANDARD

"[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."  Cal. Code Civ. Proc. § 415.16(c)(1).  "The attorney's fees provision under anti-SLAPP motions is mandatory, unlike fees for motions to dismiss."  *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1026 (N.D. Cal. 2017).  However, "[t]he defendant may recover fees and costs only for the motion to strike, not the entire litigation."  *Christian Rsch. Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008) ("*CRI*").  Moreover, where the Court grants in part and denies in part an anti-SLAPP motion, "the Defendants are entitled to recover attorney fees and costs incurred in moving to strike the claims on which ... they prevailed, but not fees and costs incurred in moving to strike the remaining claims."  *Resolute*, 302 F. Supp. 3d at 1027 (cleaned up).

"[A]n award is usually mandatory…. The Legislature, however, did not intend recovery of fees and costs as a windfall."  *CRI*, 165 Cal. App. 4th at 1321.  "The prevailing party is entitled to a reasonable award…, [and] ascertaining the fee amount is left to the trial court's sound discretion."  *Id.*;  *see also Garrison v. Ringgold*, No. 19-cv-244-GPC (RBB), 2019 WL 5684401, at *3 (S.D. Cal. Nov. 1, 2019) ("The district court has wide discretion in determining the reasonableness of attorney's fees.").  "California courts use the lodestar method to compute attorney fees."  *Garrison*,  2019 WL 5684401, at *3 (S.D. Cal. Nov. 1, 2019) (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133-36 (2001)).[4]  That is the product of the "time spent and reasonabl[e] hourly compensation of each attorney," although the lodestar *may* be adjusted by the court based on other factors.  *Id.* (quoting factors enumerated in *Ketchum*).  "As the moving party, the prevailing defendant seeking fees and costs bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  *CRI*, 165 Cal. App. 4th at 1320 (cleaned up).

---

[4] At issue in the Parties' dispute is whether the Court should apply the "*Laffey* Matrix."  The *Laffey* Matrix "is an inflation-adjusted grid of hourly rates for lawyers of varying levels of experience in Washington, D.C."  *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010).  To the extent it is applicable, it is merely an input into the lodestar method as it informs the "reasonable hourly compensation" parameter.

**III.    DISCUSSION**

    **A.    Amount of Attorney's fees for Anti-SLAPP Motions**

        **1.    The HLF and SAC Defendants' Fee Evidence and Fee Requests**

The HLF Defendants were represented in this case by Wilson Elser Moskowitz Edelman & Dicker LLP ("WEMED"), with three attorneys working on the case. Dkt. 72-1 ("Catalanotti Decl.") at 2 and ¶¶ 14-15. WEMED "expended 126.30 hours on the anti-SLAPP motion and recovery of attorney's fees." *Id.*, ¶ 13. As set forth by Mr. Catalanotti, the hours and rates billed are broken down as follows:

| Attorney | Hours | Billed Rate |
|---|---|---|
| Peter C. Catalanotti | 21.30 | $315.00 |
| Audrey Tam | 8.2 | $315.00 |
| Stephanie Yee | 96.8 | $260.00 |

Catalanotti Decl., ¶ 15. The HLF Defendants (and their insurer) accrued $34.460.50 in fees. *Id.*, ¶ 12. Mr. Catalanotti declares that of this time, 20.7 hours were spent on initial review and analysis, 102.7 hours on drafting the anti-SLAPP motion, reviewing the opposition and drafting the reply, and 2.9 hours were spent on the subsequent meet-and-confer. *Id.*, ¶ 13.a. However, he does not break down which attorneys spent how long on which tasks. *Id.*

The SAC Defendants were represented in this case by Bruce MacLeod of the firm Davis, Bengtson & Young. Dkt. 73 ("MacLeod Decl.") at 2 and 4 n. 3. Mr. MacLeod billed his time working on this matter at the rate of $290 per hour, "due to long-standing relationships between Arch Insurance Company, SAC Defendants' insurer, and his firm. *Id.*, ¶ 8. Mr. MacLeod's time spent is broken down as follows:

| Task | Hours (at $290 / hour) |
|---|---|
| Initial review and research | 9.2 hours |
| Meet and confer efforts re anti-SLAPP motion | 1.0 hour |
| Drafting of motion, review of opposition, and draft of reply | 38.3 hours |
| Review of Dkt. 71 | 0.5 hours |
| Preparation of Fee Motion | 3.7 hours |

MacLeod Decl., ¶ 13. The SAC Defendants (and their insurer) accrued $15,283 in fees. *Id.*, ¶ 12.

United States District Court
Northern District of California

United States District Court
Northern District of California

However, Defendants request fees far exceeding the rates actually billed while working on this matter.  HLF Defendants argue that the rates charged by WEMED "were significantly lower than the reasonable rates set forth in the general pay schedule known as the '*Laffey* Matrix,'" and that, according to the *Laffey* Matrix (*see* http://www.laffeymatrix.com), they should be entitled to fees as at the rates of $1,282.48 (Mr. Catalanotti), $943.04 (Ms. Tam) and $1,065.55 (Ms. Yee). Meanwhile, Mr. MacLeod explains that, "in cases that do not involve legal malpractice or insurance companies," his rate "varies depending upon the client and the history of the relationship" and has ranged from $575 to $650 over the last two years.  MacLeod Decl., ¶ 9.  Mr. MacLeod also cites a *Laffey* Matrix figure of $1,227 per hour for an attorney of his experience, but requests only a "reasonable rate" of $550 per hour.  *Compare id.*, ¶ 10 *with* Dkt. 72 at 10.

Finally, the Parties agree that, whatever fees Defendants are entitled to, a 3/8 adjustment in recognition of the only partial success of the anti-SLAPP motions is appropriate.  *Compare* Dkt. 72 at 9-10 *with* Dkt. 76 at 2, 10.  Thus, the HLF Defendants request 3/8 of $138,194.99 or $51,823.12 in fees, while the SAC Defendants request 3/8 of $28,985.00 or $10,869.38 in fees.

The Court now turns to the Parties' arguments as to the amount of attorney's fees. Plaintiffs argue that the Court should deny attorney's fees altogether because: (1) Defendants' anti-SLAPP motions were ultimately "of no practical benefit" and (2) the fees are "outrageously unreasonable" and unsupported. Dkt. 76 at 5-10.  In the alternative, Plaintiffs argue that Defendants' fees should be reduced to a reasonable amount.  *Id.* at 5-8, 10.[5]

### 2. The Court Is Not Persuaded that Defendants' Anti-SLAPP Motions Were of "No Practical Benefit"

Plaintiffs acknowledge, as they must, that an award of attorney's fees for a prevailing defendant is "usually mandatory."  *See* Dkt. 76 at 6 (citing *CRI*, 165 Cal. App. 4th at 1321). However, they point out that "[w]here the [anti-SLAPP] motion is partially successful, the question is whether the results obtained are insignificant and of no practical benefit to the moving party."  *Id.* at 8 (citing *Cole v. Patricia A. Meyer & Associates, APC*, 206 Cal. App. 4th 1095,

---

[5] The Court addresses Plaintiffs' argument as to the asserted failure to meet and confer in good faith in connection with its assessment of fees for bringing the Fee Motion in § III.B., below.

1123 (2012) and *Martin v. Inland Empire Utilities* Agency, 198 Cal. App. 4th 611, 633 (2011)). Plaintiffs argue that if only the anti-SLAPP portions of the motions are examined, then their success on 3 of the 8 Plaintiffs' claims was of no practical benefit. *Id.* at 8-10. Defendants criticize Plaintiffs' argument as engaging in unnecessary "mental gymnastics" to avoid the clear import of the Prior Order and distinguish *Cole* and *Martin*. Dkt. 78 at 5.

The Court agrees with Defendants that Plaintiffs' citations to *Cole* and *Martin* are unhelpful. *Cole*, while citing "no practical benefit," includes no analysis of whether there was a "practical benefit," instead partially reversing the underlying anti-SLAPP order on other grounds, and merely remanding to the trial court for further consideration. Cal. App. 4th at 1123. *Martin* involved an anti-SLAPP motion that was "granted" with leave to amend which, as the California Court of Appeal explained, "was the functional equivalent of a denial" and thus "was of no practical *effect*," let alone benefit. 198 Cal. App. 4th at 633 (emphasis added). Here, of course, the Court granted in part Defendants' anti-SLAPP motion, and it remains in full force and effect.

Moreover, even if the Court were to engage in the analysis Plaintiffs suggest—examining the partially-successful anti-SLAPP motions as if no public-policy motion to dismiss were filed— the Court is not convinced that there would have been no benefit arising from Defendants' anti-SLAPP motions. Plaintiffs cite three additional cases discussing when courts found, or did not find, a practical benefit.[6] *See* Dkt. 76 at 8-9 (*Shepard v. Miler*, 2011 WL 1740603, at *2-3 (E.D. Cal. 2011); *Mann v. Quality Old Time Serv., Inc.*, 139 Cal. App. 4th 328, *overruled on other grounds, Baral v. Schnitt*, 1 Cal. 5th 376, 385 (2016); *Moran v. Endres*, 135 Cal. App. 4th at 957 (2006)). None supports the conclusion Plaintiffs urge. As Plaintiffs recognize, the courts in *Shepard* and *Mann* both *awarded* attorney's fees, finding that the anti-SLAPP motions in those cases narrowed discovery, reduced exposure to damages and altered the settlement posture despite only being partially successful. *Shepard*, 2011 WL 1740603, at *2-3 (fees awarded where an anti-SLAPP motion eliminated punitive damages exposure and narrowed discovery) and *Mann*, 1 Cal.

---

[6] The court in one of these cases, *Moran*, only framed the issue as one of practical benefit in a concurrence. *Moran v. Endres*, 135 Cal. App. 4th at 957 (2006) (Mosk, J., concurring). The Court finds the case distinguishable regardless, as explained herein.

United States District Court
Northern District of California

5th at 385 (2016) (fees awarded where an anti-SLAPP motion "successfully narrowed the scope of the lawsuit, limit[ed] discovery, reduc[ed] potential recoverable damages, and alter[ed] the settlement posture."). In *Moran*, the Court found that prevailing on only *one out of eleven* claims "accomplished nothing," because that claim was for "civil conspiracy," which "cannot be alleged as a tort separate from the underlying wrong it is organized to achieve." *Moran*, 135 Cal. App. 4th at 954-55. Thus, the defendants' motion "obtained only the most illusory victory." *Id.* The anti-SLAPP motions' results in this case were more like *Shepard* and *Miler* and unlike *Moran*: if Defendants had been forced to defend against only 5 of the 8 Plaintiffs, their exposure to damages would have been reduced by 3/8, discovery would have been narrowed, and the settlement posture would have likely been altered. Accordingly, the motions were not of "no practical benefit."

Finally, Plaintiffs vaguely suggest that the anti-SLAPP motions should be disregarded as unnecessary, in light of the 12(b)(6) motion. On this argument, Plaintiffs cite no California Supreme Court case on this point, and the rule appears at odds with authority well-established in this District, and cited by the Court in its Prior Order, that even where "each of [the] claims is dismissed … for failure to state a claim," a court must "nonetheless address[] the motions to strike because the issue of attorney's fees and costs is not rendered moot by a dismissal." *Resolute*, 302 F. Supp. 3d at 1026 (N.D. Cal. 2017) (quoting *Robinson v. Alameda Cnty.*, 875 F. Supp. 2d 1029, 1046 (N.D. Cal. 2012)). The Court is not persuaded otherwise.

In sum, the Court will not deny attorney's fees wholesale on this ground.

### 3. The HLF and SAC Defendants' Requested Fees Are Unreasonable and Excessive, but the Court Will Not Deny Attorney's Fees Altogether

"Inflated fee requests constitute a special circumstance." *CRI*, 165 Cal. App. 4th at 1321. As Plaintiffs point out, if a fee request appears unreasonably inflated, a trial court "has broad discretion to adjust the fee downward or deny an unreasonable fee altogether." *Id.* at 1322 (quoting *Ketchum*, 24 Cal. 4th at 1138). For the following reasons, the Court agrees that the awards Defendants seek are unreasonable but declines to deny fees altogether.

////

////

7

### a.    Reliance on the *Laffey* Matrix is Inappropriate in this Case

First, Plaintiffs criticize Defendants' reliance on the *Laffey* Matrix.  Defendants argue that "California courts have confirmed the use of an adjusted *Laffey* Matrix to determine a reasonable hourly rate."  Dkt. 72 at 7 (citing a California Court of Appeal case from 2012 and a case from this District from 2005)).  Plaintiffs contend that it is inappropriate.  Dkt. 76 at 6 (citing a case from this District from 2012).  The Court agrees with Plaintiffs.

In 2010, the Ninth Circuit decided *Prison Legal News v. Schwarzenegger* and "rejected a defendant's argument that a district court should have applied the *Laffey* matrix in fixing an attorney fee award."  *Rosenfeld v. U.S. Dep't of Just.*, 904 F. Supp. 2d 988, 1003 (N.D. Cal. 2012) (citing and characterizing *Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010)).  As the Ninth Circuit explained in that case:

> [J]ust because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away. It is questionable whether the matrix is a reliable measure of rates even in Alexandria, Virginia, just across the river from the nation's capital.

*Prison Legal News*, 608 F.3d at 454.  To be sure, the Court does not view *Prison Legal News* as foreclosing use of the *Laffey* Matrix in all cases;  it may be that the *Laffey* Matrix is a helpful and appropriate tool for fixing attorney's fees when used in conjunction with other information.  However, the Court finds *Prison Legal News*, and subsequent cases relying on it, such as *Rosenfeld*, more persuasive that Defendants' earlier cases.  *See Rosenfeld*, 904 F. Supp. 2d at 1003 ("declin[ing Defendant's invitation to use the matrix" where Plaintiff had submitted other evidence showing market rates in the area).

Moreover, Defendants citation to *Nemecek & Cole v. Horn*, 208 Cal. App. 4th 641 (2012), is inapposite.  That case declined to find that a trial court abused its discretion in considering the *Laffey* Matrix in determining reasonable attorney's fees.  However, the California Court of Appeal decided that case in the context of a petition to confirm an arbitration award, wherein the Parties agreement provided that the "prevailing party in the arbitration and any ancillary proceeding shall recover reasonable attorney's fees."  *Id.* at 651.  The decision was not made in the anti-SLAPP context, where different policies are at play.  Significantly, in the anti-SLAPP context, it is

United States District Court
Northern District of California

California courts have repeatedly held that the Legislature "did not intend recovery of fees and costs as a windfall." *CRI*, 165 Cal. App. 4th at 1321 (collecting cases). In support of this, the statutory provision itself makes reference only to the entitlement of the prevailing party "to recover his or her attorney's fees and costs." Cal. Code Civ. Proc. § 415.16(c)(1).

In any case, considering all of the evidence before it, the Court views Defendants' attorneys' declarations of the fees charged in this case as much closer to the reasonable, market-rate fees charged in the Bay Area for this type of legal work than the *Laffey* Matrix. *See, e.g.*, MacLeod Decl., ¶ 9; *cf. White v. City of Richmond*, 713 F.2d 458, 461 (9th Cir. 1983) ("While evidence of counsel's customary hourly rate may be considered by the District Court, it is not an abuse of discretion in [a civil rights action based on 42 U.S.C. § 1938] to use the reasonable community standard that was employed here.").[7] It is Defendants' burden to "establish[] entitlement to an award and document[] the appropriate … hourly rates." *CRI*, 165 Cal. App. 4th at 1320. The HLF Defendants have supplied the Court with only two datapoints on fees: the adjusted *Laffey* Matrix and their actual hourly rates. Catalanotti Decl., ¶¶ 14-16. Accordingly, the Court determines that the rates actually charged by the WEMED attorneys in this case are the reasonable rates to be applied to their award. *See id.*, ¶ 14; *see, supra*, n.9. Mr. MacLeod has supplied the Court with three datapoints: the adjusted *Laffey* Matrix, his actual hourly rate which is discounted due to "long-standing relationships" between SAC Defendants' insurer and his firm; and the hourly rate range he customarily charges to clients for non-legal-malpractice cases.

////

---

[7] The statement in *White v. City of Richmond* began a long line of cases, all in the Section 1983 context, holding that "a reasonable hourly rate is not made by reference to rates actually charged the prevailing party." *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (citing *id.*); *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (citing *Chalmers*, 796 F.2d at 1210); *Cotton v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154, 1167 (N.D. Cal. 2012) (citing *Schwarz*, 73 F.3d at 908). Such a rule makes sense in civil rights cases, where, as *White* explained, "many civil rights practitioners do not bill their clients at an hourly commercial rate." *White*, 713 F.2d at 461. However, the Court is not aware of any case from this District applying the more restrictive rule of *Chalmers/Schwarz* to the anti-SLAPP context. To the contrary, at least one court explained that "the complexity of the case (or lack thereof) is likely reflected in the rate that [the party] negotiated with his chosen counsel. Accordingly, the Court finds that the actual rates charged by [the party's] counsel are reasonable for purposes of calculating the lodestar amount." *See GemCap Lending I, LLC v. Unity Bank Minnesota*, No. 18-cv-05979-YGR, 2019 WL 3842010, at *5 (N.D. Cal. Aug. 15, 2019).

MacLeod Decl., ¶¶ 8-11.[8]  Accordingly, the Court will set Mr. MacLeod's reasonable hourly rate between his customary rate for non-malpractice cases and his actual rate, at $315.00 per hour.[9]

### b. Defendants, Especially HLF Defendants, Failed to Apportion Their Time Spent Solely to Anti-SLAPP Tasks

Additionally, Plaintiffs correctly point out that Defendants "may recover fees and costs only for the motion to strike, not the entire litigation." *CRI*, 165 Cal. App. 4th at 1320.  Several deficiencies in Defendants' submitted declarations make their fee requests unreasonable, and the Court will reduce the awards to approximate the fees they are entitled to.

First on this point, Plaintiffs argue that "nowhere in their Motion do Defendants attempt to distinguish between the fees incurred for preparing the anti-SLAPP motion as opposed to the Rule 12(b)(6) motion contained in the same briefing."  Dkt. 76 at 7.  Defendants add nothing in reply beyond pointing back to their declarations.  Dkt. 78 at 5.  Having considered the declarations, the Court agrees that there is a failure to apportion.  *See* Catalanotti Decl., ¶ 13.a;  MacLeod Decl., ¶ 13.  In light of the record in this action, including the motions and replies filed by Defendants and the Prior Order of this Court, the Court finds that the 12(b)(6) *General Dynamics* arguments and the anti-SLAPP arguments were both substantive portions of Defendants' motions that would have merited roughly equal attention.  In the absence of more specific documentation, the Court will thus reduce the hours spent on review, research, analysis and drafting by 50% for each of the HLF and SAC Defendants.

Second, the Court independently notes that another minor issue arises in both Defendants' fee evidence.  WEMED includes 2.9 hours for "meeting and conferring with Plaintiffs' and the SAC Defendants' counsel about potential settlement in lieu of filing a fee motion."  Catalanotti Decl., ¶ 13.a.  While this time is not necessarily outside the scope of fees, it is not time spent on the anti-SLAPP motion itself and thus will be addressed in Section III.B., below.  Similarly, Mr.

---

[8] The Court appreciates Mr. MacLeod's candor in acknowledging that his hourly rate in cases that do not involve legal malpractice or insurance companies is different from cases that do.

[9] This figure is also commensurate with the rate charged by Mr. Catalanotti, who has comparable experience.  *See* Dkt. 72 at 8.

United States District Court
Northern District of California

MacLeod includes 0.5 hours for review of the Court's Prior Order, and 3.7 hours for preparation of the Fee Motion.  These issues, too,  will be addressed in Section III.B., below.

Finally, a unique issue afflicts the HLF Defendants' fee request.  Three attorneys at WEMED worked on the HLF Defendants' case, yet Mr. Catalanotti's Declaration does not explain how much time the *specific* attorneys undertook for the "reviewing and analyzing," "drafting, editing, and finalizing" or "meeting and conferring" tasks.  Catalanotti Decl., ¶ 13.a.  Without such information, the Court lacks evidence sufficient to allow it to determine with confidence "whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended."  *See CRI*, 165 Cal. App. 4th at 1320.

This lack of information, especially coupled with WEMED's requested rates "of $1,282.48, $943.04, and $1,065.55 per hour against actual billed rates of $315, $315, and $260 per hour—markups of 307%, 199% and 310% respectively," (*see* Dkt. 76 at 7 (calculating markups based on the information provided by Defendants) is troubling to the Court.  The Court could deny the HLF Defendants their fees in their entirety.  *See CRI*, 165 Cal. App. 4th at 1320 ("If the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked in the first place.").  After careful consideration of such an approach, and the issues in this case, the Court **admonishes** WEMED to be more mindful of the requirements of appropriate fee requests in the future but will award the HLF Defendants reasonable attorney's fees.

### c.    The Court's Fee Calculation

For the reasons set forth in subsections b.-c., above, the Court will apply the following assessment of reasonable hours worked related to the anti-SLAPP motions:

////

////

////

////

////

11

| Attorney | Compensable Hours | Reasoning |
|---|---|---|
| Peter C. Catalanotti | 9.2 | Mr. Catalanotti's 21.3 hours are reduced by 2.9 hours, reflecting the time meeting and conferring with regard to fees.  That time is addressed in Section III.B., below.<br><br>The remaining 18.4 hours are reduced by 50% for time presumed to be spent on the 12(b)(6) public policy argument. |
| Audrey Tam | 4.1 | Reduced by 50% for time presumed to be spent on the 12(b)(6) public policy argument. |
| Stephanie Yee | 48.4 | Reduced by 50% for time presumed to be spent on the 12(b)(6) public policy argument. |
| Bruce MacLeod | 29.4 | Mr. MacLeod's 9.2 hours spent on anti-SLAPP specific research is unreduced, as is his 1-hour meet-and-confer.<br><br>His 14.6 + 13.4 + 10.3 hours devoted to the motion, opposition, and reply are reduced by 50% for time presumed to be spent on the 12(b)(6) public policy argument.<br><br>His 0.5 hours spent reviewing the Court's Prior Order and 3.7 hours spent on the Fee Motion are omitted and addressed in Section III.B., below. |

Then, the Court sets Mr. MacLeod's, Mr. Catalanotti's, and Ms. Tam's reasonable hourly rates at $315, and Ms. Yee's hourly rate at $260.

Accordingly, multiplying the reasonable hourly rates by the hours above according to the lodestar method, the HLF Defendants' initial attorney's fees are $16,773.5.  However, reducing this amount to 3/8 to account for the partial success of the motion, the Court **AWARDS** $6,290.06 to the HLF Defendants.

Similarly, multiplying the reasonable hourly rates by the hours above according to the

12

lodestar method, the SAC Defendants' initial attorney's fees are $9,261.  However, reducing this amount to 3/8 to account for the partial success of the motion, the Court **AWARDS** $3,472.88.

### B.    The Court Declines to Award Fees for the Joint Motion

Finally, the Court notes that each of the HLF and SAC Defendants has included some time related to the preparation of the Fee Motion or the meet-and-confer process to avoid the need to file the Fee Motion.  *See* Catalanotti Decl., ¶ 13.a;  MacLeod Decl., ¶ 13.  In anti-SLAPP contexts, as in other cases, generally, "[p]revailing parties are compensated for hours reasonably spent on fee-related issues." *Ketchum*, 24 Cal. 4th at 1137 (citing *Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982) (holding in other contexts that, "absent circumstances rendering the award unjust," fee awards "ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim.")).  Of course, the Court may reduce or deny an award for such "fees-on-fees" based on "hours not reasonably expended, based on the results obtained in the litigation, or some other relevant consideration." *See, e.g.*, *Batchelder v. Geary*, No. C-71-02017-RMW, 2007 WL 2427989, at *10 (N.D. Cal. Aug. 22, 2007) (reducing hours spent preparing a fee motion by 25% where, *inter alia*, "plaintiffs' failure to meaningfully meet and confer with the County prior to preparing their motion for fees.").

Plaintiffs argue that Defendants should not be awarded any fees[10] due to their failure to comply with the Court's instruction the Parties "meet and confer in good faith" as to attorney's fees and Local Rule 54-5(b)(1)'s requirement that a motion for attorney's fees a motion for attorney's fees must be accompanied by "[a] statement that counsel have met and conferred for the purpose of attempting to resolve any disputes with respect to the motion or a statement that no conference was held." Dkt. 76 at 3-5.  Defendants argue that they did meet and confer in good faith.  Dkt. 78 at 2-4.  Having reviewed the Parties' submissions, including the exhibits attached to Plaintiffs' opposition, (*see* Dkt. 76-1), the Court agrees with Plaintiffs.  It does not appear that

---

[10] Plaintiffs' argument is directed to Defendants' overall request for fees in the form of "offsetting sanctions" but "at minimum" seeks denial of all fees attributable to bringing the Fee Motion.  Dkt. 76 at 3.  Plaintiffs' front-line argument overreaches.  Plaintiffs have not cited any persuasive authority that, in the anti-SLAPP context, failure to meet and confer in good faith should result in denial of otherwise warranted fees.

United States District Court
Northern District of California

Defendants' counsel adequately prepared for the meet-and-confer, for the following reasons:

- Mr. Catalanotti and Mr. MacLeod provided only fee figures for total amounts expended in connection with the motion, without providing any breakdown of anti-SLAPP versus Rule 12(b)(6) arguments (a defect that persists to the Fee Motion);

- There does not appear to have been any discussion of the "market rate" fees ultimately sought by Defendants;  and

- Troublingly, neither Mr. Catalanotti nor Mr. MacLeod appeared "aware of the Court's suggested 3/8 apportionment," and neither proposed any settlement figure.

Dkt. 76-1, ¶¶ 5-9.  In the follow-up communications to the video meet-and-confer, it also appears that Defendants' counsel at first would not answer basic questions such as whether they would be seeking 100% of their fees if they proceeded to file a fee motion, and they raised the prospect of market-rate fees for the first time via email.  *Id.*, Ex. A.

In sum, attending a meet-and-confer conference without preparing the basic information necessary to make such a conference meaningful, and following up by sporadic email without lead counsel available,[11] does not fulfill the Court's requirement for a good-faith meet-and-confer.

Accordingly, the Court believes the Fee Motion was likely avoidable and an unnecessary expenditure of resources by the Parties and the Court.  In light of this, as well as the fact that much of the Fee Motion is devoted to Defendants' unavailing arguments in support of unreasonable rates, the Court **DENIES** any award for fees spent on the meet-and-confer or the Fee Motion.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Fee Motion.  The Court finds the reasonable fees incurred to be:  $6,290.06 for the HLF Defendants and $3,472.88 for the SAC Defendants and **AWARDS** these amounts.

Moreover, as the final claims in this matter (the claims against the Ye Defendants) were

////

---

[11] The Court does not fault Mr. Catalanotti for his pre-planned vacation which appears to have precipitated an early meet-and-confer.  *See* Dkt. 76-1, ¶ 8.  Nonetheless, it is all counsels' responsibility to be prepared for such conferences so as to make them meaningful.

dismissed without prejudice on April 20, 2026, and the issue of fees having been resolved, the Clerk of Court **shall close** the action.

The Court will issue a separate judgment.

**SO ORDERED.**

Dated: May 4, 2026

SUSAN VAN KEULEN
United States Magistrate Judge